UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____X
                                                )
                                                )
JANE DOE,                                       )     Index No. _____
                        Plaintiff,              )
                                                )
v.                                              )
                                                )     COMPLAINT
TOWN OF GREENWICH, SGT. DET. BRENT              )
REEVES, in his individual and official capacity, )
and DET. KRYSTIE M. RONDINI, in her individual  )
and official capacity,                          )
                        Defendants.             )
_____X


**PRELIMINARY STATEMENT**


1.      The Town of Greenwich Police Department, similar to most police departments

across the country, has a Special Victims Section ("SVS") which is focused on investigating

crimes against the most vulnerable segments of the community, including sexual assault and

crimes against children.  Its website states that its "goal always is to conduct investigations in a

manner that protects the personal dignity of the victims."  However, under certain policy,

practices and customs of SVS, protecting the dignity of victims is less important than serving the

interests of accused perpetrators, with the result that victims who allege they have been

sexually assaulted by students of local schools are deprived of their constitutional rights to

equal protection under the law.

2.      Brunswick School ("Brunswick") is an elite private boys' college-preparatory day school in Greenwich.  Upon information and belief, five former Town of Greenwich police officers (four of whom are former detectives) are employed in Brunswick's Security Department.  Upon information and belief, these former police officers keep in close contact with the Town of Greenwich Police Department ("Greenwich PD") and have set up an inappropriate "back channel" with Greenwich PD to give Brunswick notice and information about a criminal complaint against a Brunswick student, so that Brunswick can take immediate steps to control the situation and to prevent negative publicity from tarnishing the reputation of Brunswick in the community.

3.      Upon information and belief, unlike investigations conducted in criminal complaints handled by other Sections of Greenwich PD, SVS subordinates its own investigation into complaints against Brunswick students to enable Brunswick to first conduct its private investigation and manipulate witnesses.  Upon information and belief, SVS shares confidential information with Brunswick in order to allow the school to coordinate witness reports and put into place protective measures to shield its students from criminal prosecution and to protect itself against unfavorable publicity.

4.      Greenwich PD's back channel efforts went so far as to result in a public exoneration of Brunswick students in 2014 in order to put to rest persistent rumors of a sexual assault that was threatening the reputation of Brunswick.  In an article published in the *Greenwich Time* on November 13, 2014, Greenwich PD stated that it had conducted an investigation into rumors of a sexual assault at a party attended by Brunswick students, but found the allegation about the alleged assault to be "unfounded."  In its statement to the press,

Greenwich PD acknowledged that it does not generally comment on rumors, yet astoundingly felt compelled in this situation to make a public statement to clear the Brunswick students of the alleged assault.  Upon information and belief, the request to make the public statement came from Brunswick out of concern for its reputation.

5.      Plaintiff reported a sexual assault by a Brunswick student to SVS.  Greenwich PD followed its policy, practice or custom and allowed Brunswick to take the lead in interviewing witnesses.  Plaintiff's father and an attorney retained to represent the family both made requests to Greenwich PD that it instruct Brunswick to stand down from its investigation until the police had concluded their investigation, and both requests were denied.

6.      SVS took no steps to shut down the Brunswick investigation.  SVS allowed Brunswick's Headmaster, Thomas Philip, to interview the student who assaulted Plaintiff, as well as several witnesses who attended Brunswick School (the "Brunswick Witnesses"), before they were interviewed by SVS.  Upon information and belief, SVS also allowed Philip to make an attempt to interrogate Plaintiff, the victim — an action clearly designed to intimidate her and to try to coerce her into withdrawing her complaint.  After Philip had gathered information from the Brunswick Witnesses and the student who committed the assault, SVS made no attempt to interview Philip and obtain the information he had gathered — a particularly prejudicial action because Philip had conducted unprivileged interviews with the student who committed the assault and could have provided valuable information to the police that was otherwise unavailable to them.

7.      Brunswick received confidential information about facts asserted and potential witnesses from SVS, and was allowed by SVS to use this information to coordinate the

Brunswick attacker's defense and to tamper with the Brunswick Witnesses before they spoke to SVS — spinning its own version of events to downplay the seriousness of the assault that took place.  The result was a sham investigation by SVS that was designed to, and did, convince the State's Attorney not to file any charges against the Brunswick attacker or any other Brunswick students.

8.    By maintaining a policy, practice or custom of permitting the intervention and manipulation of witnesses by Brunswick, SVS compromises its ability to conduct an objective and thorough investigation and gives the school a powerful advantage over sexual assault victims, depriving them of their Constitutional rights to due process and equal protection under the law.

9.    With regard to the complaint reported by Plaintiff in this action, one individual officer of SVS has also taken steps against Plaintiff and her family to threaten, coerce and dissuade them from proceeding with her complaint, and another individual officer falsely questioned her credibility to the State's Attorney in an effort to prevent any charges from being filed.

**JURISDICTION AND VENUE**

10.    This is an action for injunctive relief and damages pursuant to 42 U.S.C. § 1983 based upon the violations of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution, and under General Statutes § 52-557n(a)(1).  Jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law.  Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.  Supplemental jurisdiction over Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in the District of Connecticut in that the events and conduct complained of herein all occurred in the District of Connecticut.

## PARTIES

### *Plaintiff*

12.     Plaintiff Jane Doe is an 18-year old female who lives in the Town of Greenwich, Connecticut.  At the time of the events at issue in this litigation, she was 16 years old and had just completed her sophomore year in high school at Greenwich Academy ("GA").  GA is a private college-preparatory day school for girls.  It is a "sister" school to Brunswick, as it "coordinates," or shares facilities, curriculum and resources with Brunswick, and holds combined events and school trips with Brunswick at the high school level.  In July 2016, Plaintiff reported to her school counselor that she had been sexually assaulted in June 2016 by a student at Brunswick.  GA's Head of Upper School reported the complaint, as required by law, to the Department of Children and Families, which relayed the complaint to the Greenwich PD.

### *Defendants*

13.     Defendant Town of Greenwich ("Greenwich") is a municipal entity in the State of Connecticut with the capacity to sue and be sued.  The departments of the Town of Greenwich include the Greenwich Police Department and its divisions and sections, including the Detective Division and its Special Victims Section.  Employees of Greenwich have engaged in the acts complained of herein pursuant to the policies, practices and customs of Greenwich.

14.     Defendant Sgt. Det. Brent Reeves is the head of SVS.  He is the individual employee of Defendant Greenwich who directed the sham investigation into the complaint of sexual assault made by Plaintiff, threatened and intimidated Plaintiff and her family in an effort to coerce them to withdraw the complaint, made blatantly prejudicial decisions concerning the evidentiary "admissibility" of Plaintiff's witness statements, allowed Brunswick to interview and tamper with Brunswick Witnesses and manipulated the information given to the State's Attorney in order to influence his decision about whether to prosecute.

15.     Defendant Det. Krystie M. Rondini is a detective in SVS.  She is the individual employee of Defendant Greenwich who conducted the sham investigation into the complaint of sexual assault made by Plaintiff, and who mischaracterized the facts gathered during the investigation to give the false appearance that Plaintiff was not credible so as to convince the State's Attorney not to press charges.

## FACTS

16.     On the last day of final exams in 2016, Plaintiff invited friends to swim in her family pool.  Approximately 13 high school age friends were invited, 4 girls who attended Greenwich Academy, 2 girls who attended other schools and 7 boys who attended Brunswick School.  Due to standardized tests the next day, several guests visited only briefly and then departed.

17.     An hour or so before guests arrived, one of the Brunswick students who attended told Plaintiff that he and another Brunswick student planned to smuggle alcohol into the get-together.  Although uncomfortable with the idea, Plaintiff did not stop the Brunswick students or tell her parents of the plan.

18.     The home's pool has a directly adjacent pool house.   Plaintiff and her friends congregated in and around the pool. Plaintiff's parents, Plaintiff's adult brother and two adult friends were on hand to supervise the gathering.  Parents who were dropping off and picking up their children were also invited by the hosts to stay.  The adults gathered on the outside patio at the back of the house and in view of the pool.  No alcohol was served by the hosts to any of the high school students or adults who were there.

19.     Brunswick student Peter Roe arrived with two other Brunswick classmates shortly before guests began to depart.   Upon information and belief, Roe had been drinking before he arrived at the house and then, as his Brunswick classmates had done, smuggled in alcohol.  Roe went to the pool area where he soon displayed aggressive, lewd and belligerent behavior.  Witnesses reported observing him trying to grope and otherwise inappropriately grab the girls and making suggestive and lewd comments to them.  Plaintiff's brother, who was in the pool at that time, intervened verbally.  Without provocation, Roe put his hands around the brother's neck, started choking him, and continued to struggle with him for some time. Plaintiff's brother then began making arrangements for Roe to leave the get-together as soon as possible.

20.      While Plaintiff's brother was occupied ensuring that the boys with whom Roe had arrived were finding a ride home for themselves and Roe, two other Brunswick students took Roe to the pool house bathroom to try to sober him up by purging the alcohol in his stomach.

21.     Plaintiff went to the pool house bathroom to assist.  One of the boys left when his mother told him they were going home, leaving the other boy with Plaintiff and Roe.  A few

minutes later, the other boy was also summoned to leave by his mother, and Plaintiff was left alone with Roe.

22.     When left alone, Roe attacked Plaintiff, telling her that he wanted "to fuck her," and attempting to rape her.  As she struggled with him, he tried to pull his pants down, pulled her bikini top down, reached inside her bikini bottom, and stuck his fingers into her vagina. Plaintiff was eventually able to push him against the bathroom wall, but could not escape.

23.     One of the two boys who had been assisting Roe in the bathroom found his mother engaged in a lengthy conversation, delaying their departure, and decided to return to the pool house bathroom.  Due to his return, Plaintiff was able to flee from the bathroom and Roe.

24.     A short time later Roe went to wait for a taxi with his friends.  Before he left, Roe apologized to Plaintiff, indicating that, despite his intoxication, he was well aware that he had done something wrong to her.

25.     That night and during the weeks that followed, Plaintiff described what had happened to her, both by text and verbally, to a number of her friends and some family members, although she did not tell her parents or brother.

26.     Over the next few weeks, Plaintiff's emotional state deteriorated significantly. She experienced numerous periods of panic and distress stemming from the sexual assault. Urged by her friends to seek help from an adult, Plaintiff confided in GA's counselor, Charlanne Zepf Bauerlein on July 25, 2016.

27.     Upon learning that a sexual assault had taken place, Ms. Bauerlein notified GA's Head of Upper School, Thomas Sullivan, who filed a report with the Department of Children and

Families ("DCF") as required by law.  Upon information and belief, DCF forwarded the report to the Greenwich PD.

28.     Shortly thereafter, Det. Krystie M. Rondini contacted Plaintiff's parents to determine whether Plaintiff wanted to make a formal statement/complaint.  Plaintiff decided that making a formal complaint was the right thing to do and made a statement at her home on August 2, 2016.

29.     On August 3, 2016, Roe texted Plaintiff: "Hey sorry to bother you again but the Greenwich police called my house today regarding the things I did at your party.  Didn't mean for all of this to happen.  If I could take it all back I would.  I'm sorry for everything I put you through."

30.     On August 3, 2016, Det. Rondini met with Plaintiff's brother.  On August 8, 2016, she interviewed one Brunswick student by phone while he was at his summer camp.   That same day Det. Rondini spoke by phone with the mother of another Brunswick student who said that her son would speak to the police with a lawyer present.  Thirty minutes later, that same mother called back to say that her son would not make a statement at all.

31.     After August 8, 2016, no interviews were conducted by SVS until Plaintiff's family retained legal counsel.

32.     On August 15, 2016, Brunswick's Headmaster informed Plaintiff's parents that he had spoken with Roe, that the Greenwich Police knew that Roe had talked to Brunswick's Headmaster, and that Brunswick was conducting its own investigation by interviewing all of the Brunswick students who were at the get-together on the night of the assault.  Clearly, Brunswick was taking the lead in the investigation of the criminal complaint to prevent damage

9

to its reputation and the prosecution of its student.  Sgt. Det. Reeves and Det. Rondini then took additional steps to provide the school with cover and support.

33.     Sgt. Det. Reeves and Det. Rondini took steps very prejudicial to Plaintiff that were clearly designed to support Brunswick's theory of the events, developed when Brunswick had completed its investigation.  They gave greater weight to information supplied by Brunswick Witnesses (after they had been influenced by Brunswick's Headmaster) than to statements and information provided by Plaintiff, her family and witnesses who corroborated her statement:

a.     Sgt. Det. Reeves refused the request by Plaintiff's attorney to shut down the independent Brunswick investigation during which the Headmaster spoke with all but one Brunswick witness (and had the opportunity to tamper with their testimony) before SVS had interviewed them.

b.     They made no effort to learn what Roe or the Brunswick Witnesses told the Brunswick Headmaster, or to interview the Headmaster about what he learned in his investigation.  On the other hand, they accepted confidential information from Brunswick's Headmaster about Plaintiff, which he had obtained by request through her school from her parents.

c.     They made no attempt to obtain Roe's text messages or social media postings, a standard practice when investigating any complaint, especially involving teenagers whose prime mode of communication is electronic.

d.     Rather than conducting actual interviews with the Brunswick Witnesses, Det. Rondini merely asked them to submit their own written statements or write down

what they recalled.  Such "interview" techniques were designed to allow the Brunswick

Witnesses to put forward the Brunswick version of events, without any kind of

challenging questioning by the police.

       e.      Det. Rondini supported her arrest warrant submitted to the State's

Attorney with a written statement made by a GA student (and close friend of one of the

Brunswick Witnesses) who did not even attend the pool gathering and who had been

disciplined by GA for bullying Plaintiff during the police investigation by spreading

rumors that Plaintiff had fabricated the incident.  No one from SVS ever informed the

State's Attorney that this witness had been disciplined because of her actions against

Plaintiff.

       f.      On the other hand, Det. Rondini excluded in her arrest warrant submitted

to the State's Attorney a statement by an adult witness who was at the pool gathering

as having "no evidentiary value."

       g.      Det. Rondini used her personal email sometimes exclusively and

sometimes in addition to her GPD email to contact witnesses and the victim's family,

making sure that at least some of the emails would not be part of the official record of

the investigation.

34.      Sgt. Det. Reeves informed Plaintiff's parents that there was a very thin case

BEFORE Det. Rondini had interviewed Roe or other witnesses.  Based solely on Det. Rondini's

phone interview with one Brunswick Witness, a teenager who was out-of-state attending

summer camp, Sgt. Det. Reeves determined that Plaintiff's claim could not be substantiated.  It

was only after Plaintiff' family engaged legal counsel, who questioned the actions by Sgt. Det. Reeves, that he grudgingly allowed the sham investigation to proceed.

35.     Once Brunswick had completed its investigation, Det. Rondini finally sought to interview other witnesses beginning August 25, 2016.  Not surprisingly, by that time, some Brunswick Witnesses refused to provide any information.  Others who initially refused to provide information months later agreed to submit only prepared statements.  One Brunswick Witness who had been initially supportive of Plaintiff's position changed his view entirely. Clearly, all of the information provided by these Brunswick Witnesses was heavily influenced by the prior interviews these students had with the Brunswick Headmaster.   On the other hand, Plaintiff's report to other witnesses immediately after the incident, and to the school counselor and the psychologist she later consulted, were always consistent about the fact that Roe had pulled down her bikini top and put his hands inside her bikini bottom and grabbed her vagina and inserted his finger.

36.     Given the active interference of Brunswick, the information provided by witnesses interviewed by GPD for the first time after August 25, 2016 could not be reliable. Nevertheless, there were facts that were not in dispute, such as:

    a.     Roe had done something terribly wrong to Plaintiff for which he felt the need to apologize;

    b.     Roe had attacked Plaintiff's brother for no reason during the same evening;

    c.     Roe was observed groping and making lewd comments to other girls at the get-together;

      d.      Plaintiff's report of the incident had never changed from her initial report to her school counselor as confirmed by that counselor;

      e.      Plaintiff was suffering emotionally from the trauma of the event in a manner consistent with victims of sexual assault, and

      f.      Plaintiff has been and still is in therapy as a result of the attack.

37.      These undisputed facts were sufficient evidence that a sexual assault had taken place.  Nonetheless, Sgt. Det. Reeves and Det. Rondini took further steps to undermine Plaintiff's complaint and impugn her credibility so that an arrest warrant would never be issued.

38.      Sgt. Det. Reeves tried to intimidate Plaintiff's parents.  He opined that nothing much had happened and that proceeding with the complaint would ruin the boy's "college chances" and expose Plaintiff and her family to liability for doing so.  He told them that they should feel lucky that he wasn't going to charge their son for assaulting Roe, even though their son only defended himself when Roe tried to choke him.  Finally, he told them it wasn't a case worth pursuing because there were no witnesses to the actual assault, despite the fact that there are rarely witnesses to any sexual assault and there was substantial objective evidence, including Roe's apology to Plaintiff just afterwards, that an assault had actually taken place.  These efforts betray the fact that Sgt. Det. Reeves tried very hard to convince Plaintiff's parents that there was no real case and that it would be futile for them to proceed with the complaint.

39.      Det. Rondini made no real effort to interview the Brunswick Witnesses, relying instead on written statements from them that were, upon information and belief, heavily influenced by Brunswick's Headmaster with the understanding that if the boys told the truth

about everything that happened at the get-together, they themselves could face severe discipline for their smuggling of alcohol, intoxication and inappropriate behavior.

40.     Finally, despite the fact that Plaintiff made her complaint to Greenwich PD on August 2, 2016, and the investigation was essentially completed by the end of November, 2016, Det. Rondini did not submit her affidavit in support of the arrest warrant until December 22, 2016 – clearly calculated to be buried in the activities of the holiday season.

41.     The impact on Plaintiff has been profound.  With Brunswick influencing the narrative about the incident, she has been subjected to harmful rumors and gossip about her own actions that night.  The trauma of this young 16-year old girl who was sexually assaulted has been exacerbated by the successful efforts by Brunswick to publicly malign her.  She continues to receive treatment for the trauma she suffered and for the failure of Greenwich to protect her.

42.     The public policy impact of this failure to prosecute is also clear.  Brunswick students have learned that Greenwich will allow their school to take any steps necessary to protect them from the consequences of their criminal behavior.   Rather than teaching the boys to be responsible young men, the lesson taught is that with influence you can do anything – even sexually assault someone – and get away with it.  On the other hand, the girls have learned that if they are sexually assaulted, it is better to remain silent than to open themselves up to malicious gossip and humiliation in a campaign to protect their attackers.

**FIRST CAUSE OF ACTION**
**RIGHT TO DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW**
**42 U.S.C. § 1983 – Fourteenth Amendment; Art. First §§ 1, 20**

43.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

44.     Defendants owed Plaintiff a duty under the due process clauses of the Fourteenth Amendment to the U.S. Constitution and Article First, §§ 1 and 20, of the Connecticut Constitution to provide Plaintiff with due process for her criminal complaint and equal protection under the law in investigating and prosecuting her complaint.

45.     Despite this well-defined duty, Defendants violated Plaintiff's rights by subordinating their investigation into her sexual assault complaint to enable the accused offender and his school to preemptively influence the investigation and manipulate the facts to thwart prosecution of the complaint.

46.     These unlawful actions were done with the specific intent to deprive Plaintiff of her constitutional right to equal protection.

47.     Upon information and belief, the acts of Defendants were intentional in failing to protect Plaintiff and that, at minimum, Defendants were deliberately indifferent to the likely consequence that an entire class of victims who are assaulted by students of Brunswick have been and will continue to be harmed by their actions.

48.     As a direct and proximate consequence of these unlawful acts, Plaintiff has suffered and continues to suffer emotional distress and is entitled to compensatory damages for her personal injury.

**SECOND CAUSE OF ACTION
INTENTIONAL OR NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS
General Statutes § 52-557n(a)(1) and (a)(2)**

49.     Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

50.     Defendants intentionally or negligently inflicted emotional distress upon Plaintiff when they subverted the mandatory policy of having Greenwich PD conduct an immediate and sole investigation of every criminal complaint by creating a policy, practice or custom in SVS of allowing Brunswick and potentially other schools to intervene in any complaint of sexual assault against their students prior to any action being taken by Greenwich PD.

51.     Defendants intentionally or negligently inflicted emotional distress upon Plaintiff when they used coercion, intimidation and manipulation of facts to interfere with Plaintiff's right to prosecute her complaint of sexual assault in the exercise of her rights secured by the Constitution of the United States, the Constitution of the State of Connecticut, and the statutory laws of the State of Connecticut.

52.     Plaintiff has suffered and continues to suffer severe emotional distress as a result of Defendants' failure to protect her.

53.     Defendants' actions are likely to subject the identifiable class of future victims of sexual assault by Brunswick students to the same deprivation of their Constitutional rights and the resulting intentional or negligent infliction of emotional distress upon those victims.

16

**INJUNCTIVE RELIEF**

54.     Plaintiff realleges and incorporates the allegations set forth in the preceding

paragraphs as though fully set forth herein.

55.     Defendants' policies and actions have resulted in harm to Plaintiff and will result

in continuing harm to future victims of sexual assault by students at Brunswick, causing

irreparable injury to Plaintiff and to an identifiable class of future plaintiffs.  Unless restrained

by this Court, Defendants will continue to implement these unlawful policies and practices.

56.     An actual controversy exists between Plaintiff and Defendants in that

Defendants have engaged in the unlawful and unconstitutional acts alleged herein and intend

to continue to do so.  Plaintiff claims that these acts are contrary to law and seeks a declaration

of her rights with regard to this controversy.

As a direct and proximate consequence of the acts of Defendants, Plaintiff has suffered

and will continue to suffer emotional distress damages.


**WHEREFORE**, Plaintiff prays as follows:

1.     For a temporary restraining order, preliminary and permanent injunction, enjoining and

restraining Defendants from engaging in the policies, practices and conduct complained of

herein;

2.     For a declaratory judgment that Defendants' policy, practices and conduct as alleged

herein violate Plaintiff's rights under the United States and Connecticut constitutions and the

laws of Connecticut;

3.      For compensatory and punitive damages in an amount to be determined according to

proof;

4.      For costs of suit and attorney fees as provided by law; and

5.      For such other relief as the Court deems just and proper.


Dated:  August 8, 2018

                                        BRAXTON HOOK LLC
                                        Attorneys for Plaintiff


                        By:    _____
                                        Meredith C. Braxton (ct17395)
                                        280 Railroad Ave., Suite 205
                                        Greenwich, CT 06830
                                        Tel. (203) 661-4610
                                        Fax (203) 661-4611

**CERTIFICATION**

This is to certify that on August 8, 2018, a copy of the foregoing Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Courts CM/ECF System.

/s/Meredith C. Braxton