```
------------------------------x
                              :
JANE DOE                      :     Civ. No. 3:18CV01322(KAD)
                              :
v.                            :
                              :
TOWN OF GREENWICH, et al.     :     September 10, 2019
                              :
------------------------------x
```

## RULING ON PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER [Doc. #47]

Defendants have issued a subpoena to Attorney Meredith C. Braxton, who is counsel of record for plaintiff in this case, to appear for a deposition. Plaintiff has moved to quash the subpoena, and for a protective order prohibiting the deposition of Attorney Braxton. See Doc. #47; see also Doc. #49 (memorandum in opposition), Doc. #51 (reply). The motion has been referred to the undersigned for ruling. The Court finds that Attorney Braxton has put her personal knowledge at issue in this case by including her own statements as attachments to the Second Amended Complaint, and thus, is subject to deposition as to her personal knowledge. Accordingly, the Court **GRANTS, in part, and DENIES, in part**, plaintiff's Motion for a Protective Order [**Doc. #47**]. Because Attorney Braxton's deposition was noticed for January 15, 2019, a date which has passed, the Court **TERMINATES, as moot**, plaintiff's motion to quash.

## I.  BACKGROUND

Plaintiff, Jane Doe,[1] brings this action against The Town of Greenwich and two employees of the Greenwich Police Department, Sergeant Detective Brent Reeves and Detective Krystie Rondini. See Doc. #1. Plaintiff alleges, inter alia, that in 2016,[2] she was sexually assaulted by Peter Roe.[3] See Doc. #46 at 7-8. Roe was, at the time, a student at Brunswick School, the all-male brother institution to plaintiff's own all-female high school, Greenwich Academy. See Doc. #20-1 at 3 n.1. Both Jane Doe and Peter Roe were minors at the time. See Docs. #46 at 5; #65 at 3.

The Second Amended Complaint [Doc. #46] (hereinafter the "SAC"), alleges that a pool party, for plaintiff and her friends, was held at the Doe residence, and that "Plaintiff's parents, Plaintiff's adult brother and two adult friends were on hand to supervise the gathering." Doc. #46 at 7. Roe attended the party and was allegedly "aggressive, lewd and belligerent[.]" Id. "Witnesses reported observing [Roe] trying to grope and otherwise inappropriately grab the girls and making

---

[1] Plaintiff has been granted leave to proceed under the pseudonym Jane Doe. See Doc. #9. The parties refer to plaintiff's family members by descriptive pseudonyms -- Mother, Father, and Brother Doe. The Court will follow this practice.

[2] The party described in the Second Amended Complaint was held "on the last day of final exams in 2016[.]" Doc. #46 at 7.

[3] Peter Roe, a potential witness in this action, has also been granted leave to proceed under a pseudonym. See Doc. #76.

suggestive and lewd comments to them." Id. Roe allegedly
assaulted Brother Doe, who then began making arrangements to
ensure Roe was taken home. See id. at 8. Two Brunswick students
then took Roe to the pool house bathroom "to try to sober him
up[.]" Id. at 8. "Plaintiff went to the pool house bathroom to
assist." Id. The other two students left the pool house when
summoned by their parents, leaving Doe alone with Roe. See id.
It was at that time that the alleged sexual assault occurred.
See id.

Plaintiff "described what had happened to her ... to a
number of her friends and some family members, although she did
not tell her parents or brother." See Doc. #46 at 9. Plaintiff
ultimately informed her school's counselor. See id. The
counselor notified the Head of School, who in turn "filed a
report with the Department of Children and Families ('DCF') as
required by law." Id. The SAC asserts "[u]pon information and
belief" that "DCF forwarded the report to the Greenwich PD." Id.
On August 2, 2016, plaintiff made a formal statement to the
Greenwich Police. See id.

At some point during the course of the investigation, the
Doe family, dissatisfied with the process, retained counsel to
act on their behalf. See id. at 10. Attorney Braxton, acting on
behalf of the Doe family, communicated with Sergeant Detective
Reeves and Greenwich Police Chief Jim Heavey regarding the

investigation, beginning in August 2016. See Doc. #46-1.
Attorney Braxton signed the operative SAC, and is now counsel of
record in this matter.[4]

Plaintiff brings causes of action pursuant to 42 U.S.C.
§1983 for violation of her Fourteenth Amendment rights to equal
protection and due process, and a state law claim for
"intentional or negligent infliction of emotional distress[.]"
See Doc. #46 at 16-20. Named as defendants are the Town of
Greenwich, Sergeant Detective Brent Reeves, and Detective
Krystie Rondini. Plaintiff contends that defendants conducted an
insufficient investigation into her complaint against Roe, and
that they improperly allowed Brunswick School to conduct an
independent investigation into her allegations. See generally
id. at 9-13. Plaintiff further asserts that the Greenwich Police
Department routinely colludes with Brunswick School in such
investigations "to prevent negative publicity from tarnishing
the reputation of Brunswick[,]" "to enable Brunswick to ...
manipulate witnesses[,]" and to "shield [Brunswick] students
from criminal prosecution[.]" Id. at 2. The alleged failures in
this investigation, plaintiff contends, were due in part to this
policy and practice of collusion.

---

[4] Plaintiff is also represented by Attorney Elizabeth I. Hook, of
Braxton Hook LLC. See Doc. #16.

Attached to the operative SAC [Doc. #46] are several
documents: (1) a letter from Attorney Braxton to Sergeant
Detective Reeves, dated August 23, 2016; (2) an email exchange
between Attorney Braxton and Chief Heavey, dated August 30,
2016, and August 25, 2016; and (3) a letter from Attorney
Braxton to Chief Heavey, dated May 23, 2018, making a FOIA
request relating to matters discussed in the email exchange, and
a May 30, 2018, letter from the Town of Greenwich responding to
that request. See Doc. #46-1.

On December 13, 2018, defendants issued a subpoena to
Attorney Braxton, requiring her attendance at a January 15,
2019, deposition. See Doc. #47-3 at 2. Defendants argue that
they should be permitted to depose Attorney Braxton, because she
has "relied upon her personal knowledge of events that she has
participated in to support the Plaintiff's claims. She has
attached, and incorporated into, the Second Amended Complaint
correspondence between herself and Defendant Reeves." Doc. #49
at 2. Defendants refer to a letter written by Attorney Braxton,
dated August 23, 2016, which purports to memorialize an August
19, 2016, conversation regarding the investigation. See Doc.
#46-1 at 2-3. Defendants assert:

> Plaintiff Counsel's August 23rd letter makes a series of
> factual assertions that are disputed; issues regarding
> the use of alcohol at the party by underage youths,
> Plaintiff's parents' vigilance in screening the party
> goers to insure no alcohol was present, Ms. Braxton's

asserton that Defendant Reeves expressed a belief
directly to her that Jane Doe's assault claim did not
merit a 'vigorous' investigation, Plaintiff Counsel's
charges of an allegedly 'unduly cozy relationship'
between GPD and Brunswick (the collusion claim) and
allegations that Reeves tried to coerce Plaintiffs into
dropping the case[.]

Doc. #49 at 2.

Defendants also argue that they need to depose Attorney
Braxton regarding allegations of "collusion" and "mutual
strategy," as reported by Greenwich Time shortly after this case
was filed. Doc. #49 at 3; see also Doc. #49-1 at 4-17.
Defendants seek to "confirm that the newspaper accurately
reported what [Attorney Braxton] said and, if so, [] to find out
what she meant by a 'mutual strategy' and what facts support
that claim." Doc. #49 at 4. Plaintiff does not dispute that her
allegations in the SAC rely, in part, on Attorney Braxton's
personal knowledge, but argues that such reliance is
insufficient to justify defendants' request to depose Attorney
Braxton. See Docs. #47-4; #51 at 2.

## II.  **LEGAL STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets
forth the scope and limitations of permissible discovery:

Parties may obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense
and proportional to the needs of the case, considering
the importance of the issues at stake in the action, the
amount in controversy, the parties' relative access to
relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and

6

> whether the burden or expense of the proposed discovery
> outweighs its likely benefit. Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009). The burden here, therefore, is on plaintiff to establish a basis for denying the discovery sought.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Where the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause." Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

Additional considerations come into play when evaluating a protective order for the deposition of opposing counsel. While "depositions of opposing counsel are disfavored," United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991), "the

disfavor with which the practice of seeking discovery from adversary counsel is regarded is not a talisman for the resolution of all controversies of this nature." <u>In re Subpoena Issued to Dennis Friedman</u>, 350 F.3d 65, 71 (2d Cir. 2003) (citation omitted) (hereinafter "<u>Friedman</u>").

> [T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered. Several district courts in this Circuit have properly applied a flexible approach to the issue of lawyer depositions.

<u>Id.</u> at 72.

## III. <u>ANALYSIS</u>

Defendants seek to depose Attorney Braxton regarding: (1) the August 19, 2016, conversation between Attorney Braxton and Reeves, that is memorialized and characterized in the August 23, 2016, letter attached to the SAC, and (2) Attorney Braxton's statements to Greenwich Time, a local newspaper. The Court

applies the Friedman factors in evaluating defendants' request to depose Attorney Braxton as to each of these topics.

## A. August 19, 2016, Conversation

As to content of the August 19, 2016, telephone call, the first Friedman factor, need to depose, weighs in favor of defendants. Reeves' statements regarding the handling of the investigation relate to a central issue in this case. Plaintiff does not dispute this; she relies on Attorney Braxton's representations in the August 23, 2016, letter in the operative SAC. Plaintiff concedes that "Attorney Braxton's letter is relevant[.]" Doc. #51 at 2. Significant portions of the letter describe representations allegedly made by Reeves. See Doc. #46-1 at 2-3. Indeed, the letter begins: "I write regarding the investigation as I was very concerned about certain of your statements during our telephone conversation on Friday, August 19, 2016." Id. at 2.

The letter asserts that Reeves "apparent[ly] assum[ed] that this matter did not merit a vigorous investigation[,]" because it "amount[ed] to nothing more than a 'he said/she said[,]'" despite the fact that Roe had, allegedly "refused to make a statement and retained a lawyer, which begs the question of what the 'he said' could possibly be." Id. at 3. The letter goes on to state:

I was also surprised that, rather than being concerned about adequately investigating these facts, your expressed concern was about the effect [Jane Doe's] allegations may have on [Roe], his ability to stay at Brunswick, and his college prospects. You basically advised me that I should tell my clients to be quiet so as not to expose themselves to potential liability on that count.

Id.

The letter makes a variety of factual allegations, expressly contradicting assertions allegedly made by Reeves during the conversation. Finally, the letter alleges that Reeves was "aware that Brunswick's headmaster [was] conducting his own 'investigation,' and potentially influencing witnesses in doing so, yet [Reeves] declined to ask Brunswick to cease these activities[.]" Id. The letter does not purport to quote Reeves' statements verbatim; rather, the letter summarizes Attorney Braxton's recollection and impressions of the history and status of the investigation, as she understood it after the conversation on August 19, 2016.

Plaintiff argues that defendants should not be permitted to depose Attorney Braxton because the information sought can be obtained from other sources: Reeves and Father Doe. See Doc. #51 at 1-2. No party has alleged that Father Doe heard, or participated in, the August 19, 2016, conversation, but plaintiff asserts: "Defendant Reeves had the same discussion with Jane Doe's father earlier." Id. at 2. The Court notes that

the two discussions allegedly conducted could not have been completely identical, so the fact that Father Doe allegedly discussed similar issues with Reeves on another date does not render the discussion with Attorney Braxton meaningless. Plaintiff chose to rely, in the SAC, on statements made by and to Attorney Braxton, not on statements made by or to Father Doe. Indeed, Father Doe is mentioned only once in the SAC, whereas plaintiff's attorney is mentioned repeatedly. See Doc. #46 at 3 (mentioning "plaintiff's father"); Doc. #46 at 3, 10, 12, 17 (mentioning plaintiff's attorney); see also Doc. #47-4 (plaintiff's submission identifying specific allegations in the SAC that rely on Attorney Braxton's knowledge).

The Court thus finds that Father Doe cannot "testify as to every fact and opinion contained in Attorney Braxton's letter to Defendant Reeves." Doc. #51 at 2. Father Doe may well be able to testify to substantially similar comments made by Reeves, and plaintiff may be able to establish the necessary elements of her case without reliance on Attorney Braxton's testimony. However, only Attorney Braxton and Reeves have firsthand knowledge of the August 19, 2016, conversation, a conversation on which plaintiff relies to support the allegations of her SAC.

It is true that defendants have access to information regarding the conversation itself through Reeves, lessening the need to depose Attorney Braxton. Defendants, however, contend

that Attorney Braxton's recollections, as represented in the
August 23, 2016, letter, are disputed. See Doc. #49 at 2
("Plaintiff Counsel's August 23rd letter makes a series of
factual assertions that are disputed[.]"); id. at 3 (sic)
(Matters discussed in the August 23, 2016, letter and "included
in the factual allegations of the Second Amended Complaint []
are all subject to vigorous dispute by the Defendants'."); id.
at 3 n.1 ("In particular, of course, there is the likelihood of
conflict between Ms. Braxton and Defendant Reeves about what
actual words passed between them on August 19th regarding these
matters."). The language of the letter itself makes plain that a
great deal is indeed disputed, and the existence of such
disputes weighs in favor of permitting the deposition. See Chord
Assocs. LLC v. Protech 2003-D, LLC, No. 2:07CV5138(JFB)(AKT),
2013 WL 12366876, at *5 (E.D.N.Y. Oct. 18, 2013).

The Court notes that the fact that a defendant "was a party
to the verbal communications sought" can, in certain
circumstances, weigh against permitting the deposition of
counsel. Dominion Res. Servs., Inc. v. Alstom Power, Inc., No.
3:16CV544(JCH), 2017 WL 3228120, at *4 (D. Conn. July 31, 2017).
However, here, the parties to the verbal communications disagree
about the content of those communications. Furthermore, the
conversation itself in this case forms part of the basis for
plaintiff's claim. Plaintiff contends that the defendants made

an inadequate investigation, and that the inadequacy of the investigation was motivated in part by collusion with Brunswick School. The August 19, 2016, conversation, and the events surrounding it, are relied upon by plaintiff not only to provide evidence of that claim, but as an actual element of defendants' allegedly illegal conduct. In particular, plaintiff contends that it was in the August 19, 2016, conversation that counsel requested that Reeves intervene to end Brunswick School's independent investigation into the incident, and that Reeves' refusal to do so directly caused harm to plaintiff.

Given plaintiff's reliance on the August 19, 2016, conversation, and her incorporation of the August 23, 2016, letter into the SAC, the conversation is highly relevant. Many courts within the Second Circuit have permitted counsel to be deposed or otherwise questioned where counsel participated in pre-litigation meetings that were "highly relevant to plaintiffs' claim[.]" U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., No. 1:97CV06124(JGK)(THK), 2000 WL 1253262, at *3 (S.D.N.Y. Sept. 1, 2000) (collecting cases). Such cases "properly appl[y] a flexible approach to the issue of lawyer depositions." Friedman, 350 F.3d at 72.

The Court thus concludes that the "need to depose the lawyer" factor of Friedman weighs strongly in favor of permitting the deposition of Attorney Braxton.

13

The Court turns next to "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation[.]" <u>Friedman</u>, 350 F.3d at 72.

"The rationale for limiting depositions of attorneys ... is that depositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship and on the litigation of the case." <u>U.S. Fid. & Guar. Co.</u>, 2000 WL 1253262, at *2 (citations omitted). As Attorney Braxton is lead counsel in the case at bar, this factor weighs against allowing her to be deposed.

However, the disruptive effect of permitting the deposition of counsel is minimized where "the lawyer's testimony is limited to what [s]he was expressly authorized by the client to [] disclose." <u>Calvin Klein Trademark Tr. v. Wachner</u>, 124 F. Supp. 2d 207, 211 (S.D.N.Y. 2000). Plaintiff contends that Attorney Braxton's statements in the August 19, 2016, conversation were "her communication to Reeves of her clients' opinions and beliefs." Doc. #51 at 2. As noted, Attorney Braxton's letter purporting to summarize that conversation has been filed on the public docket and incorporated into the SAC. The Court thus presumes that all of counsel's statements in that conversation were expressly authorized by plaintiff. Accordingly, allowing Attorney Braxton to be questioned regarding the content of the

August 19, 2016, conversation presents only a limited risk of disruption to the attorney-client relationship. This factor thus weighs only weakly against permitting deposition.

The Court next considers the third _Friedman_ factor, "the risk of encountering privilege and work-product issues[.]" _Friedman_, 350 F.3d at 72. When defendants first notified plaintiff's counsel that they intended to notice Attorney Braxton's deposition, plaintiff's counsel requested "a list of the topics and issues [defendants] intend to cover" in that deposition. Doc. #47-5 at 3. Defense counsel responded: "I will question [Attorney] Braxton, as I would any other witness[.] ... I think the various papers Plaintiff has filed with the court provide a good description of the starting point for her deposition. Of course, I will not limit myself to just those points[.]" _Id._ at 2.

Defense counsel has asserted: "I will not question her about matters that would be subject to the attorney client privilege[.]" _Id._ However, "given the topical areas defendant has identified for the deposition, the risk that privilege and attorney work-product issues might arise were plaintiff counsel's deposition to go forward is not negligible." _Dominion Res. Servs., Inc._, 2017 WL 3228120, at *5. Defendants seek Attorney "Braxton's source of [] information" regarding allegations of collusion; "what she bases her accusation on."

Doc. #49 at 3 n.1; see also id. at 6 ("There is no other source for informing Defendants here, for example, what Ms. Braxton meant[,]" when she discussed the allegation of collusion.). Defendants further assert that they are "entitled to know where [Attorney] Braxton's understanding" regarding the "series of factual assertions" raised in the letter come from. Id. at 3 n.1; see also id. at 7 (Attorney Braxton "should not be allowed to prevent the Defendants from exploring the basis for her factual assertions[.]").

There is risk here. But, defendants seek information regarding verbal communications by Attorney Braxton to Reeves -- a third party. "Once a privileged communication has been disclosed purposely to a third party, the attorney-client privilege is waived[.]" United States v. United Techs. Corp., 979 F. Supp. 108, 111 (D. Conn. 1997). "Accordingly, the information would not be protected by the attorney-client privilege, as any privilege would be waived by the contemporaneous disclosure to" Reeves. Dominion Res. Servs., Inc., 2017 WL 3228120, at *5. Thus, the content of the conversation itself is not privileged. However, defendants seek to go beyond the content of the conversation, raising concerns that they will encounter issues covered by the attorney-client privilege.

For example, defendants have indicated an intention to depose Attorney Braxton regarding "issues regarding the use of alcohol at the party by underage youths, [and] Plaintiff's parents' vigilance in screening the party goers to insure no alcohol was present[,]" referenced in the August 23, 2016, letter. Doc. #49 at 2. No party alleges that Attorney Braxton has any firsthand knowledge of underage alcohol consumption at the party, nor Mother or Father Doe's diligence in preventing the same. Yet, Attorney Braxton made factual assertions in her letter -- which she then elected to incorporate into the SAC -- regarding these matters.

> First, you stated that the party at the [Doe] residence
> was a "drinking party." This could not be further from
> the truth. Many parents attended the party and neither
> they nor the students were offered or consumed alcohol.
> Further, the [Does] were vigilant in screening the
> students who came to the party, speaking to each as they
> arrived, and made sure there was supervision in the pool
> area. If [anyone] consumed alcohol at the party, it must
> have been concealed and consumed in secret. When you
> interview other people who attended, I am sure they will
> corroborate this.

Doc. #46-1 at 2. These statements were not made in legal argument. They were presented as facts and offered in support of the SAC. For whatever reason, counsel elected to attach the August 23, 2019, letter to the SAC and rely upon it as evidence in this matter. That letter makes direct factual allegations against defendants. The letter does not explain the source or basis for these allegations. If defendants are not permitted to

17

inquire as to the basis of these allegations, they are placed in an untenable position.

Questioning on this topic does create a risk of disclosure of privileged information, because it is possible that Attorney Braxton's allegations in the letter are based on communications made to her by her clients. It is also possible that Attorney Braxton has other bases for these allegations. By choosing to present these factual claims as allegations by Attorney Braxton, rather than by plaintiff herself, plaintiff has placed Attorney Braxton's own knowledge at issue. Furthermore, to the extent the statements in the letter are simply restatements of plaintiff's "opinions and beliefs," as plaintiff asserts, Doc. #51 at 2, by sharing those opinions and beliefs with a third party -- particularly an adverse third party -- plaintiff has waived the privilege as to those matters. "Once a privileged communication has been disclosed purposely to a third party, the attorney-client privilege is waived, unless the disclosed material falls under the common interest rule." Utd. Techs. Corp., 979 F. Supp. at 111. Accordingly, while the deposition of Attorney Braxton does create a risk that privilege issues will be encountered, plaintiff has created a situation in which that deposition must proceed.

Finally, the Court considers "the extent of discovery already conducted." Friedman, 350 F.3d at 72. This factor weighs

against allowing a deposition of Attorney Braxton to proceed. Defendants concede that, when their response was filed, it was "fair to say that there" had been "little" discovery conducted. Doc. #49 at 7. Plaintiff contends: "Defendants have not obtained any form of discovery -- written or deposition -- before [Attorney Braxton's] deposition was scheduled to take place." Doc. #47-1 at 7. In plaintiff's reply, she notes that Father Doe's deposition was scheduled for January 26, 2019, and, although Father Doe appeared and rescheduled business activities for the day, defendants chose not to depose him at that time, but to reschedule. See Doc. #51 at 2 n.2.

More recent filings indicate that substantial discovery remains outstanding, including that Reeves has not yet been deposed. See Docs. #84 n.4; #84-19 at 1. The potential discrepancies between Attorney Braxton's and Reeves' recollections of the August 19, 2016, meeting are central to defendants' opposition to the protective order. However, defendants have provided no account of Reeves' recollection of the meeting to support the existence of any actual contradiction between his recollection and the recollections described in Attorney Braxton's August 23, 2016, letter. Defendants' failure to narrow or substantiate specific areas of dispute between the parties weighs against permitting a deposition of Attorney Braxton.

On balance, the Court finds that because plaintiff has placed Attorney Braxton's own knowledge at issue by attaching her communications to the SAC, and by relying upon factual allegations made therein to support her claims, deposition of Attorney Braxton on limited topics is appropriate. The Court has considered whether seeking information by written questions would be sufficient, and finds that it would not. As defendants argue: "[T]he Friedman panel listed the very reasons why depositions represent a discovery technique that is superior to the other methods established by the Federal Rules. No better explanation of why Ms. Braxton's deposition is warranted, as opposed to propounding written interrogatories, can be found than there." Doc. #49 at 5 (citation and footnote omitted). The portion of Friedman relied on by defendants, 350 F.3d at 69 n.2, explains the practical benefits of depositions as compared to interrogatories, and "'several reasons why oral depositions should not be routinely replaced by written questions,' including the need for follow-up, observation of a prospective witness's demeanor, and avoidance of receiving pre-prepared answers so carefully tailored that they are likely to generate additional discovery disputes[.]" Friedman, 350 F.3d at 69 n.2. Additionally, in an apparent effort to mitigate against the risk of a privileged disclosure, "Defense Counsel has suggested taking the deposition in a controlled environment[, such as a

courthouse]; a suggestion that was rejected out-of-hand by
Plaintiff." Doc. #49 at 6. While the Court agrees with plaintiff
that "the location of the deposition" is not the concern, the
Court presumes that defendants' suggestion was designed to
reassure plaintiff that the Court would be available to address
any difficult questions of privilege that might arise during the
deposition. Doc. #51 at 4. The Court is confident that all
parties can conduct a deposition in such a manner as to allow
defendants the inquiry to which they are entitled, without
infringing on any privilege that has not been waived.

**B. Attorney Braxton's Statements to Greenwich Time**

Defendants also seek to depose Attorney Braxton regarding
statements reported by Greenwich Time. Defendants state: "Ms.
Braxton alleged 'collusion', but admitted to the press that she
had no facts to prove the charge beyond, 'what she said were
indications of a mutual strategy to ensure charges weren't
filed.'" Doc. #49 at 3.[5] Defendants contend that Attorney

---

[5] The paragraph, as printed in the September 2, 2018, article,
states, in fuller part, that Attorney Braxton "also asserts an
'inappropriate back channel,' between Greenwich police and
former department officers now employed in private security at
Brunswick, worked to 'prevent negative publicity from tarnishing
the reputation of Brunswick.' The lawyer had no specific
information proving collusion, beyond what she said were
indications of a mutual strategy to ensure charges weren't
filed." Doc. #49-1 at 6, 10 (emphasis added).

Braxton's "assertion of a substantive fact and her apparent admission of a paucity of actual support warrant close questioning by the Defense. First, to confirm that the newspaper accurately reported what she said and, if so, second, to find out what she meant by a 'mutual strategy' and what facts support that claim." Doc. #49 at 4.

As to this request, the Court's analysis begins and ends with the question of relevance. In speaking to Greenwich Time, Attorney Braxton was acting as an advocate, rather than a fact witness. Attorney Braxton's failure, according to the newspaper report, to provide any factual support for her claims, is not in itself relevant to this litigation. Even if the Court were to accept defendants' interpretation of the article -- that Attorney Braxton admitted "a paucity of actual support" for the legal conclusions she would need to establish for her client to succeed in this case,[6] Doc. #49 at 4, such an admission would not tend make any particular fact at issue in this case more or less probable. Attorney Braxton's statements to the press have no bearing on the substance of this case, in sharp contrast to Attorney Braxton's conversation with Reeves. Accordingly, the

---

[6] As plaintiff notes: "Attorney Braxton was not required to provide any evidentiary support for her claims to the newspaper[.]" Doc. #51 at 3. And notably, the newspaper article was not incorporated by attachment into the SAC.

Court will not permit the deposition of Attorney Braxton to include questions on this topic.

### C.    "Necessary Witness" Issue Not Before the Court

The Court notes that both parties have raised the issue of whether Attorney Braxton might be a "necessary witness" within the meaning of the Rules of Professional Conduct if she is subject to deposition. See Doc. #47-1 at 1, 4-7; Doc. #49 at 4. The question of whether Attorney Braxton is a "necessary witness" within the meaning of the Rules of Professional Conduct is not before the Court at this time, and the Court offers no opinion on that question.

## IV.    CONCLUSION

For the reasons set forth herein, the Court **GRANTS, in part, and DENIES, in part,** plaintiff's Motion for a Protective Order [**Doc. #47**]. Plaintiff's Motion for a Protective Order is **GRANTED** as to discovery regarding her statements to Greenwich Time. The motion is **DENIED** as to discovery regarding the August 19, 2016, conversation, and the content of the communications from Attorney Braxton attached to the SAC. Because Attorney Braxton's deposition was noticed for January 15, 2019, a date which has passed, the Court **TERMINATES, as moot,** plaintiff's motion to quash.

On or before **September 17, 2019,** defendants shall file on the docket a notice describing the topics as to which they

intend to depose Attorney Braxton, in compliance with this Ruling. Defendants shall confirm that they will not inquire regarding any privileged communications, other than those as to which the Court has determined the privilege was waived.

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. <u>See</u> 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 10th day of September, 2019.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
