## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE | ) | 3:18-CV-01322 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF GREENWICH, et al, | ) | September 30, 2019 |
| Defendant. | ) | |

## MEMORANDUM OF DECISION
## ON THE DEFENDANTS' MOTION TO DISMISS

Kari A. Dooley, United States District Judge

## I.    INTRODUCTION

This case arises out of an alleged sexual assault on the then minor Plaintiff, Jane Doe (the "Plaintiff" or "Ms. Doe"), that took place at her home while she was still attending high school at Greenwich Academy ("GA"). The alleged assailant, Peter Roe ("Mr. Roe"), also a minor at the time, attended Brunswick School ("Brunswick"). At the Complaint's core is a claim of historical collusion between the Town of Greenwich Police Department ("Greenwich PD") and Brunswick to sweep allegations by GA students of sexual assault against Brunswick students under the rug. The Plaintiff alleges that the Greenwich PD intentionally fails to conduct a proper investigation of such allegations and improperly shares information with Brunswick in a concerted effort to thwart any real prosecution of the accused Brunswick student. As a result, the Plaintiff alleges, Brunswick students are emboldened to commit sexual assaults on GA students with impunity and are allowed to engage in a campaign of harassment and bullying when a GA student makes a complaint of sexual assault. The Plaintiff brings this action against the Town of Greenwich (the "Town"), and against Sergeant Detective Reeves and Detective Rondini (collectively, the "Officers") of the Special Victims Section ("SVS") of the Greenwich PD, in their individual and

official capacities. The Officers were responsible for the purportedly sham investigation into the Plaintiff's alleged assault.

Count One sounds in Fourteenth Amendment Equal Protection and Substantive Due Process claims and Count Two alleges Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress. Before the Court is the Defendants' Motion to Dismiss (ECF No. 20), to which the Plaintiff has objected. For the following reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

## II.     PROCEDURAL HISTORY

The Defendants filed their Motion to Dismiss on October 4, 2018 (ECF No. 20). On November 16, 2018, the Plaintiff filed a Motion to Amend the Complaint (ECF No. 33), attaching the proposed amendment to her memorandum in support of the motion. Before the Court ruled on her Motion to Amend, the Plaintiff filed a Memorandum in Opposition to the Defendant's Motion to Dismiss, relying therein on the new allegations contained in the Proposed Amended Complaint. In response, the Defendant filed a Motion to Disregard or Strike the Plaintiff's Opposition (ECF No. 38). Following a telephonic hearing on January 7, 2019, the Court granted the Plaintiff's Motion to Amend and gave the Defendants additional time within which to file a reply to Plaintiff's opposition to the motion to dismiss, addressing the added allegations in the Second Amended Complaint. The Defendants filed their reply on January 28, 2019 (ECF No. 50). On May 8, 2019, the Court heard oral argument on the Motion to Dismiss, and thereafter took the motion under advisement.

## III.    STANDARD OF REVIEW

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the nonmovant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

## IV.    FACTUAL ALLEGATIONS

As indicated above, for purposes of this motion, the Court accepts the factual allegations in the Second Amended Complaint as true and they are as follows:

Brunswick is an elite private boys' college-preparatory day school in Greenwich. Am. Compl. ¶ 2. Seven former Town of Greenwich police officers, at least four of whom are former detectives, are now employed in Brunswick's Security Department. *Id.* These former police officers keep in close contact with the Greenwich PD and have set up an inappropriate "back channel" with Greenwich PD to give Brunswick notice and information about criminal complaints against Brunswick students, so that Brunswick can take immediate steps to control the situation and to prevent negative publicity from tarnishing its reputation in the community. *Id.* For several years, SVS has shared confidential information with Brunswick in order to allow the school to coordinate witness reports and put into place protective measures to shield its

students from criminal prosecution and to protect itself against unfavorable publicity. *Id.* at ¶¶ 3, 4.

The Plaintiff reported that she was sexually assaulted to SVS by Brunswick student, Mr. Roe, and that the assault had occurred at a pool party at her home. *Id.* at ¶ 22, 28. Greenwich PD followed its policy, practice or custom and allowed Brunswick to take the lead in interviewing witnesses. *Id.* at ¶ 5. SVS allowed Brunswick's headmaster to interview several witnesses ("Brunswick Witnesses") and to use this information to coordinate Mr. Roe's defense and tamper with the Brunswick Witnesses before they spoke to SVS. *Id.* at ¶¶ 6-7. The result was a sham investigation by SVS that was designed to, and did, convince the State's Attorney not to file any charges against Mr. Roe or any other Brunswick students. *Id.* at ¶ 7.

The Officers made no attempt to obtain Mr. Roe's text messages or social media postings, a standard practice when investigating any complaint, especially involving teenagers whose prime mode of communication is electronic. *Id.* at ¶ 33. Rather than conducting actual interviews with the Brunswick Witnesses, Det. Rondini merely asked them to submit their own written statements or write down what they recalled. *Id.* Det. Rondini supported her arrest warrant application, which was submitted to the State's Attorney, with a written statement made by a GA student who did not attend the pool gathering and who had been disciplined by GA for bullying the Plaintiff during the police investigation by spreading false rumors that Plaintiff had fabricated the incident. Sgt. Det. Reeves tried to intimidate the Plaintiff's parents by telling them that nothing much had happened at the party, that proceeding with the complaint would ruin Mr. Roe's "college chances" and would expose the Plaintiff and her family to liability for doing so, and that it wasn't a case worth pursuing because there were no witnesses to the alleged assault. *Id.* at ¶ 38.

Det. Rondini did not submit her affidavit in support of the arrest warrant until December 22, 2016, which was clearly calculated to be buried in the activities of the holiday season. *Id.* at ¶ 40.

At minimum, the Defendants were deliberately indifferent to the likely consequence that their years-long practice of collusion with Brunswick emboldened Brunswick students to freely engage in sexual assaults without concern about criminal liability, foreseeably resulting in harm to the Plaintiff and to an entire class of female victims who have been and will be assaulted by Brunswick students. *Id.* at ¶ 47. In this way, Greenwich PD has been giving preferential treatment to the male students of Brunswick and much less favorable treatment to the female students of GA and other schools who allege they have been assaulted by Brunswick students. *Id.* at ¶ 42.

The Plaintiff has been damaged by the collusion between the Defendants and Brunswick by being publicly maligned and humiliated, and subjected to defamatory statements, all as part of Brunswick's effort to discredit her to preserve its own reputation. Id. at ¶ 47. The emotional distress has been so severe that it has significantly affected her physical health, emotional well-being, and academic performance. *Id.* at ¶ 56.

Given the Plaintiff's special vulnerability, the Officers, trained to deal with special victims such as teenagers, knew or should have known that the campaign to malign would result in extreme emotional distress when experienced by a teenager in high school. *Id.* at ¶ 53.

V.     DISCUSSION

    **A.  Equal Protection**

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a

direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To analyze the plaintiff's equal protection claim, the Court "must decide, first, whether [the challenged state conduct] operates to the disadvantage of some suspect class or impinges a fundamental right explicitly or implicitly protected by the Constitution, thereby requiring strict scrutiny . . . If not, the scheme must still be examined to determine whether it rationally furthers some legitimate, articulated state purpose and therefore does not constitute an invidious discrimination . . ." *Fedor v. Kudrak*, 421 F. Supp. 2d 473, 478 (D. Conn. 2006) (quoting *San Antonio School District v. Rodriguez*, 411 U.S. 1, 17 (1973)).

Although the Plaintiff purports to bring an equal protection claim based upon her suspect classification, to wit, gender, such a claim does not withstand scrutiny. To establish such a claim, the plaintiff must show that the defendant discriminated against her based on an impermissible classification. *Washington v. Davis,* 426 U.S. 229, 244-45 (1976) (holding that only purposeful discrimination violates equal protection clause). A plaintiff must demonstrate that the action had a discriminatory effect and that it was motivated by a discriminatory purpose. *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979). To meet this burden, the plaintiff must establish that she, "compared with others similarly situated, was selectively treated . . . and . . . that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Schnabel v. Tyler,* 230 Conn. 735, 762 (1994) (internal quotations omitted).

On this issue, the Plaintiff argues that the Defendants treated her, the female victim, less favorably than they treated her male assailant, in how they responded to her criminal complaint. This claim does not implicate the invidious discrimination requirement of the Equal Protection

claim because, by definition, the female and male are not similarly situated – one is the accuser and one is the accused. The Plaintiff conceded as much during oral argument. Tr. 7, ECF No. 81. Indeed, the entire thrust of the Plaintiff's case is that female victims of sexual assault are treated disparately, not based upon their gender, but depending upon who they accuse. That is, female victims who accuse someone other than a Brunswick student receive a full and fair investigation into their allegations while a female victim, such as the Plaintiff, who accused a Brunswick student, receives a sham investigation designed to protect the perpetrator. Accordingly, when pressed at oral argument to articulate the theory under which the Equal Protection claim derives from invidious discrimination based upon a suspect classification, the Plaintiff was unable to articulate any such claim. She posited, for the first time, that in addition to Jane Doe, SVS disparately treats *all* women who are victims of sexual assault, as compared to male victims of sexual assault. Tr. 16-17. However, the Plaintiff was unable to identify a comparator, or any other women who had made a sexual assault complaint with SVS, nor can any such theory of liability be gleaned from the allegations which are actually contained in the Complaint. Thus, to the extent the Plaintiff asserts a claim under the Equal Protection Clause based upon invidious discrimination, such a claim is dismissed pursuant to Rule 12(b)(6).

That does not end the inquiry, however. The Plaintiff also asserts that the Defendant's policy of treating victims who accuse Brunswick students of sexual assault differently than victims who accuse someone other than a Brunswick student of sexual assault violates the Equal Protection Clause under *Myers v. County of Orange,* 157 F.3d 66 (2d Cir. 1998).

When a statute, policy or other state action does not "burden a fundamental right or involve a suspect or quasi-suspect classification such as race, sex, alienage, or national origin" it may still violate the Equal Protection Clause. *See, e.g. Myers*, 157 F.3d at 75. Under such circumstances,

the state conduct "is presumed to be valid and will be sustained" upon a showing that it is "rationally related to a legitimate state interest." *Id.* (quoting *Cleburne*, 473 U.S. at 440). Where distinctions drawn by the state do not have a rational basis, they will not be sustained. *Myers*, 157 F.3d at 75 (collecting cases).

In *Myers*, the plaintiff challenged a district attorney policy which acted as a blanket proscription against accepting or investigating criminal cross complaints. There, the police responded to a complaint of an assault purportedly committed by the plaintiff. The plaintiff, when interviewed, denied the assault and claimed that he himself was the victim of an assault by the Complainant. The police did not investigate his claim, accept his complaint or pursue his allegations, and instead, pursuant to the policy, prosecuted the plaintiff on the strength of the first complaint. The plaintiff was ultimately exonerated and brought an equal protection claim challenging the policy by which he was not allowed to file a cross-complaint against his accuser.

The Second Circuit held that the policy in question violated the cross-complainant's constitutional right to equal protection under the law. The court stated that "a policy by a police department or district attorney's . . . office favoring an initial complainant over a later one without giving primary regard to the particular facts involved in the case violates the Equal Protection Clause of the Fourteenth Amendment." *Id*. at 69. The court further found that the policy "create[d] an unnecessary risk that innocent persons will be prosecuted and possibly convicted," and concluded that the policy "bears no rational relationship to the legitimate governmental interest in impartial law enforcement." *Id*. at 75-76.

Here, the Plaintiff asserts that Greenwich PD's policy of colluding with Brunswick to sweep complaints of sexual assault by Brunswick students under the rug is precisely the type of

policy struck down in *Myers*.[1]  She asserts that the policy of protecting Brunswick students at the expense of their victims undermines the ability of the police department to fully investigate and the state's attorney to obtain all available evidence. She asserts that that the policy "deprived her of the right to be treated the same as other victims of criminal assaults in the police investigation of her complaint", and that it serves no legitimate governmental interest.

Although *Myers* held that a policy precluding the investigation of certain claims may not withstand even rational basis review, *Myers* does not stand for the proposition that "all complaints be treated the same, whatever the context", nor has the Second Circuit ever issued such a decree. *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d 581, 589 (E.D.N.Y. 2007) (quoting *Fedor* 421 F. Supp. 2d at 480). And of course, a "private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person." *McCrary*, 493 F. Supp. 2d at 588; *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

Where courts have found no Equal Protection violation under *Myers* they generally did so because the plaintiff failed to allege an explicit oral or written policy. *See Moustakis v. New York City Police Dep't*, 181 F.3d 83 (2d Cir. 1999) (holding that the defendants refusal to accept cross-complaint was not the result of policy, but rather was based upon the totality of the circumstances); *Rennols v. City of New York*, No. 00-CV-6692 (NGG), 2003 WL 22427752, at \*5 (E.D.N.Y. Oct. 23, 2003), *aff'd*, 124 F. App'x 66 (2d Cir. 2005) (holding that the equal protection claim was defeated where plaintiff did not allege the existence of any express policy prohibiting the investigation of cross complaints); *Cantave v. New York City Police Officers*, No. 09-CV -2226 CBA LB, 2011 WL 1239895, at \*6 (E.D.N.Y. Mar. 28, 2011) (same); *Maldonado v. City of New York*, No. 12-CV-4304 RRM JMA, 2012 WL 3839615, at \*2–3 (E.D.N.Y. Sept. 5, 2012) (same).

---

[1] It is worth noting at this juncture that unlike the situation in *Myers,* the Greenwich PD denies that any such policy exists.

The Plaintiff here, however, does indeed allege the existence of such a policy, albeit an informal one, in the case of complaints against Brunswick students.

The question then is whether the allegations in support of this Equal Protection theory are sufficient under the standards set forth above. The Defendants argue that that the allegations of collusion between the Defendants and Brunswick to shield Brunswick students from investigation and prosecution are merely conclusory. Drawing all reasonable inferences in favor of the Plaintiff and accepting her factual allegations as true, as the Court must do at this stage of the litigation, the Plaintiff has sufficiently alleged a plausible Equal Protection claim. *See, e.g., McCrary*, 493 F. Supp. 2d at 589. The motion to dismiss the Plaintiff's Equal Protection claim of the type recognized in *Myers* is denied.[2]

### B. Substantive Due Process

The nature of the Plaintiff's substantive due process claim is a moving target. Although not apparent from the face of the Complaint, she does *not* claim that the Defendants violated her rights by failing to protect her from the alleged assault by Mr. Roe.[3] Rather, she asserts that her substantive due process rights were violated when the Defendants failed to "apply the same level of investigative scrutiny to her complaint as they do to complaints by other victims", and failed to "conduct an adequate investigation into her complaint designed to gather all available evidence so

---

[2] The Officers also raised the defense of qualified immunity. "Usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted", although this is not always the case. *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004). At this stage of the litigation, without the benefit of discovery and the facts to be gleaned therefrom, the Court declines to decide whether the Defendants are entitled to qualified immunity. *See Velez v. Levy*, 401 F.3d 75, 99 (2d Cir. 2005).

[3] The Complaint alleges that the collusive nature of the relationship between the Greenwich PD and Brunswick has emboldened Brunswick students to commit sexual assault, such as the assault perpetrated against Ms. Doe. However, when pressed at oral argument, counsel confirmed that the substantive due process claim is premised upon the Defendants' conduct after the assault which, she claims, resulted in further injury to her. She does not seek to hold the Defendants liable for the assault by Mr. Roe, and indeed, at a more recent hearing regarding discovery in this case, it was clear that whether the assault occurred is not something the Plaintiff must prove in order to prevail in this case.

that decisions about arrest and prosecution could be made on a complete and accurate evidentiary record." Pl. Opp. 16.[4] She further asserts that the Defendants' collusion with Brunswick resulted in a campaign of bullying and harassment by Brunswick, Brunswick students, and her own classmates. It is this conduct—the harassment and bullying—for which she seeks to hold the Defendants' liable under her substantive due process claim.

The Substantive Due Process Clause of the Fourteenth Amendment has been interpreted to include an "individual's right to bodily integrity." *Chambers v. North Rockland Central School Dist.*, 815 F. Supp. 2d 753, 762 (S.D.N.Y. 2011) (quoting *Lombardi v. Whitman*, 485 F.3d 73, 78–79 (2d Cir. 2007)). That right, however, is intended to prevent the government "from abusing [its] power, or employing it as an instrument of oppression." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)). It does not speak to a general right to protection from private harm. Thus, the Supreme Court has held clearly that nothing in the Constitution requires the State "to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney*, 489 U.S. at 195. This is subject to two exceptions: (1) the victim of private conduct was in a "special relationship," with the State or (2) the state or its agents "in some way assisted in creating or increasing the danger to the victim." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). The Plaintiff relies upon the latter exception.

---

[4] In this regard, the purported due process claim is indistinguishable from the equal protection claim, which appears in the same count. Additionally, the Plaintiff does not brief or analyze the issue of whether the due process clause recognizes a constitutional right to an "adequate investigation." Indeed, the Court is aware of no such authority and is, in fact, aware of authority undermining any such claim. *See McCrary*, 493 F. Supp. 2d at 588 ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person."); *see also Linda R.S. v. Richard D.* 410 U.S. 614, 619 (1973) (holding that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another). In any event, the Plaintiff made clear at oral argument that the substantive due process claim derives from the harm she suffered because of the alleged campaign of harassment, bullying and defamation by third party private actors.

Under the "state-created danger" exception outlined in *DeShaney*, a plaintiff seeking to state such a claim must show more than the State's general knowledge of a danger; he must show that the State assisted in "creating or increasing the danger that the victim faced at the hands of a third party." *Id*. at 157. The requirement of showing that the State has taken an active role in the deprivation of a right stems from the acknowledgment that due process is, as noted above, defined as a limitation on the acts of the State, and not as a guarantee of state action. *See Lombardi*, 485 F.3d at 79. Although passive conduct does not therefore fall within the state-created danger exception, *see id*., the Second Circuit has held that a claim may be stated where the defendant's facilitation of a private attack amounts to affirmative conduct. *Pena v. DePrisco*, 432 F.3d 98, 109-110 (2d Cir. 2005).

Finally, to establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)); *see also Matican*, 524 F.3d at 155.

Here, the Plaintiff initially asserted that the Defendants' long-standing practice of "collusion with Brunswick emboldened Brunswick students to freely engage in sexual assaults without concern about criminal liability, foreseeably resulting in harm to Plaintiff and an entire class of female victims who have been and will be assaulted by students of Brunswick". Am. Compl. ¶ 47. As noted above, the Plaintiff does not seek to hold the Defendants liable for a violation of her substantive due process rights as a result of the assault allegedly perpetrated by

Mr. Roe against her. If the Plaintiff ever intended to bring such a claim, it has since been abandoned. [5]

The Plaintiff principally argues that after the assault, the Defendants' failure to properly investigate the allegations against Mr. Roe permitted or allowed Brunswick and unnamed students to mount a campaign of harassment, bullying and defamation against the Plaintiff. She thus argues that the harassment, bullying and defamation was a state created danger.

The allegations against the Defendants are that they failed to act or properly investigate the Plaintiff's claims and that they improperly communicated with Brunswick regarding the Plaintiff's allegations. But the Plaintiff does not plausibly bridge the divide between the Defendants' activity and the harassing conduct of third party private actors over whom the Defendants had no control. This is precisely the type of passive inactivity which courts in this circuit have oft held is insufficient to meet the very high threshold for a state created danger. *See Doe v. Enfield Bd. of Educ.*, No. 3:17-CV-1894 (JCH), 2018 WL 2725452, at *7 (D. Conn. June 6, 2018) (holding that a school's failure to prevent sexual assault committed by student who exhibited violent behavior was passive conduct that did not state a claim for relief under the state-created danger exception); *Gagnon ex rel. MacFarlane v. E. Haven Bd. of Educ.*, 29 F. Supp. 3d 79, 84 (D. Conn. 2014) ("The state's failure to protect does not constitute a substantive due process violation."); *P.W. v. Fairport*

---

[5] Nor does such a claim meet the plausibility standard under *Iqbal* and *Twombly*. Plaintiff has not pleaded, other than conclusory statements, any facts to support such a claim. When pressed on this issue at oral argument, the Plaintiff attempted to identify other cases of alleged sexual assaults by Brunswick students that SVS failed to investigate. Tr. 20-21. Two of these incidents are wholly absent from the Complaint. The only incident mentioned in the Complaint was the subject of a 2014 newspaper article, in which the Greenwich PD stated that it had investigated rumors of a sexual assault at a party attended by Brunswick students and found the allegations "unfounded." Am. Compl. ¶ 4. The Complaint neither alleges that the allegation about the 2014 alleged assault was indeed true, nor provides any other information as to why the Greenwich PD determined the allegations were unfounded. Moreover, there are no facts pleaded regarding whether (or how) Greenwich PD's alleged collusion with Brunswick is communicated to Brunswick students so as to permit the inference that they are emboldened to commit sexual assault. This claim, if pleaded, and as pleaded, is premised upon pure conjecture and speculation. *See Twombly*, 550 U.S. at 555 ("labels and conclusions. . . will not do . . .[f]actual allegations must be enough to raise a right to relief above the speculative level.")

*Cent. Sch. Dist.*, 927 F. Supp. 2d 76, 84 (W.D.N.Y. 2013) ("The failure to respond to any particular incident or the failure to adequately discipline a student in a manner that would prevent future bullying is insufficient to state a claim for a violation of due process based on a state created danger, absent an indication that school officials in some way communicated an official sanction of the bullying."); *Campbell v. Brentwood Union Free Sch. Dist.*, 904 F. Supp. 2d 275, 281-82 (E.D.N.Y. 2012) ("While the failure to create greater security . . . may, at best and under certain circumstances, support some finding of state law negligence, it cannot support a Constitutional violation based upon a state created danger theory of liability."); *Chambers*, 815 F. Supp. 2d at 769 ("Plaintiffs fall far short of substantiating that Defendants' action, or lack of action, substantially caused or enhanced the danger . . . At worst, their actions were insufficient to prevent the danger, thus placing this case squarely in the ambit of *DeShaney*."); *Scruggs v. Meriden Bd. of Educ.*, No. 3:03-CV-2224(PCD), 2007 WL 2318851, at *12 (D. Conn. Aug. 10, 2007) ("[I]n the context of school bullying and harassment, courts have held that schools have no duty under the due process clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented.").The allegations against the Defendants here are even further attenuated from the injury complained of than in the cases cited. The motion to dismiss the substantive due process claim is granted on this basis.

In addition, the allegations regarding the sufficiency of the investigation or lack of investigation by the Defendants fail to allege conduct which is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Okin*, 577 F.3d at 431. In making this determination, the Court draws a significant distinction that the Plaintiff does not, that is, the conduct of these Defendants versus the conduct of Brunswick and unnamed Brunswick students. The Plaintiff summarily and in conclusory fashion attributes the conduct of Brunswick and other

unnamed students to the Defendants, but she does so without legal basis. Focusing only on the named Defendants' conduct, the state created danger exception similarly cannot be sustained on this basis.

### C.  Negligent Infliction of Emotional Distress

The Plaintiff brings claims against the Officers for negligent infliction of emotional distress. The Officers assert that they are immune from liability at both the common law and pursuant to statute.

"A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity . . . Governmental immunity, however, is not a blanket protection for all official acts." *Heigl v. Board of Education*, 218 Conn. 1, 4 (1991). "[A] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion . . ." *Elliott v. City of Waterbury*, 245 Conn. 385, 411 (1998) (citations and internal quotations omitted). "Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without

the exercise of judgment or discretion. This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." *Doe v. Peterson*, 279 Conn. 607, 614–15 (2006) (internal quotations and citations omitted).

Conn. Gen. Stat. § 52–557n codifies, in part, these common law principles of governmental immunity for municipalities, and limits a municipality's liability for its tortious acts or the tortious acts of its employees consistent with these principles. *See Elliott*, 245 Conn. at 407-08. Specifically, Conn. Gen. Stat. § 52-557n, provides for the liability of municipalities for the "negligent acts or omissions of such political subdivision or any employee," except for acts or omissions "which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n. Accordingly, to ascertain whether governmental immunity applies to the Plaintiff's negligence claims, the Court must determine whether the Officers' alleged acts or omissions were discretionary or ministerial in nature. *See Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 166–170 (1988). When a municipal employee's actions are discretionary in nature, governmental immunity attaches unless one of the three exceptions apply.

The Plaintiff does not address this issue, but it is clear to this Court that the Defendants decisions regarding how to investigate a complaint are discretionary acts. *See Ancona v. Samsel*, No. 3:16-CV-172 (MPS), 2017 WL 4765641, at *8 (D. Conn. Oct. 20, 2017); *Ventura v. Town of E. Haven*, 170 Conn. App. 388, 405 n. 18 (2017), *aff'd*, 330 Conn. 613 (2019) ("Paramount to an officer's discretion is the ability to determine how to pursue an investigation . . ."); *see also Gordon*, 208 Conn. at 179 ("[T]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function."). The Plaintiff's negligence

claims therefore fails unless she can establish an exception to the application of governmental immunity.

There are three exceptions to governmental immunity, each of which "represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." *Odom v. Matteo*, No. 3:08-CV-1569VLB, 2010 WL 466000, at *5 (D. Conn. Feb. 3, 2010) (quoting *Peterson*, 279 Conn. at 615). First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure[6]; second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm. *See Roguz v. Walsh*, No. 09-1052 TLM, 2012 WL 6049580, at *8 (D. Conn. Dec. 5, 2012).

Only the third exception is at issue with respect to this negligence claim. The identifiable person-imminent harm exception has three requirements: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm . . . All three must be proven in order for the exception to apply." *Haynes v. City of Middletown*, 314 Conn. 303, 313 (2014) (internal citations omitted). An imminent harm is one that has a significant and foreseeable risk of occurring. *Purzycki v. Town of Fairfield*, 244 Conn. 101, 110 (1988). "[W]hether a particular plaintiff comes within a cognizable class of foreseeable victims for purposes of this narrowly drawn exception to

---

[6] Plaintiff purports to assert this exception to governmental immunity. However, it has no application to negligent infliction of emotional distress claims insofar as it "requires that the relevant individual act with intent." *Traylor v. Hammond*, 94 F. Supp. 3d 203, 221 (D. Conn. 2015).

qualified immunity ultimately is a question of law for the courts, in that it is in effect a question of whether to impose a duty of care . . . In delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, including the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim." *Grady v. Town of Somers*, 294 Conn. 324, 351 (2009). The scope of this foreseeable class of victims is narrow. *Dipane-Saleem v. Gallagher*, No. 3:15-CV-596 (MPS), 2016 WL 1060190, at *8 (D. Conn. Mar. 15, 2016).

Here, the Plaintiff first points to the Defendants' conduct preceding Ms. Doe's alleged assault. The Complaint alleges that the Officers "knew or should have known that the impact of colluding with Brunswick to cover up sexual assault complaints against Brunswick students would be to embolden them to engage in criminal behavior, and that "providing such cover to Brunswick students would likely result in foreseeable future sexual assaults like the one experienced by the Plaintiff". Am. Compl. ¶ 53. This argument fails because the Plaintiff was not identified by the Defendants, at any time, as being at risk of being assaulted. Nor could any narrow group of potential victims ostensibly have been identified by the Defendants.[7] Additionally, the Plaintiff does not allege that the Defendants' conduct subjected Ms. Doe or any other person to *imminent* harm. It is not enough that the alleged harm may be foreseeable. "Imminent does not simply mean a foreseeable event at some unspecified point in the not too distant future. Rather, we have required plaintiffs to identify a discrete place and time period at which the harm will occur." *Bonington v. Town of Westport*, 297 Conn. 297, 314 (2010),

---

[7] This theory of liability also collides with Plaintiff's assertion that it is post-assault conduct which gives rise to her claims against these Defendants. To the extent she revives her claim that the Defendants are liable for the assault in the first instance, the claim fails for the reasons already stated.

*abrogated on other grounds*, *Ventura v. Town of E. Haven*, 330 Conn. 613 (2019). The Complaint neither identifies a discrete place or time that harm would take place, nor alleges that the Officers had a "specific awareness" of the imminent harm at issue. *Bonington*, 297 Conn. at 314. Indeed, as pleaded, an assault by Brunswick students may never have occurred. Accordingly, to the extent the Complaint can fairly be read to include an allegation that the Officer's policy of colluding with Brunswick was an act of negligence that resulted in the sexual assault and the Plaintiff's attendant emotional distress, the imminent harm exception does not abrogate their immunity for these discretionary actions.

The Plaintiff also asserts the negligence claim in relation to the Defendants' conduct following the sexual assault, that is, the conducting of a sham investigation. The Complaint alleges the Officers "knew or should have known that as part of its effort to protect its students from criminal prosecution and itself from unfavorable publicity, Brunswick would engage in malicious and defamatory campaigns against the victim to discredit their stories, and that such a campaign would involve cyber bullying, social stigmatization and ongoing harassment by classmates to which a teenager would be especially vulnerable." Am. Compl. ¶ 53.

Again, the Plaintiff attempts to conflate the actions of the Defendants with the third party actions of Brunswick and multiple unnamed students. Leaving aside the question of whether attributing the conduct of Brunswick and the students to the Defendants is proper, the allegations do not establish an imminent harm to the Plaintiff as required. First, it is simply implausible to say that the Defendants' collusion with Brunswick foreseeably resulted in a campaign of cyber bullying, social stigmatization and harassment by Brunswick students. While Ms. Doe could arguably be an identifiable victim once her complaint was made, the bullying and harassment by third party actors however, might never have occurred. This is not an imminent harm, but rather a

hypothetical one which may or may not have come to pass. Therefore, the identifiable person-imminent harm exception does not apply.

Accordingly, no exception to discretionary immunity is applicable and the Officers are entitled to immunity on the Plaintiff's negligence claims. The motion to dismiss the negligent infliction of emotional distress claim is granted.

### D. Intentional Infliction of Emotional Distress

The Plaintiff also asserts a claim of intentional infliction of emotional distress against the Officers.[8]

As discussed above, the Officers enjoy immunity for their discretionary actions undertaken in connection with the investigation of the Plaintiff's complaint. With respect to the intentional infliction of emotional distress claim, the Plaintiff relies upon the first exception to this immunity – that the Defendants' misconduct was willful, wanton, intentional or malicious. "The Connecticut Supreme Court has construed 'wilful misconduct' to be synonymous with 'intentional conduct.'" *Milardo v. City of Middletown*, No. 3:06CV01071(DJS), 2009 WL 801614, at *10 (D. Conn. Mar. 25, 2009*); see also Elliott*, 245 Conn. at 415 (holding that legal concepts of wanton, reckless, willful, intentional and malicious conduct are indistinguishable); *Bauer v. Waste Management of Connecticut, Inc*., 239 Conn. 515, 527 (1996) ("A willful act is one done intentionally or with reckless disregard of the consequences of one's conduct.").

"In order to establish that the defendants' conduct was wanton, reckless, willful, intentional and malicious, the plaintiff must prove, on the part of the defendants, the existence of

---

[8] It does not appear to the Court that the Plaintiff brings the intentional infliction of emotional distress claim against the Town and Connecticut law is clear with regard to municipal liability for the intentional torts of its employees. Section 52–557n(a)(2)(A) excludes from municipal liability "[a]cts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct." Conn. Gen. Stat. § 52-557n(a)(2)(A). "[A] municipality cannot be held liable for the intentional conduct of its employees under Conn. Gen. Stat. § 52–557n." *Milardo,* 2009 WL 801614, at *10. Thus, to the extent the Plaintiff intends to assert an intentional infliction of emotional distress claim against the Town, the claim fails.

a state of consciousness with reference to the consequences of one's acts . . . Such conduct is more than negligence, more than gross negligence . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others." *Elliott*, 245 Conn. at 415 (internal quotations omitted). "[W]illful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." *Bauer v. City of Hartford*, No. 3:07-CV-1375 PCD, 2010 WL 4429697, at *13 (D. Conn. Oct. 29, 2010) (quoting *Craig v. Driscoll*, 262 Conn. 312, 342-43 (2003).

The Court assumes without deciding that the allegations might be read to plausibly allege wanton, willful, reckless, intentional or malicious conduct. Notwithstanding, the allegations do not plausibly allege a claim for intentional infliction of emotional distress under Connecticut law. In Connecticut, to state a claim of intentional infliction of emotional distress, Plaintiff must allege: (1) that Defendants intended to inflict emotional distress or knew or should have known that such distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous; (3) that Defendants' conduct was the cause of Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe. *See Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)). Extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society." *Crocco v. Advance Stores Co.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (quoting *Carrol v. Allstate Insurance Co.*, 262 Conn. 433, 443 (2003)). Whether "conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the court." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (citing *Johnson v. Chesebrough–Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)). The Plaintiff's allegations regarding the Officer's conduct

simply do not reach this threshold level. Focusing again on the conduct of these Defendants, the allegations regarding the manner by which the Plaintiff's complaint was investigated, or not investigated more accurately; the purported interactions with the Brunswick school; the interactions with the Plaintiff and her family; and the submission of an inadequate arrest warrant application during the holidays, individually and in the aggregate is not atrocious and does not "exceed all bounds usually tolerated by decent society." The allegations, if proven, bespeak very poorly of the professionalism and competence of the Officers, but does not so "shock the conscience" as to constitute intentional infliction of emotional distress. *See e.g.*, *Carone v. Mascolo*, No. 3:06CV01094(DJS), 2007 WL 2318818, at *5 (D. Conn. Aug. 14, 2007). The motion to dismiss the intentional infliction of emotional distress claim is granted.

## VI.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of September 2019.

      */s/ Kari A. Dooley*         
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE