UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:18-cv-01322-KAD |
| | : | |
| V. | : | |
| | : | |
| TOWN OF GREENWICH, | : | |
|     Defendant. | : | MAY 12, 2020 |

**MEMORANDUM OF LAW IN SUPPORT OF THOMAS W. PHILIP'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d) and Local Rule 37, Thomas W. Philip ("Mr. Philip") respectfully submits this Memorandum of Law in Support of his Motion for an Order quashing the subpoena served on him or in the alternative for a Protective Order.

**I.  PRELIMINARY STATEMENT**

For over two years, in a State Court lawsuit and in this action, Plaintiff has pursued a baseless claim that Brunswick School "colluded" with the Greenwich Police Department (the "GPD") to deprive Plaintiff of her rights. In the State Court Action and in this lawsuit, Plaintiff discovered zero evidence of "collusion."

Yet now, Plaintiff has served a subpoena on Mr. Philip in a classic fishing expedition, seeking testimony and documents on broad ranges of topics that this Court has already held are not relevant to this case. This subpoena and the others Plaintiff served on Brunswick employees are the latest examples of Plaintiff's abuse of the discovery process and expose desperation by Plaintiff, who has not been able to unearth any evidence of "collusion" between Brunswick and the GPD despite many months of discovery in both cases. If Plaintiff had any evidence of "collusion," she would have laid it out in her complaint in detail and it would have been plastered in the Court's file.

Mr. Philip "never spoke to anyone from the [GPD] regarding [Plaintiff's] allegations." (Exhibit A ("Philip Aff.") at ¶ 29.)  Plaintiff knows that because she has Mr. Philip's sworn affidavit, which was submitted in the State Court Action in support of Brunswick's Motion for Summary Judgment.  Yet despite this, Plaintiff seeks to harass and annoy Mr. Philip by seeking an array of documents that have nothing to do with this case and to question Mr. Philip at a deposition about matters that have nothing to do with this case.  Mr. Philip should not have to incur any more burden or cost in connection with Plaintiff's wild goose chase.  He should not have to again search for documents he previously searched for during the State Court Action. Therefore, Mr. Philip respectfully requests that the Court quash Plaintiff's continued attempts to annoy, harass, and impose undue burdens on him.

Plaintiff should not have commenced either lawsuit without evidence of collusion.  The time has come for the Court to stop this reckless rampage for facts that do not exist.

In the alternative, Mr. Philip requests that the Court enter a protective order limiting the scope of any deposition in light of the "very limited theory of liability" involved in this case. Plaintiff's document requests evidence an intent to conduct a wide-ranging deposition about irrelevant matters that invade the privacy rights of non-party minors.

## II.   FACTUAL BACKGROUND

### A.   The "Very Limited Theory of Liability" in this Case.

This case involves "a very limited theory of liability against the [GPD]."  (Doc. No. 106 at 53:5–7.)  That theory concerns alleged "collusion" between the GPD and Brunswick to ensure that Peter Roe was not charged with a crime, Doc. No. 153 at 10–11, even though the GPD submitted an arrest warrant application for Peter Roe.

That sole remaining theory of liability in this case does *not* include any theory that Mr.

Philip interfered with witnesses or sought to ensure that Peter Roe was not charged with a crime through means other than allegedly "colluding" with the GPD. *See, e.g.*, Doc. No. 115 at 19 ("Again, the Plaintiff attempts to conflate the actions of the Defendants with the [alleged] third party actions of Brunswick and multiple unnamed students."), Doc. No. 153 at 10–11; *see also, e.g.*, Transcript of Proceedings Sept. 11, 2019 at 29:15–18 (responding to contention that "witnesses . . . were influenced by" Brunswick "and changed their story" by explaining: "The Court: [T]he question for the jury is going to be the police's conduct, not these witnesses who might have lied. If somebody lies to the police, how does that become a police problem?")

The only question presented in this case is whether the GPD "colluded" with Brunswick. This Court recognized the narrow scope of this case when it ruled on Attorney Michael J. Jones' Motion to Quash a subpoena Plaintiff issued to him. (Doc. No. 153.) Plaintiff's subpoena to Attorney Jones sought, among other things, communications between Attorney Jones and Brunswick, communications between Attorney Jones and various third parties, and communications about potential matters other than Plaintiff's allegations. (Doc. No. 125-2 at 3–4.) The Court concluded that the only requests attached to the subpoena to Attorney Jones "that [sought] information potentially relevant to plaintiff's claim of collusion" were his communications with the GPD or State's Attorney's Office. (Doc. No. 125-2 at 3–4; Doc. No. 153 at 10.) This Court held "whatever communications [Attorney Jones] may or may not have had with persons employed by Greenwich Academy or Brunswick School, or with persons affiliated with Brunswick School, or with other attorneys for Peter Roe and various entities, are not relevant to the question of whether the defendants in this case colluded or conspired with Brunswick School in any way." (Doc. No. 153 at 10–11.) The Court further held that "to the extent the requests" seeking communications with the GPD and State's Attorney's Office sought

3

"relevant information, their scope must be limited to 'the investigation into the complaint of sexual assault made by Jane Doe against Peter Roe in 2016.'"  (Doc. No. 153 at 11.)

The Court recently reaffirmed the narrow scope of this case.  (*See* Doc. No. 173 at 25.)  It noted, among other things, that information relevant to "communications among GPD officers who accessed the Doe file" were not relevant "to the claim remaining in this case" and that a broad request about other matters was "not proportional to the needs of this case[] and unreasonably infringe[d] the privacy interest of non-party minors."  (Doc. No. 173 at 11, 21.)

**B.     Plaintiff's State Court Action Against Brunswick.**

Plaintiff's State Court Action against Brunswick was broader than this case.  *See, e.g.*, Doc. No. 106 at 79:14–17 (opining that State Court Action may broaden appropriate lines of inquiry as to Peter Roe).  Through extensive discovery in the State Court Action, Plaintiff obtained, among many other categories of documents, Brunswick's communications with the GPD regarding the investigation into Plaintiff's allegations.  None of what Plaintiff obtained in the State Court Action showed any "collusion."

**C.     Plaintiff's Subpoena to Mr. Philip.**

Despite commencing two lawsuits without any evidence of "collusion," and not uncovering such evidence in discovery in the two lawsuits after extensive discovery, on February 17, 2020, Plaintiff served a subpoena on Mr. Philip (Exhibit B) to appear for a deposition and produce irrelevant documents, including any communications between Mr. Philip and Attorney Jones, which the Court previously determined are not properly discoverable.

**III.     RELEVANT LAW**

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Discovery is broad, but "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in this case." *Croom v. W. Connecticut State Univ.*, No. 3:00CV01805(PCD), 2002 WL 32503667, at * 1 (D. Conn. Mar. 20, 2002). "[T]he burden of demonstrating relevance remains on the party seeking discovery." *Bagley v. Yale Univ.*, 315 F.R.D. 131, 144 (D. Conn. 2016) (citation omitted), *as amended* (June 15, 2015.)

"[A]ny person from whom discovery is sought may move for a protective order . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery; . . . specifying terms, including time and place or the allocation of expenses, for the disclosure of discovery; . . . [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984).

"Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b)." *See, e.g.*, *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No.

3:07CV929 WWE, 2013 WL 6511934, at *1 (D. Conn. Dec. 12, 2013); *see also, e.g.*, *Addona v. Parker Hannifin Corp.*, No. 3:13CV1616 RNC, 2014 WL 788946, at *1 (D. Conn. Feb. 25, 2014). "On timely motion, the court . . . *must* quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). Plaintiff has the initial burden of establishing the relevance of the materials she seeks. (Doc. No. 173 at 10.)

And as this Court recently recognized: "In response to a motion to quash a subpoena, the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) (citation and quotation marks omitted); *see* Doc. No. 153 at 9.

## IV. ARGUMENT

### A. Mr. Philip's Deposition Should be Quashed.

Given the "very limited theory of liability" in this case and corresponding narrow scope of discovery, Mr. Philip is not a proper witness. (Doc. No. 106 at 53:5–7.)

Months ago, Brunswick provided Plaintiff with an affidavit from Mr. Philip averring that he "never spoke to anyone from the [GPD] regarding [Plaintiff's] allegations." (Philip Aff. ¶ 29)

There is no legitimate basis for Plaintiff to depose Mr. Philip. Plaintiff is seeking to depose Mr. Philip to harass him and call him a liar. (Indeed, the subpoena Plaintiff issued to Mr. Philip is itself harassing; as discussed below, it demands documents this Court previously held are not relevant, such as communications with Attorney Jones.) This is yet another attempt by Plaintiff to abuse the discovery process to seek vengeance against individuals she feels wronged her. Plaintiff's wide-ranging document requests confirm that Plaintiff intends to question Mr. Philip about topics that have nothing to do with this case or with "collusion."

Such a deposition is improper, particularly in light of the fact that despite having

6

extensive discovery in this case and the State Court Action, Plaintiff has no evidence of "collusion." Mr. Philip's affidavit and other documents Brunswick, third parties, and the Defendants in this Action have produced establish there was no "collusion." In fact, there was no substantive communication between anyone at Brunswick and anyone at the GPD about Jane Doe's allegations. Despite having unfettered access to Brunswick's, Mr. Philip's, and the GPD's documents and deposing a slew of GPD witnesses, Plaintiff has nothing to support her theory of "collusion," has hit dead-end after dead-end in her attempt to manufacture evidence to support her theory (*see, e.g.*, Doc. No. 144 at 2–4), and has now resorted to relying on "serious inaccuracies" in an attempt to gain access to documents that have nothing to do with this case, (*see* Doc. No. 172 & 172-1). This entire case is now a fishing expedition.

The Court must quash the subpoena to prevent Plaintiff from harassing Mr. Philip.

### B.  In the Alternative, the Court Should Narrow the Scope of any Deposition.

If the Court concludes that a deposition is proper despite the fact that Mr. Philip "never spoke to anyone from the [GPD] regarding [Plaintiff's] allegations," (Philip Aff. at ¶ 29), it should limit the scope of any deposition to Mr. Philip's communications with the GPD regarding its investigation into Jane's allegations. Even that line of inquiry is improper where, as here, Plaintiff seeks to depose Mr. Philip just to call him a liar, but at absolute most, that is what is potentially relevant to this case given the "very limited theory of liability against the" GPD.

#### 1.  Communications with Third Parties are Not Relevant.

Questions about communications with third parties, including other Brunswick employees, students, and others about anything related to Jane's allegations against Peter Roe are not relevant under this Court's prior discovery decisions. The Town of Greenwich is the only Defendant in this case. The only conduct at issue is that of the Town and its employees. (*See,*

7

*e.g.*, Doc. No. 115 at 19 ("Again, the Plaintiff attempts to conflate the actions of the Defendants with the [alleged] third party actions of Brunswick and multiple unnamed students."); *see also, e.g.*, Doc. No. 106 at 29:15–18 (responding to an argument by Plaintiff's counsel that there are "witnesses . . . who were influenced by" Brunswick "and changed their story" by explaining: "The Court:  [T]he question for the jury is going to be the police's conduct, not these witnesses who might have lied.  If somebody lies to the police, how does that become a police problem?"). Mr. Philip's communications with Brunswick employees and third parties (*i.e.*, not the GPD) are not relevant to the question of whether the GPD "colluded" with Brunswick.

### 2. Other Matters Are Not Properly Discoverable.

Nor are questions about other matters not involving Jane properly discoverable.  When this Court ruled on Attorney Jones' Motion to Quash, it explained that to the extent any of Plaintiff's requests to Attorney Jones sought "relevant information, their scope must be limited to 'the investigation into the complaint of sexual assault made by Jane Doe against Peter Roe in 2016.'"  (Doc. No. 153 at 10).  In doing so, the Court recognized at minimum that Plaintiff must first establish evidence of "collusion" in this case before she can violate the statutorily protected privacy rights of non-party minors by seeking discovery on other matters.  Despite focusing on *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998), when she wants discovery, Plaintiff conveniently forgets that *Myers* requires her to prove "collusion" in her own case.  Proving "collusion" in other cases is not enough.  *See Myers*, 157 F.3d at 74 (concluding that policy at issue caused plaintiff's injury).  Through eighteen months of extensive discovery in two cases, Plaintiff has no evidence of "collusion" in her own case.  If she did, she would have raised it.  Instead, she cites "evidence" that merely demonstrates the absence of any proof of "collusion." The Court should prohibit Plaintiff from invading the privacy rights of an untold number of non-

party minors where, as here, Plaintiff has no evidence of "collusion" in her own case.  Under the circumstances, Plaintiff's attempt to inquire into other matters is a fishing expedition that cannot possibly cure the lack of evidence regarding her own case.

Plaintiff's document requests, discussed below, nevertheless establish that Plaintiff intends to question Mr. Philip about a wide range of matters that are not properly discoverable because they are irrelevant and/or because discovery regarding them is "not proportional to the needs of this case[] and unreasonably infringes the privacy interest of non-party minors."  (Doc. No. 173 at 11 (citing *United States v. Litvak*, No. 3:13CR00019 (JCH), 2015 WL 328876, at *2 (D. Conn. Jan 23, 2015) ("The [privacy] interest is especially heavy where, as here, the minors at issue are not parties to the litigation[.]")).)  If the Court determines that a deposition is appropriate, it should therefore preclude Plaintiff from asking about other matters.

The specific matter Plaintiff apparently intends to ask about based on her document requests—the 2014 matter—is not relevant because discovery has already established that the lack of prosecution was not the result of "collusion."  The alleged victim in that case "said she was not raped but agreed to the sexual contact," (Doc. No. 162-3 at 1), and her parents requested the GPD "not pursue any charges" "due to privacy concerns and the well-being of [their] daughter," (Doc. No. 162-3 at 2.)  The lack of prosecution had nothing to do with "collusion."

> **3.  If The Court Orders A Deposition, It Should Protect Mr. Philip And The Privacy Rights of Non-Party Minors From Harassment By Delineating The Lines of Inquiry the Court Deems Appropriate.**

If the Court orders Mr. Philip's deposition and determines that other matters are discoverable, it should delineate the areas of appropriate inquiry to prevent harassment and protect the privacy rights of non-party minors as this Court has previously done in its rulings.

"The [C]ourt may, for good cause, issue an order to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery [and] *forbidding inquiry into certain matters*, or *limiting the scope of disclosure or discovery to certain matters* . . . ." Fed. R. Civ. P. 26(c) (emphasis added).

During their depositions, several members of Plaintiff's family cited a laundry list of rumors they heard through the grapevine about allegedly "improper" behavior by Brunswick and/or Mr. Philip, with each example more ridiculous than the last.  Indeed, one of Plaintiff's relatives faulted Brunswick for the manner in which it *expelled* a student accused of sexual misconduct.  A member of Plaintiff's family also discussed purported traffic violations involving Mr. Philip that Plaintiff's family had no personal knowledge of.

The Court cannot allow any deposition to devolve into hours of harassing Mr. Philip on irrelevant matters.  Plaintiff and her family have strong personal animus against Mr. Philip.  The Court must limit the areas of inquiry to prevent improper harassment.

Nor should the Court allow the privacy rights of non-party minors to be infringed by questions about other matters.  Plaintiff recently disclosed for the first time a matter she has known about since September 2018 but never sought proper discovery on. (Doc. No. 196.)  Who knows how the privacy rights of an untold number of minors could be implicated by questioning about purported matters that Plaintiff has not even identified to the Court.  The Court has repeatedly recognized the need to protect the privacy rights of non-party minors.  (*See* Doc. No. 173.)  *See also, e.g.*, *Litvak*, 2015 WL 328876, at *2 ("The [privacy] interest is especially heavy where, as here, the minors at issue are not parties to the litigation[.]")

If the Court orders a deposition, it should delineate the areas of inquiry.

10

>    **4.  If the Court Orders A Deposition, It Should Prohibit Plaintiff from Using Documents She Required Brunswick to Destroy and Require Plaintiff to Produce in Advance the Other Documents She Will Use.**

When the State Court Action was resolved, Brunswick allowed Plaintiff to retain its documents, including documents concerning Mr. Philip, but Plaintiff refused to permit Brunswick to retain Plaintiff's documents. Mr. Philip therefore requests that, if the Court orders any deposition, it preclude Plaintiff from using documents it produced to Brunswick because Plaintiff forced Brunswick to destroy those documents.

The Court should also require Plaintiff to provide Mr. Philip with the documents she will use in advance of any deposition. "Pursuant to the Court's order, Plaintiff . . . provided Peter Roe with copies of all documents she intended to use in his deposition . . . 17 days before the deposition took place." (Doc. No. 194 at 14.) If the Court orders Mr. Philip to be deposed, it should likewise order Plaintiff to produce all documents Plaintiff will use at Mr. Philip's deposition to Mr. Philip at least three weeks before any deposition of Mr. Philip. Plaintiff and her counsel have demonstrated repeated abuse of the discovery process and Court oversight is necessary to ensure fairness.

>    **C.  Plaintiff's Document Requests Should Be Quashed.**

Mr. Philip's Objections to Plaintiff's Subpoena and the Objections to Plaintiff's Subpoena previously served and filed by Brunswick, which Mr. Philip adopts, are attached as Exhibit C. For the reasons set forth in those Objections and the ones previously filed with the Court (Doc. No. 175-9), Plaintiff's document requests are improper on multiple grounds.[1]

---

[1] In addition to not having discoverable information for the reasons already discussed, Mr. Philip does not have any information or documents relevant to this case *in his personal capacity* and the Court should therefore quash Plaintiff's subpoena in its entirety. Plaintiff represents that she subpoenaed Mr. Philip "**personally**, not as a representative of non-party Brunswick" and that her subpoena "request[s] documents that are maintained by [Mr. Philip] personally, not by Brunswick." (Doc. No. 207 at 4 (emphasis in original).) Mr. Philip was never acting in and has no information in his personal capacity. He maintains no documents personally. (Exhibit D, "Declaration of Mr. Philip".) Plaintiff's subpoena is therefore not likely to lead to the discovery of admissible evidence.

11

### 1. Mr. Philip Should Not Have to Search for Documents Again.

Plaintiff's document requests should be quashed because it is unduly burdensome for Mr. Philip to be compelled to again search for documents he has already searched for.

Brunswick and Mr. Philip previously searched for and produced documents in the State Court Action, which included claims broader than this case. The search for documents, which was performed in conjunction with a third-party discovery vendor, cost approximately $15,000 *not* including any attorney time or the time required of Mr. Philip and other Brunswick employees. A subset of the documents produced to Plaintiff in the State Court Action as a result of that search included all communications Brunswick had with the GPD regarding the investigation into Plaintiff's allegations, as well as Brunswick's (and Mr. Philip's) communications with the GPD on several other matters. Requiring Mr. Philip to conduct another search for documents he already searched for is the definition of an undue burden. Conducting an additional search for the documents requested will also require considerable time from Mr. Philip and considerable cost in both attorney time and the time of the discovery vendor.

### 2. Plaintiff's Document Requests Seek Irrelevant Documents.

Plaintiff's requests should also be quashed because they seek irrelevant documents:

- Plaintiff's request for documents concerning communications with third parties about the police investigation (Request No. 1) seeks irrelevant documents.

    o The Court has repeatedly explained that the question relevant to the "very limited theory of liability against the [GPD" is whether the GPD "colluded" with Brunswick. Whether Brunswick employees or anyone else "colluded," with third parties, which they did not, is not relevant to the case against the GPD. *See, e.g.*, Doc. No. 115 at 19 ("Again, the Plaintiff attempts to conflate the actions of the Defendants with the [alleged] third party actions of Brunswick and multiple unnamed students."); *see also, e.g.*, Doc. No. 106 at 29:15–18 (responding to an argument by Plaintiff's counsel that there are "witnesses . . . who were influenced by" Brunswick "and changed their story" by explaining: "The Court: [T]he question for the jury is going to be the police's conduct, not these witnesses who might have lied. If somebody lies to the police, how does that become a police

problem?"); Doc. No. 106 at 54:2–6 (refusing to allow inquiry into "conversations/discussions [Peter Roe] may have had at the time of the investigation with these other witnesses; because, again, under the limited theory of liability that's presented here, I just don't think that that's relevant.")

- And the Court previously held that Attorney Jones' communications with various third parties—including several individuals identified in the subpoena to Mr. Philip—are not relevant. *See* Doc. No. 125-2 at 3; Doc. No. 153 at 10–11.

- Plaintiff's request for communications with third parties is a fishing expedition.

* Plaintiff's request for documents concerning communications regarding the police investigation (Request Nos. 2 & 3) is overly broad and seeks irrelevant documents.

  - Plaintiff already has Brunswick's communications with the GPD. That is what is potentially relevant to Plaintiff's claim of "collusion."

  - Other documents cannot possibly establish "collusion." The Court recently concluded that "communications <u>among</u> GPD officers who accessed the Doe file" were not relevant "<u>to the claim remaining in this case</u>." (Doc. No. 173 at 21.) The same is true of documents reflecting communications between Mr. Philip and others at Brunswick and even more true of documents reflecting communications between Mr. Philip and third parties such as those identified in Request No. 2.

* Plaintiff's request for documents concerning communications with attorneys involved in the underlying matter (Requests 4–6) is improper under this Court's prior rulings.

  - When this Court granted Attorney Jones' Motion to Quash, it held that Plaintiff's request for "[a]ll documents concerning any and all communications regarding the investigation into the complaint of sexual assault made by Jane Doe" between Attorney Jones and "any person employed by or affiliated with Brunswick School" did not seek relevant documents. (Doc. No. 125-2 at 3 (requesting communications with Brunswick); Doc. No. 153 at 10–11 ("[W]hatever communications [Attorney Jones] may or may not have had with persons employed by . . . Brunswick School, or with persons affiliated with Brunswick School, . . . are not relevant . . . ." Plaintiff's requests for documents concerning communications with Attorneys Jones, Riccio, and Russell seek the same documents the Court previously held to be irrelevant.

* Plaintiff's request for documents concerning communications "regarding police inquiries" about an alleged 2014 matter and a statement the GPD issued in November 2014 (Requests 7 & 8) are not relevant.

  - In its ruling granting Attorney Jones' Motion to Quash, this Court explained that documents concerning matters other than Plaintiff's allegations are not relevant: "Further, to the extent the requests . . . seek relevant information, their scope must

13

    be limited to 'the investigation into the complaint of sexual assault made by Jane Doe against Peter Roe in 2016.'" (Doc. No. 153 at 11.)

- o Even if documents concerning some other matters were discoverable, documents concerning the alleged 2014 matter are not. The lack of prosecution in the alleged 2014 matter had nothing to do with "collusion." The alleged victim "said she was not raped but agreed to the sexual contact," (Doc. No. 162-3 at 1), and her parents requested the GPD "not pursue any charges" "due to privacy concerns and the well-being of [their] daughter," (Doc. No. 162-3 at 2). Just as this Court recently concluded that a Request for Production was "overbroad because it [sought] information from a case unrelated to plaintiff's allegation of collusion between defendants and Brunswick," (Doc. No. 173 at 12), Plaintiff's "[t]heory" that the result in the alleged 2014 matter was related to "collusion" "is far too attenuated to support [her] request." (Doc. No. 173 at 14.) Plaintiff's alleged "need" for documents concerning the alleged 2014 matter is nothing more than a fruitless attempt to mischaracterize what occurred in the alleged 2014 matter as the product of "collusion" despite definitive evidence it was not.

- Plaintiff's request for documents concerning communications with the GPD regarding "any incident involving a Brunswick student from January 1, 2012 to the present" (Request 9) is a classic fishing expedition that similarly seeks information about other matters that have nothing to do with this case.

  - o The Court should quash this request, just as it has quashed Plaintiff's similar fishing expeditions. *See, e.g.*, Doc. No. 125-2 at 4 (seeking retainer agreements for Brunswick students "from 2014 to the present" and Greenwich Academy students "from 2016 to the present"); Doc. No. 153 at 11 (granting motion to quash request for retainer agreements); Doc. No. 173 at 8–9 (denying request for "complaints against police officers" from January 1, 2012 to the present).

None of Plaintiff's requests seek discoverable information.

### 3. Plaintiff's Document Requests Are Otherwise Improper.

Even if any of Plaintiff's requests sought any relevant documents other than the documents Plaintiff already has, her requests are still improper and must be limited:

- In addition to seeking irrelevant documents, Plaintiff's requests are overbroad because they are not limited to communications with the GPD or at least communications about communications with the GPD. An email between Mr. Philip and a third party that simply mentions that there is a police investigation is not likely to lead to the discovery of admissible evidence regarding Plaintiff's claim of "collusion" but is potentially within the scope of Plaintiff's requests.

- And even if documents concerning communications with third parties or the GPD were

14

- relevant, which they are not, the only such documents that could possibly be relevant would be documents concerning communications during the GPD's investigation. Yet Request Nos. 1–6 are not limited in time and are therefore overbroad.

- Request Nos. 7 & 8 are also "overbroad as to subject matter" because, even if the alleged 2014 matter was within the scope of discovery, which it is not, Plaintiff seeks more than communications between Mr. Philip and the GPD, which are the only potentially relevant documents. (Doc. No. 173.) Because Plaintiff knows the alleged victim claimed the activity was consensual and her parents requested no charges be filed, "the privacy rights implicated by" this request "outweigh plaintiff's need for disclosure" regarding the alleged 2014 incident. (*See* Doc. No. 173 at 14.) Plaintiff's requests "would [also] infringe the privacy interests of innocent third parties." (Doc. No. 173 at 14–15.)

- In addition to being a classic fishing expedition, Request No. 9 is "not proportional to the needs of this case, and unreasonably infringes the privacy interest of non-party minors." (Doc. No. 173 at 11.) This Court recently quashed a similar request on this ground. (*Id.*)

- And Plaintiff's requests are not even limited to cases about a *female* student's claim of sexual assault. Plaintiff is trying to reinvent her theory of this case, significantly broadening what she claims she is entitled to, and trampling on the rights of minors who were not even involved in allegations of sexual misconduct. Even if other cases are discoverable, cases about alleged physical assaults and other purported crimes are not.

This Court has rightly been concerned about the privacy interests of non-party witnesses. (*See, e.g.*, Doc. No. 173 at 11.) Those concerns are exceptionally strong where, as here, Plaintiff seeks documents concerning allegations of sexual assault of minors and alcohol consumption by minors from Mr. Philip because Brunswick's Handbook provides: "It is expected that teachers and administrators will . . . [k]eep all information about students . . . and parents confidential." (Doc. No. 211-1 at 4). Brunswick's students and their families expect that the documents and information Plaintiff seeks are confidential and Mr. Philip should not be required to produce such documents or information where, as here, the requested information is "not proportional to the needs of this case, and unreasonably infringes the privacy interest of non-party minors."

15

## V. GOOD FAITH EFFORTS TO CONFER

On February 26, 2020, undersigned counsel sent Plaintiff a letter on Mr. Philip's behalf detailing its position with respect to the subpoenas. (Doc. No. 175-11.) Plaintiff responded with an email detailing her position on February 28, 2020. (Doc. No. 175-12) Undersigned counsel spoke to counsel for Plaintiff via telephone on February 28, 2020. All counsel concluded that Court intervention would be needed to resolve the instant dispute between the parties given the nature of the parties' disagreement, as detailed by the parties' written communications and Brunswick filed motions with the Court, which Plaintiff opposed. The Court denied those motions without prejudice and invited further motion practice. This motion has been filed pursuant to Court order.

## VI. CONCLUSION

Mr. Philip "never spoke to anyone from the [GPD] regarding [Plaintiff's] allegations." (Exhibit A at ¶ 29.) It is not proper discovery for Plaintiff to depose Mr. Philip just to harass him and call him a liar. The Court should quash the subpoena to Mr. Philip. If the Court determines depositions or document production are proper, it should limit document production and questioning to Mr. Philip's communications with the GPD regarding Plaintiff's allegations or, at absolute minimum, delineate the appropriate areas of inquiry at any deposition.

THOMAS PHILIP

By: */s/ James M. Sconzo*
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS
One State Street, Suite 1800
Hartford, CT  06103
Telephone:  860-392-5000
Facsimile:  860-392-5058
Email:    jsconzo@carltonfields.com
           bgooley@carltonfields.com

His Attorneys

**CERTIFICATION**

I hereby certify that, on this 12th day of May, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                        */s/ James M. Sconzo*
                                        James M. Sconzo