## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | Case No. 3:18-cv-01322-KAD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF GREENWICH, et al | ) | |
| | ) | |
| Defendants. | ) | August 24, 2020 |

## DEFENDANTS' RULE 56(a)1 STATEMENT
## OF UNDISUPTED MATERIAL FACTS

### A.  The June 2016 Pool Party

1.  Jane Doe hosted a pool party at her home on June 3, 2016.  Ex. 1, J. Doe Depo. at p. 40, l. 11-16.

2.  At the time of the pool party, Plaintiff was completing her sophomore year at Greenwich Academy.  Doc. No. 46 at ¶ 12.

3.  Greenwich Academy is an all-girl college-preparatory day school located in Greenwich, Connecticut.  Doc. No. 46 at ¶ 12.

4.  Approximately fifteen or so of Jane's friends attended the pool party.  Ex. 1, J. Doe Depo. at p. 42. l. 25 – p. 43, l. 11.  Most of the pool party attendees were students at Greenwich Academy or Brunswick School.  Ex. 1, J. Doe Depo. at p. 43, l. 2-14.

5.  Brunswick is an all-boy college preparatory day school also located in Greenwich, Connecticut.  Doc. No. 46 at ¶ 2.

6.      GA is commonly referred to as the "sister" school of Brunswick.  Starting in high school, Brunswick and GA students can take classes at both schools, and have some joint school sponsored social events.  Ex. 1, J. Doe Depo. at p. 36, l. 24 - p. 39, l. 15; Doc. No. 46 at ¶ 12.

7.      The pool party took place in the evening, with the majority of Jane's friends arriving between 6 and 9pm.  Ex. 1, J. Doe Depo. at p. 46, l. 2-6.  Doe's parents (hereinafter referred to as "Mother Doe" and "Father Doe") were home at the time of the party, and some of her friends' parents were there as well.  Ex. 1, J. Doe Depo. at p. 43, l. 19 - p. 44, l. 2.

8.      The Doe pool area is a small distance from the main residence (Ex. 1, J. Doe Depo. at p. 42, l. 15-17) however it's very open and easy to walk over to the pool area from the main residence.  Ex. 1, J. Doe Depo. at p. 44, l. 3-7.

9.      Jane Doe's adult brother (hereinafter referred to as "Brother Doe") was home at the time of the party and at some point during the evening was physically down by the pool area during the party.  Ex. 1, J. Doe Depo. at p. 42, l. 18-19; p. 62, l. 16-21.  Brother Doe's adult friend, PK, was also at the pool party at some point during the evening.  Ex. 1, J. Doe Depo. at p. 63, l. 3-12.  See also Witness Statements of PK, Ex. 17 at TOG-000164-000166, and Brother Doe, Ex. 17 at TOG-000158, Case Incident Reports, Ex. 18 at TOG-00658, TOG-000666-000667.

10.      In Jane Doe's own words, the pool party could be described as a drinking party. Ex. 1, J. Doe Depo. at p. 467, l. 18 - p. 468, l. 9.

11.      Most of Jane's friends at the pool party had been drinking.  Ex. 1, J. Doe Depo. at p. 74; l. 20 - p. 75, l. 7.  Ex. 13, TP Depo. at p. 212, l. 25-p. 214, l. 24; See TP Notes (Ex. 6 to TP Depo.).

12.     In fact, all but two of the minor attendees at the party were drinking alcohol.  Ex. 1, J. Doe Depo. at p. 400, l. 13-16; Ex. 13, TP Depo. at p. 212, l. 25-p. 214, l. 24; <u>See</u> TP Notes (Ex. 6 to TP Depo.).

13.     Prior to the party, Jane had discussions with her friends, Peter Roe and BW Student 3[1], about bringing the alcohol to her pool party.  Ex. 1, J. Doe Depo. at p. 46, l. 12-16; p. 53, l. 16 - p. 54, l. 2.  <u>See</u> also text messages, Ex. 27 at P0902; P0903; P0890; P0892.

14.     Concerned that her parents would find out that her friends were bringing alcohol, Jane suggested that they hide it when entering the home.  Ex. 1, J. Doe Depo. at p. 51, l. 5-8; p. 53, l. 20-23; <u>see</u> also Ex. 27, P0892.

15.     It was fairly obvious that at least some of Jane's friends at the party were drunk.  Ex. 1, J. Doe Depo. at p. 57; l. 1-6.

16.     After the party, Jane Doe's parents became aware that minors drank alcohol at the pool party they hosted.[2]  Ex. 2, Father Doe Depo. (Conn. Super.) at p. 24, l. 4-19; Ex. 4, Mother Doe Depo. (Conn. Super.) at p. 69, l. 6-9; p. 74, l. 15-16.  <u>See</u> also Ex. 26, P1142, P1213.

17.     After the party, Jane admitted to her parents only that she had a few sips of beer and hard cider brought by a friend.  Ex. 1, J. Doe Depo. at p. 60, l. 7-22.

---

[1] All names of minors are redacted in accordance with Plaintiff's Text Production Redaction Key, Ex. 26.

[2] Despite the fact that Jane's parents were aware that there was underage drinking at their home on the night of the party, and Jane herself referred to the party as a drinking party, Plaintiff and her parents brought a lawsuit against Brunswick School in the State Court of Connecticut alleging, among other things, that Brunswick's headmaster had defamed them by stating the obvious: that it was, in fact, a drinking party.  <u>See</u> Docket <u>Jane Doe, John Doe and Mary Doe v. Brunswick School, Inc.</u>, Conn. Super. Ct., No. X06-CV18-50249730-S.

### B.  **The Alleged Assault in the Pool House**

18.     Jane invited her friend Peter Roe to the pool party.  Ex. 1, J. Doe Depo. at p. 65; l.

12 - p. 66, l. 2.  At the time, Peter Roe was one of Jane's friends, and she had a "crush" on him.

Ex. 1, J. Doe Depo. at p. 67, l. 23-25; p. 70, l. 5-7.

19.     Peter Roe arrived at the pool party around 9:00 pm with two other friends, BW

Student 6 and BW Student 7.  Ex. 1, J. Doe Depo. p. 65, l. 12-17.  All three boys attended

Brunswick School.  Ex. 1, J. Doe Depo. at p. 80, l. 6-8.

20.     Jane had text communications with Peter Roe prior to the pool party in which they

discussed hiding alcohol in his backpack when he arrived so that Jane's parents would not see it.

See Ex. 26, P0893.

21.     Peter Roe drank openly from a bottle of whiskey and was intoxicated at the pool

party.  Minor 14 Statement, Ex. 17 at TOG-000675-000676; BW Student 5 Interview, Ex. 18 at

TOG-000665; Ex 1, J. Doe Depo p. 57, l. 4-5.

22.     There were conflicting witness statements about an alleged altercation between

Peter Roe and Jane Doe's brother that may have occurred in the pool area hot tub.  See Ex. 18,

Case Incident Reports at TOG-000649; TOG-000651; TOG-000655; TOG-000658, TOG-

000665; TOG-000666; TOG-000676; see also Ex. 17, witness statements at TOG-000156; TOG-

000158; TOG-000161; TOG-000165-000166.

23.     Peter needed to sober up, so two other Roe friends, BW Student 3 and BW

Student 5, him to the pool house bathroom to try and get him to throw up.  Ex. 1, J. Doe Depo. at

p. 76, l. 20 - p. 77, l. 7.  Minor 14 Statement, Ex. 17, TOG-000676; Case Incident Report Ex. 18

at TOG-000665; BW Student 3 Statement, Ex. 17 at TOG-000176.

24.     Jane went into the pool house to check on Peter Roe. Ex. 1, J. Doe Depo. at p. 80; l. 12-18; J. Doe Statement, Ex. 17 at TOG-000156.  When Jane entered the pool house, BW Student 3 was in the bathroom with Roe and BW Student 5 was outside the bathroom because a parent was there to pick him up.  Ex. 1, J. Doe Depo. p. 82, l. 14-20.

25.     Doe was in the bathroom where Roe's friend, BW Student 3, was trying to get Roe to throw up.  Ex. 1, J. Doe Depo. at p. 85; l. 9-14; BW Student 3 Statement, Ex. 17 at TOG-000176.

26.     Peter's friend, BW Student 3, left the bathroom, and Jane was left alone with Roe for somewhere between 5 and 15 minutes.  Ex. 1, J. Doe Depo. at p. 86, 14 - p. 87, l. 13; BW Student 3 Statement, Ex. 17 at TOG-000176.

27.     At some point while they were alone in the bathroom, Jane Doe claims that she was sexually assaulted by Peter Roe.  Jane's Statement, Ex. 17, TOG-000156-000157; arrest warrant application, Ex. 22 at p. 1, TOG 000948.

28.     Roe's friend, BW Student 3, returned to the bathroom, and Doe exited the bathroom.  Ex. 1, J. Doe Depo. at p. 88, l. 6-22; BW Student 3 Statement, Ex. 17 at TOG-000176.

29.     Immediately upon exiting the bathroom Jane described what occurred as "weird" to her remaining party guests.  Ex. 1, J. Doe Depo. at p. 89, l. 22 - p. 90, l. 1.

30.     Jane Doe, Peter Roe and a small group of friends, BW Student 3, BW Student 6, BW Student 7, Minor 14 then waited by the pool area for an Uber to arrive, eventually walking to the front of the home to meet the Uber.  Ex. 1, J. Doe Depo. at p. 93; l. 18-24; p. 95, l. 21-23. See also Case Incident Reports, Ex. 18 at TOG-000635, TOG-000669, TOG-000676-000677.

31.     Mother Doe and another parent were also standing in the driveway right next to Jane and her friends while they waited for the Uber.  Ex. 1, J. Doe Depo. at p. 98, l. 20-25.

32.     Peter Roe and his two friends, BW Student 7 and BW Student 6, left in the Uber. Ex. 1, J. Doe Depo. at p. 104, l. 1-2; Ex. 17, Minor 14 Statement at TOG-000162, BW Student 3 Statement at TOG-000176; Ex. 18, Case Incident Report at TOG-000635.

33.     That same evening, shortly after the alleged assault, Jane communicated with one of the boys, BW Student 7, who brought Peter to his house, asking if they needed anything and expressing concern for Peter's well-being.  Ex. 26, P999-P1000.

34.     The day after the alleged incident Jane Doe attended the Governor's Ball, an all-day concert in New York City, with friends, where she saw Peter Roe.  Ex. 1, J. Doe Depo. at p. 121, l. 4-8; p. 136, l. 14-17; p. 244, l. 3-9.

**C.  The Days Following the Alleged Assault**

35.     In the days that followed her party, Plaintiff confided in some of her friends about the incident in the pool house, using varying descriptions to describe what had occurred.  See text messages at Par. 36-38.

36.     On the morning after the party, Jane texted two friends, Minor 12 and Minor 13, telling them that Peter had made comments expressing his love for her, but omitting that any sexual assault had occurred.  Ex. 26 at P1003-1005; P1066-1068.

37.     Doe also confided in her friend, Minor 12, that she never liked anyone more in her life than she liked Roe.  Ex. 26, P1011-P1012.

38.     In other instances, Doe texted other friends, Minor 13, Minor 11, Minor 10, using the words "fingered", rape, and sexual assault to describe what allegedly occurred between her and Roe.  See Text Messages, Ex. 26:  P1077 ("I got fingered"); P0949 (I WAS FUCKING

SEXUALLY ASSAKTED (sic) AND ALMOST RAPED"); P0951 (WHAT TYPE OF GIRL

STAYS WOTH (sic) SOMEONE THAT RAPES SOMEONE"); P1080 ("Roe told

___apparently and THEYRE (sic) STAYING TOGETHER," "WHAT TYPE OF PERSON

STAYS WITH A RAPIST"); P0911 ("he managed to finger me"); P1112 ("needs to understand

that I was sexually assaulted").

39.    Approximately 375 pages of text messages were turned over by Doe during the

course of this litigation.  Only 10 pages of text messages were selected by Jane Doe and turned

over to the GPD.  None of the text messages described herein were disclosed by Jane to the GPD

during the course of its investigation.  Ex. 1, J. Doe Depo. p. 47, l. 14 - p. 48, l. 22.

40.    Jane Doe, and her legal counsel, made the decision as to what communications

were "relevant" to the GPD investigation of the alleged assault and so which would be provided

to Det. Rondini.  Ex. 1, J. Doe Depo. at p. 288; l. 18 - p. 289, l. 8

### D.  The Peter Roe Investigation

41.    On July 26, 2016, Jane Doe disclosed the alleged assault to her GA counselor,

CZB.  See Ex. 17, Statement of CZB at TOG-000167; Ex. 18, Case Incident Report at TOG-

000639.  CZB then contacted Jane's parents.  Ex. 1, J. Doe Depo. at p. 228, l. 3-10.

42.    On that same day, Det. Krystie Rondini of the Greenwich Police Department

received a Department of Children and Families Report regarding the alleged sexual assault of

Jane Doe.  See DCF Report, Ex. 16, TOG-000745-000746; Ex. 22, Arrest Warrant App. at p. 2;

TOG 000948.

43.    Det. Rondini has been a member of the Greenwich Police Department since 2004.

Depo. of Krystie Rondini dated 3/19/19, Ex. 7 at p. 5, l. 23 - p. 6, l. 2.  She has been a detective

in the SVS Section since 2012.  Id. at p. 6, l. 13-21.

44.     Det. Rondini's supervisor is Sgt. Detective Brent Reeves.  Depo. of Krystie Rondini dated 3/19/19, Ex. 7, p. 7, l. 4-5.  As her supervisor, Sgt. Det. Reeves is involved in all the cases Rondini handles, and would read, review and discuss cases with her on a daily basis. Depo. of Krystie Rondini dated 3/19/19, Ex. 7 at p. 7, l. 14-22.

45.     Jane Doe was represented by Attorney Audrey Felsen during the course of the GPD investigation into her allegations.  Ex. 1, J. Doe Depo. at p. 266, l. 25 - p. 267, l. 3. Beginning no later than August 23, 2016, Jane Doe was also represented by Attorney Meredith Braxton as well.  See Doc. 46 at Ex. A.

46.     On July 28, 2016, Mother and Father Doe came to the GPD and met with Rondini where she discussed how the investigation would proceed.  See Ex. 18, Case Incident Report at TOG-000646.

47.     Jane Doe told a friend, Minor 11, that members of the GA administration, MK, TS, and CZB, had told Jane that four Greenwich Academy girls are sexually assaulted a year, but that these girls they don't have the courage to go to the police, and that GA needed Jane to help change that.  See Text Mess. Ex. 26 at P0988.  See also Ex. 1, J. Doe Depo. at p. 497, l. 14 - p. 498, l. 3.

48.     Neither MK, TS, nor CZB ever told Doe that four Greenwich Academy students are sexually assaulted each year.  See Affidavits of MK, para. 5-8 (Ex. 27), TS, para. 5-7 (Ex. 28), and CZB, para. 4-6 (Ex. 29).

1.  The First Interview

49.     Det. Krystie Rondini came to Plaintiff's home on August 2nd to take Doe's statement to the police.  Ex. 1, J. Doe Depo. at p. 245, l. 24 - p. 246, l. 5; see written statement of

Jane Doe dated Aug. 2, 2016, Ex. 17, TOG-000156-000157; see also transcription of Jane Doe Interview dated August 2, 2016, Ex. 19, TOG-000793-000985.

50.     Plaintiff's parents were home while Det. Rondini took the statement, and CZB as well as Det. Rondini sat with Jane while she gave the statement.  Ex. 1, J. Doe Depo. p. 247, l. 6-9; p. 248, l. 9-11.

51.     While Jane Doe had previously described the incident in the pool bathroom to others as rape or sexual assault, see supra at ¶ 38, at no time during that first interview did Jane Doe tell Rondini that she was raped or sexually assaulted, or that Peter Roe's finger had entered her vagina at any point.  Ex. 1, J. Doe Depo. p. 257, l. 9-23; p. 258, l. 25 – p. 259, l. 14; see transcription of Jane Doe interview dated the August 2, 2016, Ex. 19 at p. 7, TOG-000979; see written statement of Jane Doe, Ex. 17 at p. 2, TOG-000157.

52.     On August 1, 2016, Jane Doe's psychologist had provided Jane with the legal definitions of sexual assault and rape.  See Ex. 30, email from Stiritz to Doe Family dated 8/1/16.

53.     At no time did Jane Doe reach out to Det. Rondini after she gave her statement to try to clarify or add more details.  Ex. 1, J. Doe Depo. at p. 264, l. 9-12.

54.     Jane Doe provided Det. Rondini the names of people that had attended her party or that she thought Det. Rondini should speak with about the incident.  J. Doe Depo at p. 266, l. 2-5; see transcription of Jane Doe interview dated November 17, 2016, Ex. 20 at p. 2, l. 1 – p. 4, l. 13, TOG-000987-000989.

55.     Jane Doe's attorney, Audrey Felsen, provided information and communicated with Det Rondini regularly.  See Ex. 24, emails from Audrey Felsen to Krystie Rondini dated Sept. 26 and 29, 2016 (TOG-000513-000515) and Nov. 16, 2016 (TOG-000621-000622).  In Attorney Felsen's own words, Det. Rondini called Felsen more than Felsen called Rondini

during the investigation.  See 11/17/16 Transcript of Second Interview, Ex. 20 at p. 23, l. 11;
TOG-001008.

56.     The Doe family also provided the GPD with the names of witnesses they believed
were pertinent to the investigation, and summaries of information they expected from those
witnesses.  See Ex. 24, email exchanges between Rondini, Audrey Felsen and the Does.

57.     At the request of the Doe family, Jane Doe's treating psychologist, Dr. Stiritz,
sent a letter to Det. Rondini detailing the events of the incident as relayed to her by Jane.  See
Ex. 21, September 1, 2016 letter from Stiritz to Rondini.

58.     The GPD never spoke to Peter Roe, only his attorney, who informed Det. Rondini
that his client was exercising his constitutional right to not speak to the police.  Ex, 7, Rondini
Depo. 3/19/19 at p. 73; l. 13-15; 6/25/20 p. 59, l. 11-13; Ex. 18, Case Incident Report at TOG-
000633.

2.   Inconsistencies Arise in the Investigation

59.     The GPD interviewed approximately 19 people, including the Doe family
members.  See Ex. 18, Case Incident Reports, TOG000632-000687.

60.     During the course of the police investigation, these individuals gave differing
accounts of what Jane Doe had told them about the alleged incident.  Ex. 7, Rondini Depo.
3/19/19 p. 132; l. 3-6.

61.     First, there were inconsistencies as to whether Peter Roe had digitally penetrated
Doe versus just placing his hand inside her bikini bottom.[3]  Ex. 7, Rondini Depo. 3/19/19 p. 132,
l. 7-10.

_____

[3] The criminal charge is different depending on whether a finger is actually inserted into the vagina or not.  Ex. 7,
Rondini Depo. 3/19/19 p. 132, l. 11-21.

62.     When Det. Rondini spoke with Jane on Aug. 2nd, Jane did not say that Peter Roe inserted his finger into her vagina.  Ex. 7, Rondini Depo. 3/19/19 p. 133, l. 4-12; p. 135, l. 3-5; see also transcript of Aug 2, 2016 interview, Ex. 19 at p. 7, l. 9-21, TOG-000979; Ex. 22, Arrest Warrant App. at p. 11, TOG-000958.

63.     This was inconsistent with what CZB swore Jane had told her, and what witnesses disclosed to Det. Rondini during the course of the investigation.  See Ex. 17, CZB Statement at TOG-000167-000171; Ex. 18, Case Incident Report at TOG-000639-000641; Ex. 7, Rondini Depo. 3/19/19 at p. 135, l. 6-10.  See Infra at ¶ 64-67.

64.     One of Jane's friends, Minor 14, who attended the pool party provided a sworn statement that on the night of the pool party Jane had told her that Peter attempted to "hook up" with her numerous times and she pushed him off and said no, and that Jane told her she was proud of herself for not giving in to Peter because she liked him.  Ex. 17, Minor 14 Statement at TOG 000160-000163; Ex. 18, Case Incident Report at TOG-000677.

65.     Two of Doe's friends, BW Student 3 and GA Student 1, also provided sworn statements to the GPD that a few days after the pool party Jane had told them that Roe had just "grazed" her over the swimsuit and laughed about the incident.  See Ex. 17, BW Student 3 Statement at TOG-000175-000177; GA Student 1 Statement at TOG-000174; Ex. 18, Case Incident Reports at TOG-000656-000567, TOG-000661-000663.

66.     Another friend of Jane's, SG, told Det. Rondini that the day after the party Doe told her that Roe had attempted to take off her bottoms and that she told him to stop.  See Ex. 18, Case Incident Report at TOG-000679.

67.     Yet another friend, BW Student 6, indicated to Det. Rondini that Jane had told her that Roe had tried to take her top off and wanted to have sex with her.  See Ex. 18, Case Incident

Report at TOG-000682.  <u>See</u> also Ex. 18, at TOG-000652 and Ex. 25 at TOG-000773, another

friend, Minor 10 told Det. Rondini that Jane Doe told  her that "he [Roe] managed to finger

me"); Ex. 18 at TOG-000664, another friend, told Det. Rondini that Jane Doe told her that Roe

"made advances towards her and then forced himself on her and put his fingers inside her

vagina").

68.    Inconsistences also arose during the investigation as to whether Jane Doe had

been drinking the night of the pool party, and whether she had provided alcohol to attendees.

Jane Doe's psychologist had informed Det. Rondini that Doe said she had not been drinking on

the evening of the pool party.  <u>See</u> Ex. 21, Sept. 1, 2016 letter from Stiritz to Det. Rondini.

69.    Jane Doe's statement to her psychologist was inconsistent with what numerous

individuals disclosed during the GPD investigation.  <u>See</u> Ex. 17, witness statements: TOG-

000160-000161 ("[Jane] seemed to have been drinking a deep reddish drink, which I am not sure

whether or not it was alcohol…the majority of the drinks were alcohol and other kids were

definitely drinking as well."), TOG-000175 ("…alcohol was consumed by minors at the party.");

Case incident reports: TOG-000635 ("…he did see [Jane] and other guests drinking

alcohol…some kids brought alcohol, but that [Jane] had provided some of the alcohol as

well…[Jane's] older brother…was aware."), TOG-000643 ("…majority of the guests at the party

were drinking alcohol."), TOG-000648 ("…there was alcohol at the party and that most

everyone seemed to be drinking and were already 'tipsy'"…guests were drinking some type of

hard apple cider, Smirnoff Ice and a large bottle of unknown hard alcohol."), TOG-000651

("there was alcohol at the party and most of the guests were drinking…believes [Jane] was

drinking as well."), TOG-000668 ("[Jane] related she did have a few sips of a beer that night."),

TOG-000685 (…a lot of guests were drinking alcohol…[Jane] was offering alcoholic drinks to the guests.").

70.     Finally, there were also inconsistencies as to how Jane was able to leave the bathroom after the alleged assault had occurred.  In her statement to the police, Jane swore that she held Roe up against the bathroom wall until Roe's friend came back to the bathroom.  <u>See</u> Ex. 17, Jane Doe Witness Statement, TOG 000157.  Roe's friend, BW Student 3, however, swore that when he returned to the bathroom, Peter was on his knees with his head in the toilet attempting to vomit, and furthermore, that Jane was calm and greeted him normally.  <u>See</u> Ex. 17, BW Student 3 Statement at TOG 000176, and Ex. 18, Case Incident Report at TOG-000661.

3.   <u>The Second Interview</u>

71.     Jane Doe was interviewed a second time by Det. Rondini on November 17, 2016 at the GPD.  Ex. 1, J. Doe Depo at p. 274, l. 5-19; <u>see</u> Jane Doe Video Interview dated November 17, 2016, Ex. 20 at TOG-000986-001025; <u>See</u> also Ex. 18, Case Incident Report at TOG-000668-000669.

72.     Det. Rondini re-interviewed Jane Doe so that she could clarify the inconsistencies that had come up during the police investigation. Ex. 1, J. Doe Depo. at p. 275; l. 20-24; <u>see</u> also <u>see</u> Jane Doe Video Interview dated November 17, 2016, Ex. 20 at p. 2, TOG-000987.

73.     Specifically, Det. Rondini needed to clarify whether Roe's finger entered Doe's vagina and whether or not Jane had been drinking the evening of the pool party.  Ex. 7, Rondini Depo. 3/19/19 at p. 142; l. 3-6.

74.     Jane Doe's attorney and mother were present with her at the second interview. Ex. 1, J. Doe Depo. at p. 274, l. 20-22.

75.     During the second interview, Det. Rondini asked Jane Doe if Peter Roe's finger went inside her vagina.  See Ex. 20, 11/17/16 Transcript at p. 9, l. 24 - p. 10, l. 14, TOG-000994-000995.

76.     Again, Jane reiterated that his finger did not go insider her vagina.  See Ex. 20, 11/17/16 Transcript at p. 10, l. 10-14, TOG-000995 ("So, you're saying it didn't actually go inside of you…Not exact—like not—it didn't go inside, but it was like right there—not to….Touching?  Would you say like skin-to-skin contact…..Yeah.")

77.     Det. Rondini also informed Jane that witnesses interviewed during the investigation had said that Jane had been drinking at the pool party, and asked Jane to clarify whether she had been drinking.  See Ex. 20, 11/17/16 Transcript at p. 5, l. 11-14, TOG-000990.

78.     During that second interview Jane admitted that she had a few sips of beer.  Ex. 20, 11/17/16 Transcript at p. 5; l. 11-23, TOG-000990.

79.     This was in direct contravention to Doe's psychologist who represented to the GPD that Jane told her that she had not been drinking the night in question.  See Ex. 21, Sept. 1, 2016 Stiritz letter.[4]

**E.  The State's Attorney Makes the Determination Not to Prosecute Peter Roe**

80.     On Dec. 27, 2016, upon completion of her investigation, Det. Rondini transmitted a twenty-one-page arrest warrant application for Peter Roe to the State's Attorney Office.  See Ex. 18, Case Incident Report at TOG-000686; Ex. 22, Arrest Warrant App. (TOG-000946-000967).

---

[4] It also contradicts other witness statements made to the police, see ¶ 69.  See also Ex. 26, text messages P0935-P0936.  It contradicts what Brunswick Headmaster, TP, was told early by two party attendees and Roe, at least as to what is reflected in TP's cotemporaneous notes of the conversation.  See Ex. 13, TP Depo. at p. 212, l. 25-p. 214, l. 24; see also TP Notes, WICK-302-305 (TP Depo. Ex. 6).

81. The Arrest Warrant Application for Peter Roe was in good form when it was submitted to the Assistant State's Attorney.  Ex. 11, Capozzi Depo. at p. 37, l. 8-10.

82. If the State's Attorney felt that any information was missing from the Roe Arrest Warrant Application, he would have asked for more information from the police.  Ex. 11, Capozzi Depo. at p. 37, l. 11-15.

83. On January 19, 2017, the Assistant State's Attorney, John Capozzi, informed the GPD that he did not "find that probable cause exist[ed] to charge the accused [Peter Roe] with a crime.  See Ex. 23, Capozzi email to Det. Rondini dated 1/19/17; see also Ex. 18, Case Incident Report at TOG-000638.

84. Upon learning of that decision, Jane Doe's parents requested a meeting with State's Attorney Colangelo at the Stamford Courthouse.  See Ex. 2, Father Doe Depo. (Conn. Super.) at p. 151, l. 3-15.

85. The Doe's attorney, Audrey Felsen, was also present at the meeting and requested that the State's Attorney reconsider the decision not to charge Peter Roe; however, he refused. See Ex. 2, Father Doe Depo. (Conn. Super.) at p. 153, l. 17-23.

86. During that meeting, State's Attorney Colangelo told the Does and their attorney that Jane was inconsistent in her testimony to the GPD.  Ex. 3, Father Doe Depo. (USDC) at p. 53, l. 17-19.

### F.  The GPD's Interactions with Brunswick During the Investigation

87. During the course of her investigation, Det. Rondini never spoke with anyone at Brunswick School regarding the GPD's investigation into Jane Doe's allegations.  Ex. 7, Rondini Depo. 3/19/19 at p. 30, l. 9-15.

88.     Det. Rondini never discussed Brunswick School with her supervisor, Sgt. Det. Reeves.  Ex. 7, Rondini Depo. 3/19/19 at p. 32, l. 1-3.

89.     TP, the headmaster at Brunswick School, never spoke to anyone at GPD about Jane Doe's allegations.  Ex. 13, TP Depo. p. 128, l. 1-6; p. 146, l. 17-18; p. 163, l. 20-21; p. 209, l. 13-14.

90.     MD retired from GPD in 2006 holding the rank of Captain.  Ex. 12, MD depo at p. 11, l. 4-9.  He is currently the Director of Security for Brunswick School.  Id. p. 15, l. 13-14.

91.     There was no exchange of substantive information between the GPD and Brunswick School during the course of the investigation into Jane Doe's allegations.  The only interaction the GPD had with Brunswick pertaining to the Doe investigation was limited to the following:

a)  In July or August 2016, MD called Brent Reeves and told him that Jane Doe's father had called Brunswick about the incident, and asked Reeves what he could tell him about the investigation.  Ex. 9, Reeves Depo. at p. 45, l. 5 - p. 46, l. 1.  Reeves provided no information to MD and told him that he could not tell him anything.  Id. at p. 46, l. 2-4.  Reeves never spoke to MD again or anyone else from Brunswick about Jane Doe's allegations or the investigation.  Id. at p. 50, l. 14-20.

b)  In August 2016, MD claims he reached out to GPD Det. Christy Girard.  While Det. Girard has no recollection of this conversation, the day after the call MD indicated that Det. Girard was evasive when he called, didn't have any details or information, gave him no information, and had actually been reassigned and was working the cold case unit in Rocky Hill at the time.  See Ex. 31, email between MD and TP dated August 6, 2016.  Det. Rondini never spoke to Det. Girard during the course of the Doe investigation.  Ex. 8, Rondini Depo. 6/25/20 at p. 119, l. 19-25.

c)  MD also reached out to Chief Heavey asking about the progress of the investigation.  See Ex. 10, Heavey Depo. at p. 49, l. 6-14.  See also Ex. 32, email from MD to Heavey dated Sept. 21, 2016.  These contacts with GPD were for the sole purpose of ascertaining what the procedural status of the investigation was.  No substantive information was transmitted or requested.  Brunswick wanted only to know if the investigation was nearing an end and if Roe was to be arrested.  Brunswick wanted to know this information so that it could prepare to remove

Roe from the school and arrange for him to attend school somewhere else.  See Ex. 12, MD Depo. at p. 62, l. 13 - p. 63, l. 10; p. 113, l. 24 - p. 115, l. 21; p. 124, l. 23 - p. 125, l. 8; p. 150, l. 9-20; Ex. 13, TP Depo. p. 55, l. 22 - p. 56, l. 20; p. 125, 11. 4-20; p. 152, l. 6 - p. 153, l. 4; p. 153, l. 20 - p. 154, l. 12; p. 160, l. 2-23; p. 163, l. 17 - p. 164, l. 3, p. 175, l. 22 - p. 176, l. 1; p. 192, l. 3-15; p. 197, l. 12-15; p. 204, l. 16-25; p. 209, l. 10-14; p. 211, l. 15 - p. 212, l. 4; p. 217, l. 24 - p. 218, l. 3.  Chief Heavey did not give MD any substantive information pertaining to the investigation.  Ex. 10, Heavey Depo. at p. 49, l. 10 - p. 50, l. 2.  Chief Heavey did not speak to anyone else from Brunswick School about the Doe investigation.  Ex. 10, Heavey Depo. p. 50, l. 3-6.

92.    There is no evidence that anyone from Brunswick ever asked the GPD for special treatment of Roe or any other Brunswick student.  There is no evidence from which any such special treatment can be reasonably inferred.  See Ex. 13, TP Depo. at p. 110, l. 11-p. 111, l. 7; p. 111, l. 24 - p. 112, l .2; p. 113, l. 14 - p. 114, l. 3; p. 137, l. 11-16; p. 146, l. 15-18; p. 165, l. 25 - p. 166, l. 13; p. 218, l. 4-11.

### G.  The Adequacy of the GPD Investigation & Arrest Warrant Application

93.    Dr. Richard Hough was retained by Defendants to review the adequacy of the Doe investigation and arrest warrant application.  Dr. Hough is a nationally recognized expert in the field.  See Ex. 33, Affidavit of Richard M. Hough, Sr., Ph.D. (Appendix B to attached Report).

94.    Dr. Richard Hough was retained by Defendants to review the adequacy of the Doe investigation and arrest warrant application.  Dr. Hough is a nationally recognized expert in the field.  See Ex. 33, Affidavit of Richard M. Hough, Sr., Ph.D. (Appendix B to attached Report).

95.    Dr. Hough's conclusion is that the Roe investigation and the arrest warrant application were handled in a reasonable and appropriate manner that accorded with customary

law enforcement practice in cases involving allegations of battery or sexual assault.  See Ex. 33, Hough's Report, p. 5, ¶1 – p. 7, ¶13. [5]

96.     Dr. Hough confirmed the adequacy of Rondini's investigation of the Doe matter and her arrest warrant submission in his report and, again, repeatedly, during his deposition by Plaintiff.  Id.; Ex. 14, Hough Depo., Vol. 2 at p. 11, l. 6 - p. 14, l. 7; p. 14, l. 21 – p. 16, l. 4 (the documents and professional materials reviewed in preparing the Hough opinion), Ex. 14, Hough Depo., Vol. 2 at p. 41, l. 18 – p. 44, l. 2; p. 51, l. 20 – p. 52, l.,6; p 52, l. 20 – p. 53, l. 6; p. 56, l. 25 – p. 57, l. 6; p. 59, l.22 – p. 60, l. 4.

97.     Dr. Hough specifically found that the steps Det. Rondini took to interview those witnesses who were available were sufficient for the type of investigation represented by the Jane Doe case.  Ex. 14, Hough Depo., Vol. 2, p.19, l. l. 18 – p. 21, l. 6; p. 41, l. 18 -p.42, l.1

## H.  Plaintiff's Collusion & Policy Evidence

98.     When this case was filed, the only evidence of a GPD policy favoring Brunswick students to Plaintiff's, or anyone else's, detriment were community gossip, the fact that Brunswick's security department was staffed by retired GPD officers, and Father Doe's belief that Brunswick's Headmaster had conveyed the substance of an email Father Doe sent to him about the alleged assault to the GPD.  See Ex. 3, Father Doe Depo. at p. 34, l. 12-21; p. 47, l. 2-8; see Ex. 6, Braxton Depo. at p. 34, l. 9-17; 37, l. 5-10, p. 50, l. 13 – p. 51, l. 6.

99.     At no time in the August 19, 2016 conversation did Sgt. Det Reeves tell Father Doe or Jane Doe's counsel to withdraw the case against Peter Roe.  Ex. 3, Father Doe Depo. at p.

---

[5] Dr. Hough's report was attached to Defendants' Disclosure of Expert Witness as Exhibit A thereto; was introduced by Plaintiff at the Hough deposition as Exhibit 3 (Hough Depo. Vol 1, at p. 114, l. 5-7); and incorporated into the Hough Aff. at ¶4, which is attached as Ex. 33 to this statement.

44, l. 8-10; p. 30, l. 1 – p. 33, l. 3; p. 44, l. 2 - p. 45, l. 13.  Ex. 9, Reeves Depo., p. 164, l. 13 – p.

178, l. 5.  Ex. 6, Braxton Depo., p. 32, l. 16 – p. 33, l.25.

100.    During the course of the investigation, Rondini asked Jane Doe to provide her

with relevant text messages.  Ex. 8, Rondini Depo 6/25/20 at p. 36, l. 13-16, 25; p. 37, l. 1-18.

101.    In 2014, the GPD was notified of an alleged sexual assault on a then middle-

school aged girl by a group of middle-school aged Brunswick School boys.  (the "RW Case").

See Ex. 35, Case Incident Report at TOG-001034.

102.    The State's Attorney requested that the parents in the RW Case put in writing

their request the matter be closed and that criminal charges not be sought against the concerned

boys.  See Ex. 5, Depo. of Christy Gerard at p. 98, l. 7-11; See also Case Incident Report, Ex. 35

at TOG-001043.

103.    The existence of a video recording of a second alleged 2014 sexual assault has

never been established.  See Defendants' Objections and Responses to Plaintiff's Fourth Request

for Production of Documents, response to RFP No. 2, Ex. 36.

104.    Plaintiff's evidence of this alleged second 2014 sexual assault was the testimony

of SY who allegedly saw a cell phone video of such an incident on her daughter's phone,

involving an unidentified young woman and a group of young men who her daughter told SY

that she, the daughter, "assumed" were from Brunswick School.  Ex. 15, SY Depo. at p. 23, l.

10-13; p. 23, l. 23-p.24, l. 7; p. 25, l. 1-3, 7-9, 13-15; p. 24, l.20-p. 26, l. 4.[6]

105.    In 2015, the GPD investigated an alleged assault at the Arch Street Teen Center.

See Ex. 34, CFS 1500003631, attached as Ex. 1 to the Aff. of Gregory Hannigan.  The incident

---

[6] SY's testimony regarding her daughter's assumption as to who these young men were is inadmissible hearsay
testimony.  Furthermore, the "assumption" itself, would not allow inferences favoring Plaintiff's case to be drawn by
reasonable jurors.

involved a seventeen-year old Greenwich High School Student and an eighteen-year old Brunswick School student.  See id.  During the course of the investigation, the GPD learned that it was the Greenwich High School student, not the Brunswick student, that had started the fight.  See Id. at p. 11 of the document.  No criminal action was taken.  Id.

106.    Det. Christy Girard was not working in the SVS section of the GPD when the Doe case was investigated by the GPD, and played no role investigating the charges against Peter Roe.  She was handing cold case homicide matters and was largely working out of Rocky Hill, CT.  Ex. 5, Christy Girard Depo. at p. 26, l. 1-6; p. 70, l. 12-22; p. 188, l. 16-24; p. 193, l. l. 3-7; p. 199, l. 16-22; p. 202, l. 24-p. 203, l. 6.

THE DEFENDANTS,

By:     /s/ Robert B. Mitchell
        Robert B. Mitchell (ct02662)
        Jessica A. Slippen (ct25765)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        203-873-0240
        203-873-0235 (fax)
        rbmitchell@mitchellandsheahan.com

        COUNSEL FOR DEFENDANTS

## **CERTIFICATION**

I HEREBY CERTIFY that on this date, August 24, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ Robert B. Mitchell*
Robert B. Mitchell (ct02662))
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
rbmitchell@mitchellandsheahan.com