## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | Case No. 3:18-cv-01322-KAD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF GREENWICH, et al | ) | |
| | ) | |
| Defendants. | ) | August 24, 2020 |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, Town of Greenwich, Sgt. Det. Brent Reeves ("Reeves"), and Det. Krystie Rondini ("Rondini"), submit this memorandum in support of their Motion for Summary Judgment requesting the Court to dismiss the complaint brought by Plaintiff, Jane Doe, in its entirety, with prejudice.

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

This case "began" with a June 2016 pool party at Plaintiff's home.[1]  Plaintiff was completing her sophomore year at Greenwich Academy ("GA") at the time.  During the course of the party, Plaintiff claims that a drunken Brunswick School student, Peter Roe, sexually assaulted her.  In late July 2016, Plaintiff told her GA counselor about the alleged assault.  GA

---

[1] As the Court has stated, the events of June 3, 2016 are irrelevant to the claims in this case because the jury is not going to be asked to decide whether, in fact, Doe was sexually assaulted by Roe.  See Doc. No. 269, at p. 4. Defendants discuss the events of that evening only to the extent relevant to the police investigation into Jane Doe's complaint as this serves as the basis of Plaintiff's complaint in this action.

reported the alleged assault to Connecticut's Department of Children and Families, which in turn notified the Greenwich Police Department ("GPD") of Plaintiff's allegations.

On August 2, 2016, Plaintiff filed a GPD criminal complaint against Peter Roe.  GPD's Special Victim's Section ("SVS") was tasked to investigate the case and within the SVS, Defendant Detective Krystie Rondini was assigned the investigation.  Rondini was, in turn, supervised by Defendant Sergeant Detective Brent Reeves.  At the conclusion of her investigation Detective Rondini applied for an arrest warrant for Peter Roe.  The State Attorney's Office determined there was not probable cause to pursue the case against Mr. Roe, and declined to sign off on the arrest warrant application.  When confronted by Plaintiff's parents about this, State's Attorney Richard Colangelo said that Plaintiff's testimony was inconsistent during the police investigation of her claims.

Unhappy with the State's Attorney's decision, Plaintiff filed this lawsuit in August 2018.  The bulk of Plaintiff's charges were dismissed through Defendants' Rule 12(b)(6) motion.  The sole remaining legal claim after the Court's Rule 12(b)(6) ruling [Doc. 115, October 1, 2019] is whether Plaintiff's equal protection rights were violated as a result of a GPD policy of colluding with the Brunswick School to protect Brunswick students from bearing responsibility for their criminal acts.[2]  See Doc. No. 115, at 7-10; see also, Doc. No. 173, at 2 -3; Doc. No. 167, at 2.

To make out her case, Plaintiff must show that Defendants submitted an arrest warrant application to the State's Attorney deliberately designed to avoid an arrest warrant being issued against Peter Roe; and that Defendants did that pursuant to a GPD policy of colluding with the Brunswick School in order to protect Brunswick students from suffering the consequences of their criminal acts.

---

[2] The only remaining claim is Plaintiff's Equal Protection claim of the type recognized in Myers v. County of Orange, 157 F.3d 66 (2d. Cir. 1998).  Doc. #115 at 10.

When Plaintiff commenced this lawsuit, her allegations of collusion were based on three beliefs: first, that because Brunswick's internal security department staff included retired GPD officers there must be collusion between the two separate entities; second, Town "gossip" heard at dinner parties, cocktail "get togethers" and church meetings; and third, because Father Doe believed that an email he sent to the Brunswick School Headmaster, explaining the facts as the Doe family viewed them, got through to the GPD.[3]

Now, after two years of contentious litigation, over 30 fact and expert witness depositions, Defendants' answers to interrogatories and the production of several thousand documentary pages, Plaintiff's claims of collusion remain unsupported by anything besides Brunswick's Security Department's staffing, that Town "gossip", and Father Doe's unsupported beliefs regarding his email to Brunswick.[4]  There is no evidence at all to support Father Doe's belief that any email he sent to Brunswick was ever seen by any Defendant.

The alleged "facts" Plaintiff points to in support of her claim are all fantastical, meaningless or, at best, wholly immaterial.  No Defendant policy exits to protect Brunswick students from the law; no such policy has ever existed.  Plaintiff's narrative is a fiction.  And it is vital to remember that even if the Doe criminal investigation could be criticized, even if one could argue that the arrest warrant application might have been more artfully presented (and Defendants maintain that no such criticism is valid), that is not the point: The issue is whether a reasonable jury could draw an inference from all of the Plaintiff's nit and pics that there is a

---

[3] Ex. 3, Father Doe Depo. at p. 34, l. 12-21; p. 47, l. 2-8; See Ex. 6, Braxton Depo. at p. 34, l. 5-17; 37, l. 5-10, p. 50, l. 13 – p. 51, l. 6.

[4] There is no evidence that the email was ever sent to GPD and TP testified that he had never spoken to anyone at GPD.  See Ex. 13, TP Depo. at p. 160, l. 16 - 23; Ex. 9, Reeves Depo. 3/21/19, p. 57, l. 21 – p. 58, l. 7.

policy of collusion between GPD and Brunswick to protect Brunswick students form suffering the consequences of their criminal conduct.

If discovery in this case has accomplished anything, it has been to show that Det. Rondini's investigation into Plaintiff's sex assault claim was professional and carried out in full accord with accepted, customary law enforcement best practices.  No adverse criticism can be levelled against Det. Rondini, her supervisor Sgt. Det. Reeves, or the GPD as a whole as to how they handled Doe's complaint.  There is no evidence in this case from which any reasonable jury could infer the existence of any GPD policy to protect Brunswick students from criminal liability, and, consequently, the Defendants' Motion for Summary Judgment should be granted.

## II.    FACTUAL SUMMARY

Plaintiffs have vigorously pursued this case.  They have left no stone unturned, and the result has been an almost blinding compilation of factual detail in a record drawn from over 30 depositions, dozens of interrogatories and literally thousands of pages of disclosed documentary material.  The full scope of resulting facts is explored in Defendants' Rule 56(a)1 Statement.  A narrative summary is given here of the most salient bits of information.  Starting with the incidents of June 3, 2016, the day when this tale began.

Jane Doe hosted a pool party at her home on June 3, 2016.  Defendants' Rule 56(a)1 Statement ¶¶ 1-17.[5]  Among the later attendees was Peter Roe.  Defendants' Rule 56(a)1 Statement ¶¶ 18, 19.  Peter Roe attended the Brunswick School ("Brunswick"), an all-boys academy in Greenwich, CT. Defendants' Rule 56(a)1 Statement ¶¶ 5, 19.  Jane Doe attended

---

[5] DEFENDANTS' RULE 56(a)1 STATEMENT OF UNDISUPTED MATERIAL FACTS, provides record references for each and every asserted undisputed factual statement it contains.  For purposes of this narrative summary, Defendants rely upon the record citations contained in the Rule 56(a)1 Statement and will cite to the relevant paragraphs of that Statement, abbreviating the documents designation as "Defendants' Rule 56(a)1 Statement".

4

Greenwich Academy ("GA"), an all-girls school in Greenwich that is closely affiliated with Brunswick School. Defendants' Rule 56(a)1 Statement ¶¶ 2, 3, 6. Most of the pool party attendees were students at GA or Brunswick. Defendants' Rule 56(a)1 Statement ¶ 4. Many of the party attendees were drinking alcoholic beverages, some that they had sneaked in and some that they claimed were served by Jane Doe. Defendants' Rule 56(a)1 Statement ¶¶ 10-15, 21, 69.

During the course of that gathering, Jane ended up alone in the pool house with an intoxicated Peter Roe. Defendants' Rule 56(a)1 Statement ¶¶ 24-28. Jane Doe alleges that Peter Roe sexually assaulted her in the pool house. Defendants' Rule 56(a)1 Statement ¶¶ 27, 28, 41. At the end of July 2016, Jane Doe filed a criminal complaint against Roe with the Defendant GPD. Defendants' Rule 56(a)1 Statement ¶¶ 42, 49-80. The case was assigned to Defendant Det. Krystie Rondini to investigate. Id. She was supervised at the time by Defendant Sgt. Det. Brent Reeves. Defendants' Rule 56(a)1 Statement ¶ 44.

During the course of the investigation, Rondini interviewed some 19 witnesses. Defendants' Rule 56(a)1 Statement ¶ 59. Rondini first interviewed Plaintiff at her home in the presence of the GA Counselor to whom Doe had reported the alleged assault. Defendants' Rule 56(a)1 Statement ¶¶ 49-58. Rondini later interviewed Plaintiff a second time in the presence of one of Doe's personal attorneys. Defendants' Rule 56(a)1 Statement ¶¶ 71-79.[6] The second interview had been occasioned by certain inconsistencies that had arisen within and around Plaintiff's version of the June 3rd events. Defendants' Rule 56(a)1 Statement ¶ 60. First, was the question of whether Jane Doe had been drinking alcohol and second was the issue of where and how Roe had touched Doe's body. Defendants' Rule 56(a)1 Statement ¶¶ 60-71.

---

[6] Doe was represented by two lawyers during the investigation; Ms. Audrey Felsen and Ms. Meredith Braxton. Ms. Felsen accompanied Plaintiff to the second interview with Rondini. Defendants' Rule 56(a)1 Statement ¶ 45.

During her investigation, Rondini received correspondence from Jane Doe's psychologist stating that Jane Doe had told the psychologist that she had not been drinking on the evening of the pool party. Defendants' Rule 56(a)1 Statement ¶ 68. Other witnesses said that it was a drinking party and that Jane Doe had not only imbibed alcohol, but that she had provided it to her guests as well. Defendants' Rule 56(a)1 Statement ¶ 69. Jane Doe had also given varying reports of how/where Peter Roe had touched her. She had told some that he had inserted his finger into her vagina. Defendants' Rule 56(a)1 Statement ¶ 67. She had told others that he had grazed her inner thigh outside of her bathing suit bottom. Defendants' Rule 56(a)1 Statement ¶ 65. Det. Rondini wanted to give Doe a chance to clarify these points. Defendants' Rule 56(a)1 Statement ¶¶ 71-78. In that second interview, Doe told Rondini that Roe had not inserted his finger into her vagina, but made skin -to-skin contact with it. Defendant's Defendants' Rule 56(a)1 Statement ¶¶ 75-76. The second Rondini-Doe interview did not resolve the inconsistencies on those two points.

Det. Rondini prepared an arrest warrant application for Peter Roe's arrest and forwarded it to the State's Attorney's Office. Defendants' Rule 56(a)1 Statement ¶ 80. The State's Attorney declined to sign the application and send it to a judge for consideration. Defendants' Rule 56(a)1 Statement ¶ 83. When questioned later by Doe's parents, State's Attorney Colangelo confirmed that it was the inconsistencies in Jane's testimony to GPD that lead to the decision by the State's Attorneys' Office not to pursue an arrest warrant for Peter Roe. Defendants' Rule 56(a)1 Statement ¶¶ 84-86.

Jane Doe then sued the Defendants claiming, among other things, that the failure to obtain an arrest warrant was actually a result of collusion between the defendants and Brunswick to protect Brunswick students. Second Amended Complaint [Doc.46]. All claims other than this

last were dismissed by the Court in response to the Defendants' Motion to Dismiss. See Doc. No.

115.  Defendants deny any such wrongdoing, submit that the undisputed material facts belie

Plaintiff's claim, and ask that her case be dismissed, with prejudice.

## III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to

summary judgment if "there is no genuine issue as to any material fact and . . . the moving party

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether

summary judgment should be granted, the United States Supreme Court has explained that:

> [T]here is no issue for trial unless there is sufficient evidence
> favoring the nonmoving        party for a jury to return a verdict
> for that party . . .  If the evidence is merely colorable . . . or is not
> significantly probative . . . summary judgment may be granted.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)
> (citations omitted).

A court must grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 317 (1986)

(quoting Fed.R.Civ.P. 5(c)); Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993).

A fact is material when it "might affect the outcome of the suit under the governing law....

Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude

summary judgment.  Anderson, 477 U.S. 242 at 248.  A dispute regarding a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id.  If, after discovery, if the nonmoving party "has failed to make a sufficient showing

on an essential element of [its] case with respect to which [it] has the burden of proof," then

summary judgment is appropriate.  Celotex, 477 U.S. at 323.  The evidence that is relied upon by

the parties, however, must be ***admissible*** evidence. It cannot be supposition or speculation. It cannot be information that would be subject to exclusion under the evidentiary rules. Eisner v. Cardozo, 684 Fed. Appx. 29 (2d Cir. 2017); Kleeberg v. Eber, No. 16CV9517LAKKHOP, 2020 WL 4586904, *12 (S.D.N.Y. Aug. 10, 2020); Censor v. ASC Techs. of Conn., LLC, 900 F. Supp. 2d 181, 187 (D. Conn. 2012).

IV. **ARGUMENT**

   A. **Plaintiff's Equal Protection Claim Must Be Dismissed Because There Is No Evidence That Plaintiff's Rights Were Violated as a Result of a Policy of Collusion Between Defendants and Brunswick School.**

Only one claim remains in this case – plaintiff's allegation that her equal protection rights were violated as a result of a policy of collusion between defendants and Brunswick School to protect Brunswick students from the consequences of their criminal assaults on non-students. See Doc. No. 173 at p. 9. Plaintiff's sole remaining equal protection claim is based on the Second Circuit's ruling in Myers v. Cnty. of Orange, 157 F.3d 66 (2nd 1998), cert denied sub nom. Orange Cnty. v. Myers, 525 U.S. 1146 (1999) ("Myers"), where the Court concluded that a District Attorney's explicit policy of not accepting cross criminal complaints violated the equal protection rights of any party whose complaint was so rejected.[7] While this Court permitted Plaintiff's equal protection claim to proceed past the early 12(b)(6) stage under Meyers based on Plaintiff's allegations of an informal "policy or pattern" of collusion between the GPD and

---

[7] In Myers, the plaintiff challenged an explicit district attorney policy which acted as a blanket proscription against accepting or investigating criminal cross complaints. There, the police responded to a complaint of an assault purportedly committed by the plaintiff. The plaintiff, when interviewed, denied the assault and claimed that he himself was the victim of an assault by the original complainant. The police did not investigate the plaintiff's claim, accept his complaint or pursue his allegations, and instead, pursuant to the D.A.'s policy, prosecuted the plaintiff on the strength of the first complaint. The plaintiff was ultimately exonerated and brought an equal protection claim challenging the policy that had not allowed him to file a cross-complaint against his accuser. Doc No. 115 at p. 8.

Brunswick (Doc. No. 115 at p. 8-9), absent evidence of such a policy or pattern, Plaintiff's claim must fail.

Here, as the Court noted, unlike the situation in <u>Myers</u>, the Defendants deny that any such policy exists.[8]  Plaintiff's do not allege that any express, explicit GPD policy exists to protect Brunswick students from the consequences of their criminal misconduct, and Defendants submit that there is no evidence whatsoever of any informal or implicit GPD policy either.  <u>Rennols v. City of N.Y.</u>, No. 00-CV-6692 (NGG), 2003 WL 22427752, at *5 (E.D.N.Y. Oct. 23, 2003), <u>aff'd</u>, 124 F. App'x 66 (2d Cir. 2005) (holding that the equal protection claim was defeated where plaintiff did not allege the existence of any express policy prohibiting the investigation of cross complaints).  This Court has already noted that where courts have found no Equal Protection violation under <u>Myers</u> they generally did so because the plaintiff failed to allege an explicit oral or written policy.  <u>See </u>Doc. No. 115 at p. 9 and cases cited by the Court therein.[9]

As the Second Circuit stated in <u>Moustakis v. N.Y. City Police Dep't</u>, 181 F.3d 83 (2d Cir. 1999) when it granted the police department's summary judgment motion:

> Moustakis also failed to demonstrate that the defendants' refusal to accept his cross-complaint violated his constitutional right to equal protection, because the undisputed facts established that the decision of whether to accept his cross-complaint was based on the totality of circumstances[10] and was not the result of a blanket policy.

---

[8] In Myers, the policy at issue was explicit and made the unequivocal statement: "[p]olice are directed not to entertain cross complaints." <u>Myers v. Cnty. of Orange</u>, 157 F.3d 66, 73 (2d Cir. 1998)

[9] <u>See</u> <u>Moustakis v. N.Y. City Police Dep't</u>, 181 F.3d 83 (2d Cir. 1999) (holding that the defendants refusal to accept cross complaint was not the result of policy, but rather was based upon the totality of the circumstances); <u>Rennols v. City of N.Y.</u>, No. 00-CV-6692 (NGG), 2003 WL 22427752, at *5 (E.D.N.Y. Oct. 23, 2003), aff'd, 124 F. App'x 66 (2d Cir. 2005) (holding that the equal protection claim was defeated where plaintiff did not allege the existence of any express policy prohibiting the investigation of cross complaints); <u>Cantave v. N.Y. City Police Officers</u>, No. 09-CV -2226 CBA LB, 2011 WL 1239895, at *6 (E.D.N.Y. Mar. 28, 2011) (same); <u>Maldonado v. City of N.Y.</u>, No. 12-CV-4304 RRM JMA, 2012 WL 3839615, at *2–3 (E.D.N.Y. Sept. 5, 2012) (same). Doc. No. 115 at p. 9.

[10] This Court has already concluded that Myers does not stand for the requirement that "all complaints be treated the same, whatever the context", nor has the Second Circuit ever issued such a decree. <u>McCrary v. Cnty. of Nassau</u>, 493 F. Supp. 2d 581, 589 (E.D.N.Y. 2007) <u>quoting</u> <u>Fedor v. Kudrak</u>, 421 F. Supp. 2d 473, 480 D. Conn. 2006). And of course, a "private citizen does not have a constitutional right to compel government officials to arrest or prosecute

Moustakis, at *1.

Because there is no evidence of any explicit GPD policy to protect Brunswick students from the consequences of their criminal misconduct, Plaintiff's Myers claim should fail.  As set forth below, however, even if this Court wished to extend Myers to include implicit, as opposed to just express policies, the record in this case is devoid of any material evidence that any implicit GPD policy of protecting Brunswick students exists.

       1.   **The Record is Devoid of Any Evidence of an Implicit Policy of Collusion Between Defendants and Brunswick School.**

Because there is no evidence of any explicit policy, at the very least, Plaintiff must put forth material evidence demonstrating the existence of an implicit policy of collusion between the GPD and Brunswick School to protect Brunswick students from the consequences of their criminal misconduct.  It is undisputed that Defendants sought an arrest warrant for Roe from the State's Attorneys' office.  ***Accordingly, if the Court is willing to accept the idea that an implied policy can meet the Myers test, in order to substantiate her claim, Plaintiff must show that Det. Rondini deliberately filed an arrest warrant application that was designed to fail; intended to make it certain that the State's Attorney would not go to the Court for an arrest warrant in Plaintiff's case against Roe.***  She cannot do this.  Her theory does not hold water, because, even if it has a legal foundation, there is not one scintilla of evidence to support it.

As is discussed in more detail below, the "facts" on which Plaintiff rests her case are not facts supported by admissible evidence in the record, but largely constitute nothing more than Plaintiff's own "wishful" narrative.  Plaintiff's presumed opposition to this summary judgment request must be supported by admissible evidence from which a jury could reasonably deliver a

---

another person." McCrary, 493 F. Supp. 2d at 588; see also Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  See Doc. No. 115 at p. 9.

verdict in her favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Bryant v.</u>

<u>Maffucci</u>, 923 F.2d 979, 982 (2d Cir.1991), <u>cert denied</u>, 502 U.S. 849 (1991).  There is none, and

so Defendants submit that the Court should dismiss Plaintiff's case, with prejudice**.**

### a.  Plaintiff's Collusion and Policy Evidence

On April 7, 2020 Plaintiff filed supplementary answers to Interrogatory No. 2 of

Defendants' Second Set of Interrogatories[11] and the very similar Interrogatory No. 1 of

Defendants' Third Set of Interrogatories.  In these interrogatory responses, Plaintiff sets out all of

the alleged facts that she claims support her charges of actual collusion between Defendants and

Brunswick School, as well the existence of an implicit GPD policy to protect Brunswick students

from the consequences of their criminal misconduct.  Those interrogatory answers are attached

hereto as Exhibit 37. [12]

First and foremost, many of Plaintiff's alleged "facts" are statements of subjective

opinions as to proper and improper police practices.  These opinions are not admissible evidence

---

[11] On February 20, 2020, Plaintiff was ordered to respond to Interrogatory no. 2 of Plaintiff's Second Set of Interrogatories (Doc. No. 167 at p. 8-11) on the basis that:

"The claim of collusion is the very core of plaintiff's Amended Complaint. Plaintiff asserts "[u]pon information and belief" that the defendant's "collusion with Brunswick ... has been ongoing for several years." Doc. #46 at 2-3; <u>see</u> also id. at 17.  Jane Doe makes detailed allegations regarding the nature of the collusion, the purpose of it, and its effects.  She asserts that the Chief of Police has "ratified this practice of collusion, ensuring that it will continue for years to come." Doc. #46 at 16.  Jane Doe's Amended Complaint makes detailed allegations regarding the conduct of numerous individuals, asserts that the defendant's acts "were intentional in depriving Plaintiff of her Constitutional rights and privileges[,]" and contends that she has "been damaged by the collusion between Defendants and Brunswick[.]" Doc. #46 at 17.  Defendant has a right to inquire into the basis for these broad allegations, and to ascertain the factual bases for Jane Doe's claims."  Doc. No. 167 at p. 11-12.

[12] In responding to these interrogatories, Plaintiff did not separately number any of her alleged facts. For the sake of easier reference in this Memorandum, Defendants have inserted numerical designations for the Second Set of Interrogatories "Nos. 2, (a) – (p)" and for the Third Set of Interrogatories "Nos. 1 (a) – (y)".  The Interrogatory responses for the Second Set, Nos. 2 (a), (b) and (d) – (p) are the same as those for Third Set, No. 1 (a), (b), (d) – (p), but the Third Set, No, 1 adds additional new responses, i.e., Nos. 1 (c) and  (q) – (y).  Defendants do not repeat their analysis of the duplicative interrogatory responses, but address each only once, therefore, as to the Third Set of Interrogatories, Defendants address only Nos. 1(c) and (q) – (y), leaving the reader to consider Interrogatory Nos. (a), (b) and (d) – (p) under the discussion of those same answers provided by Plaintiff's answers to the Second Set of Interrogatories.

and should not be considered by the Court.[13]  See Fed Rule of Evidence Rules 701 and 702.[14].

Defendants by contrast have provided the Court with the expert testimony, report and affidavit of

Dr. Richard Hough, a qualified professional in the area of police investigatory techniques.[15]  The

Court can grant summary judgment based on his uncontroverted testimony:

> A movant can establish its right to summary judgment solely on the
> uncontroverted testimony of an expert witness if the subject matter is such that the

---

[13] For example, at his deposition, when asked what the basis was for his statement that the police investigation was defective because the police should have asked for text messages, Father Doe responded as follows:

A: I think the police should have asked for text messages.  All the teenagers communicate in text.  They should have asked for text messages.  They never did.

Q: Where in your background, investigation and training do [did] you learn the decision of text messaging.

A: It's fairly obvious that you ask for texts.

Q: Who told you they could have gotten the boy's phone.

A: Well, you can obviously go for—You can get—You can subpoena lots of things.  Why not?  You can get it.

See Ex. 3, Father Doe Depo. at p. 27, l. 17-23; p. 28, l. 9-12.

[14] If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

**(a)** rationally based on the witness's perception;
**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;
**(c)** the testimony is the product of reliable principles and methods; and
**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702

Neither the Plaintiff, her parents, Father and Mother Doe, her brother nor her attorneys are Rule 702 "experts" in the field of police investigative techniques, and the issues of the procedural correctness of the Defendants investigation and warrant application are clearly matters that require specialized knowledge to judge.  Rule 702 (a).

[15] The use of expert opinion evidence in the form of an affidavit is appropriate to support or oppose a motion for summary judgment; opinion testimony that would be admissible at trial may be considered.  Estate of Creek v. Mittal Steel USA, Inc., 629 F. Supp. 2d 502 (W.D. Pa. 2008).

trier of fact would be "guided solely by the opinion testimony of experts" and the testimony is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily uncontroverted." cf. Tex.R. Civ. P. 166a(c). The affidavit of an interested expert witness can support a summary judgment if it meets the requirements of Rule 166a. Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991). If the movant presents legally sufficient evidence, in the form of an affidavit of an interested expert witness, in support of a motion for summary judgment, the opposing party must controvert this evidence by producing other expert testimony. Id. Lay testimony is insufficient to refute expert testimony. Id.

Duff v. Gen. Motors Corp., 962 F. Supp. 1420, 1422 (D. Kan. 1997) citing Selig v. BMW of N.

Am., Inc., 832 S.W.2d 95, 99 (Tex. App. 1992).

Dr. Hough's expert position is diametrically opposed to Plaintiff's opinions. Dr. Hough found that the Defendants' actions in this investigation and in submitting the arrest warrant application were reasonable, appropriate, and in accordance with customary law enforcement practice. See Rule 56(a)1 Statement, ¶¶ 93-97, Exhibit 33.

In addition to their inadmissibility under the Rules of Evidence, many of Plaintiff's claimed facts are also irrelevant to the remaining issue in this case; i.e., the existence of a policy to tailor the GPD's police work so as to protect Brunswick School's students' interests. Finally, many of the Plaintiff's asserted narrative "facts" are directly refuted by the undisputed record evidence. None of them, individually or taken as a whole, could support a reasonable jury finding of the existence of an implicit policy of the GPD to protect Brunswick students from the consequences of their criminal misconduct

Each of the Plaintiff's assertions of fact is considered in detail below:

**i.     Plaintiff's Assertions of supporting facts made in response to Defendants'
Second Set of Interrogatories, Interrogatory No. 2 (a) - (p) [also as to
Defendants' Third Set of Interrogatories, Interrogatory No. 1 (a), (b) and (d)
– (p)].[16]**

1.     <u>The Text of Interrogatory No. 2</u>: "Please state or provide each and every fact that you
claim supports a finding of collusion between any Defendant and the Brunswick School
during the course of the investigation of Plaintiff's sexual assault charge."

2.     <u>Plaintiff's Responses:</u>

a.     Sgt. Det. Reeves' attempt to dissuade Plaintiff from pursuing charges against
Brunswick School student Peter Roe.

b.     Greenwich police delay during the month of August 2016 in pursuing
investigation into Jane Doe's criminal complaint against Brunswick School
student Peter Roe.

c.     Greenwich police conducting an insufficient investigation into the complaint by
Jane Doe against Brunswick School student Peter Roe, including failing to
question witnesses, failing to obtain texts and other documentary evidence failing
to question witnesses regarding discrepancies in their statement.

d.     Communications between Brunswick School and Greenwich police regarding the
complaint made by Jane Doe against Peter Roe, and subsequent investigation,
during which Brunswick School and Greenwich police inappropriate shared
confidential information with each other.

e.     Communications between Brunswick School and Greenwich police regarding the
complaint made by Jane Doe against Peter Roe, and subsequent investigation,
were not included in the Case/Incident Report of the investigation, nor in the
arrest warrant application submitted by Det. Rondini regarding Peter Roe.

f.     The refusal of Greenwich police to interview Brunswick School's headmaster
regarding factual information he learned about the incident that was the basis of
the complaint by Jane Doe against Peter Roe.

g.     Inappropriate disclosures of information about the ongoing investigation into Jane
Doe's complaint against Peter Roe by Det. Rondini to Peter Roe's attorneys,
which were then shared with Brunswick School's headmaster.

---

[16] Although similar, the distinction between the interrogatories posed is that the Second Set requests each and every
fact supporting Plaintiff's claim of collusion between Defendants and Brunswick School, and the Third Set requests
every fact supporting Plaintiff's claim of a policy existing on the part of any Defendant to shield or protect
Brunswick School or its students from investigation and/or prosecution for criminal or other activities.

h.      Det. Rondini's expansive communications with Peter Roe's attorney Michael Jones were not included in the Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe, nor in the arrest warrant application submitted by Det. Rondini regarding Peter Roe.

i.      Sgt. Det. Reeves' communications with Brunswick School's head of security, MD, were not included in the Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe, nor in the arrest warrant application submitted by Det. Rondini regarding Peter Roe.

j.      The fact that BW Student 3's statement to the police was typewritten, prepared in advance in conjunction with his attorney, and accepted by the Greenwich police without any questioning of him about the substance was not included in the Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe, nor in the arrest warrant application submitted by Det. Rondini regarding Peter Roe.

k.      The fact the witness GA Student 1 had been disciplined by her high school for bullying Plaintiff was not included in the Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe, nor in the arrest warrant application submitted by Det. Rondini regarding Peter Roe.

l.      The fact that GA Student 1's mother spoke with Det. Rondini and Sgt. Det. Reeves and asked to withdraw her daughter's statement was not included in the Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe, nor in the arrest warrant application submitted by Det. Rondini regarding Peter Roe.

m.      The fact that the arrest warrant application states that a witness identified by Plaintiff, PK, consulted notes he brought with him to police headquarters where he handwrote a statement, yet this fact was never part of the underlying Case/Incident Report of the investigation of the Jane Doe complaint against Peter Roe.

n.      The fact that the arrest warrant application submitted by Det. Rondini regarding Peter Roe states that she interviewed a witness identified by Plaintiff, SG, but that he did not have anything of evidentiary value to add even though SG's statement contradicted facts contained in BW Student 3's typed and attorney-prepared statement.

o.      Det. Rondini's unwarranted delay in submitting an arrest warrant application after she had interviewed numerous witnesses for two months after receiving the complaint from Jane Doe.

p.  The headmaster of Brunswick School becoming aware that the State's Attorney had decided not to prosecute Peter Roe before either Jane Doe or Peter Roe were notified of the fact.

**ii.  Assertions of supporting fact made in response to Defendants' Third Set of Interrogatories, Interrogatory No. 1.**

1.  <u>The Text of Interrogatory No. 1:</u> "Please state or provide each and every fact that you claim supports the finding of a policy existing on the part of any Defendant to shield or protect Brunswick School or its students from investigation and/or prosecution for criminal or other activities."

2.  <u>Plaintiff's Responses:</u>

a, b and d-p.  The Plaintiff's answers to this interrogatory No. 1, responses a and b, d through p are the same as responses a and b, d through p of the responses to Defendants' Second Set of Interrogatories, Interrogatory No. 2. as reproduced above.  They are not repeated here, but incorporated by reference.  Responses c and q – y are set out below.

c.  Greenwich police conducting insufficient investigation into criminal complaints against Brunswick School students in comparison to investigation of criminal assaults by juveniles and adults who were not affiliated with Brunswick School, including failing to question all relevant witnesses, failing to obtain texts and other documentary evidence, failing to question witnesses regarding discrepancies in their statements, intervening with the State's Attorney on behalf of the accused students and their families.

n.  Greenwich police dissuading a victim of assault by a Brunswick student from pressing charging in October 2015.

o.  Greenwich police failing to fully investigate two alleged sexual assaults of minor females by Brunswick students in 2014.

p.  Greenwich police making a false statement to the press and public about the alleged sexual assaults of minor females by Brunswick students in 2014.

q.  Greenwich police intervening on behalf of Brunswick student(s) with the State's Attorney's office in connection with the 2014 sexual assaults of minor females described above.

r.  Employment by Brunswick School of between 5-7 retired Greenwich police during the relevant time period.

s.  Provisions of scholarships to children of active police officer, and specifically violation of the Uniform Procedures Manual policy against conflict of interest by

providing such scholarships to [a GPD detective], who was responsible for interacting with Brunswick School and, upon information and belief, investigating claims involving Brunswick School.

t.    Det. Girard's inappropriate sharing of confidential information with Brunswick School's headmaster during the investigation into a video recorded sexual assault of a minor girl in 2014.

u.    Det. Girard's communications with Brunswick School's headmaster regarding the investigation into the complaint of a sexual assault at a party in 2014 were not included in the Case/Incident Report for that investigation.

v.    The fact that [a GPD detective]'s son was a scholarship student at Brunswick at the time she was the detective investigating a complaint of a sexual assault by a Brunswick School student at a party in 2014 was not included in the Case/Incident Report for that investigation.

These stated facts remain those that the Plaintiff relies upon in this case.  They have not been supplemented.

**2.  Sgt. Det. Reeves' attempt to dissuade Plaintiff from pursuing charges against Brunswick School student Peter Roe.   Defendants' Second set of Interrogatories, Response No. 2 (a).**

Plaintiff claims that Sgt. Det. Reeves attempted to dissuade her from pursuing charges against Roe.  First off, there is no record evidence that Reeves ever met or talked to Plaintiff herself.  Ex. 1, Jane Doe Depo. at p. 249, l. 14-22.  Defendants assume that Plaintiff is talking about an alleged indirect effort to dissuade allegedly made in a conversation between Reeves and Father Doe.  That conversation took place on August 19th.  Ex. 3, Father Doe Depo. at p. 44, l. 8-10.  Father Doe testified about that conversation during his deposition.  Nowhere does Father Doe testify that Reeves suggested that Plaintiff, or anyone else, back off of the complaint against Roe.  Father Doe says that Reeves told him about the difficulties of pursuing the case because of its "he said-she said" nature, that Doe should stop talking to Brunswick school about the matter, and that Doe needed to be careful that he did not libel Roe when he talked about the case.  Ex. 3, Father Doe Depo. at p. 30, l. 1 – p. 33, l. 3; p. 44, l. 2 - p. 45, l. 13.

17

Reeves confirms much of the literal content of the conversation, but denies that he ever told Doe that he should drop the case. Ex. 9, Reeves Depo. at p. 164, l. 13 – p. 178, l. 5. In fact, Reeves told Doe not to interfere with the police investigation, id., a warning from which one can infer the opposite of Doe's conclusion; a more reasonable inference is that that the police intended to go ahead with the investigation (as they in fact did) and that Doe's meddling threatened to thwart the Defendants' efforts to determine what truly had happened in the pool house; whether Jane Doe had been sexually assaulted or not.

Even Plaintiff's counsel has testified that, despite having accused Reeves of apparently assuming that the Doe case did not, "merit a vigorous investigation", in then end she had to admit Reeves never suggested that her clients withdraw their case. Ex. 6, Braxton Depo. at p. 32, l. 16 – p. 33, l.25.

There is no evidence from which any jury could reasonably infer that Reeves attempted to dissuade Plaintiff form pursuing her charges against Roe.

### 3. Detective Rondini' s Investigation[17].  Defendants' Second Set of Interrogatories., Response Nos. 2 (b) – (p)

The heart of the Plaintiff's case is her claim that Det. Rondini' s investigation and arrest warrant application were deficient; indeed, to win, Plaintiff would have to show that Det. Rondini (and through her, her supervisor Sgt. Det. Reeves) deliberately filed a deficient arrest

---

[17] When this case was filed, the only evidences of a GPD policy favoring Brunswick students to Plaintiff's, or anyone else's, detriment were community gossip, the fact that Brunswick's security department was staffed by retired GPD officers, and Father Doe's belief that Brunswick's Headmaster had conveyed the substance of an email Father Doe sent to him about the alleged assault.. See Ex. 3, Father Doe Depo. at p. 34, l. 12-21; p. 47, l. 2-8; see Ex. 6, Braxton Depo. at p. p. 34, l. 9-17; 37, l. 5-10, p. 50, l. 18 – p. 51, l. 6. These informed Plaintiffs (or perhaps more accurately, Plaintiff's parents') sense of injustice that Peter Roe had not been arrested. Since then, Plaintiff has added a litany of her and her counsel's nits and picks at Det. Rondini's investigation and arrest warrant application along with frivolous claims that in other cases like Plaintiff's the GPD has acted to protect Brunswick students from criminal charges. Ex. 37, Defendants' Second Set of Interrogatories, Response Nos. 2 (b) – (p). Plaintiff's positions are wholly unreasonable. No reasonable jury could ever draw an inference from the record in this case that there is any GPD policy to protect Brunswick students from the consequences of their criminal conduct; no reasonable jury could ever hold that the Defendants acted to protect Peter Roe from the law at all, let alone favored him because he was a Brunswick student.

warrant application with the State's Attorney that was designed to insure that no warrant would ever be issued for Roe's arrest based on a GPD "policy" to collude with the Brunswick School to protect Brunswick students from the consequences of their criminal misconduct.

Plaintiff has submitted a series of nit and picks about the Rondini investigation that she argues demonstrates the Defendants' collusion with Brunswick to protect Roe by permitting him to escape punishment.[18]   Ex. 37, Second Set of Interrogatories, Response Nos. 2 (b) – (p).  These deficiency criticisms are Plaintiff's opinions, and not admissible under either F.R. Evid. Rules 701 or 702.  Even if Plaintiff were correct about her technical criticisms of Det. Rondini's investigation and warrant application, none of the complaints raised by Plaintiff, either taken individually or collectively, would allow a reasonable jury to infer a GPD policy to protect Brunswick's students from prosecution for their criminal activities.  In fact, some of the Plaintiff's opinions lead to absurd results.

For example, Plaintiff complains that Det. Rondini did not interview the Brunswick School's Headmaster, TP, to learn what factual information he had obtained about the alleged June sexual assault on Jane Doe, presumably from his interviews with boys who attended the party.  See Ex. 37, Response to Defendant's Second Set of Interrogatories at (f).  However, when Plaintiff's counsel deposed TP, it became clear the what he had learned supported the position that Jane Doe's story was internally inconsistent and inconsistent with other witnesses to relevant events of June 3rd, i.e., that the pool party was alcohol fueled, that Plaintiff had contributed to the availability of liquor to the underaged party attendees and that while Roe had tried to take off

---

[18] It is important to note that the GPD's decisions regarding how to investigate a complaint are discretionary acts. See Ancona v. Samsel, No. 3:16-CV-172 (MPS), 2017 WL 4765641, at *8 (D. Conn. Oct. 20, 2017); Ventura v. Town of E. Haven, 170 Conn. App. 388, 405 n. 18 (2017), aff'd, 330 Conn. 613 (2019) ("Paramount to an officer's discretion is the ability to determine how to pursue an investigation . . ."); see also Gordon v. Bridgeport Hous. Auth., 208 Conn. 161, 179 (1988) ("[T]he great weight of authority [holds] that the operation of a police department is a discretionary governmental function.").  Doc. No. 115 at p. 16.

Plaintiff's top, he had never directly touched Plaintiff's vagina at all, let alone inserted his finger into it.  Ex. 13, TP Depo. at p. 213, l. 24 – p. 215, l. 9; See TP Notes (Ex. 6 to TP Depo.).[19]  This was not helpful to Plaintiff's case, since she claimed that: (1) there was vaginal insertion to her GA counselor;[20] and (2) that there was little if any drinking at the party.  It is impossible to see how obtaining TP's information; the information contained in those notes, would have resolved any inconsistencies in the investigatory record in Plaintiff's favor; in fact, Det. Rondini's ***not*** interviewing the Brunswick Headmaster benefited Plaintiff, if it helped anyone.  That failure to do so does not allow an inference that there was collusion between Rondini and Brunswick to let Roe off the hook.

Another example of Plaintiff's blindness to the forest and her false focus on the trees, is her claim that Rondini's investigation was deficient because the officer did not obtain copies of all the text messages that flowed back and forth between and among Plaintiff and the other party goers in the weeks after the June pool party.  See Ex. 37, Second Set of Interrogatories, Response No. 2 (c).  It overlooks the fact that although Rondini asked Plaintiff to provide relevant text messages, see Ex. 8, Rondini Depo. 6/25/20 at p. 36, l. 13-16, 25-p. 37, l. 18, Plaintiff did not do so.  She gave Rondini some messages but not all that she had.  Defendants' Rule 56(a)1

---

[19] At the TP deposition, Plaintiff's counsel marked as an exhibit the contemporaneous notes TP made of his interviews with boys who had been at the party that set out these points.  Those notes repeated three points that the same witnesses made to Det. Rondini when she interviewed them several weeks later; i.e., that alcohol had flowed freely at the party; that Plaintiff had been distributing it and had been drinking, and that she told them Roe had tried to take her bathing suit top off and had felt her through her bathing suit bottom.  Ex. 13, TP Depo. p. 213, l. 24 – p. 215, l. 9; (TP Notes, Ex. 6 to TP Depo).  This story of course, varied considerably from what Jane had relayed to her doctor and Det. Rondini regarding her alcohol consumption at the party. (See Ex. 21, Sept. 1, 2016 letter from Stiritz to Det. Rondini; see also Ex. 20, 11/17/16 Transcript at p. 5, l. 11-25, TOG-000996), not to mention the allegation that Roe had inserted his finger into her that she had relayed to the Greenwich Academy counselor.  See Ex. 17, CZB Statement, TOG-000167-000171; Ex. 18, Case Incident Report, TOG-000639-000641; Ex. 7, Rondini Depo. 3/19/19 at p. 135, l. 6-10.

[20] Defendants hasten to note that whichever story of sexual misconduct, the one Plaintiff gave to her counselor or the one Brunswick witnesses claimed that she gave them, is true, the conduct was despicable.  The point is that Plaintiff gave different stories to different people and this inconsistency would have made it difficult successfully to prosecute Roe.

Statement ¶¶ 39-40.  It would not have been unreasonable under the circumstances for Rondini to assume Plaintiff had provided any other text messages that she thought supported her sexual assault claims.

Defendants have provided the testimony of Dr. Richard Hough, a recognized evidence Rule 702 expert in the area of police investigatory procedure.  Defendants' Rule 56(a)1 Statement ¶¶ 93-97.   Dr. Hough's conclusion was that the Roe investigation, and the materials that she submitted to the State's Attorney in the arrest warrant application, had been handled in a reasonable manner that followed routine and customary law enforcement practice in cases involving allegations of battery or sexual assault.  Id.  He specifically found that the steps Det. Rondini took to interview those witnesses who were available were sufficient for the type of investigation represented by the Jane Doe case.  Id.

On the one hand we have Plaintiff's criticisms of the GPD investigation, which reflect Plaintiff's personal views of what was wrong with the Rondini investigation and warrant application.  These are inadmissible under either Fed Rule of Evid. Rule 701 (lay opinion testimony) or Rule 702 (Expert witness testimony).[21]  On the other hand, we have the Defense's qualified Rule 702 expert witness's clear, well-supported opinion that the Doe investigation was conducted properly in accordance with customary police investigatory procedures and protocols.

---

[21] The testimony is not made admissible by Rule 701.  It fails under Rule 701 (a) and (c).  First, such testimony could not be rationally based on the Plaintiff's or her counsel's personal perception, Rule 701(a), because neither Plaintiff nor her counsel participated in carrying out the investigation.  They did not interview witnesses or prepare any of the incident report.  They did not work on the arrest warrant application or participate in any of the other numerous activities that made up the process of investigating the Doe claims.  Second, Defendants submit that an accurate and useful judgment about the reasonableness of the investigatory process and warrant application in Doe really requires a broad knowledge of the professional standards ordinarily applied to such work; standards as to which neither Plaintiff nor her counsel have sufficient knowledge to give a valid or useful lay opinion.  Rule 701(c).  By the same token neither Plaintiff nor her counsel can qualify as experts under Rule 702, and they have presented no such witness; have not even attempted to.  Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd., 716 Fed. Appx. 5, 11 (2d Cir. 2017); United States v. Garcia, 413 F.3d 201, 215–17 (2d Cir. 2005); Bank of China v. NBM LLC, 359 F.3d 171, 181, 182-83 nn. 12-14 (2d Cir. 2004); see Sarus v. Rotundo, 831 F.2d 397, 402 n. 3 (2d Cir. 1987) (trial judge expressed concerns that the appellees' failure to introduce expert testimony about proper police procedure).

His view stands uncontested and stands as an overwhelming counter to Plaintiff's claims of impropriety in Rondini's investigatory or warrant application process. Dr. Hough's unchallenged testimony runs counter to Plaintiff's charge that Rondini's investigation and warrant application were so deficient that a reasonable jury could infer from them either direct collusion between Defendants and the Brunswick School or that Defendants have a policy of acting to protect Brunswick students from the consequences of their criminal acts. Dr. Hough's testimony stands as a solid block to Doe's theories of an equal protection violation.

Plaintiff also claims as a proof of collusion the fact that the Brunswick School headmaster knew that the State's Attorney had decided not to prosecute the case before either Doe or Roe was informed. See Ex. 37, Second Set et of Interrogatories, Response No. 2 (p). Even assuming that this is true, it proves absolutely nothing that would be relevant to Doe's burden of proving liability under her collusion theory.

4. **Plaintiffs' Other Asserted Factual Proofs for the Claim of a Defendant Policy to Protect Brunswick Students. Third Set of Interrogatories, Responses Nos. 1 (c) and (q) – (y)**

In addition to her claims of a deficient Rondini investigation and arrest warrant application, Plaintiff raises eleven other "facts" that she submits prove her claims of a Defendant policy to protect Brunswick students from the consequences of their crimes.

aa. **Greenwich police conducting insufficient investigation into criminal complaints against Brunswick School students in comparison to investigation of criminal assaults by juveniles and adults who were not affiliated with Brunswick School,[22] including failing to question all relevant witnesses, failing to obtain texts and other documentary evidence, failing to question witnesses regarding discrepancies in their statements, intervening with the State's Attorney on behalf of the accused students and their families. Third Set of Interrogatories, Response No. 1 (c).**

---

[22] Even if Plaintiff's and her counsel's lay opinions of how investigations should be conducted were accepted, no evidence even suggests that this was a constant modus operandi that Defendants applied in all investigations of Brunswick students and so it provides no support whatsoever for a jury to use to determine Plaintiff was denied equal protection.

This is a comprehensive Plaintiff claim of alleged comparative misconduct[23] that has no evidentiary support in the record.  In none of these cases was any testimony presented by a qualified witness to show that there were any "insufficient investigations" into the alleged wrongdoing by any Brunswick student.  Again, we have nothing but Plaintiff's and her counsel's personal opinions on the sufficiency or insufficiency of those investigations.  We have no admissible evidence to support these personal, subjective judgments; to show that they have any objective validity or are anything more than the musings of interested parties; parties who lack any relevant criminal investigatory experience and who have no qualification to make such judgments about the Defendants', or anyone else's, conduct.[24]

      i.    **The RW Case**

In 2014, the GPD was notified of an alleged sexual assault on a then middle-school aged girl by a group of middle-school aged Brunswick School boys.  See Ex. 35, Case Incident Report, Defendants' Rule 56(a)1 Statement ¶ 101.  A cell phone video of the alleged assault was presented to the GPD, and Det. Christy Girard began an investigation into the matter.  See Ex. 5, Christy Girard Depo. at p. 95, l. 18 - p. 96, l. 15.  The investigation came to a halt when the girl in question said that she had consented to the activity pictured in the cell phone video.  See Ex. 35, Case Incident Report at TOG-001035, Defendants' Rule 56(a)1 Statement ¶¶ 101-102; see Ex. 5, Girard Depo. at p. 96, l. 2-15.  Concerned that the incident was not, in fact, consensual,

---

[23] Only three "comparative" cases have been presented by Plaintiff over the course of discovery in this case: (1) the alleged sexual assault by Brunswick students on a young woman in 2014 (RW Case); (2) a second ***possible*** sexual assault by unidentified persons on a similarly unidentified young woman that allegedly might have occurred in 2014; and (3) a fist fight between a Brunswick student and a male Greenwich High School student in 2015.  None of these matters can, in fact, be considered a comparator for the Jane Doe case.  None of these instances supports Plaintiff's theory of collusion between the Defendants and Brunswick School.  Each is discussed below in detail.

[24] It should also be noted that neither of the individual defendants, Reeves or Rondini, played a role in any of those cases.

Det. Girard informed the family that she did not believe it was consensual and asked them to view the actual video before making the determination.  <u>See</u> Ex. 5, Girard Depo. at p. 96, l. 2-15, 19-p. 97, l. 13.  After reviewing the video and speaking with their daughter, the family of the young girl again reiterated to Det. Girard their position that it was consensual.  <u>See</u> Ex. 5, Girard Depo. at p. 97, l. 18-22.  Still uncomfortable with the family's decision, Det. Girard contacted the State's Attorney and requested that he view the video as she still had doubts as to whether the incident was consensual.  The State's Attorney informed Det. Girard that if the girl and the family said it was consensual there was nothing that Det. Girard could do.  <u>See</u> Ex. 5, Girard Depo. at p. 98, l. 1-7.  The State's Attorney requested that the girl's family put in writing their request the matter be closed and that criminal charges not be sought against the concerned boys. <u>See</u> Ex. 5, Girard Depo. at p. 98, l. 7-11; <u>See also</u> Ex. 35, Case Incident Report at TOG-001043.

At that point, the investigation was terminated; no arrest warrant application was made. This incident provides no evidence to support Plaintiff's claim of GPD – Brunswick collusion or any GPD policy of favoritism towards Brunswick students.

### ii.    The Unknown 2014 Sexual Assault

There were rumors in Greenwich of another 2014 sexual assault on a young female by school boys that was supposedly captured in a cell-phone video.  <u>See</u> Ex. 41, Justin Pottle, "*Greenwich police: Rumors of assault at high school party are unfounded*," Greenwich Time, Nov. 13, 2014 (https://www.greenwichtime.com/local/article/Greenwich-police-Rumors-of-assault-at-high-5891740.php).  The existence of a video recording of a second 2014 sexual assault has never been established.  Judge Merriam summarized Plaintiff's theory regarding this matter when she wrote that Plaintiff's  position appears, "to be that this video **may** exist; that the video **may** show a sexual assault; there **may** have been an anonymous tip about this video; the

anonymous tip **may** implicate a Brunswick student; the GPD **may** have failed to investigate that tip; and if the GPD did in fact fail to investigate, that would be evidence of collusion."  <u>See</u> Doc. No. 173, at 14.

The only evidence of this alleged second 2014 sexual assault was the testimony of SY who allegedly saw a cell phone video of such an incident on her daughter's phone, involving an unidentified young woman and a group of young men who her daughter told SY that she, the daughter, "assumed" were from Brunswick School.  <u>See</u> Ex. 15, SY Depo. at p. 23, l. 10-13; 23- p. 24, l. 7; p. 25, l. 1-3, 7-9, 13-15, 20-p. 26, l. 4.  SY claims to have transmitted the video to retired GPD officer Tommy Keegan, <u>see</u> Ex. 15, SY Depo. at p. 29, l. 5-7,[25] however, Keegan has no recollection of receiving any video from SY.  <u>See</u> Ex. 38, Keegan Depo. at p. 81, l. 4-6. Keegan did receive a video from JM,[26] but that the contents of the video were indiscernible and he could not see anything on the video.  <u>Id</u>. at p. 77, l. 9-12; p. 85, l. 7-8.  Keegan sent the video to Lt. Bonney, the Lt. in the Detective Division.  <u>Id</u>. at p. 76, l. 1-9.  Keegan received no further information and did not speak to anyone else from the GPD about the video.  <u>Id</u>. at p. 94, l. 12- 17.

Plaintiff has never produced any such second 2014 video, nor any evidence that there ever was one. [27]  Again, this is not a situation comparable to the Doe case, nor does it show GPD favoring Brunswick students under any interpretation.

---

[25] SY testified that she found his contact information from a friend, JM, and sent the video to his cell phone.  Ex. 15, SY Depo. at p. 29, l. 5-7, 20-24; p. 38, l. 4-10.

[26] JM told Tommy Keegan that the video was of an underage drinking party.  Ex. 38, Keegan Depo. at p. 75, l. 6-9; p. 78, l. 13-18.  Keegan testified that he told JM that he couldn't do anything as a special officer, and he recommended that they turn the video over the GPD and to the school to investigate whether there was underage drinking or not.  Ex. 38, Keegan Depo. at p. 75, l. 13-20.

[27] It is quite likely that the Greenwich gossip tree was actually referring to the RW Case video when talking about the alleged second video, although this has not been proven.

### iii.  The 2015 Fistfight

The third incident that Plaintiff has raised during the course of this litigation as evidencing GPD favoritism to Brunswick students in criminal matters concerns a fistfight that took place between a Brunswick boy, aged 17 and a Greenwich High student aged 18 at the Arch Street Teen Center in 2015.  See Ex. 34 (Ex. 1 to the Affidavit of Gregory Hannigan).  The matter was apparently brought to Plaintiff's Counsels' attention by means of an unsolicited 2018 email from the Greenwich High student's parents.  See Ex. 39, email from LC to Meredith Braxton dated September 17, 2018.[28]  They claimed that their son had been beaten by Brunswick student, that he required hospitalization for his injuries, and that a GPD officer told them that because their son was eighteen and the other individual was seventeen  pursuing the matter would be a bad idea.  See Ex. 39, email from LC to Meredith Braxton dated September 17, 2018.

It appears to have been true that a GPD officer visited and spoke with the boy in the hospital, but two vital facts were left out of the Greenwich High parents' recital of events.  See Ex. 34 (Ex. 1 to Hannigan Aff. at page 1 of document).  First, during the course of the investigation the GPD spoke to the Director of the Teen center who informed the GPD that it was the Greenwich High School boy, not the Brunswick student, that had started the fight.  See Ex. 34 (Ex.1 to Hannigan Aff. at page 11 of document).  Second, had the matter proceeded, the 18-year-old Greenwich High School combatant would have been prosecuted as an adult, while had the 17-year-old Brunswick boy been pursued, he would have been prosecuted as a juvenile, with far less serious ultimate consequences for him than for the 18-year-old.  See Ex. 40, Zuccarella Depo. at p. 241, l. 19-25.  Like the RW Case and unknown 2014 alleged sexual

---

[28] This email was marked as Ex. 2 at the TP deposition by Plaintiff's counsel.  This document does not contain a bate stamped because it was never disclosed by Plaintiff until it was attached to a March 2020 brief (despite the fact that Plaintiff's counsel has been in possession of the email since Sept. 2018).

assault cases, this matter proves nothing about how the Defendants handled Doe.  It offers no

evidence of any policy to protect Brunswick students, as opposed to others, from the

consequences of criminal activity.

Besides Plaintiff's criticisms of how her case was handled by Rondini, Reeves and the

GPD, her claims of proof that GPD has any policy of collusion or otherwise favoring Brunswick

School boys in addressing criminal activity is based on these three cases.  None of them proves

anything even remotely relevant to the plaintiff's case.

### bb. Interrogatory Responses Third Set of Interrogatories., Response Nos. 1 (q) – (y).

### i. Greenwich police dissuading a victim of assault by a Brunswick student from pressing charging in October 2015. Third Set of Interrogatories, Response No. 1 (q)

This is a reference to the Teen Center Fist fight as discussed above.  No reasonable

inference of collusion could ever be drawn for it.

### ii. Greenwich police failing to fully investigate two alleged sexual assaults of minor females by Brunswick students in 2014. Third Set of Interrogatories, Response No. 1 (r).

Again, the record evidence does not support the assertion of GPD failing to fully

investigate any 2014 sexual assault incident.  These references are to the RW Case and the

"Unknown" sexual assault as to which there is not even any admissible evidence that it took

place, let alone involved any Brunswick student, any GPD investigatory deficiency or GPD

Brunswick School collusion if it did.

### iii. Greenwich police making a false statement to the press and public about the alleged sexual assaults on minor females by Brunswick students in 2014. Third Set of Interrogatories, Response No. 1(S).

This refers to the contents of a newspaper article which allegedly quoted a GPD

representative about the RW Case and the "Unknown" sexual assault matter.  See Ex. 41.  Based

on the admissible evidence uncovered during discovery about each of these incidents, there was

nothing untrue in the in the quoted officer's comments.  This contributes nothing to the

Plaintiff's case.

### iv.  Greenwich police intervening on behalf of Brunswick student(s) with the State's Attorney's office in connection with the 2014 sexual assaults of minor females described above. Third Set of Interrogatories, Response No. 1(t).

There is no evidence that this ever happened.  It refers, again, to the RW and "Unknown"

sexual assault cases.  There is no evidence at all that GPD ever "intervened" with the State's

Attorney's Office for any reason.  The admissible evidence shows that the girl in the RW Case

said the incident was consensual and that her family did not want it pursued.  There is no

admissible evidence that that second alleged assault ever even happened, let alone that the GPD

talked to the State's Attorney's Office about it.

### v.  Employment by Brunswick School of between 5-7 retired Greenwich police during the relevant time period. Third Set of Interrogatories, Response No. 1 (u).

The claimed fact of retired GPD officers working for Brunswick School's Security is

true.  The relevance of it to the Plaintiff's case is impossible to discern.  No evidence exists even

hinting that there was any improper "back channel" between the Brunswick Security Department

and GPD as is alleged in the Complaint.  The only contacts at all between Brunswick Security

and GPD in this case, took place when Brunswick's Security Chief MD spoke to GPD members

to find out what the status of the Doe investigation was; only to find out if Roe was to be arrested

or not. See Defendants' Rule 56(a)1 Statement ¶ 91.  There is no evidence of his trying to

influence the investigation in any way, just that he inquired as to where it stood.  There was

nothing improper in this.  This fact adds nothing to Plaintiff's case.  Brunswick's Headmaster,

TP, denied ever talking to anyone at the GPD about the case.  Ex. 13, TP Depo. at p. 128, l. 1-6;

p. 146, l. 17-18; p. 163, l. 20-21; p. 209, l. 13-14. There is no admissible evidence that

contradicts his testimony.

> **vi.  Provisions of scholarships to children of active police officer, and specifically violation of the Uniform Procedures Manual policy against conflict of interest by providing such scholarships to [a named GPD detective], who was responsible for interacting with Brunswick School and, upon information and belief, investigating claims involving Brunswick School. Third Set of Interrogatories, Response No. 1(v).**

There is no record evidence to support this assertion.  In any event, Christy Girard was

never involved in the Doe case; whatever relationship she had with Brunswick School, she

played no role in investigating the charges against Peter Roe.  See Ex. 5, Girard Depo. at p. 188,

l. 16-24; p. 199, l. 16-22.  Girard was no longer even working in the SVS unit when the Doe case

came up.  She was handling cold homicide matters and was largely working out of Rocky Hill,

CT.  See Ex. 5, Girard Depo. p. 26, l. 1-6; p. 70, l. 12-22; p. 193, l. 3-7; p. 202, l. 24-p. 203, l. 6.

> **vii  Det. Girard's inappropriate sharing of confidential information with Brunswick School's headmaster during the investigation into a video recorded sexual assault of a minor girl in 2014. Third Set of Interrogatories, Response No. 1 (w)**

This appears to be another reference to the RW Case discussed above.  There is no record

evidence of Det. Girard inappropriately sharing anything with Brunswick.  There is no

information that Girard shared anything with Brunswick herself, and even if she did, no

admissible testimony that such sharing would have been inappropriate or detrimental to the

investigation of the RW Case.

> **viii.    Det. Girard's communications with Brunswick School's headmaster regarding the investigation into the complaint of a sexual assault at a party in 2014.   Third Set of Interrogatories, Response No. 1 (x)**

Again, this is a factual claim that even if true, has no relevance at all to the Doe case.  No reasonable inference can be drawn from it about any relationship between GPD and the Brunswick School.

> **ix.  The fact that [a GPD detective]'s son was a scholarship student at Brunswick at the time she was the detective investigating a complaint of a sexual assault by a Brunswick School student at a party in 2014 was not included in the Case/Incident Report for that investigation.  Third Set of Interrogatories, Response No. 1 (y)**

Again, this a claim not supported by admissible record evidence.  Even if it was, it would be a fact of no relevance to the Doe case.  The 2014 matter referenced in this claim is the RW Case, which, as has been mentioned, was terminated by the fact of the alleged victim's consent to the sexual acts involved and the victim's family not wanting it to go forward.  Plaintiff's point proves nothing.

> **5.     Summary respecting Plaintiff's Alleged Factual Proofs of Defendant's Policy of protecting Brunswick School Students from Criminal Charges.**

Plaintiff has collected reams of evidentiary material through discovery in this case over the course of the last two years, however, not a scintilla of it supports her claim that GPD has a policy of protecting Brunswick Students from the consequences of their criminal conduct.  Not a shred of evidence even hints at either of the individual Defendants carrying out their duties in investigating Doe's charges in anything other than a professionally acceptable manner.  The professionalism of Det. Rondini's investigation has been confirmed by Dr. Hough, a person well qualified to give that opinion and his position stands unrefuted but for the completely unqualified, uninformed opinions of Plaintiff and her counsel.  The record is devoid of any material evidence that supports any finding of an implicit policy

Because there is no evidence of the existence of an implicit policy between the GPD and Brunswick School to protect Brunswick students from the consequences of their criminal misconduct, Plaintiff's claims should be dismissed.

**B.     RONDINI AND REEVES HAVE QUALIFIED IMMUNITY FOR THEIR ACTIONS Under § 1983.**

Defendants firmly believe that Plaintiff's claims should be dismissed on their merits, because there is no admissible evidence that supports them.  However, should the Court decide otherwise, the individual Defendant's cases should still be dismissed because they enjoy qualified immunity under federal law. See Tulloch v. Coughlin, 50 F.3d 114, 116 (2d Cir. 1995).  The issue of qualified immunity was reserved in the Court's ruling on the Defendants' dismissal motion. See Doc. No. 115 at p. 10, n. 2.

Qualified immunity shields police officers from suits for damages under 42 U.S.C. § 1983, unless their actions violated clearly established rights of which an objectively reasonable officer would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  By providing law enforcement officers with qualified immunity, there is a balance between holding the police accountable for exercising power irresponsibly with the necessity of protecting the officers "from harassment, distraction, and liability when they are performing their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The qualified immunity protection from suit exists even when the officer makes errors based on law, fact, or mixed questions of the two. Id.  "Thus, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law by giving' ample room for mistaken judgments.'" Parks v. Segar, No. 3:09CV1162 HBF, 2012 WL 4051833, at *6 (D. Conn. Sept. 13, 2012), quoting Palmeri v. Kammerer, 690 F. Supp. 24 34, 46 (D. Conn. 2010).

Despite the Plaintiff's claims, it is well established that under the circumstances presented in this fact pattern, the police and other state actors have no duty to the Plaintiff to investigate in a particular manner, arrest, or even prosecute individuals for injuries that person inflicted on other private actors. Id.  There is no evidence that either of the two individual defendants was giving effect to some GPD policy of shielding Brunswick students from the consequences of criminal acts.  The two Detectives made no errors in judgment or knowingly violated the law, because neither of them broke any law, let alone any "clearly established right" of which they should have been aware.  See Harlow, 457 U.S. at 800.  The Court should dismiss all claims brought under Section 1983 against Rondini and Reeves, irrespective of its holding on the merits of the Plaintiff's equal protection claim.

## V.    **CONCLUSION**

When she initiated this case, Plaintiff did so on the basis of three things. (1) her knowledge that the Brunswick School's Security department's staff included retired GPD office officers; (2) Town gossip that claimed GPD colluded with Brunswick School to protect Brunswick students form the suffering the consequences of their criminal activities; and (3) because Father Doe believed that an email he sent to the Brunswick School Headmaster, explaining the facts as the Doe family viewed them, got through to the GPD.

After two years of litigation, over two dozen depositions, thousands of documentary pages obtained through discovery and Defendants' interrogatory responses,[29] Plaintiff has not developed evidence sufficient for any reasonable jury to render a verdict in her favor.  Discovery has served only to reinforce the glaring inconsistencies in Plaintiff's testimony to the GPD

---

[29] This does not even include much of the discovery obtained in the companion state court lawsuit Plaintiff brought against the Brunswick School, See Doe v. Brunswick Sch., UWY-CV18-5024973-S, as well as via numerous Freedom of Information Act requests filed by Plaintiff's counsel.

regarding the alcohol fueled nature of that June 2016 pool party and as to exactly what happened between her and Peter Roe in the pool house that night.  Nothing has been put into the record that would allow a reasonable jury to find that any of the Defendants were engaged in a policy to collude with the Brunswick school so that Brunswick students could avoid the consequences of their criminal conduct.

Based on the extensive record, Defendants request that the Court grant judgment in their favor and dismiss this case with prejudice.

THE DEFENDANTS,

By:     */s/ Robert B. Mitchell*
        Robert B. Mitchell (ct02662)
        Jessica A. Slippen (ct25765)
        Reese Mitchell (ct30226)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        203-873-0240
        203-873-0235 (fax)
        rbmitchell@mitchellandsheahan.com

        COUNSEL FOR DEFENDANTS

## <u>CERTIFICATION</u>

I HEREBY CERTIFY that on this date, August 24, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.


*/s/ Robert B. Mitchell*
Robert B. Mitchell (ct02662))
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
rbmitchell@mitchellandsheahan.com