UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____ X
                                         )
                                         )
JANE DOE,                                )         Index No. 3:18-cv-01322-KAD
                    Plaintiff,           )
                                         )
v.                                       )
                                         )         August 24, 2020
TOWN OF GREENWICH, et al.,               )
                    Defendants.          )
_____ X


**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ON EACH OF DEFENDANTS' AFFIRMATIVE DEFENSES**

BRAXTON HOOK LLC
Attorneys for Plaintiff
280 Railroad Ave., Suite 205
Greenwich, CT 06830
Tel. (203) 661-4610
Fax (203) 661-4611

# TABLE OF CONTENTS

**Table of Authorities** …………………………………………………………… **ii**

**PRELIMINARY STATEMENT** ………………………………………….. **1**

**RELEVANT FACTS AND PROCEDURAL HISTORY** ……………………… **1**

**ARGUMENT** …………………………………………………………... **4**

**I.    STANDARD FOR SUMMARY JUDGMENT** ……………………… **4**

**II.   DEFENDANTS' SECOND AFFIRMATIVE DEFENSE
       OF WAIVER IS LEGALLY AND FACTUALLY INSUFFICIENT** …………. **5**

**III.  DEFENDANTS' THIRD AFFIRMATIVE DEFENSE
       OF ESTOPPEL IS LEGALLY AND FACTUALLY INSUFFICIENT** ………. **7**

**IV.   DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE OF ASSUMPTION
       OF RISK IS LEGALLY AND FACTUALLY INSUFFICIENT** ……………… **8**

**CONCLUSION** ……………………………………………………… **17**

**<u>Cases:</u>**

AFSCME, Council 4, Local 704 v. Dept. of Public Health, 272 Conn. 617 (2005)……………6

Agnes v. Grem, No. CV990587276S, 2001 WL 837920 (Conn. Super. Ct. June 29, 2001)…...9

Ahrens v. Dunkin' Brands, Inc., No. 3:09-CV-186 VLB, 2011 WL 60517 (D. Conn. 2011)…..6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)……...4

Baez v. JetBlue Airways Corp., 793 F.3d 269 (2d Cir.2015)…………………………….....4

Bryant v. Maffucci, 923 F.2d 979 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991)…………4

C.R. Klewin Ne., LLC v. City of Bridgeport, 282 Conn. 54 (2007)……………………………5

Csizmadia v. P. Ballantine & Sons, 287 F.2d 423 (2d Cir. 1961)………………………………8

Dean v. Hershowitz, 119 Conn. 398, 177 A. 262 (Conn. 1935)………………………………...8

Doe v. Roe, No. CV125034145S, 2013 WL 6912882 (Conn. Super. Ct. Nov. 27, 2013)…..9-10

Donahue v. S.J. Fish & Sons, Inc., No. 539920, 1995 WL 562216 (Conn. Super. Ct.
Sept. 18, 1995)…………………………………………………………………………………..9

Ferrigno v. Park, No. CV0278359S, 2002 WL 31235546 (Conn. Super. Ct. Sept. 4, 2002)…...9

Hayes v. New York City Dept. of Corr., 84 F.3d 614 (2d Cir. 1996)…………………………..4

Janelsins v. Button, 102 Md.App. 30, 648 A.2d 1039 (Md. Ct. Spec. App. 1994)……………10

Johnnycake Mountain Associates v. Ochs, 104 Conn. App. 194 (2007),
*cert. denied*, 286 Conn. 906 (Conn. 2008)……………………………………………………..8

Krevis v. Bridgeport, 262 Conn. 813, 817 A.2d 628, *on remand*, 80 Conn. App. 432,
835 A.2d 123 (Conn. App. 2003), *cert. denied*, 267 Conn. 914, 841 A.2d 219 (Conn. 2004)….6

L'Heureux v. Hurley, 117 Conn. 347, 168 A. 8 (Conn. 1933)…………………………………12

Lamborn v. Dittmer, 873 F.2d 522 (2d Cir.1989)………………………………………………6

LaSalle National Bank v. Freshfield Meadows, LLC, 69 Conn.App. 824,
798 A.2d 445 (2002)…………………………………………………………………………..7

Lopez v. CCRC DBA Nutmeg Recycling, LLC, No. CV 054006614, 2006 WL 329868
(Conn. Super. Ct. Jan. 27, 2006)………………………………………………………9

Mooney v. City of New York, 219 F.3d 123 (2d Cir. 2000)……………………………….6

Ordway v. Superior Court, 198 Cal.App.3d 98, 243 Cal Rptr. 536 (Cal. App. 1988)………….10

N.L.R.B. v. New York Telephone Co., 930 F.2d 1009 (2d Cir. 1991)………………………6

Nally v. Charbonneau, 169 Conn. 50, 362 A.2d 494 (Conn. 1975)……………………………..8

Pall v. Pall, 137 Conn. 347, 77 A.2d 345 (Conn. 1950)………………………………………8

Reinke v. Greenwich Hosp. Ass'n, 175 Conn. 24 (1978)………………………………………..6

Rivera v. Micelli, No. CV040104721, 2005 WL 1153615, 39 Conn. L. Rptr. 151
(Conn. Super. Ct. Apr. 15, 2005)……………………………………………..……12, 16-17

Stovall v. First Unum Life Ins. Co., 20 Fed. Appx. 47 (2d Cir. 2001)………………………..7

Tiller v. Atlantic Coast Line R.R., 318 U.S. 54 (1943)………………………………………9

Vieira v. Ingersoll, No. CV 930062735, 1994 WL 711166 (Conn. Super. Ct. Dec. 13, 1994).....9

Wells Fargo Bank, N.A. v. Lorson, 183 Conn. App. 200 (2018)……………………………..8

Worth Const. Co., Inc. v. Dep't of Pub. Works, 139 Conn. App. 65 (2012)…………………….6

**Treatises:**

28 Am.Jur.2d 640, Estoppel and Waiver § 35 (1966)……………………………………………7

## PRELIMINARY STATEMENT

Judgment should enter for Plaintiff on each of the affirmative defenses in the Defendants' Answer and Amended Affirmative Defenses. (Doc. #206). The First Affirmative Defense that Plaintiff failed to state a claim on which relief can be granted has already been ruled upon. The Second and Third Affirmative Defenses, for waiver and estoppel, respectively, rely on a deliberate misreading of a single communication from Plaintiff's counsel and fail entirely to establish a single element of either defense. The Fourth Affirmative Defense, for assumption of risk, is based on assertions of fact that are contradicted by uncontroverted facts about which there is no genuine issue. It is also fatally legally infirm, as this defense is disfavored in Connecticut and does not apply to an intentional tort such as the claim at issue here. In short, judgment must be rendered for Plaintiff on Defendants' affirmative defenses as a matter of both fact and law for the reasons set forth below.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The instant case arose out of a complaint to the Greenwich Police Department ("GPD") that 16-year-old Jane Doe was sexually assaulted by a student who attended Brunswick School and the failure of GPD (including that of Defendants Sgt. Reeves and Det. Rondini) to investigate her complaint in the same manner it did other complaints of assault against perpetrators who were not Brunswick students. In their Amended Answer (Doc. # 206), Defendants assert four affirmative defenses to Plaintiff's claim that they violated her Constitutional right to Equal Protection. Their First Affirmative Defense, that Plaintiff failed to state a claim upon which relief can be granted, has already been ruled upon, resulting in the dismissal of some of Plaintiff's claims, but also in the survival of her Equal Protection claim. Because this defense was previously ruled upon and rejected with respect to Plaintiff's remaining

Equal Protection claim, summary judgment should be rendered on the First Affirmative Defense for Plaintiff.

Defendants' Second and Third Affirmative Defenses are for waiver and estoppel, and assert that Plaintiff is precluded from bringing "any claims arising out of any alleged contact between the Defendants and Brunswick because the Plaintiff's attorney instructed the Defendants to interact with Brunswick during the course of the investigation." The sole factual basis for these two defenses is the claim that "In the August 23, 2016 letter to Defendant Reeves (Ex. A to the Second Amended Complaint, Doc # 46-1), the Plaintiff's attorney, Meredith Braxton, gave written instructions to Defendant Reeves that he needed to interact with Brunswick School and its headmaster, Mr. Philip." (Hook Dec. Ex. 1 at 1-2).

Defendants' Fourth Affirmative Defense claims that Plaintiff assumed the risk that her Constitutional rights would be violated, stating without explanation that "The Plaintiff, through her actions, assumed the risk and has waived any claims arising from the Defendants' actions." In their Interrogatory Responses concerning this affirmative defense, Defendants state that the facts upon which this defense is based are 1) a seven-week delay in reporting the assault; 2) the false claim that Plaintiff gave GPD and other individuals conflicting statements; 3) the false claim that Plaintiff gave inconsistent statements about whether she was drinking or serving alcohol as well as Peter Roe's actions during the assault; 4) the false claim that Plaintiff's attorney instructed Sgt. Reeves to interact with Brunswick School; 5) that Plaintiff knew she could suffer social repercussions for reporting the crime and that the investigation "could possibly lead nowhere"; and 6) the false claim that she only pursued criminal charges under pressure from her parents. (Hook Dec. Ex. 1 at 2-3).

As is shown below, none of Defendants' affirmative defenses, as articulated in their Interrogatory Reponses, are legal defenses to Plaintiff's Equal Protection claim. As this Court explained in its previous rulings, Plaintiff's allegation that Defendants violated the Equal Protection Clause under the theory outlined in <u>Myers v. County of Orange</u>, 157 F.3d 66 (2d Cir. 1998) was sufficient to survive a motion to dismiss, specifically that GPD's informal policy of protecting Brunswick students at the expense of their victims deprived Plaintiff of the right to be treated the same as other victims of criminal assault in the investigation of her complaint. (Doc. # 115, pp. 7-10; Doc. # 256, p. 5 fn. 3) With respect to the waiver and estoppel defenses, the letter from Attorney Braxton to Sgt. Reeves, dated August 23, 2016 ("Letter"), noted Sgt. Reeves' reluctance to investigate Jane Doe's claim and urged him to investigate it properly; the "contact" it suggested was to obtain information from the Brunswick headmaster Tom Philip about the statements he had procured from witnesses, including from Peter Roe. Defendants' position that asking for a thorough investigation is a waiver of, or estops Jane Doe from, asserting a claim for violation of her Constitution right to Equal Protection is factually unsupportable. Further, the investigation of Jane Doe's complaint was in its infancy on August 23, 2016 and was not completed until the arrest warrant was submitted on December 22, 2016. (Hook Dec. Ex. 3 at TOG 686). Jane Doe therefore could not have known at that point that she even had a claim for violation of her Constitutional rights. Without that knowledge, there can be no waiver.

Similarly, Defendants' assumption of risk defense is unavailing. As is detailed below and in Plaintiff's Statement of Undisputed Facts, submitted with this motion, the claimed "facts" are undisputedly wrong. More important, there are simply no facts that could support application of an assumption of risk defense to a violation of Constitutional rights under Connecticut law.

**ARGUMENT**

## I.    <u>STANDARD FOR SUMMARY JUDGMENT</u>

Summary judgment pursuant to Fed. R. Civ. P. 56 "is appropriate when, having resolved all ambiguities and permissible factual inferences in favor of the party against whom summary judgment is sought, there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law." <u>Baez v. JetBlue Airways Corp.</u>, 793 F.3d 269, 273 (2d Cir.2015). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and only when reasonable minds could not differ regarding the import of the evidence. <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991), *quoting* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In applying this standard, the court should not weigh evidence or assess the credibility of witnesses, as such determinations are the sole province of the jury. <u>Hayes v. New York City Dept. of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996).

Defendants' affirmative defenses of waiver, estoppel, and assumption of the risk cannot be sustained. These defenses depend on Defendants' misinterpretation of Plaintiff's case and a deliberate misreading of a single communication from Plaintiff's counsel to Sgt. Reeves. As explained above, Plaintiff's claim is that her Constitutional right to equal protection was violated by the GPD's informal policy of treating victims of alleged crimes perpetrated by Brunswick students differently than victims of crimes allegedly committed by non-Brunswick students by not investigating or pursuing Brunswick cases with the same diligence as others.

## II. DEFENDANTS' SECOND AFFIRMATIVE DEFENSE OF WAIVER IS LEGALLY AND FACTUALLY INSUFFICIENT

In support of their Second Affirmative Defense, Defendants state that Plaintiff waived claims arising from any "alleged contact" between Defendants and Brunswick because Plaintiff's counsel "instructed" Defendants to interact with Brunswick during the course of the investigation (Hook Dec. Ex. 1 at 1), which Defendants claim was contained in the Letter (Doc # 46-1 at 2-3). This is a vast overstatement of what the Letter from Plaintiff's counsel actually said:

> Even more important, [Peter Roe] has apparently made more than one statement to Mr. Philip, and other witnesses may have made statements to him, according to correspondence from Mr. Philip to the [Doe]s. Those statements should be obtained as part of the investigation immediately.

Further, this sentence is in the context of a letter that notes Sgt. Reeves' apparent reluctance to investigate Jane Doe's complaint and urges the GPD to responsibly handle the investigation. Notably, both Sgt. Reeves and Det. Rondini testified that they did not contact Philip as suggested and did not obtain any information from him about what witnesses told him. (Hook Dec. Ex. 8 at 73-75, 77-79; and Ex. 9 at 30-31).

As a threshold matter, Plaintiff's case is not based solely on contact between Brunswick and GPD – it is based on unequal treatment in the pursuit of criminal cases. Therefore, even if the suggestion to obtain statements could be credibly construed as an instruction to speak to Brunswick, it would not constitute a defense in this case.

Nor can the single sentence in the Letter constitute a waiver of Plaintiff's equal protection claim. "'Waiver is the intentional relinquishment or abandonment of a known right or privilege.'" C.R. Klewin Ne., LLC v. City of Bridgeport, 282 Conn. 54, 87 (2007), *quoting* AFSCME, Council 4, Local 704 v. Dept. of Public Health, supra, 272 Conn. 617, 623 (2005). When a waiver is not express, as is asserted by Defendants here, this Court explained:

An implied waiver may only be found . . . where "the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them." Mooney v. City of New York, 219 F.3d 123, 131 (2d Cir. 2000). The party claiming an implied waiver bears the burden of demonstrating "a clear, unequivocal and decisive act of a [waiving] party showing such a purpose." Lamborn v. Dittmer, 873 F.2d 522, 529 (2d Cir.1989); *see also* N.L.R.B. v. New York Telephone Co., 930 F.2d 1009, 1011 (2d Cir. 1991) (the party asserting waiver "bears the weighty burden of establishing that a 'clear and unmistakable' waiver has occurred").

Ahrens v. Dunkin' Brands, Inc., No. 3:09-CV-186 VLB, 2011 WL 60517, at *6 (D. Conn. 2011).

A necessary prerequisite to a waiver is knowledge of the right or claim purportedly waived. Reinke v. Greenwich Hosp. Ass'n, 175 Conn. 24, 27 (1978). "Waiver presupposes a full knowledge of an existing right or privilege and something done designedly or knowingly to relinquish it." Id. Thus, to find a waiver, "'there must be evidence of intelligent and intentional action by the petitioner of the right claimed to be waived. . . . It must be shown that the party understood its rights and voluntarily relinquished them anyway. . . .'" Worth Const. Co., Inc. v. Dep't of Pub. Works, 139 Conn. App. 65, 71 (2012), *quoting* Krevis v. Bridgeport, 262 Conn. 813, 823, 817 A.2d 628, *on remand*, 80 Conn. App. 432, 835 A.2d 123 (2003), *cert. denied*, 267 Conn. 914, 841 A.2d 219 (2004).

Plaintiff could not have even known of her right to claim a violation of equal protection on August 23, 2016 because the investigation had just started – the police had only interviewed Jane Doe, taken a statement from Brother Doe, and interviewed a witness by phone at his camp – and no such claim was ripe. (Hook Dec. Ex. 3 at TOG 633, 645-46, 658-59, 665, 670-72). The Letter does not state or imply in any way that Plaintiff is waiving her right to be treated on an equal basis with other victims; it conveys the opposite. In the Letter, Plaintiff's counsel *asserts* Plaintiff's right to be treated equally with other victims in the investigation of her complaint, urging Reeves not to violate her rights and create the claim she ultimately brought to this Court.

There is simply no genuine issue of material fact that Plaintiff did not have knowledge that the GPD would violate her right to equal protection. This Court should therefore enter judgment in Plaintiff's favor on Defendant's Second Affirmative Defense.

## III. DEFENDANTS' THIRD AFFIRMATIVE DEFENSE OF ESTOPPEL IS LEGALLY AND FACTUALLY INSUFFICIENT

Defendants again rely on the above-quoted portion of the Letter to assert their Third Affirmative Defense that "The Plaintiff is estopped from asserting any claims arising from the alleged contact between the Defendants and Brunswick . . ." (Hook Dec. Ex. 1 at 2). Again, as a legal matter, the Letter cannot estop Plaintiff from asserting her Equal Protection claim.

There are two types of estoppel: promissory and equitable. *See* Stovall v. First Unum Life Ins. Co., 20 Fed. Appx. 47, 50 (2d Cir. 2001). While Defendants do not specify which variety of estoppel they are asserting, it necessarily must be equitable estoppel as promissory estoppel requires allegations of a promise, which is absent in this case. See id. Connecticut law concerning equitable estoppel is well settled:

> "Our Supreme Court ... stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel: the party *209 must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other." (Internal quotation marks omitted.) LaSalle National Bank v. Freshfield Meadows, LLC, 69 Conn. App. 824, 838, 798 A.2d 445 (2002). "Broadly speaking, the essential elements of an equitable estoppel ... as related to the party to be estopped, are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts." 28 Am.Jur.2d 640, Estoppel and Waiver § 35 (1966).

<u>Johnnycake Mountain Associates v. Ochs</u>, 104 Conn. App. 194, 208–09 (2007), *cert. denied*, 286 Conn. 906 (2008); <u>Wells Fargo Bank, N.A. v. Lorson</u>, 183 Conn. App. 200, 219 (2018).

There is no allegation in any of Defendants' submissions and no evidence that anything in the Letter misrepresents facts. Tom Philip admitted to meeting with witnesses and asking about the pool party. He made notes from those meetings. (Hook Dec. Ex. 10 at 119-22, 128-29). Pointing out that the GPD should obtain those statements is not an instruction to collude with Brunswick. In any event, Sgt. Reeves and Det. Rondini did nothing in reliance on the Letter and did not obtain those statements. (Hook Dec. Ex. 8 at 73-75, 77-79; Ex. 9 at 30-31). In short, there is no genuine issue of fact regarding any of the elements of an equitable estoppel defense. Plaintiff made no misrepresentation of fact or even any misleading suggestion and GPD did not take any action as a consequence of the Letter. Judgment must therefore enter in favor of Plaintiff on Defendant's Third Affirmative Defense.

## IV. DEFENDANTS' FOURTH AFFIRMATIVE DEFENSE OF ASSUMPTION OF RISK IS LEGALLY AND FACTUALLY INSUFFICIENT

Assumption of risk is an affirmative defense to claims of negligence. "The defense of assumption of risk is applicable when a person knows or as a reasonable person should know that in pursuing a certain course he will expose himself to the risk of injury, comprehends or ought as a reasonable person to comprehend the nature and extent of the risk and voluntarily subjects himself to it. He thus assumes the risk and cannot recover damages resulting from it. [citations omitted]" <u>Nally v. Charbonneau</u>, 169 Conn. 50, 53, 362 A.2d 494, 496-97 (Conn. 1975). "Connecticut cases assert that assumption of the risk is an effective defense only if the injured party fully comprehended the nature and extent of the danger." <u>Csizmadia v. P. Ballantine & Sons</u>, 287 F.2d 423, 424-25 (2d Cir. 1961), *citing* <u>Dean v. Hershowitz</u>, 119 Conn. 398, 177 A. 262 (Conn. 1935); <u>Pall v. Pall</u>, 137 Conn. 347, 77 A.2d 345 (Conn. 1950).

"[T]he doctrine [of assumption of risk] was a product of the industrial revolution, designed to insulate employers to the greatest possible extent by defeating the claims of their injured workers."  Donahue v. S.J. Fish & Sons, Inc., No. 539920, 1995 WL 562216, *2 (Conn. Super. Ct. Sept. 18, 1995), *citing* Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 58-59 (1943). "Nevertheless, '[t]he harsh doctrine . . . is plainly "morally unacceptable" in modern times. . . . The majority of states have altered or abolished it, either legislatively or by judicial decision. . . . [T]he Connecticut legislature has statutorily abolished the doctrine in negligence cases. . . . The doctrine is outmoded and disfavored. . . . Given this widespread repudiation in the doctrinal field of its birth – i.e. negligence law – it would be anomalous to apply the defense to causes of action outside the field of negligence in the absence of compelling authority or convincing argument.' [Citations omitted]" Doe v. Roe, No. CV125034145S, 2013 WL 6912882, *3 (Conn. Super. Ct. Nov. 27, 2013), *quoting* Donahue, 1995 WL 562216 at *2.

"Accordingly, while '[n]o Connecticut appellate court has addressed the issue of whether assumption of risk is an available defense to an intentional tort . . . its use in such cases has been rejected by several trial courts.'" Doe, 2013 WL 6912882 at *3, *quoting* Lopez v. CCRC DBA Nutmeg Recycling, LLC, No. CV 054006614, 2006 WL 329868, *2 (Conn. Super. Ct. Jan. 27, 2006); *citing* Agnes v. Grem, No. CV990587276S, 2001 WL 837920 (Conn. Super. Ct. June 29, 2001); Ferrigno v. Park, No. CV0278359S, 2002 WL 31235546 (Conn. Super. Ct. Sept. 4, 2002); Vieira v. Ingersoll, No. CV 930062735, 1994 WL 711166 (Conn. Super. Ct. Dec. 13, 1994).  Further, these decisions rejecting "assumption of risk as a defense to intentional torts is consistent with the trend in other northeastern states."  Doe, 2013 WL 6912882 at *3 [citations omitted]. Moreover, "[a]lthough the applicability of the defense to causes of action arising out of intentional torts has not been parsed out at the appellate level in any northeastern jurisdictions,

'[o]ther jurisdictions . . . have considered the issue of assumption of risk as a defense to an intentional tort [and] have overwhelmingly rejected its applicability.' [citations omitted]" Id., *quoting* <u>Janelsins v. Button</u>, 102 Md.App. 30, 41-42, 648 A.2d 1039, 1045 (Md. Ct. Spec. App. 1994).  The Maryland Court of Special Appeals explained the rationale behind these decisions:

> Historically, the doctrine of assumption of risk has provided a defense only to actions for negligence.  It has little or no application in the case of intentional or reckless conduct.  The reason is this:  While a potential plaintiff who engages in dangerous activity is held to have consented to the injury-causing events which are known, apparent, or reasonably foreseeable consequences of the participation . . . participants do not consent to acts [by others] which are reckless or intentional.

<u>Janelsins</u>, 102 Md.App. at 42-43 (emphasis omitted; internal quotation marks omitted), *quoting* <u>Ordway v. Superior Court</u>, 198 Cal.App.3d 98, 108, 243 Cal Rptr. 536, 542 (Cal. App. 1988).

The only cause of action in this litigation is an intentional tort pursuant to Section 1983. Jane Doe alleges that Defendants violated her right to Due Process and Equal Protection under the law by failing to investigate her complaint of sexual assault against a Brunswick student in the same manner as they investigate all other complaints of assault.  (Doc. # 46 at ¶¶ 43-48).  As shown above, Connecticut state courts have not permitted the affirmative defense of assumption of risk in cases involving intentional torts.  Therefore, because there is no negligence claim in this action, as a matter of law, this affirmative defense should be dismissed and summary judgment rendered for Plaintiff.

Even if the Court were to consider the facts asserted by Defendants to support their assumption of risk affirmative defense, summary judgment should be granted for Plaintiff because none of the alleged facts could result in an assumption of risk.  Defendants assert the affirmative defense of assumption of the risk on the following facts:

1.     *"The Plaintiff filed a police report about the alleged June 3, 2016 sexual assault on July 28, 2016."* (Hook Dec. Ex. 1 at 2). The undisputed facts do not support Defendants' claim that in delaying her report to the police, Jane Doe knowingly assumed the risk that the Defendants would intentionally collude with Brunswick School to influence the investigation of her complaint in favor of her assailant. The delay in reporting should have had no effect on the thoroughness and fairness of the investigation pursuant to Defendants' own written policy for Investigating Sex Crimes.  That policy states: "Due to the trauma and fear experienced by victims, delayed reporting of sexual assaults is common and should not deter a thorough investigation."  (Hook Dec. Ex. 2 at TOG 1988). The GPD's written policy also warns against using such delayed reporting as a reflection on the credibility of the victim:  "Officers should not pose questions that could be perceived as judgmental or accusatory regarding a delayed report." (Id.)

Jane Doe's expert witness, Dr. Elaine L. Ducharme, has described the reasons for such delay in reporting of sexual assaults:

> Delayed reporting is extremely common due to a number of factors including shame, anxiety, embarrassment, shock, threats of retribution, misplaced guilt, relationship to the perpetrator and use of alcohol or drugs.  Concerns of the victim that they will not be believed and that sexual assault is stigmatizing, as well as anxiety about what they will experience when they do report an assault, are additional reasons for delayed and non-disclosure.

(Hook Dec. Ex. 11 at 1-2).

Jane Doe's delay in reporting her criminal complaint of sexual assault to the police was not a knowing assumption of the risk that the police, in turn, would intentionally violate the law and fail to provide her complaint with the same due process and equal protection accorded complaints of assault that did not involve Brunswick students.  In addressing the affirmative defense of assumption of risk in the context of a landlord-tenant dispute governed by state

statute, the Connecticut Supreme Court held that "[o]ne cannot waive an obligation owed by another to the public. The obligation of the defendants . . . in question was a public obligation created by statute, and could not be waived by the plaintiff." L'Heureux v. Hurley, 117 Conn. 347, 347, 168 A. 8, 11 (Conn. 1933). *See also* Rivera v. Micelli, No. CV040104721, 2005 WL 1153615, *3, 39 Conn. L. Rptr. 151 (Conn. Super. Ct. Apr. 15, 2005) (striking affirmative defense of assumption of risk for violation of the Dram Shop Act because the statute imposed an obligation on the seller of intoxicating beverages to the general public). As police officers, Defendants have an obligation under the Fourteenth Amendment to investigate all criminal complaints equally and fairly. Jane Doe did not, and could not, knowingly assume the risk that police officers would violate their duty under the law.

      2.       *"During the investigation, the Plaintiff gave the GPD and other individuals conflicting statements about what happened at the party on June 3, 2016."* (Hook Dec. Ex. 1 at 2). This statement is both factually incorrect and legally insufficient to support an affirmative defense of assumption of risk.

      The undisputed facts reveal that Jane Doe's description of the sexual assault was consistent throughout the investigation and that there were no conflicting statements made to the Defendants or other individuals. Jane Doe did not provide all of the details of the sexual assault each time she described it, as is to be expected of any victim of a traumatizing ordeal, but that is not tantamount to a discrepancy. The GPD's own Investigating Sex Crimes policy cautions investigators regarding drawing credibility determinations based on a victim's immediate response to the sexual assault:

> Based on the length of time between the assault and report of the crime and the individual's personal history, the victim may be in crisis and experiencing posttraumatic stress disorder and exhibiting a range of behaviors that will likely change over time.

The victim's response to the trauma of a sexual assault *shall not be used* in any way to measure credibility.

(Hook Dec. Ex. 2 at TOG- 1986) (emphasis added). Dr. Ducharme addressed this issue in her report as well:

It is important to understand that many times victims have a difficult time recalling all the details of the assault or are traumatized by re-telling what happened to them, which can lead to re-experiencing the assault.

We make meaning of information in the frontal lobes of the brain where feelings and thoughts join together and construct a story of our experiences. The integrative failure that is characteristic of traumatized individuals may relate to structural and functional brain changes. Thus, when individuals are asked to recall the traumatic event, they are often simply flooded with physical and emotional sensations and in a sense become "speechless."

(Hook Dec. Ex. 11 at 2-3).

In any event, Jane Doe was consistent in her report of the sexual assault throughout the investigation. She reported that when she was left alone with Peter Roe in the bathroom of her pool house, he told her that he wanted to have sex with her, he pulled down her bathing suit top, he reached into her bathing suit bottom and put his finger on or into her vagina (or "fingered" her), and that he repeatedly tried to force himself upon her. (Hook Dec. Ex. 3 at TOG 646-46, TOG 670-71, TOG 677, TOG 639-42, TOG 651-52, TOG 682, TOG 679, TOG 664, TOG 668; Ex. 4 at TOG 978-79; Ex. 5 at TOG 994-95). As a traumatized 16-year old juvenile at the time of the assault, it is understandable that Jane Doe had difficulty describing the detail of whether the assailant's finger was in her vagina or just on her vagina. But what never changed were the facts that he assaulted her by pulling down her bathing suit top and putting his hand in her bathing suit bottom and his finger in her vaginal area. Jane Doe could not have knowingly assumed the risk of having her criminal complaint investigated by the GPD in a less thorough manner than other

investigations when she confided the details of the assault to her friends *before* she made any complaint to the GPD. She also could not, as a matter of law, have assumed the risk of GPD violating the law by failing to provide her with due process and equal protection because she did not knowingly consent to their inadequate and biased investigation.

3.       *"This information included whether the Plaintiff was drinking/serving alcohol and Peter Roe's actions during the alleged assault."* (Hook Dec. Ex. 1 at 2). Whether Jane Doe was drinking or serving alcohol during the party at which she was assaulted does not change the fact that Peter Roe sexually assaulted her. Furthermore, Jane Doe never gave conflicting information about these facts because she was interviewed twice, she was never asked about drinking or serving alcohol in the first interview conducted by Defendant Rondini (Hook Dec. Ex. 4), and when asked about alcohol by Defendant Rondini during the second interview, she stated that she had sips of alcohol and did not serve alcohol to anyone (Hook Dec. Ex. 5 at TOG 990, 991). There is no evidence that Jane Doe stated any different facts to any other individual following the incident or during the investigation, and there is no evidence from the investigation that anyone interviewed was certain about whether Jane Doe drank alcohol or served alcoholic beverages. (Hook Dec. Ex. 3). There is simply no discrepancy in Jane Doe's accounts or in the investigation file regarding these facts.

In addition, none of these facts alter the consistent report by Jane Doe that Peter Roe sexually assaulted her. Jane Doe's report of Peter Roe's actions during the alleged assault never changed throughout the investigation. (Hook Dec. Ex. 3 at TOG 646-46, TOG 670-71, TOG 677, TOG 639-42, TOG 651-52, TOG 682, TOG 679, TOG 664, TOG 668; Ex. 4 at TOG 978-79; Ex. 5 at TOG 994-95).

Jane Doe could not, as a matter of law, have knowingly consented to GPD's violation of the law by failing to thoroughly investigate her criminal complaint because (1) during her first interview with the GPD she was not asked about alcohol consumption by Det. Rondini so there could not have been a conflict with her responses to those questions during the second interview by Det. Rondini; and (2) she described the details of Peter Roe's sexual assault in the manner of a traumatized 16-year old girl.

4.      *"In the August 23, 2016 letter to Defendant Reeves, the Plaintiff's attorney, Meredith Braxton, instructed Defendant Reeves to interact with Brunswick School and its headmaster, Mr. Philip."* (Hook Dec. Ex. 1 at 2). A fair reading of the Letter by Attorney Braxton is that it is a complaint by Jane Doe's family that the GPD officers were failing to conduct a proper investigation into the criminal complaint filed by Jane Doe. (Doc. # 46-1 at 2-3). There is no dispute about this fact because GPD Chief James Heavey responded to Ms. Braxton's letter by stating it would be referred to the Professional Standards Section for investigation. (Doc. # 46-1 at 4-5). Thereafter, GPD Director of General Services, Gregory Hannigan, advised that Chief Heavey reviewed the conduct of the investigation himself and found it to be appropriate. (Doc. # 46-1 at 7). It is unclear what Defendants suggest was the "risk" that Jane Doe assumed by sending the Letter because Defendants have testified that they rejected Ms. Braxton's suggestion that Headmaster Tom Philip be interviewed and that they never conducted such an interview. (Hook Dec. Ex. 8 at 73-75, 77-79; Ex. 9 at 30-31).  As a matter of law, Jane Doe could not have knowingly assumed the risk that GPD would violate the law by failing to conduct a fair and thorough investigation when she instructed her counsel to submit a complaint to GPD about its investigation.

5.     *"During Jane Doe's deposition, she admitted before reporting Peter Roe's actions that she knew there were possible social repercussions, and an investigation could possibly lead nowhere. Furthermore, while she was hesitant to pursue any criminal charges against Peter Roe, she did so under pressure from her parents, who believed it was the right thing to do."* (Hook Dec. Ex. 1 at 2-3). These are the most curious facts cited by Defendants to support their affirmative defense of assumption of risk.  The Greenwich Police Department and its officers, whose responsibility is to protect the public against criminal activities, are stating that Jane Doe assumed the risk of being harmed by filing a criminal complaint when she had been sexually assaulted.  As a matter of public policy, it is inconceivable that Defendants would be suggesting that if a person files a criminal complaint then any harm that happens thereafter is her fault. There is already a significant reluctance by victims of sexual assaults to report those crimes to the police and, as a result, criminals who have perpetrated these assaults are free to continue to do so because police have not investigated or apprehended such criminals.  GPD should be encouraging victims of sexual assault to report those crimes, rather than suggesting that doing so will harm them.

Additionally, as a matter of law, the fact that there may have been known repercussions to Jane Doe from third parties as a result of her filing a criminal complaint does not provide a basis for her knowing assumption of the risk that Defendants would violate the law in conducting an improper investigation.  Connecticut cases that addressed the doctrine of assumption of risk in the context of Dram Shop Act violations make it perfectly clear that, even if a plaintiff knowingly assumes a risk of harm from a third party, that does not absolve another defendant which violates its statutory obligation to the general public. In <u>Rivera v. Micelli</u> the court held that:

> [w]hile a plaintiff may properly be alleged to have assumed the risk of the
> reckless or wanton operation of a vehicle by a driver that he knew or should have
> known was intoxicated, . . . he can not be held to have 'assumed the risk' that a
> seller of alcoholic beverages continued to serve such beverages to a person known
> to be intoxicated. General Statutes § 30-102 does not regulate the driver of the
> vehicle, only the seller of the intoxicating beverage. While a plaintiff may not be
> a totally "innocent third party" with respect to the principal tortfeasor, he is such
> with respect to the party who allegedly sold the intoxicating beverage to an
> already intoxicated person.

No. CV040104721, 2005 WL 1153615, *3, 39 Conn. L. Rptr. 151 (Conn. Super. Ct. Apr. 15,

2005). Similarly, Section 1983 regulates the conduct only of government actors and requires

that they provide due process and equal protection under the law to all individuals. It does not

regulate the activities of the general public. Jane Doe assumed the risk that there might be

social repercussions from her decision to file a criminal complaint against Peter Roe. She did

not assume the risk that the police would conduct a biased investigation in favor of Peter Roe,

resulting in even greater social repercussions. The Defendants have a Constitutional obligation

to provide due process and equal protection. The reactions of members of the public are

irrelevant to that obligation.

## CONCLUSION

Defendants have asserted four Affirmative Defenses that are wholly inapplicable to

Plaintiff's claim that her Constitutional right to Due Process and Equal Protection was violated

when the Defendants intentionally conducted a sham investigation designed to protect the

accused assailant as part of a years-long GPD practice and informal policy of protecting students

from Brunswick School from criminal liability. Their affirmative defenses are grounded in the

notion that Plaintiff somehow unknowingly waived her right to a fair and impartial investigation

and assumed the risk of Greenwich police officers acting in violation of the law. The facts and

law do not support Defendants' affirmative defenses and Plaintiff respectfully requests that the

Court grant her motion for summary judgment and dismiss these defenses with prejudice.


Dated: August 24, 2020
      Bridgeport, CT

                              BRAXTON HOOK LLC
                              Attorneys for Plaintiff


                By:        /s/Elizabeth I. Hook
                              Elizabeth I. Hook (ct30554)
                              Meredith C. Braxton (ct17395)
                              280 Railroad Ave., Suite 205
                              Greenwich, CT 06830
                              Tel. (203) 661-4610
                              Fax (203) 661-4611
                              ehook@braxtonhook.com
                              mbraxton@braxtonhook.com

**CERTIFICATION**

This is to certify that on August 24, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Courts CM/ECF System.

_____/s/Elizabeth I. Hook_____