```
 1   UNITED STATES DISTRICT court              HIGHLY
     FOR THE DISTRICT OF CONNECTICUT         CONFIDENTIAL
 2   --------------------------------x
     JANE DOE,                               FOR ATTORNEYS'
 3                                             EYES ONLY
                 Plaintiff,
 4
     vs.                      Case No. 3:18-cv-01322-KAD
 5                            Date:  January 7, 2020
     TOWN OF GREENWICH, ET AL,
 6
                 Defendants.
 7   --------------------------------x

 8

 9                   DEPOSITION OF PETER ROW

10

11       The deposition of Peter Row was taken on

12   January 7, 2020, beginning at 10:06 a.m., at

13   2 Greenwich Office Park, Greenwich, Connecticut,

14   before Susan Wandzilak, Registered Professional

15   Reporter and Notary Public in the State of

16   Connecticut.

17

18

19

20
                  Susan Wandzilak  License No. 377
21         DEL VECCHIO REPORTING SERVICES, LLC
             PROFESSIONAL SHORTHAND REPORTERS
22                  117 RANDI DRIVE
              MADISON, CONNECTICUT 06443
23                   800-839-6867

24   NEW HAVEN              STAMFORD           HARTFORD

25
```

```
 1    A P P E A R A N C E S

 2    ELIZABETH I. HOOK, ESQUIRE
      MEREDITH C. BRAXTON, ESQUIRE
 3         Braxton Hook, PLLC
           280Railroad Avenue
 4         Suite 205
           Greenwich, Connecticut 06830
 5         203-661-4610 Phone
           203--661-4611 Fax
 6         mbraxton@braxtonhook.com
           ehook@braxtonhook.com
 7
                       Attorney for Plaintiff
 8
      REESE MITCHELL, ESQUIRE
 9         Mitchell & Sheahan, P.C.
           80 Ferry Boulevard
10         Suite 216
           Stratford, Connecticut 06615
11         203-873-0240 Phone
           rbmitchell@mitchellandsheahan.com
12
                       Attorney for Defendants
13
      ABBY WADLER, ESQUIRE
14         Town of Greenwich - Law Department
           101 Field Point Road
15         Greenwich,Connecticut  06830
           203-622-7876 Phone
16         awadler@greenwichct.org

17                     Attorney for Defendant
                         Town of Greenwich
18
      MICHAEL J. JONES, ESQUIRE
19    RYAN S. TOUGIAS, ESQUIRE
           Ivey, Barnum & O'Mara, LLC
20         170 Mason Street
           Greenwich, Connecticut 06830-6692
21         203-661-6000 Phone
           203-661-9462 Fax
22         mjones@ibolaw.com

23                     Attorney for the Witness

24    Also Present:   ███BROTHER DOE███

25
```

<pre>
 1                S T I P U L A T I O N S

 2            IT IS HEREBY STIPULATED AND AGREED by

 3    and between counsel representing the parties that

 4    each party reserves the right to make specific

 5    objections at the trial of the case to each and

 6    every question asked and of answers given

 7    thereto by the deponent, reserving the right to

 8    move to strike out where applicable, except as to

 9    such objections as are directed to the form of

10    the question.

11            IT IS HEREBY STIPULATED AND AGREED by

12    and between counsel representing the respective

13    parties that proof of the official authority of

14    the Notary Public before whom this deposition is

15    taken is waived.

16            IT IS FURTHER STIPULATED AND AGREED by

17    and between counsel representing the respective

18    parties that the reading and signing of the

19    deposition by the deponent is not waived.

20            IT IS FURTHER STIPULATED AND AGREED by

21    and between counsel representing parties that all

22    defects, if any, as to the notice of the taking

23    of the deposition are waived.

24            Filing of the Notice of Deposition with

25    the original transcript is waived.
</pre>

1          THE VIDEOGRAPHER:  On the record at

2     10:06 a.m.  This is the deposition of Peter Row,

3     recorded on January 7, 2020, in Greenwich,

4     Connecticut.

5          This deposition is being taken in the case of

6     Jane Doe versus Town of Greenwich et al., and was

7     noticed by the Plaintiff.

8          The videotape operator is Antoinette Canieso

9     of Geomatrix Productions, 270 Amity Road,

10    Woodbridge, Connecticut.

11         Are there stipulations?

12         MS. HOOK:  Yes.  We are going to stipulate

13    that this deposition is going to be marked highly

14    confidential, attorneys' eyes only.  We are going

15    to -- for the avoidance of any doubt as to the

16    question and the answer, we are going to use

17    actual names because otherwise we can't be

18    certain that the witness will understand who

19    we're he talking about or that we are correctly

20    identifying.

21         MR. JONES:  Okay.  And then I assume that the

22    transcript is then redacted.

23         MS. HOOK:  If it's used publicly, yes.

24         MR. JONES:  All right.  And how do you handle

25    that with the videotape?

1      MS. HOOK:  Well, we have not yet used the

2    videotape, but I would assume that --

3      MS. BRAXTON:  I think the only time we would

4    use the videotape would be if we couldn't get

5    Mr. ROE to testify at trial and we needed

6    him.  And there is no order for pseudonyms during

7    trial.  We would have to deal with that at the

8    time.

9      MR. JONES:  Why don't we agree that any other

10   use for whatever reason we can't contemplate now,

11   if the videotape were to be used that any names

12   would be bleeped out.  Is that technically

13   possible?

14     MS. BRAXTON:  I don't think we can make an

15   agreement one way or the other at this point.  I

16   don't know what the situation would be.

17     MR. JONES:  But I think we have to be

18   consistent.  If the transcript gets used and you

19   are redacting the names in the transcript -- and

20   again I agree with you, if it's used at the trial

21   it's a different story.  But if for some reason

22   the videotape is used prior, which it shouldn't

23   be, but it is, we need to be consistent with how

24   the transcript is dealt with.

25     MS. BRAXTON:  Well, I think the pseudonym

1    order covers that.  Anything publicly filed.

2        MS. HOOK:  We will comply with the pseudonym

3    order.

4        MR. JONES:  Okay, but then we may have to get

5    a clarification from the judge going forward in

6    terms of the use of the videotape depending on

7    how that sort of dovetails with the pseudonym

8    order.  Because it seems to me, if you're

9    protecting the identities not just of my client

10   but everyone else in the transcripts you also

11   have to protect it in the videotape as well.

12       MS. HOOK:  As I confirmed, we will treat

13   Mr.  ROE  in the same way as the  DOE  family

14   has been treated.

15       MR. JONES:  Okay.  We are not there yet.  We

16   need to finish with the stipulations.

17       MS. HOOK:  Okay, and the usual stipulations

18   in terms of signing.

19       MR. JONES:  We'll have the --

20       MS. HOOK:  All objections are reserved

21   until --

22       MR. JONES:  No, I don't agree to that.  At

23   this point, based possible the documents that are

24   represented to us which it appears that you

25   intend to try to question my client upon, I think

1      that there are going to be objections that go

2      beyond just as to form and I'm reserving those

3      objections, to use those objections during this

4      deposition.

5         MS. HOOK:  So you're intending to instruct

6      your witness not to answer on the basis of --

7         MR. JONES:  That's right.  We're anticipating

8      -- I'm sorry.  I didn't mean to step on you.  Go

9      ahead.

10     MS. HOOK:  Okay.  All right.  So to the

11     extent that there is a disagreement about whether

12     your objection is appropriate or not, we will

13     reserve the right to recall Mr.  ROE  after

14     we --

15        MR. JONES:  Understood.

16        MS. HOOK:  -- go to the judge.

17        MR. JONES:  Understood.

18        MS. HOOK:  In terms of the deposition

19     transcript, we will allow Mr.  ROE  to review

20     and sign the deposition transcript.

21        MR. JONES:  Thank you.

22        MS. HOOK:  Can you swear the witness in.

23     Thank you.

24              PETER ROW,

25     having been first duly sworn, testified as

```
1     follows:
2           THE court REPORTER:  Can I have your full
3     name and address for the record.
4           THE WITNESS:  ██PETER ROE██.  ████████
5     ████████████████████████████████
6     ████████
7           MS. HOOK:  Okay, I would like to have this
8     marked for identification as Row Exhibit 1.
9           (Whereupon, Row Exhibit No. 1 was marked for
10    identification.)
11                      DIRECT EXAMINATION
12    BY MS. HOOK:
13         Q.  In the meantime, I show you what's been
14    marked Row Exhibit 1.  Can you review that and let me
15    know when you are done.
16         A.  (Witness complying.)
17         MS. BRAXTON:  Can we go off the record for a
18    second?
19         THE VIDEOGRAPHER:  Off the record at
20    10:11 a.m.
21         (Briefly off the record, as water is fetched
22    for participants.)
23         THE VIDEOGRAPHER:  On the record, 10:12 a.m.
24    BY MS. HOOK:
25         Q.  Have you finished reviewing the exhibit,
```

1    Mr.    ROE   ?

2          A.   Yeah.

3          Q.   Do you recognize that subpoena?

4          A.   Yes.

5          Q.   Are you appearing pursuant to this subpoena?

6    In other words, is your appearance today pursuant to

7    this subpoena?

8          A.   Yes.

9          Q.   Okay.  Did you search for responsive

10   documents?

11         A.   Yes.

12         Q.   And did you find any?

13         A.   The only -- the Facebook message I sent

14   Mr.    DOE    back in --

15              MR. JONES:  That's it.  He's answered that

16         question.  We asked him to review the subpoena,

17         the requested documents in the subpoena.  The

18         only thing that he had in his possession was the

19         Facebook message that is one of the exhibits that

20         you sent over to us.  It's identical to that

21         except for the fact that it's not redacted.

22   BY MS. HOOK:

23         Q.   Okay.  And that's the only document that is

24   responsive that you found in your files?

25         A.   Yes.

```
 1        Q.   You have no other e-mails from 2016, or
 2   texts?
 3             MR. JONES:  Objection.
 4             THE WITNESS:  No.
 5   BY MS. HOOK:
 6        Q.   And why would you have just that one?
 7        A.   Because that's Facebook.  You log in.
 8        Q.   And that's the only Facebook message --
 9        A.   Yes.
10        Q.   -- that was responsive, okay.  What did you
11   do to complete your search?
12        A.   I looked through my laptop and phone.
13        Q.   Okay.  How did you prepare for this
14   deposition?
15        A.   I met with my lawyers.
16        Q.   How many times did you meet with your
17   lawyers?
18        A.   Once.
19        Q.   Okay.  Did you speak with anyone else about
20   your deposition?
21        A.   No.
22        Q.   Did you speak with  STUDENT 5 ?
23        A.   No.
24        Q.    GA STUDENT 1 ?
25        A.   No.
```

```
1              MR. JONES:  Speak up, okay?

2              THE WITNESS:  No.

3    BY MS. HOOK:

4         Q.   ▆▆▆STUDENT 7▆▆▆?

5         A.   No.

6         Q.   Ian McKinnon?

7         A.   No.

8         Q.   Tom O'Malley?

9         A.   No.

10        Q.   Tom Philip?

11        A.   No.

12        Q.   When was the last time you spoke with

13   Mr. Philip?

14        A.   At graduation in May 2018.

15        Q.   In 2018?

16        A.   Yes.

17        Q.   Okay, do you iMessage?

18        A.   Yes.

19        Q.   Okay.  Does iMessage automatically delete?

20        A.   I got a new phone and my laptop.

21        Q.   Okay.  So the iMessage doesn't pick up on --

22        A.   It just loads the previous messages not too

23   long ago from your last backup.

24        Q.   I'm sorry.  I don't understand.

25        A.   It's from your last backup.
```

1      Q.   Okay.   So the iMessages do not transfer to
2   your new i-phone or your new laptop?
3      A.   I don't use always the iClub backups, because
4   I don't need that stuff anymore.   And I've gotten
5   three new phones since 2016.
6      Q.   Okay.   And it doesn't automatically back up?
7      A.   No.   I don't pay for the extra storage on
8   iCloud.
9      Q.   What about text messages?
10     A.   Those back up.
11     Q.   Those do back up?
12     A.   Yes.
13     Q.   Okay.   And you don't have any text messages
14   from 2016?
15     A.   No.
16     Q.   And did you look back to 2016?
17     A.   I looked through my previous backups and I
18   couldn't find anything before that.
19     Q.   Okay.   So when did you graduate from
20   Brunswick?
21     A.   May 2018.
22     Q.   And how long did you attend that school?
23     A.   Since sixth grade.
24     Q.   From sixth grade?
25     A.   Um-uh.

```
1        Q.   Okay.  And what year was that?
2             MR. JONES:  What year was what?
3             MS. HOOK:  Sixth grade.
4             THE WITNESS:  2013, I believe.  I'm not sure
5        exactly.
6   BY MS. HOOK:
7        Q.   Okay, you graduated in 2018 and that was 12th
8   grade?
9        A.   Yeah.
10       Q.   Okay, let's work backwards.  2014.  Were you
11  a freshman in 2014?
12       A.   Yeah.
13       Q.   Do you recall hearing about any incidents
14  occurring in which Brunswick students videotaped
15  sexual assaults?
16       A.   Yes.
17       Q.   And what did you hear about that?
18       A.   Just that the events that.....
19       Q.   I'm sorry.  I can't hear you.
20       A.   Just like events like that have occurred.
21       Q.   Events like what?  What did you hear?
22       A.   That that happened in the past.  That's all I
23  heard about it.
24       Q.   Okay.  And can you describe what you heard
25  had happened.
```

1       A.   That a sexual assault was filmed.

2       Q.   Okay.  And what was the nature of the sexual

3   assault?

4       A.   I don't know exactly.

5       Q.   And who were the people involved in the

6   sexual assault?

7       A.   I don't know.

8       Q.   You didn't know any of the parties involved?

9       A.   No.

10       Q.   Were any of them Brunswick students?

11       A.   Yes.

12       Q.   And you didn't know them?

13       A.   I knew them, but that did not affect me so I

14   wouldn't, I wouldn't be interested in that.

15       Q.   Okay, I'm not asking if you were interested.

16   I just wanted to know whether you knew anybody who was

17   involved in those sexual assaults.

18       A.   I believe so.

19       Q.   And can you tell me who that was?

20       A.   I believe it was  STUDENT 1 .

21       Q.   Okay.  Anybody else?

22       A.   That's the only name I remember.

23       Q.   Are you aware of any -- if  STUDENT 1  or

24   anyone else was disciplined for those sexual assaults?

25       A.   No, it was freshman year.  I don't remember.

1      Q.   Did the stories about those sexual assaults

2   make an impression on you?

3           MR. JONES:   Objection.   I have no idea what

4       the relevance of this is.

5           MS. HOOK:   Okay.   Well, noted.

6   BY MS. HOOK:

7      Q.   Did it make an impression on you?

8      A.   No.

9      Q.   Not at all?   Never thought about it?

10      A.   No, I wouldn't pay it that much....

11      Q.   I'm sorry?

12      A.   I wouldn't give it -- I wouldn't pay it any

13   attention.

14      Q.   So you weren't alarmed by it?

15      A.   No.

16      Q.   It didn't disturb you that it happened?

17      A.   It's bad.   I was aware that it happened, but

18   that's not me.   It didn't affect me so I would just

19   move on with my -- do what I had to do.

20      Q.   So you didn't care about it.

21      A.   Yes.

22      Q.   So the rest of the questions we are going to

23   ask about are concerning the investigation into an

24   event at the   **DOE**   house on June 3rd.   You attended

25   that event, correct?

1     A.   Yes.

2     Q.   Okay.  At some point were you informed that a

3  police investigation of your actions during that event

4  had begun?

5     A.   Yes.

6     Q.   Okay.  How did you learn about that?

7     A.   I received a phone call.  They left a

8  message.

9     Q.   Who left a message?

10     A.   Someone from the Greenwich Police Department.

11     Q.   Was it a man or a woman?

12     A.   I don't remember.

13     Q.   And what was the message?

14     A.   They wanted to speak with me about the events

15  that occurred at the pool party.

16     Q.   Okay.  And when was that message left?

17     A.   Early August, August something, first week of

18  August.

19     Q.   The first week in August?

20     A.   Yes.

21     Q.   Okay.  And what did you do in response to

22  that message?

23     A.   I contacted Mr. Philip.

24     Q.   Okay.  And why did you contact Mr. Philip

25  first?

```
 1       A.   Because I was worried.  I was scared.

 2       Q.   I'm sorry.  I didn't --

 3       A.   I was worried and scared.

 4       Q.   Okay.  What were you worried about?

 5            MR. JONES:  Objection.

 6            MS. HOOK:  What's the objection?

 7            MR. JONES:  Objection is it goes to the

 8       events that night that is precluded by the

 9       protective order.  I'm instructing him not to

10       answer the question.

11            MS. HOOK:  I'm just asking why he --

12            MR. JONES:  I'm instructing him not to answer

13       the question.  We started to get perilously close

14       to what happened that evening.  I'm not going to

15       allow questions about that.  They are precluded

16       by the judge's order.  He's not answering the

17       question.  You can make your record and go to the

18       judge.

19            MS. HOOK:  Okay.  So we're going to talk

20       about the investigation into what happened that

21       evening, which necessarily includes the details.

22            MR. JONES:  Well, you're going to talk -- you

23       can ask your questions.  I will make my

24       objections.

25    BY MS. HOOK:
```

1          Q.   Okay, so you decided to contact Mr. Philip

2    first.  Did you speak with your parents before you

3    contacted Mr. Philip?

4          A.   Yes.

5          Q.   Okay.  And did you speak with Mr. Philip

6    alone?

7                MR. JONES:  Objection.  Time frame.

8    BY MS. HOOK:

9          Q.   When you contacted Mr. Philip after receiving

10   the message from the Greenwich Police Department, did

11   you meet with Mr. Philip alone?

12         A.   I spoke with him over the phone.

13         Q.   Okay.  And what did you say to him --

14               MR. JONES:  Objection.  Once again we are

15          talking about what happened that night.  And

16          we're also -- with respect to the judge's

17          protective order, these conversations fall within

18          the judge in docket no. 106, page 54.

19               Talks about conversations or discussions that

20          Mr. Row may have had at the time of the

21          investigation with other witnesses are irrelevant

22          to the, quote, limited theory of liability in

23          this action, end quote.

24               Subsequent to that hearing, the court further

25          narrowed the issues in this action by dismissing

```
 1        all but one of your causes of action and you have

 2        also settled the Brunswick case.

 3            I'm note sure what the relevancy of this all

 4        is, but pursuant to the protective order, he is

 5        not going to discuss conversations he had with

 6        third parties regarding the investigation during

 7        the investigation.

 8            MS. HOOK:  So in that same hearing, the judge

 9        specifically said that it was relevant what

10        Mr.    ROE    told Mr. Philip because there is the

11        contention that the police could have interviewed

12        Mr. Philip for his knowledge.  And she very

13        specifically stated that it was appropriate --

14        his discussions with Mr. Philip are appropriate

15        lines of questioning.

16            MR. JONES:  And she also very specifically

17        stated that conversations with other witnesses,

18        Mr. Philip will be a witness, were out of bounds.

19        And that's the position that we're taking.  And

20        as already said, it's on page 54 of the

21        transcript.

22            If you want to ask the questions about the

23        discipline, that's fair game.  The judge pointed

24        that out in the transcript.

25            MS. HOOK:  Okay, on the record --
```

1        MR. JONES:  Well, I hope that that whole

2     thing was on the record, right?

3        MS. HOOK:  Yes.  On page 43 of the transcript

4     from September 11, is your objection about the

5     discussions and the court says, but it informs

6     them that the interview had taken place.  If they

7     are going to argue that that was part of the

8     sham.

9        MR. JONES:  Where are you on this?

10        MS. HOOK: Page 43 line 22, it informs them

11     that that interview -- that had that interview

12     taken place, if they are going to argue that that

13     was part of the sham is that they didn't even

14     talk to the head master of Brunswick, if they had

15     done that they would have been apprised of -- I

16     mean, I don't know what was said.  I think for

17     purposes of discovery if we are talking about

18     what the jury is going to hear, we might be

19     having a very different discussion.

20        But I think for purposes of discovery, I

21     think if your client is sufficiently identified

22     as a percipient witness then there are areas of

23     inquiry that I'm going to allow.

24        MR. JONES:  Then let's see if you go on page

25     44, several lines down, the court:  Yes so first

1   and foremost the motion for protective order is

2   precluded from making inquiry about the events

3   leading up and occurring at the June 3rd, 2016,

4   discussions that he had with Mr. Philip concerned

5   that party so he is not going to talk about the

6   things that he talked about with Mr. Philip about

7   that party.

8       And as I stated, on page 54, which follows

9   over from a conversation that started between --

10  a dialogue between the Judge and Mr. Mitchell, it

11  starts on page 52 where Mr. Mitchell speaks to

12  the court about the fact that what was said

13  between and amongst the witnesses and whether or

14  not those things are true is basically irrelevant

15  to the police department investigation.  That

16  continues through further discussions with the

17  judge.

18      And then finally on page 54, the judge says

19  that with respect to -- oh, she talks about on

20  53, discussions with Jane Smith, Tommy Smith.

21  Everybody is talking about this, which we believe

22  includes Mr. Philip.

23      She then concludes on page 54 that's

24  different than conversations or discussions he

25  may have had at the time of the investigation

```
1        with these other witnesses.  Again under limited
2        theory of liability that is presented here, I
3        just don't think that's relevant.
4             MS. HOOK:  So to the extent that this case is
5        involving the police investigation, the
6        investigation is of the event that night.  And so
7        to preclude any discussion of the event that
8        night is precluding any discovery into the
9        police investigation --
10            MR. JONES:  That's not true, actually.
11            MS. HOOK:  -- of that event.  Can I please
12       finish?
13            MR. JONES:  Okay.
14            MS. HOOK:  Thank you.  So if you are
15       instructing your witness not to discuss anything
16       that he told to other witnesses who then spoke to
17       the police, she very clearly -- Judge Dooly very
18       clearly said that whatever was -- whatever
19       information was given to the police is relevant
20       to this case.
21            MR. JONES:  That's not an accurate statement
22       of what the judge said.
23            MS. HOOK:  Well, it is.
24            MR. JONES:  Again I refer you to page 54.
25       The judge said to the extent there were
```

```
 1          conversations or discussions with other

 2          witnesses, under the limited theory of liability

 3          that is presented here, I don't think that's

 4          relevant.  If you want to ask him questions about

 5          what happened --

 6               MS. HOOK:  Mr. Jones.

 7               MR. JONES:  Can I finish?  I let you finish.

 8          Let me finish.

 9               MS. HOOK:  You always do.  Go ahead.

10               MR. JONES:  Let's not start this, please.

11          Let's just keep it professional.

12               MS. HOOK:  Please finish.

13               MR. JONES:  Keep it professional.  It

14          continues on, right?  I say to the judge:  Just

15          so we are clear on this, so that would have only

16          been referred to I assume after the warrants were

17          signed.

18               The judge clarifies it.  She says:  I think

19          it was after this litigation was commenced.

20               So if you want to talk to him about who he

21          talked to or what knowledge he has about the

22          investigation after the litigation was commenced,

23          that's a different story.

24               But in terms of why the investigation was

25          going on, I'm going to instruct him not to answer
```

1          to the extent that he spoke to other witnesses in

2          the case.  It's clear in the transcript.

3               And by the way, this comes after the earlier

4          discussion about what was -- the judge was

5          thinking about allowing or not allowing.  This is

6          the last word on it.

7               You can ask your questions.  I'll make my

8          objections and preserve the record.

9               MS. HOOK:  That's fine.  And we will call him

10         back before the end of March.

11              MR. JONES:  Understood.  That's your right.

12         And I can object and you can move to compel and I

13         will object and we will have a hearing in front

14         of the judge.

15              (Pause for less than a minute.)

16              MS. BRAXTON:  Do you want to take a break for

17         one second?

18              MS. HOOK:  Yes, why don't we take a

19         five-minute break.

20              THE VIDEOGRAPHER:  Off the record at

21         10:29 a.m.

22              (Off the record, as a brief recess is taken.)

23              THE VIDEOGRAPHER:  On the record, 10:35 a.m.

24              MS. HOOK:  Thank you.

25    BY MS. HOOK:

1      Q.   Mr. ROE , going back to the incidents in

2 2014, how many incidents of sexual assault did you

3 hear about?

4      A.   I don't know exactly.

5      Q.   Was it more than one?

6      A.   I believe there was just the one.

7      Q.   Okay.  And was there a videotaping involved

8 in that?

9      A.   I believe so.

10      Q.   Okay.  And you heard about no other

11 videotapes?

12      A.   No.

13      Q.   Okay.  And was there any kind of information

14 provided to the school or to the parents about that

15 allegation of sexual assault?

16          MR. JONES:  Parents of whom?

17          THE WITNESS:  I don't know.

18 BY MS. HOOK:

19      Q.   You don't recall?

20      A.   No.

21      Q.   So it was not important to you?

22      A.   My parents didn't tell me about an e-mail

23 sent home or anything.  They would have brought it up,

24 I believe.

25      Q.   Okay.  So you don't think that you received

1   an e-mail?

2        A.   I didn't.  I don't know if they sent an

3   e-mail to the parents.  I'm not sure.

4        Q.   Okay.  So let's go back to you received a

5   phone message from the police and you then called

6   Mr. Philip.  And you called Mr. Philip because you

7   were worried.

8             MR. JONES:  Objection to the form and also

9        it's once again going to what he discussed with

10       Mr. Philip.  I'm not going to allow him to

11       answer.

12   BY MS. HOOK:

13       Q.   Okay, I was just recapping your testimony.

14   Was that accurate what you said, that you were

15   worried?

16             MR. JONES:  She can read the record back.

17             MS. HOOK:  No need to read the record back.

18   BY MS. HOOK:

19       Q.   What is it that you said to Mr. Philip in

20   that phone conversation?

21             MR. JONES:  Objection.  Instructing the

22       witness not to answer.

23             MS. HOOK:  Okay, on the basis of what?

24             MR. JONES:  The same objection.

25             MS. BRAXTON:  Can I ask that you just specify

 1          when you instruct him not to answer whether it's

 2          on the basis of the protective order or a

 3          privilege?

 4               MR. JONES:  I'm going to need a

 5          clarification.  Which one of you is taking the

 6          deposition?  Because at this point I'm not

 7          allowing Ryan to speak.  You shouldn't be

 8          speaking either.  Either Ms. Hook does the

 9          deposition alone or she doesn't do it at all.  It

10          is not a tag team.

11               MS. HOOK:  Can you please answer that

12          question?

13               MR. JONES:  I'm not answering her question.

14               MS. HOOK:  Can you read back the question and

15          pretend that it is my question, Mr. Jones?

16               (After pause.)  Do you want me to repeat it?

17               MR. JONES:  Yes, please.  I would like you to

18          repeat it.

19               MS. HOOK:  All right.  Mr. Jones, please

20          state whether your objection is based on the

21          protective order or whether it's based on

22          privilege when you make an objection.

23               MR. JONES:  It's based on the protective

24          order in this.

25               MS. HOOK:  Okay.

1            MR. JONES:  In this instance.

2            MS. HOOK:  Okay.

3    BY MS. HOOK:

4        Q.  What was the next thing you did after you

5    received that phone call, that phone message from the

6    police department with respect to the request to talk

7    to you?

8        A.  I called Mr. Philip.

9        Q.  And then after you called Mr. Philip, what

10   did you do?

11       A.  I spoke with lawyers.

12       Q.  How did you find the lawyers?

13       A.  I was connected to lawyers.

14       Q.  By whom?

15            MR. JONES:  Objection.  It's not relevant.

16       It's outside the scope.  I take the position that

17       with respect to legal fees, that's an area that

18       is outside the scope.  It's precluded by the

19       protective order.  It's logical that any

20       questions about how he found a lawyer is similar

21       to questions about legal fees, which have already

22       been precluded by the judge.  I'm instructing him

23       not to answer.

24   BY MS. HOOK:

25       Q.  Okay.  Did you identify the lawyer yourself?

```
 1              MR. JONES:  Objection.  Same objection.
 2     BY MS. HOOK:
 3          Q.   Okay.  Was the lawyer provided to you by
 4     someone else?
 5              MR. JONES:  The same objection.
 6     BY MS. HOOK:
 7          Q.   When you met with the lawyer, when was that?
 8     After your phone call or your phone message?
 9              MR. JONES:  Objection.
10              MS. HOOK:  Can you just instruct not to
11         answer versus an objection because an objection
12         does not stop you from answering the question.
13              MR. JONES:  Okay, then we will do it
14         properly.  I object.  Now we are getting into
15         attorney-client privilege and also precluded by
16         the protective order.  I'm instructing the
17         witness not to answer.
18              MS. HOOK:  So just for the record, meeting
19         with an attorney and identifying an attorney and
20         attorney retainer and legal fees are not
21         privileged.
22              MR. JONES:  But they are also precluded by
23         the protective order.  I gave both objections.
24              MS. HOOK:  I'm pointing out for the record
25         that privilege is not invoked at that point.
```

```
 1              MR. JONES:  The record is clear.
 2    BY MS. HOOK:
 3         Q.  What did you tell your parents about the
 4    phone call from the police department?
 5              MR. JONES:  Objection.
 6    BY MS. HOOK:
 7         Q.  Did they ask you why there was a phone call
 8    from the police department?
 9              MR. JONES:  Objection.
10              Don't answer the question.
11    BY MS. HOOK:
12         Q.  Okay.  Did you ever speak to anyone from the
13    police department?
14              MR. JONES:  Objection.
15              MS. HOOK:  Okay, that's the investigation.
16              MR. JONES:  I'll allow that.
17              MS. HOOK:  Well, thank you.
18              THE WITNESS:  No.
19    BY MS. HOOK:
20         Q.  I'm sorry.  What?
21         A.  No.
22              MR. JONES:  Let's keep it professional.
23              MS. HOOK:  Likewise.
24    BY MS. HOOK:
25         Q.  I'm sorry, Mr. ██ROE██  I can't understand
```

1    what you said.

2         A.   No.

3         Q.   Did you at any point speak with anybody from

4    the police department?

5         A.   No.

6         Q.   Did you contact   JANE DOE   about your

7    phone call from the police department?

8         A.   Yes.

9         Q.   Okay.  Why did you do that?

10             MR. JONES:  Objection.  This goes to the

11        events of that evening.  I'm instructing him not

12        to answer.  It's precluded by the protective

13        order.

14             MS. HOOK:  Well, I think very specifically

15        she said that any contact with Jane Doe

16        afterwards is permitted.

17             MR. JONES:  Contact, yes.  Except to the

18        extent that his answers go to the events of that

19        night, I'm instructing him not to answer.

20             MS. HOOK:  Oh, Mr. Jones.

21             MR. JONES:  Once again, let's keep it

22        professional, Ms. Hook.

23    BY MS. HOOK:

24        Q.   Okay, what did you say to  JANE  in your text

25    to her?

```
 1              MR. JONES:  Objection.
 2              THE WITNESS:  We talked about the events.
 3              MR. JONES:  All right.
 4              MS. HOOK:  Please mark this as Row Exhibit 2.
 5              (Whereupon, Row Exhibit No. 2 was marked for
 6         identification.)
 7              MR. TOUGIAS:  Do you have another copy for
 8         Reese?
 9              MS. WADLER:  Thank you.
10    BY MS. HOOK:
11         Q.  I show you what has been marked as Row
12    Exhibit 2.  Would you please review it and let me know
13    when you are done.
14         A.  (Witness complying.)
15              MS. HOOK:  And while Mr.  ██ROE██  is reviewing
16         the exhibit, I will point out on page 59 of the
17         September 11th hearing before Judge Dooly, on
18         line 4, the Court says:  Okay, so communications
19         with Jane Doe following the incident.
20              I respond:  Yes.
21              Is that sort of what you are going for?
22              I say:  Yes.
23              The Court says:  I think that's fair.
24              Mr. Jones says:  I think they actually have
25         everything, but that's fine.
```

1          And the Court says:  And he can be asked

2     about that.

3          (Pause for less than a minute, as the witness

4     continues to review the document.)

5          MR. JONES:  All right, I have an objection to

6     place on the record.  Before my client is asked

7     any questions about the exhibit, I have several

8     objections to the questioning of my client about

9     this exhibit.

10          First and foremost, I think that anything

11     that is discussed in this exhibit goes to the

12     events that night and as a result are precluded

13     by the protective order.

14          To the extent that the -- another objection

15     is that basically these text messages are totally

16     irrelevant to the police investigation.

17          And, third, I think that JANE is one of

18     those witnesses that the judge was referring to

19     on page 54 where discussions took place with

20     other witnesses, so....

21          But I'm relying mostly on the fact -- the

22     main objection is that this goes to what happened

23     that night.  And it is specifically precluded.

24     And the judge precludes it on about six different

25     pages in the transcript.

1        So with respect to the passage that you just
2    read, the judge had no idea what the contents of
3    this, of this exhibit would be.  And as far as
4    I'm concerned, the fact that it goes to the
5    events that night trumps any questioning that can
6    be taking place about what was discussed between
7    your client and my client.
8        That's the objection.  And I'm instructing
9    him not to answer questions regarding this
10    exhibit.
11  BY MS. HOOK:
12    Q.   Mr. ████ROE████, did you tell ████JANE DOE████ that
13  the police had contacted you?
14        MR. JONES:  The same objection.
15        MS. HOOK:  It goes to the investigation.
16        MR. JONES:  The same objection.  I'm
17    instructing him not to answer.
18        MS. HOOK:  I'm not asking about the incidents
19    of that evening.  I'm asking whether or not he
20    told ████JANE DOE████ that he had been contacted by
21    the police.  That has nothing to do with the
22    events of the evening in terms of any details.
23    It is plainly within the scope of what the judge
24    has allowed.  And that's within the scope.
25        MR. JONES:  I'll allow it.

```
 1              THE WITNESS:  Yes.
 2    BY MS. HOOK:
 3         Q.   And what did you tell her about?
 4              MR. JONES:  Objection.
 5    BY MS. HOOK:
 6         Q.   What did you tell her about what the police
 7    said when they contacted you?
 8         A.   The police said it was about the events that
 9    occurred on that night at the pool party.
10         Q.   Um-uh.  Did you tell her that you weren't
11    calling the police back?
12         A.   No.
13         Q.   Okay.  Did you ask her if anybody else had
14    been contacted by the police?
15         A.   No.
16         Q.   Did you tell her that anybody else had been
17    contacted by the police?
18         A.   No.
19         Q.   Do you know if anyone else had been contacted
20    by the police?
21         A.   No.
22         Q.   Okay.  You don't know if any of your friends
23    had been contacted by the police to give a statement?
24              MR. JONES:  Can we have a time frame, please.
25    BY MS. HOOK:
```

1   Q. The beginning of August when you first

2 received the phone call from the police department.

3   A. No.

4   Q. I'm sorry.  No to what?

5   MR. JONES:  You're the one asking the

6   questions.  Would you ask the question again.

7   MS. HOOK:  Well, your objections....

8   MR. JONES:  Objection to the form of the

9   question.

10 BY MS. HOOK:

11   Q. At the time that you received the phone call

12 from the police department that you did not respond

13 to, were you informed by anyone else that they had

14 been contacted by the police department?

15   A. No.

16   Q. You hadn't spoken with anyone else who had

17 been contacted by the police?

18   A. No.

19   Q.  STUDENT 5 didn't tell you he had been

20 contacted by the police?

21   A. No.

22   Q. Okay.  What about later on in August?

23   MR. JONES:  Objection.  That would be

24   conversations that took place during the time of

25   the investigation that are part of the protective

```
1          order.  I'm instructing him to the to answer.
2     BY MS. HOOK:
3          Q.  I'm not asking about the substance of the
4     conversations.  I'm asking about the context by the
5     police department.  Did you understand that anyone
6     else had been contacted by the police department?
7          A.  No.
8          Q.  So you don't know that the police department
9     ever contacted anyone else besides you; is that your
10    testimony?
11         A.  Are you talking about August?
12         Q.  Let's talk about August.
13         A.  No.
14         Q.  Okay, what about September?
15         A.  I don't remember exactly when I found out
16    people were being contacted.
17         Q.  Okay.  What did you find out about people
18    being contacted?
19         A.  That people were being called by the police
20    to give what they know.
21         Q.  Okay.  And who was contacted by the police?
22         A.  STUDENT 5 , STUDENT 13
23         Q.  I'm sorry.  Who is the second name?
24         A.  STUDENT 13 .
25         Q.  STUDENT 13 ?
```

```
1        A.          STUDENT 4    ,  GA STUDENT 1 .  I believe
2    STUDENT 6 .  I'm not sure about that or not.
3        Q.  You don't know anybody else besides that?
4        A.  No.
5        Q.  Was Seth Potter contacted by the police?
6        A.  I don't believe so.
7        Q.  Was  STUDENT 9  contacted by the police?
8        A.  I don't know.
9        Q.  Did you ask him?
10       A.  No.
11       Q.  How did you find out that these people were
12   contacted by the police?
13       A.  People talk at school.
14       Q.  People talk about what at school?
15           MR. JONES:  Objection to the form of the
16       question.
17   BY MS. HOOK:
18       Q.  So in terms of conversations in which
19   somebody revealed that they were contacted by the
20   police, what was the basis of the conversation?  What
21   was the conversation about?
22       A.  It's gossip.  People are talking about
23   problems going on at school.  It's high schoolers.
24   They talk a lot.
25       Q.  Um-uh.  Anything else?  That's it?  High
```

1   schoolers talk a lot?

2          MR. JONES:  Objection.  He's answered the

3      question.

4   BY MS. HOOK:

5      Q.  Why did you get in touch with JANE DOE after you

6   received the call from the police department?

7      A.  I was scared.

8      Q.  I'm sorry?

9      A.  I was scared.

10     Q.  And what was contacting JANE DOE going to do

11  about you being scared?

12         MR. JONES:  Objection.  Objection.

13         Don't answer it.  It's precluded.  It goes to

14     what happened that night.

15         MS. HOOK:  No, it doesn't.

16         MR. JONES:  I'm not allowing him to answer

17     the question.

18  BY MS. HOOK:

19     Q.  Okay, without revealing what happened the

20  night of June 3rd, how would contacting JANE

21  DOE --

22         MR. JONES:  Objection.  I've instructed him

23     not to answer.

24         MS. HOOK:  Let me finish the question before

25     you pose the objection.

```
 1              MR. JONES:  I understand.  I don't need a
 2        lesson.  I have conducted depositions.
 3              MS. HOOK:  Okay, please stop.
 4  BY MS. HOOK:
 5        Q.   How -- without revealing substance of what
 6  happened on June 3rd, why would contacting  JANE
 7   DOE   help you if you were scared by the police
 8  department phone call?
 9              MR. JONES:  Objection.  I'm instructing him
10        not to answer that question because it goes to
11        what happened that night, presumably.
12              MS. HOOK:  Well, no, I instructed that it
13        shouldn't include that.
14              MR. JONES:  Okay, but I have instructed him
15        not to answer.
16  BY MS. HOOK:
17        Q.   What did   STUDENT 5   tell you about the
18  police contact with him?
19        A.   Nothing about the police contact.
20              MR. JONES:  Can we have a time frame, please.
21  BY MS. HOOK:
22        Q.   At any time between August and October, what
23  did   STUDENT 5   tell you about the contact from the
24  police department?
25              MR. JONES:  Okay, I'm going to object because
```

```
 1          this falls under the page 54 discussion that the
 2          judge had with respect to the protective order.
 3          It's precluded.  It's discussion between
 4          witnesses while the investigation is going on.
 5   BY MS. HOOK:
 6       Q.  You said you contacted Mr. Philip.  When did
 7   you contact him?  How soon after the phone call?
 8          MR. JONES:  Objection to form.
 9   BY MS. HOOK:
10       Q.  How soon after the phone message from the
11   police department in the first week in August did you
12   contact Tom Philip?
13       A.  I believe it was the same day.
14       Q.  Okay.  And when did you have the phone
15   conversation with him?  The same day?
16       A.  Yes.
17       Q.  Okay.  Did you ever speak to Mike DeAngelo?
18       A.  No.
19       Q.  Do you know who he is?
20       A.  Yes.
21          MS. HOOK:  Okay.  Please mark this Row
22       Exhibit 3.
23          MR. MITCHELL:  Can I have a copy, please?
24          MR. JONES:  Here you go.
25          MR. MITCHELL:  Thanks, Mike.
```

1              (Whereupon, Row Exhibit No. 3 was marked for

2         identification.)

3    BY MS. HOOK:

4         Q.   I show you what has been marked Row Exhibit

5    3.  Please review and let me know when you are done.

6         A.   (Witness complying.)

7         Q.   Are you finished?  You have to speak audibly.

8         A.   Yes --

9              MR. JONES:  I'm going to lodge an objection

10        before you ask any questions.

11             MS. HOOK:  Okay, before you do that, I forgot

12        to give instructions at the beginning.  And

13        forgive me.  We launched right into the

14        deposition.

15             You have to give all answers audibly because

16        the court reporter can't take down a nod.

17             You have to wait until I finish speaking and

18        I will try to wait until you finish speaking

19        because if we speak at the same time, the court

20        reporter can't transcribe.

21   BY MS. HOOK:

22        Q.   Are you under any medication or anything else

23   that would prevent you from giving truthful testimony

24   today?

25        A.   No.

```
1         Q.   Okay.  If you don't understand a question
2    that I've asked, please ask me to repeat it.  If you
3    don't ask me to repeat it or rephrase it, I'll assume
4    that you understand the question.  Okay?
5         A.   Okay.
6              MS. HOOK:  Let's move on.  What is your
7         objection?
8              MR. JONES:  My objection is similar to the
9         ones I have raised before.  This document is
10        absolutely precluded because it goes to what
11        happened that evening.  I'm not going to allow
12        any questions regarding it.  And this document is
13        also absolutely irrelevant to this case.
14   BY MS. HOOK.
15        Q.   Okay.  Do you recognize this document?
16        A.   Yes.
17        Q.   Can you describe what it is?
18             MR. JONES:  Objection.
19             MS. HOOK:  Are you instructing him not to
20        answer?
21             MR. JONES:  No, it's objection to the form of
22        the question.  Ask a better question.
23             MS. HOOK:  Okay, then if it's just an
24        objection --
25             MR. JONES:  We don't need hand signals.  We
```

1    don't need the facial expressions.  Please.

2          MS. HOOK:  Can you please not editorialize.

3          MR. JONES:  I'm not editorializing.  The

4    camera doesn't show Ms. Braxton made two audible

5    sighs, exasperations to some answers that --

6          MS. HOOK:  Mr. Jones, Mr. Jones --

7          MS. BRAXTON:  I'm --

8          MR. JONES:  -- and she's also making --

9          MS. HOOK:  -- Mr. Jones, let us keep this

10   professional and please stop --

11         MR. JONES:  I am keeping it professional.

12   I'm not --

13         MS. HOOK:  -- casting aspersions.

14         MR. JONES:  I'm not casting aspersions.  We

15   can ask the other people in the room: Has Ms.

16   Braxton been reacting to answers by my client and

17   by questions or objections that I have raised?

18         So all I'm asking is that you can't make the

19   hand signals.  You can't roll the eyes.  You

20   can't make the audible noises.  Just please, your

21   partner is asking the questions.  Let her ask the

22   questions.  We don't needs reactions to every

23   answer and objection.  All right?

24         MS. HOOK:  And, Mr. Jones, this is our

25   deposition, not yours --

```
 1              MR. JONES:  I understand.

 2              ms. HOOK:  -- so I take under advisement your

 3         requests.  Then do not instruct us on how to

 4         conduct a deposition.  Thank you.

 5              MR. JONES:  I'm not.

 6    BY MS. HOOK:

 7         Q.   Mr.   ROE   --

 8              MR. JONES:  If I may respond.  If I may

 9         respond.  I'm not instructing you on how to

10         conduct a deposition.  What I'm asking for is

11         professionalism, which means that another lawyer

12         in the room doesn't roll her eyes.  She doesn't

13         sit back and cross her arms.  She doesn't make

14         audible noises like she just did.  So the point

15         is that --

16              MS. HOOK:  Well, Mr. Jones, I'm looking at

17         you and I'm seeing the very same thing that

18         you're accusing her of.

19              MR. JONES:  No.  No-no.

20              MS. HOOK:  No.  No-no, no-no.  It's not --

21              MR. JONES:  I don't think anybody else in the

22         room --

23              MS. HOOK:  So I don't want to take a poll of

24         everybody in the room, but please stop --

25              MR. JONES:  I made an objection.
```

```
 1              MS. HOOK:  -- obstructing this deposition.
 2              MR. JONES:  I'm not obstructing the
 3         deposition.
 4              MS. HOOK:  Oh, no.  No.
 5              MR. JONES:  We have a young man who is being
 6         deposed.
 7              MS. HOOK:  Mr. Jones, we really don't need a
 8         soliloquy here, because you are just talking.
 9         You are not permitted to -- there are not
10         speaking objections.  There are objections and
11         instructions not to answer.  Read the federal
12         rules.
13              MR. JONES:  I have read the federal rules.
14              MS. HOOK:  You are not permitted to make
15         speaking objections.  You make an objection or
16         you instruct not to answer and that's it.
17              MR. JONES:  That is not it.  Please take your
18         own advice.  Read the federal rules.
19    BY MS. HOOK:
20         Q.  Mr.  ROE , Mr.  ROE , do you recognize
21    the document?
22         A.  Yes.
23         Q.  Okay.  Can you tell me what it is?
24         A.  Text message.
25         Q.  I'm sorry.  I can't hear you.
```

```
1        A.   It's a Facebook message.

2        Q.   To whom?

3        A.   To  ▮BROTHER DOE▮ .

4        Q.   Okay.  And when did you send that?

5        A.   After the party.

6        Q.   Is there a date on it?

7        A.   There is no date.

8        Q.   And why did you send this to --

9             MR. JONES:  Objection.

10            Don't answer the question.  Same objection as

11       before.

12            MS. HOOK:  Please allow me to finish the

13       question before you object and instruct not to

14       answer.  Please.

15            MR. JONES:  Why did you send this?

16            MS. HOOK:  I didn't finish the question.

17            MR. JONES:  All right, I'm sorry.

18  BY MS. HOOK:

19       Q.   Why did you send this Facebook message to

20       ▮BROTHER DOE▮ ?

21            MR. JONES:  Objection.

22            I'm instructing you not to answer.  Same

23       objection.

24  BY MS. HOOK:

25       Q.   When you contacted Mr. Philip right after
```

1   receiving the phone message from the police

2   department, were you on the phone with him alone?

3          A.   My mom was in the room.

4          Q.   Was she on part of the telephone

5   conversation?

6          A.   She was just in the room.  She wasn't....

7          Q.   Was there anyone else on the phone with

8   Mr. Philip?

9          A.   No.

10          Q.   It was just you and Mr. Philip speaking?

11          A.   Yes.

12          Q.   Okay.  Did your mother hear Mr. Philip's side

13   of the conversation?

14          A.   No.

15          Q.   What did he ask you and what did you tell

16   him?

17               MR. JONES:  Objection.

18               Don't answer.  Same objection.  It goes it

19          what happened that evening.

20               MS. HOOK:  Again, can I please ask -- you

21          differentiate between an objection and

22          instruction not to answer.  Because if you're

23          just objecting, then I'm assuming he's going to

24          answer the question.

25               MR. JONES:  I objected and I instructed him

```
 1          not to answer.  I'm not sure what else you want
 2          me to do.
 3               MS. HOOK:  Okay.
 4     BY MS. HOOK:
 5          Q.  Did Mr. Philip ask you about any other
 6     witnesses that would be speaking with the police
 7     department?
 8               MR. JONES:  Objection.  I'm instructing him
 9          not to answer.
10     BY MS. HOOK:
11          Q.  Did Mr. Philip tell you that there would be
12     an investigation conducted by the school?
13               MR. JONES:  Objection.  I'm instructing him
14          not to answer.
15     BY MS. HOOK:
16          Q.  Did Mr. Philip tell you anything about the
17     police department?
18               MR. JONES:  Objection.  I'm instructing him
19          not to answer.
20               MS. HOOK:  On what basis?
21               MR. JONES:  The basis that we have been
22          talking about, that this is all precluded.
23               MS. HOOK:  So the entire police department
24          investigation is out of bounds?
25               MR. JONES:  No.  No, I didn't say that.
```

```
 1              MS. HOOK:  Okay.

 2              MR. JONES:  You just have to ask the right

 3         questions.

 4              MS. HOOK:  Mr. Jones, can you please stop

 5         doing that.

 6              MR. JONES:  I'm not sure what I did, but --

 7              MS. HOOK:  You are making snide comments

 8         yourself.  So please stop.

 9              MR. JONES:  There is a videotape and a court

10         stenographer.  To the extent that something is --

11         I mean, that's your interpretation of me --

12              MS. HOOK:  Okay.  Okay.

13              MR. JONES:  -- of me responding to you.

14              MS. HOOK:  Can you please mark this.  Go

15         ahead and mark it Row Exhibit 4.

16              (Whereupon, Row Exhibit No. 4 was marked for

17         identification.)

18              MR. JONES:  Can I see what's been marked?  I

19         just gave him a copy of mine.

20              MS. BRAXTON:  Here, you can have my copy.

21              MR. JONES:  That's fine if it's what I have

22         here.  That's fine.

23    BY MS. HOOK:

24         Q.  I show you what has been marked Row Exhibit

25    4.  Can you please review it and tell me when you are
```

1    done.

2         A.   (Witness complying.)

3         Q.   Have you finished reviewing the document?

4         A.   Yes.

5         Q.   Do you recognize the document?

6         A.   Yes.

7         Q.   Can you describe what it is.

8              MR. JONES:  Objection.  Objection with

9         respect to the document.  First of all, for the

10        record, can you identify which Bates-stamped

11        documents comprise this exhibit just so we make

12        sure we have the same thing.

13             MS. HOOK:  Row Exhibit 4 comprises WICK 331,

14        WICK 336, WICK 340, WICK 341, WICK 348, WICK 351,

15        WICK 352.

16             MR.JONES:  Okay, thank you.  Now, I have

17        several general objections to these and then you

18        can obviously ask your questions and create your

19        record.

20             First of all, as I mentioned previously and

21        objected previously, these are communications

22        with a third-party witness, precluded as

23        discussed.  The judge talks about that on page 54

24        of docket 106, which is the transcript.  It's

25        also in -- several of these documents involved

 1          the attorney-client privilege, so we are raising

 2          that as an objection.

 3              And it also involves the work product

 4          doctrine.  Particularly, for example, 331 talks

 5          about discussions with attorneys.  In addition,

 6          these discussions go to the events that happened

 7          that night, so to the extent that they do that,

 8          they are also precluded.

 9              And once again, I'm not sure what the

10          relevancy of any of this is.  So you can ask your

11          questions.

12              MS. HOOK:  Mr. Jones, is Mr. Philip your

13          client?

14              MR. JONES:  He is not.

15              MS. HOOK:  So there is no attorney-client

16          privilege between you and Mr. Philip?

17              MR. JONES:  There actually is -- there is

18          with myself and Mr. Row.  And Mr. Philip is not

19          my client, so you're correct, there is no

20          attorney-client privilege between Mr. Philip and

21          myself.

22              MS. HOOK:  Thank you.

23              MR. JONES:  But there is between me and

24          Mr. Row and his parents.

25              MS. HOOK:  Yes.  Yes.

1    BY MS. HOOK:

2        Q.   Mr.  ████ROE , let's look at the first

3    document.  So these are e-mails between you and

4    Mr. Philip; is that correct?

5        A.   Yes.

6        Q.   Okay.  Let's look at the first one, WICK 331.

7    You state in your e-mail -- and this is on August 4 --

8    that you met with attorneys yesterday.  They told you

9    not to go to the police interview yet.  They wanted to

10   speak with the detective first.  They spoke with the

11   detective and are going to figure out the story and

12   that they are going to give you another call next

13   week.

14           Why did you give this information to

15   Mr. Philip?

16           MR. JONES:  Objection.  I claim the attorney-

17        client privilege.  He's not going to --

18           MS. HOOK:  It's a discussion between

19        Mr.  ████ROE  and Mr. Philip.

20           MR. JONES:  That's correct.

21           MS. HOOK:  Where is the attorney-client

22        privilege?

23           MR. JONES:  He's talking about discussions

24        with his attorneys.

25           MS. HOOK:  With a third party who is

```
 1          unrepresented, which waives the privilege.
 2              MR. JONES:  No, it doesn't waive the
 3          privilege, because as a minor, he doesn't have
 4          the right to waive the privilege.  He doesn't
 5          have the capacity to answer the attorney-client
 6          relationship with me.  His parents do.  So as a
 7          minor, he can't waive that privilege.
 8              And I'll also direct you to Gallegos versus
 9          Colorado, 370 U.S. 49, at page 54.  It's a 1962
10          case.  The United States Supreme Court has
11          recognized a juvenile in a criminal case "cannot
12          be compared with an adult in full possession of
13          his senses and knowledgeable of the consequences
14          of his" actions with respect to his rights.  We
15          are claiming attorney-client privilege with
16          respect to any questions about discussions that
17          he had with his lawyers.
18     BY MS. HOOK:
19          Q.   Okay.  Did you send this e-mail?
20          A.   Yes.
21          Q.   Okay.  And did Mr. Philip send this e-mail
22     back to you?
23              MR. JONES:  Objection to the form.
24     BY MS. HOOK:
25          Q.   On WICK 331, there is an e-mail from you to
```

1   Mr. Philip dated August 4 at 2:57 p.m.  And then there
2   is an e-mail on August 4 at 3:24 p.m. from Mr. Philip
3   to you.  Did you send this e-mail to Mr. Philip?
4        A.   Yes.
5        Q.   Did Mr. Philip send this e-mail response back
6   to you?
7        A.   Yes.
8        Q.   Let's turn to WICK 336.  Again, did you send
9   this e-mail to Mr. Philip on August 12, 2016, at
10   1:37 p.m.?
11        A.   Yes.
12        Q.   Okay.  Is there anything in the substance
13   there that is incorrect?
14             MR. JONES:  Objection.  Once again this goes
15        to communications with a third party during the
16        course of the police investigation.  I'm
17        instructing him not to answer the question.
18             MS. HOOK:  If it's communications with a
19        third party, how is it, then, a privileged
20        communication?
21             MR. JONES:  With another witness.  I'm sorry.
22        With another witness.
23             MS. HOOK:  Okay.
24   BY MS. HOOK:
25        Q.   Did Mr. Philip send the e-mail to you on

1    August 12, 2016, at 2:02 p.m.?

2         A.   Yes.

3         Q.   Okay.  Did you tell Mr. Philip on this -- in

4    this e-mail on August 12th that you hadn't heard

5    anything back from the lawyers or the detective in the

6    past couple of days and wanted to know if they had

7    contacted Mr. Philip?

8              MR. JONES:  Objection.  Same objection.  I'm

9         instructing him not to answer.

10   BY MS. HOOK:

11        Q.   And Mr. Philip says back to you, I haven't

12   heard anything more either.

13             Did that lead you to believe that Mr. Philip

14   was having regular conversations with your attorneys?

15             MR. JONES:  Objection.  The same objection,

16        the sane instruction.

17   BY MS. HOOK:

18        Q.   Let's turn to WICK 340.  Were you keeping

19   Mr. Philip apprised of your communications with the

20   police department?

21             MR. JONES:  Objection.

22             MS. HOOK:  How is that?  What's the

23        objection?

24             MR. JONES:  The same objection, discussions

25        with another witness.

```
 1              MS. HOOK:  Well, I'm talking about the police
 2         department contacts with him.  That is what the
 3         substance of this litigation is about.
 4              MR. JONES:  Go ahead.
 5              THE WITNESS:  I never spoke with the police
 6         department, period.
 7    BY MS. HOOK:
 8         Q.   Okay.  Did you understand that Mr. Philip was
 9    receiving information from the police department?
10              MR. JONES:  I object just to the form of the
11         question.
12    BY MS. HOOK:
13         Q.   You may answer.
14         A.   Can you ask the question again?
15         Q.   Did you understand that Mr. Philip was in
16    contact with the police department?
17         A.   Yes, I believe so.
18         Q.   Okay.  And what led you to believe that he
19    was in contact with the police department?
20         A.   I knew that he was speaking with Mr. ███DOE███
21    and so I just figured that he would speak with people.
22         Q.   Okay.  And was he telling you what
23    Mr. ███DOE███ told him?
24         A.   Some parts of the conversation I'm sure he
25    told me.  I'm sure it wasn't everything.
```

1      Q.   Why do you say it wasn't everything?

2      A.   I mean, how could I be sure that it was

3  everything?

4      Q.   Okay, well, what did he tell you Mr. ▮▮DOE▮▮

5  told him?

6           MR. JONES:  Objection.  Back to the same

7      objection, discussions with a witness during the

8      police investigation.

9           Don't answer the question.

10          MS. HOOK:  Who is the witness?

11          MR. JONES:  Mr. Philip's going to be a

12      witness in this case.

13          MS. HOOK:  He is not a witness to the events

14      on the 3rd.  He is not a witness to the events on

15      the 3rd.

16          MR. JONES:  He's going to be a witness in

17      this case, correct?  That's what the judge was

18      referring to.

19          MS. HOOK:  So we can't question him about any

20      conversation with any witness no matter how --

21          MR. JONES:  No, that's not true.  I have

22      already made the objection.  You can go back and

23      review it.

24  BY MS. HOOK:

25      Q.   Okay, so let's go back again to -- the

```
 1    beginning of that trail, e-mail trail, is on WICK 341.

 2    On August 18, 2016, at 3:23 p.m., Mr. Philip writes to

 3    you:

 4              I finally heard back from Mr. Doe (and that's

 5    Mr.  DOE ) and would like to sit down with you and

 6    your mom and/or dad to follow up.

 7              So Mr. Philip was keeping you regularly

 8    informed about information that he got from

 9    Mr.  DOE .

10              MR. JONES:  Objection to the form.

11    BY MS. HOOK:

12        Q.  Is that correct?

13        A.  Yes.

14        Q.  Okay.  What do you recall he told you that

15    Mr.  DOE  told him?

16              MR. JONES:  Objection.

17    BY MS. HOOK:

18        Q.  Do you recall what he --

19              MR. JONES:  To the extent that this goes to

20              the night in question, it's precluded by the

21              protective order.

22              MS. HOOK:  Are you instructing him not to

23              answer?

24              MR. JONES:  I'm instructing him not to

25              answer, yes.
```

```
1              MS. HOOK:  Okay.
2    BY MS. HOOK:
3         Q.   Your response to that e-mail is:
4              Hi, Mr. Philip.  I'm glad you spoke with
5    Mr. Doe (that being Mr.   ██DOE██ ).  I hope the
6    conversation went well.
7              And then on to soccer tryouts.
8              Going back to WICK 340, on August 18, 2016,
9    at 4:10 p.m., you write to Mr. Philip:
10             I'm kind of anxious.  I know we are going to
11   talk about it all when we meet, but could you just
12   tell me if I should be worried or if everything will
13   be okay?
14             MR. JONES:  Where is this?
15   BY MS. HOOK:
16        Q.   What exactly did you mean that we are going
17   to talk about it all when we meet?
18             MR. JONES:  Objection.  I'm instructing him
19        not to answer.  The same objection.  This also
20        goes to what happened that night.
21   BY MS. HOOK:
22        Q.   Okay, so you were having consistent constant
23   conversations with Mr. Philip about the investigation;
24   is that correct?
25             MR. JONES:  Objection.  Objection to the form
```

```
 1          of the question.
 2   BY MS. HOOK:
 3          Q.   Were you having consistent regular
 4   conversations with Mr. Philip about the investigation
 5   into the events of June 3rd?
 6          A.   Yes.
 7          Q.   How often did you speak with him?
 8          A.   Once a week.
 9          Q.   And generally what was the substance of those
10   conversations?
11               MR. JONES:  Objection.
12               Don't answer the question.  The same
13          objection.
14               MS. HOOK:  You're instructing him not to
15          answer?
16               MR. JONES:  I'm instructing him not to
17          answer.  I said don't answer the question.  Same
18          thing.
19   BY MS. HOOK:
20          Q.   Did Mr. Philip tell you what the police were
21   doing?
22               MR. JONES:  Objection.
23               MS. HOOK:  Are you instructing him not to
24          answer?
25               MR. JONES:  I'm instructing him not to
```

```
1          answer, yes.
2               MS. HOOK:  Okay, you'll have to say that each
3          time you're instructing him not to answer,
4          please.
5               MR. JONES:  Duly noted.
6    BY MS. HOOK:
7          Q.  Did you Mr. Philip tell you what the police
8    were -- who the police were questioning?
9               MR. JONES:  Objection.  Instructing him not
10         to answer.
11   BY MS. HOOK:
12         Q.  Did Mr. Philip tell you what he was providing
13   in terms of information to the police?
14              MR. JONES:  Objecting -- objection.  Instruct
15         him to the to answer.
16   BY MS. HOOK:
17         Q.  Okay, in your conversation -- your first
18   conversation with Mr. Philip on -- it seems like it
19   was August 4th, did Mr. Philip talk to you about
20   discipline?
21         A.  I don't recall.
22         Q.  Okay.  So there was, there was no time during
23   that conversation that you recall Mr. Philip
24   suggesting to you that you might be subject to
25   discipline?
```

1      A.   I was crying.  I don't think he was going to

2    -- we talked about that later on.  At first he was

3    just trying to comfort me.

4      Q.   Okay.  So he didn't tell you that there would

5    be an investigation by the school?

6      A.   I don't believe so.  I don't remember.

7      Q.   And he didn't tell you that there would be

8    potential discipline or consequences to you as a

9    result of what you told him?

10          MR. JONES:  I'm going to object.  If we're

11          still talking about the same phone conversation,

12          that's the fourth time you have asked him that

13          question.  And he has answered that.

14          So I don't oppose the line of questioning,

15          but just that's the fourth time you asked him

16          if -- whether or not in that conversation the

17          same thing took place.  So you need to move on

18          from that question.  He's answered it.

19          MS. HOOK:  Thank you, Mr. Jones.

20    BY MS. HOOK:

21      Q.   Can you please answer the question.  Do you

22    recall it?

23      A.   Can you ask the question again?

24          MS. HOOK:  Can you read back the question.

25          (Whereupon, this question was read back:  And

```
1           he didn't tell you that there would be potential

2           discipline or consequences to you as a result of

3           what you told him?)

4                THE WITNESS:  No, but I was aware of the

5           consequences that -- every Brunswick student

6           knows what happens if you get a trouble.

7    BY MS. HOOK:

8        Q.   And what were you aware of?  What were the

9    potential consequences?

10       A.   You could get suspended, expelled,

11   disciplinary warnings.

12       Q.   Okay.  Okay.  When is the first time that

13   Mr. Philip raised to you the issue of potential

14   discipline to you?

15       A.   I don't remember exactly.

16       Q.   When he did raise it, what did he say?

17       A.   That I could potentially be suspended or

18   expelled from Brunswick.

19       Q.   On the basis of what?

20       A.   Of the events that happened at the pool

21   party.

22       Q.   And was that dependent on an investigation by

23   the police department?

24       A.   If I was charged by the police, then I would

25   have been suspended or expelled.
```

```
1          Q.   Okay.  Was there going to ever be a school
2     investigation, to your understanding?
3          A.   I believe so.
4          Q.   Was the school investigation conducted?
5          A.   I don't know exactly.
6          Q.   Okay.  Do you know if there ever was a school
7     investigation?
8          A.   Yeah, I'm sure there was.
9          Q.   Were you part of it?
10             MR. JONES:  I object to the form.
11    BY MS. HOOK:
12         Q.   Were you ever questioned as part of a school
13    investigation into the events?
14         A.   I spoke with Mr. Philip.
15         Q.   Okay, so when you spoke with Mr. Philip, that
16    was in your mind part of the school investigation?
17         A.   I guess so.
18         Q.   You guess so.  Do you know or you don't know?
19         A.   I don't know.
20         Q.   Okay.  So you don't know if there was ever a
21    school investigation?
22             MR. JONES:  If you don't know, it's okay to
23        say you don't know.
24             THE WITNESS:  I don't know.
25    BY MS. HOOK:
```

1    Q.  Did Mr. Philip ever ask you about the events

2    of June 3rd?

3    A.  Yes.

4    Q.  Okay.  And did he ask you to tell you what

5    happened -- to tell him what happened?

6    A.  Yes.

7    Q.  And did you tell him what happened?

8    A.  Yes.

9    Q.  Okay.  Did he interview any other students

10   about the events of June 3rd?

11   A.  I don't know.

12        MS. HOOK:  Interesting.  Let's go to --

13        please mark this Row Exhibit 5.

14   BY MS. HOOK:

15   Q.  And while we are doing that, what questions

16   did Mr. Philip ask you?

17        MR. JONES:  Objection.  To the extent that

18        this goes to the night in question, it's

19        precluded.

20        MS. HOOK:  We're talking about discipline and

21        Mr. Philip's discussions with him about

22        discipline, which I think is permitted.

23        MR. JONES:  To the extent it goes to

24        discipline, that's correct.  To the extent it

25        goes to the events in the night in question --

```
 1          MS. HOOK:  Well, I'm not I'm asking him to
 2      describe the events in the night in question.
 3      I'm asking what questions Mr. Philip asked him.
 4          MR. JONES:  Understood.
 5          MS. HOOK:  That is not asking him to explain
 6      what happened.
 7          MR. JONES:  Understood, but some of the
 8      questions that you asked may go to eliciting
 9      answers about what happened that night.  So to
10      that extent, I'm objecting, which I'm allowed to
11      do.
12          MS. HOOK:  So I am asking him what Mr.
13      Philip --
14  BY MS. HOOK:
15      Q.  So let's go back to my actual question,
16  Mr.    ROE   .  What questions did Mr. Philip ask you
17  during your first phone conversation with him?
18      A.  He asked me what happened at the pool party.
19      Q.  Okay.  What else did he ask you?
20      A.  I don't remember his exact questions, but he
21  probably asked who was there.
22          MR. JONES:  Don't guess.  If you don't know,
23      you don't know.
24          THE WITNESS:  I don't remember his exact
25      questions.
```

```
1    BY MS. HOOK:
2         Q.   Okay.  And did you tell him who else was
3    there?
4              MR. JONES:  Objection.
5              MS. HOOK:  You may answer.
6              MR. JONES:  I'm instructing him not to
7         answer.  It goes to the events of the evening.
8              MS. HOOK:  No, it goes to the investigation
9         that Mr. Philip conducted and then the police
10        conducted in terms of who were witnesses.
11             MR. JONES:  Unless I heard it incorrectly --
12             MS. HOOK:  It's not the facts.
13             MR. JONES:  Who else was there?
14             MS. HOOK:  The names that he provided
15        Mr. Philip.
16             MR. JONES:  Which goes to the events of the
17        party.
18             MS. HOOK:  It's not what happened.  It's
19        names of witnesses.
20             MR. JONES:  It goes to the events of the
21        party.  It's precluded.  I'm instructing him not
22        to answer the question.
23   BY MS. HOOK:
24        Q.   After that first phone conversation with
25   Mr. Philip, did you ever have further discussions with
```

1    Mr. Philip about the investigation?

2              MR. JONES:  Which investigation?

3              MS. HOOK:  The investigation by the school.

4        Let's start with that.

5              THE WITNESS:  I don't remember.

6    BY MS. HOOK:

7        Q.  You don't remember having conversations about

8    any investigation by the school?

9        A.  I don't know if those were a school

10   investigation.

11       Q.  I'm sorry?

12       A.  I spoke with Mr. Philip multiple times.

13       Q.  Yes.

14       A.  But I don't know if it was part of the

15   Brunswick investigation.

16       Q.  Did you speak with anyone else besides

17   Mr. Philip as part of the Brunswick School

18   investigation?

19       A.  I spoke with my advisor Mr. Potter, but that

20   was just about family issues that I had at the time,

21   my parents being sick.  I wouldn't talk to him about

22   details of the case.

23       Q.  So the only person you spoke to is

24   Mr. Philip?

25       A.  Yes.

```
 1        Q.   Okay.  Did you speak with your friends about
 2   it?
 3        A.   No.
 4        Q.   You didn't speak about any of the
 5   investigation with any of your friends?
 6        A.   No, I was scared.
 7             MS. HOOK:  Can you please mark this Row
 8        Exhibit 5.  I forgot that you can't do both
 9        things at once.
10             (Whereupon, Row Exhibit No. 5 was marked for
11        identification.)
12   BY MS. HOOK:
13        Q.   Okay, I show you what has been marked as Row
14   Exhibit 5.  Please review it and let me know when you
15   are done.
16        A.   (Witness complying.)
17             MR. JONES:  Do you have an unredacted copy of
18        that?
19             MS. HOOK:  I don't have an unredacted copy.
20             MS. BRAXTON:  But we have a redaction key.
21        Do you want to mark it?
22             MS. HOOK:  We'll mark it.  Please mark this
23        Row Exhibit 6.
24             (Whereupon, Row Exhibit No. 6 was marked for
25        identification.)
```

```
1              MR. JONES:  Can we go off the record for a
2        second?
3              MS. HOOK:  Um-uh.
4              THE VIDEOGRAPHER:  Off the record at
5        11:28 a.m.
6              (Brief discussion was had off the record.)
7              THE VIDEOGRAPHER:  On the record at
8        11:29 a.m.
9    BY MS. HOOK:
10        Q.  Exhibit 6, Mr. ██ROE██, is a redaction key to
11   identify who the people are who are redacted.
12              Have you finished your review?  Do you
13   recognize Row Exhibit 5?
14        A.  Yes.
15        Q.  Can you describe what it is.
16              MR. JONES:  I'm going to object and state my
17        objections for the record.
18              First of all, almost this entire document,
19        if it takes the advice, opinions, and/or work
20        product of Mr. Row's legal counsel is therefore
21        protected by the attorney-client privilege and
22        the work product documents.
23              And to the extent that the attorney-client
24        privilege doesn't cover it, there is also
25        references to communications with other
```

1     witnesses, which are also precluded pursuant to

2     the protective order.

3          So I'm instructing the witness not to answer

4     questions with respect to the substance of these

5     text messages.

6          MS. HOOK:  Okay, these text messages were

7     produced in this litigation without any assertion

8     of privilege and they were not accidentally

9     produced.  There was no request for them to be

10    returned.  So any work product privilege that may

11    have attached has been waived.

12         MR. JONES:  Well, we didn't produce it --

13         MR. MITCHELL:  Objection.  I want to put on

14    the record that Defendants didn't produce this.

15    This was produced in the Brunswick state case.

16         MS. HOOK:  Yes.  Yes.  And they were produced

17    as part of the order requested by Brunswick for

18    documents in the Brunswick case and the documents

19    in the Greenwich case to be exchanged with each

20    other.  So these are documents that are properly

21    in this litigation as well.

22         MR. JONES:  Okay, so they weren't produced by

23    me or my client or Mr. Russell, first of all.  So

24    the attorney-client privilege has not been

25    waived.  And we are claiming with respect to

1      these documents -- as I said, almost every single

2      page discusses conversations with either me or

3      Mr. Russell.

4          The attorney-client privilege does attach to

5      it.  My client never waived it.  His parents

6      never waived it.  And I'm instructing him not to

7      answer any questions with respect to these

8      documents, these text messages.

9          MS. HOOK:  To the extent that attorney-client

10     privileged communications are shared with a third

11     party, regardless of how that's done, that waives

12     the privilege.

13         MR. JONES:  I disagree with you and I

14     instruct --

15         MS. HOOK:  You can disagree and you are

16     instructing your client not to answer and I

17     understand.  You have made -- you stated your

18     objection.  I'm stating my response and we can

19     move on.

20         MR. JONES:  You can create your record.  Go

21     ahead.

22         MS. HOOK:  Thank you.

23         MR. JONES:  I would just like -- I'm sorry.

24     I just want to make sure that on the record that

25     we agreed, too, that the Brunswick action has

```
 1          been settled, correct, and it has been withdrawn.

 2               MS. HOOK:  Yes.

 3     BY MS. HOOK:

 4          Q.  So Row Exhibit 5, just so that we are clear,

 5     consists of WICK 717, WICK 718, WICK 719, WICK 720,

 6     WICK 721, WICK 722, WICK 723, WICK 724, and WICK 728.

 7               So you said -- you testified earlier, I

 8     believe, that you didn't know if any of your friends

 9     had been contacted by the police.  Is that what your

10     testimony was?

11          A.  Yes.

12          Q.  Okay.  And on this first page, WICK 717,

13     there is a text on September 7th from you to

14     Mr. Philip saying:  Hey, Mr. Philip, student 4 and

15     student 13 got calls from the police.  They haven't

16     spoken to them yet.

17               So do you want to change your testimony that

18     you didn't know that your friends had been contacted

19     by the police?

20               MR. JONES:  Objection.  I'm not going to let

21          him answer with respect to this document.

22     BY MS. HOOK:

23          Q.  Okay.  Well, let me ask you:  Upon

24     reflection, do you now recall whether or not your

25     friends had been contacted by the police?
```

```
1              MR. JONES:  Objection.  Don't answer the

2         question.

3              MS. HOOK:  Why not?

4              MR. JONES:  Because you are asking him about

5         a document which I have already said that I'm not

6         allowing any questions with respect to --

7              MS. HOOK:  I'm asking him to reflect upon his

8         prior answer.

9              MR. JONES:  He doesn't need to change his

10        prior answer.  It was what he recalled.  So I'm

11        not allowing any questions with respect to this

12        document.  So I have listed my objection.  We can

13        take it up with the court.  He is not answering

14        any questions with respect to this text message.

15   BY MS. HOOK:

16        Q.  Is there anything that would refresh your

17   recollection about the events of August and September

18   2016?  Are there any documents that would help you

19   remember more accurately than you do now?

20             MR. JONES:  Objection.  I'm instructing him

21        not to answer.  It goes beyond just the document

22        itself.  It goes to communications with other

23        witnesses in this case during the police

24        investigation.

25   BY MS. HOOK:
```

```
 1        Q.   Has your recollection changed, looking at
 2   these documents?
 3             MR. JONES:  Objection.
 4             Don't answer the question.
 5   BY MS. HOOK:
 6        Q.   Why did you switch lawyers?
 7             MR. JONES:  Objection.  Don't answer the
 8        question.  Attorney-client privilege.
 9   BY MS. HOOK:
10        Q.   Okay.  You testified earlier that Seth Potter
11   was your advisor?
12        A.   Um-uh.
13        Q.   And you said that you --
14             MR. JONES:  Just say yes or no.
15             THE WITNESS:  Yes.
16   BY MS. HOOK:
17        Q.   -- you had conversations with Mr. Potter?
18        A.   Yes.
19        Q.   And what were those conversations about?
20             MR. JONES:  Objection to the extent that they
21        go to the events of that evening.
22             If they don't, you can answer.
23   BY MS. HOOK:
24        Q.   Please answer.
25        A.   I would also speak to him about my family.
```

1    He knows both my parents are sick.  And I talked to

2    him once I found out about that.  Me and him were very

3    close.

4         Q.   Okay.  And you said -- you said -- you just

5    said I also spoke to him about my parents.

6         A.   Yes.

7         Q.   Also -- to what?  Did you speak to him about

8    the events of that night and the investigation?

9         A.   No, I mean, he knew that I had something

10   going on about that, but he knew nothing about it.  He

11   just knew that I had a lot to deal with.  Plus, I had

12   my parents sick and college applications.  So he would

13   guide me through most of that and help me.

14        Q.   So you didn't tell him anything about the

15   police investigation?

16        A.   No.

17        Q.   Nothing at all?

18        A.   No.

19        Q.   What did Mr. Philip tell you about the police

20   department investigation?

21             MR. JONES:  Objection.  Objection.

22             Don't answer.  Same objections.

23             MS. HOOK:  I'm sorry.  I don't understand how

24        that is objectionable.

25             MR. JONES:  It's a communication between

```
1        witnesses during the police investigation.
2             MS. HOOK:  You mean every word that came out
3        of Mr. Philip's mouth is out of bounds?
4             MR. JONES:  I made my objection.  I'm not
5        going to argue it here.  I made the objection.  I
6        instruct him not to answer.
7             MS. HOOK:  All right, for the record, the
8        witness is being instructed not to answer
9        regarding any discussions with Mr. Philip even if
10       they are concerning the police investigation
11       which is at issue in this litigation.
12  BY MS. HOOK:
13       Q.  How many times did you meet with Mr. Philip?
14  You said weekly?
15       A.  Yeah.
16       Q.  And for how long did that continue?
17       A.  I would speak to him whenever I felt the need
18  to.  I continued speaking with him about my family
19  until I graduated.
20       Q.  After you graduated?
21       A.  Until I graduated.
22       Q.  Okay.  And what about the information you
23  were being given by your lawyers?  Did you tell him
24  all of that?
25            MR. JONES:  Objection.  Attorney-client
```

1          privilege.

2               Don't answer the question.

3               MS. HOOK:  I'm not asking him the details.

4          I'm just asking him if he told them, shared it.

5               MR. JONES:  Shared what?  What the lawyers

6          said?

7               MS. HOOK:  Yeah, I'm just asking if he shared

8          the information --

9               MR. JONES:  And I'm objecting because you are

10         asking --

11              MS. HOOK:  -- that's not the details.

12              MR. JONES:  I'm objecting and I'm claiming

13         the attorney-client privilege.

14    BY MS. HOOK:

15         Q.   Okay.  Mr. Philip is not a witness.  As you

16    stated, the Brunswick case is settled.  Mr. Philip is

17    not a witness.  Therefore, it doesn't apply.

18              MR. JONES:  Are you stating that Mr. Philip

19         is not going to be a witness in the federal court

20         action?

21              MS. HOOK:  Yes.

22              MR. JONES:  He was a witness in the --

23              MR. MITCHELL:  We haven't made that decision

24         yet.

25              (Pause for less than a minute as all

1        participants are engaged in very lively

2        discussion.)

3              MS. HOOK:  Okay.  He is not a witness to the

4        events of June 3rd and so how is he covered by

5        that ruling?

6              MR. JONES:  He's a potential witness in the

7        federal court action.

8              MS. HOOK:  Right.

9              MR. JONES:  Like I said, it's communications

10       with witnesses.

11             MS. HOOK:  Regarding the investigation, which

12       is covered and permitted, anything that was

13       given -- any information that was given to the

14       police upon which the police acted on or could

15       have acted on is fair game according --

16             MR. JONES:  Okay.  Okay.  But except to the

17       extent that it goes to what happened that

18       evening, except to the extent that he is going to

19       be a witness in the case.

20             MS. HOOK:  Except to the extent of what

21       happened that evening is the core of the

22       investigation --

23             MR. JONES:  Right.  And the judge has already

24       excluded any inquiry.  I can read the quote to

25       you.  Right here.

1          MS. HOOK:  No, no.  Don't read the quote to

2     me, please.  You've spoken more than enough.

3     Fine.  That is your position and that is --

4          MR. JONES:  Who is being snide now?  Who's

5     being snide now?

6          MS. HOOK:  If that is your position, we'll go

7     on.

8  BY MS. HOOK:

9     Q.   So Mr. Philip -- I will ask the question

10 again and your attorney can do what he wants.

11         Did Mr. Philip -- did you tell Mr. Philip

12 everything that you talked to your attorneys about?

13         MR. JONES:  Objection.  Attorney-client

14    privilege for the third time.

15 BY MS. HOOK:

16    Q.   Okay.  And in your e-mail, Row Exhibit 4/WIK

17 331, the first page, you state --

18         MR. JONES:  I'm sorry.  Just one second so I

19    can get it.  Okay.  All right.

20 BY MS. HOOK:

21    Q.   You state:  I called them this morning (and

22 that would be your lawyers) and they said they spoke

23 with the detective and are going to figure out the

24 story.

25         What do you mean by figure out the story?

1           MR. JONES:  Objection.  We've already been

2       through this.  He's not answering questions with

3       respect to what was discussed with his lawyers

4       pursuant to the attorney-client privilege.  I

5       mean --

6           MS. HOOK:  I'm making a record here.

7           MR. JONES:  You already made the record when

8       you asked it the first time.

9           MS. HOOK:  I didn't quote that language the

10      first time.

11   BY MS. HOOK:

12      Q.   Did you ever meet with Mr. Philip with your

13   parents?

14      A.   Yes.

15      Q.   How many times?

16      A.   Once.

17      Q.   When was that?

18      A.   August.  I don't know the date.

19      Q.   What was the substance of that meeting?

20      A.   We spoke about the events that occurred at

21   the pool party.

22      Q.   And what did Mr. Philip tell you and your

23   parents?

24           MR. JONES:  Objection to the extent that it

25       goes to the events of the pool party.

1  BY MS. HOOK:

2      Q.  You may answer.

3          MR. JONES:  And also an objection to the

4      extent that it goes beyond discipline.

5          THE WITNESS:  We talked about potential

6      discipline and just steps moving forward.  My

7      parents were very scared and a meeting with

8      Mr. Philip kind of made them feel more easy.

9  BY MS. HOOK:

10      Q.  So he gave them comfort and he gave you

11  comfort that everything would be okay?

12          MR. JONES:  Objection to form.

13          You can answer.

14          THE WITNESS:  Yes.

15  BY MS. HOOK:

16      Q.  Okay.  Have you ever during the four years

17  that you attended -- or actually six years that you

18  attended Brunswick School, did you ever see anyone

19  else go through discipline, the disciplinary process?

20      A.  Yes.

21      Q.  Okay.  And can you describe what that process

22  was without telling us the people involved.

23          MR. MITCHELL:  Objection to form.

24  BY MS. HOOK:

25      Q.  How did that process take place?

1          MR. JONES:  This is with respect to other

2      students?

3          MS. HOOK:  Yes.

4          THE WITNESS:  The students would speak with

5      Brunswick teachers and then meet with deans if

6      like the offense was serious enough.  It's a

7      case-by-case basis.

8  BY MS. HOOK:

9      Q.   Um-uh.  So when you say the students would

10 speak with teachers, what teachers or what deans?

11 What was the process?  How was the disciplinary

12 process conducted?

13     A.   It depends on what happened.  If a sophomore

14 got in trouble, he would speak with the sophomore dean

15 at first and depending on the severity of the offense,

16 then they speak with other dean, Mr. Philip.

17     Q.   So there would be a number of people involved

18 in the interviews?

19     A.   Yeah.

20     Q.   Okay.  Did you speak with any other deans?

21         MR. MITCHELL:  Objection.  Form.

22 BY MS. HOOK:

23     Q.   In the course of the Brunswick investigation

24 into the events of June 3rd, did you speak with anyone

25 besides Mr. Philip?

```
 1          A.   I spoke with Mr. Stanley, who was a senior --
 2     who was another --
 3          Q.   I'm sorry.  Mr. Who?
 4          A.   Withstandley.  It was another dean at the
 5     school.
 6          Q.   Can you spell his name.
 7          A.   W-I-T-H-S-T-A-N-D-L-E-Y.
 8          Q.   And when did you speak with him?
 9          A.   He was also a close teacher of mine, a good
10     -- he was my soccer coach also.
11          Q.   And when did you speak with him?
12          A.   In August -- throughout my whole time at
13     Brunswick I spoke with him.
14          Q.   And did you speak with him about the
15     investigation by the police?
16          A.   No.
17          Q.   Okay, the question I had asked you before
18     was, In the course of the disciplinary process and the
19     Brunswick investigation into the events of June 3rd,
20     who did you speak with?  And you said you spoke with
21     Mr. Withstandley.
22               MR. JONES:  I'm not sure that that was the
23          exact question.  Objection.  You asked him about
24          other teachers that he may have spoke with.
25          There was nothing tying it to discipline.
```

1              MS. HOOK:  Well, then let me clarify.

2              MR. JONES:  Please do.

3     BY MS. HOOK:

4          Q.  When you described the disciplinary process

5     that you observed for someone else, you said that

6     there would be an interview by the dean and if it was

7     serious enough, there would be other deans involved

8     and Mr. Philip.  And then I asked you with respect to

9     your disciplinary investigation, who did you speak to

10    besides Mr. Philip.

11         A.  I spoke with -- about my disciplinary -- I

12    believe it was just Mr. Philip about my -- for my

13    case.

14         Q.  So there was no one else involved

15    investigating your incident?

16         A.  I don't believe so.

17         Q.  Okay.  And there was no one else deciding on

18    what discipline should be imposed on you besides

19    Mr. Philip?

20         A.  I don't know.

21         Q.  Okay.  So Mr. Withstandley, when you spoke

22    with him over the years -- he was your soccer coach,

23    you said?

24         A.  Yes.

25         Q.  And you never spoke to him about this

```
 1    terrible event that was facing you in --

 2            MR. JONES:  Objection to the extent --

 3    BY MS. HOOK:

 4        Q.   -- junior and senior year?

 5            MR. JONES:  Objection to the extent that it

 6        calls for any facts with respect to that night.

 7    BY MS. HOOK:

 8        Q.   I'm just asking, it seems surprising to me

 9    that you would not mention that to him.

10            MR. JONES:  Objection.  I don't even know

11        what that means.

12    BY MS. HOOK:

13        Q.   Do you understand the question?

14        A.   No.

15        Q.   Okay.  You were so close to Mr. Withstandley,

16    why didn't you talk to him about the police

17    investigation you were facing?

18        A.   Because I choose what to share with people.

19        Q.   Okay.  And you chose not to share it with him

20    even though you were very close to him?

21        A.   Yes.

22        Q.   And you chose not to share it with

23    Mr. Potter?

24        A.   Yeah.

25        Q.   So you told nothing to Mr. Potter about the
```

1   police investigation?

2        A.   I don't believe so.

3             MS. HOOK:  Okay.

4             MR. JONES:  Now, at this point, there is no

5        question pending.  I would like to take a break

6        for five minutes.  We have been going at it now

7        for -- we started at 10:00.

8             MS. HOOK:  Yes, we'll take a five-minute

9        break.

10            MR. JONES:  Okay.

11            THE VIDEOGRAPHER:  Off the record at

12       11:48 a.m.

13            (Briefly off the record, as a break is

14       taken.)

15            THE VIDEOGRAPHER:  On the record at

16       12:01 p.m.

17  BY MS. HOOK:

18       Q.   Mr.   ROE  , let me just qualify.  You

19  testified that you didn't tell Seth Potter anything

20  about the police investigation.  Is that correct?  Was

21  that your testimony?

22       A.   Yes.

23            MS. HOOK:  Would you mark this as Row Exhibit

24       7.

25            (Whereupon, Row Exhibit No. 7 was marked for

1          identification.)

2    BY MS. HOOK:

3          Q.   Okay, I show you what's been marked as Row

4    Exhibit 7.   Okay, Mr.  ██ ROE ██ , this is a document that

5    was produced by Brunswick and it's e-mails between

6    Mr. Philip and Mr. Potter.

7               And if you look at the middle of the page,

8    Mr. Potter -- at the bottom of the page, on September

9    23rd, Mr. Potter writes to Mr. Philip:

10              Peter (that being you) is my advisee.  Last

11   year he just came to me in tears about the situation.

12   He confided in me about the incident.  My instinct is

13   to support him.

14              And then on September 23rd, he also writes --

15   Seth Potter also writes to Tom Philip:

16              He said a few of his friends had been

17   contacted by the police.

18              Do you want to change your testimony now?

19              MR. JONES:  I'm going to object.  Hold on.

20         We have never seen this document before.  You

21         were supposed to produce to us any documents that

22         you were going to question my client on prior to

23         the deposition.  I'm not allowing any questions

24         with respect to it.  I don't recognize it as an

25         exhibit.

1          MS. HOOK:  We did not anticipate using this

2     document.  It is being introduced as impeachment

3     because we did not anticipate that Mr. ▇ROE▇

4     would be lying about any of his testimony.

5          MR. JONES:  First of all, that's absolutely

6     irresponsible.  I want that last comment stricken

7     from the record.  He is not lying.  You are now

8     trying to introduce a document that you didn't

9     provide in advance pursuant to the Court's order.

10    You are not asking him any questions about it and

11    I object to it being used as an exhibit in this

12    deposition.  He is not answering any questions

13    about it.  Move on.

14         MS. HOOK:  We are using this document to

15    refresh his recollection.

16         MR. JONES:  Absolutely not going to answer

17    any questions about a document that we haven't

18    seen in advance.  He hasn't said he needs his

19    recollection refreshed.  And we are not dealing

20    with this document today.  Take it up with the

21    judge.

22         You were supposed to provide it in advance.

23    If you thought you needed it, you should have

24    provided it to us.  You clearly had it in

25    advance.  It could have been something you could

```
 1        have asked questions about, but you didn't have
 2        it and you didn't provide it to us.  Objection
 3        stands.  He is not answering any questions about
 4        it.  We don't recognize it as an exhibit.
 5   BY MS. HOOK:
 6        Q.   Mr.  ROE , has your recollection been
 7   refreshed by anything about whether or not you
 8   confided more information to Mr. Potter than you
 9   revealed before?
10             MR. JONES:  Objection.
11             Don't answer the question.
12   BY MS. HOOK:
13        Q.   Okay.  Tell me again, Mr.  ROE , what did
14   you talk to Mr. Potter about?
15             MR. JONES:  Objection.  It goes to
16        discussions with other witnesses.  It's not
17        relevant.
18             MS. HOOK:  Mr. Potter is not a witness.
19             MR. MITCHELL:  We haven't decided that.
20             MS. HOOK:  No, the court order specifically
21        talks about witnesses in the police
22        investigation, not witnesses in this litigation.
23             MR. JONES:  I have no idea whether Mr. Potter
24        is a witness in this investigation.  I remind
25        you --
```

 1          MS. HOOK:  He was not a witness.  He has not

 2     been identified as a witness in the police

 3     investigation.  You cannot draw a blanket over

 4     everyone that Mr. ▆▆ROE▆▆ knew.

 5          MR. JONES:  Ms. Hook, we are not a party to

 6     this litigation.  I am not aware of what the

 7     police did or did not do to every corner of the

 8     police report.

 9          MS. HOOK:  Well, I represent to you that

10     Mr. Potter has not been interviewed by -- in the

11     course of the police investigation.  He is

12     therefore not a witness.

13          MR. JONES:  I'm not accepting the

14     representation because I have no idea what's in

15     or not in the police records or investigation.

16     To a certain extent, I'm vaguely familiar with

17     it, okay?

18          We have already discussed this exhibit.  I

19     have objected.  He is not answering any questions

20     with respect to this exhibit and he is not

21     answering any questions with respect to you

22     apparently trying to refresh his recollection.

23     That's as far as we're going to go.

24          MS. HOOK:  Mr. Jones, you're instructing him

25     not to answer because you are not aware of --

 1            MR. JONES:  No.

 2            MS. HOOK:  -- who is a witness.

 3            MR. JONES:  No, no.  I've already stated why

 4       I --

 5            MS. HOOK:  Can I have the transcript, please,

 6       of the hearing.  Okay, on page 54 of the

 7       September 11th  transcript, it's the Court

 8       speaking, Judge Dooly speaking:

 9            To the extent there is, but that's different

10       than conversation, discussions he may have had at

11       the time of the investigation with these other

12       witnesses, because again, under the limited

13       theory of liability that's presented here, I just

14       don't think that that's relevant.

15            MR. JONES:  Right.

16            MS. HOOK:  And a limited theory of liability

17       that is presented here, Judge Dooly said that

18       anything that was information provided to the

19       police in the investigation -- other witnesses in

20       the police investigation at the time, not any

21       witnesses in this litigation.

22            There is nothing -- she is not referring to

23       witnesses in this litigation.  Mr. Potter was not

24       a witness in the police investigation.

25            MR. JONES:  I have no idea whether he was or

1     whether he wasn't.

2          MS. HOOK:  Well, I'm representing to you --

3          MR. JONES:  Okay, but I'm not accepting the

4     representation.  So you just made my case.  That

5     specific passage is what allows me to object and

6     say that with respect to anybody that was a

7     witness in this case -- and that would be anybody

8     technically that my client spoke with.  And

9     that's why it includes Mr. Philip as well with

10    respect to certain events that night and what

11    went on.

12         But beyond that, my objection still goes with

13    respect to the document itself.  So I object to

14    the document and I object to any questions that

15    come from the document.  The document wasn't

16    provided to us in advance.  I mean, God, you had

17    close to four months to provide them.  We get

18    them two or three weeks before the deposition,

19    so....

20         MS. HOOK:  Can we just ask, Mr. Jones, you

21    and your attorney to follow your own advice and

22    stop making inside comments and making facial

23    expressions and rolling your eyes.

24         MR. JONES:  I'm not making any facial

25    expressions.  Put the camera on me.  Put it on

```
1        both of us.

2               MS. HOOK:  Well, your co-counsel is.

3               MR. TOUGIAS:  I'm not.  I'm sorry.  No.

4               MS. HOOK:  Oh, okay.  Make your objections --

5               MR. JONES:  I've made my objection.

6               MS. HOOK:  And then stop.

7               MR. JONES:  Here's the problem.

8               MS. HOOK:  No, don't tell me what the problem

9        is.  I don't care.  Let's go on, Mr. ROE .

10   BY MS. HOOK:

11        Q.   Do you know  STUDENT 7 ?

12        A.   Yes.

13        Q.   How do you know him?

14        A.   He was a friend of mine from Brunswick.

15        Q.   How long have you known him?

16        A.   Sixth grade.

17        Q.   Were you friends with him in 2016?

18        A.   Yes.

19        Q.   Okay.  Are you still friends with him?

20        A.   Yes.

21        Q.   Okay.  Was he at the party on June 3rd?

22        A.   No.

23        Q.   Was he ever questioned by the police in

24   connection with that investigation?

25        A.   No.
```

```
1        Q.   Okay.  Did you talk with   STUDENT 7   about

2     JANE DOE    after the party?

3        A.   I don't believe so.

4        Q.   You don't believe so?  Not at all?

5        A.   I don't remember.

6        Q.   You don't remember?

7        A.   No.

8        Q.   So in all of 2016, 2017, and 2018, you never

9     spoke to    STUDENT 7    about the allegations made by

10     JANE DOE    against you?

11       A.   No.

12       Q.   Never?

13       A.   I don't believe so.

14       Q.   Okay.  So yes, please speak up because we

15    can't really understand you.

16       A.   I don't believe so.

17       Q.   But why would you choose not to speak to  STUDENT 7

          about it?

19            MR. JONES:  Objection to the form of the

20       question.  I don't know what the relevance is

21       either.

22    BY MS. HOOK:

23       Q.   Why did you choose not to tell him about it?

24       A.   Because me and him were friends.  I don't

25    need to tell him everything about me.
```

```
 1        Q.   Okay, did you ever speak to his father about
 2   it?
 3        A.   No.
 4        Q.   Okay.  Did you ever speak to his father about
 5   your legal representation?
 6             MR. JONES:  Objection.
 7             Don't answer the question.
 8   BY MS. HOOK:
 9        Q.   Okay.  Well, do you know that -- whether  STUDENT 7
10   STUDENT 7  has an opinion of    JANE DOE    today?
11             MR. JONES:  Objection.
12   BY MS. HOOK:
13        Q.   In connection with this investigation?
14             MR. JONES:  How is this relevant?
15             MS. HOOK:  Please state your objection and
16        then stop, Mr. Jones.  Your speaking objections
17        are out of line and not permitted in federal
18        court.
19             MR. JONES:  Ms. Hook --
20   BY MS. HOOK:
21        Q.   Mr.    ROE    --
22             MR. JONES:  -- I have an objection pending.
23             MS. HOOK:  No.  No.  An objection pending is
24        objection and that's it.  Can I show you the
25        federal rules?  You are not permitted to make
```

```
1        speaking objections.

2             You do not have to lecture us.  Please, you

3        made your objection.  Let me continue questioning

4        Mr. ███ROE███.

5             Can you please read back my last question.

6             (Whereupon, this question was read back:

7        Well, do you know that -- whether ███STUDENT 7███

8        has an opinion of ███JANE DOE███ today in

9        connection with this investigation?)

10            MR. JONES:  Objection to the form.  He

11       answered no.

12  BY MS. HOOK:

13       Q.  I'm sorry.  Can we hear the answer from

14  Mr. ███ROE███.

15       A.  No.

16       Q.  You don't know whether he has an opinion or

17  he doesn't have an opinion?

18       A.  I don't know.

19       Q.  Okay.  Are you in contact with him today?

20       A.  Yes.

21       Q.  Where does he go to school?

22       A.  Duke.

23       Q.  Is that a different school from yours?

24       A.  Yes.

25       Q.  Okay, how often are you in contact with him?
```

```
 1        A.   A few times a week.
 2        Q.   Okay.  So you've never heard him call  JANE
 3   DOE  a lying bitch?
 4        A.   No.
 5        Q.   Never?
 6        A.   Never.
 7        Q.   Would you be surprised to hear him say that?
 8             MR. JONES:  Objection.
 9   BY MS. HOOK:
10        Q.   You may answer.
11             MR. JONES:  That's not a proper question.
12   BY MS. HOOK:
13        Q.   You may answer.  Would you be surprised to
14   hear him say that about   JANE DOE  ?
15        A.   No.
16        Q.   Would you be surprised to hear any of your
17   former friends from Brunswick School say that about
18   JANE DOE  ?
19             MR. JONES:  Objection.  I'm shutting down
20        this line of questioning.  There's no relevance.
21        Don't answer that.
22             MS. HOOK:  You cannot shut down a line of
23        questioning.  It's not in your authority.
24             MR. JONES:  You know what?  Don't answer the
25        question.
```

1    BY MS. HOOK:

2        Q.   Mr. ███ROE███, Mr. ███ROE███ --

3             MR. JONES:  Take that question to the judge.

4             MS. HOOK:  You're instructing him not to

5        answer on what grounds?

6             MR. JONES:  I'm objecting on the basis of

7        absolutely no relevance to this lawsuit.  And I'm

8        instructing him not to answer the question.  You

9        go down a rabbit hole.  It has nothing to do with

10       this case.  I'm not going to get involved with

11       his speculation about what's in other people's

12       brains.

13            MS. HOOK:  Okay, you can choose not to get

14       involved.

15            MR. JONES:  Let me finish, let me finish my

16       objection.  So I'm objecting.  I've stated the

17       grounds for my objection.  I'm instructing him

18       not to answer.

19   BY MS. HOOK:

20       Q.   Okay, Mr. ███ROE███, your attorney can instruct

21   you not to answer on the basis of privilege or on the

22   basis of the court order.  Every other instruction not

23   to answer is not a valid instruction.  You can choose

24   to answer or not.  Let me know.

25            MR. JONES:  Don't answer the question.

```
1    BY MS. HOOK:

2        Q.   Do you choose not to answer?

3        A.   Yes.

4        Q.   Okay.  Do you know  [STUDENT]  ?

5        A.   Yes.

6        Q.   Who is  [STUDENT]  ?

7        A.   He went to Brunswick.  He played soccer at

8    Brunswick.

9        Q.   Did you ever talk to him about the police

10   investigation?

11       A.   No.

12       Q.   Did you ever hear him call [JANE DOE] a life

13   ruiner?

14       A.   No.

15       Q.   Again, please speak up because we are having

16   difficulty hearing you.

17       A.   Okay.

18       Q.   Do you know  [STUDENT 8]  ?

19       A.   Yes.

20       Q.   Who was he?

21       A.   He went to Brunswick as well.

22       Q.   Okay.  And did you and [STUDENT 8] send a

23   Snapchat photo to [JANE DOE] on her graduation day?

24       A.   I didn't.  I don't think I was in a photo

25   sent to [JANE DOE].
```

1      Q.  You don't think you were in the photo sent to

2  JANE DOE?

3      A.  I don't speak with JANE DOE.  I have no way of

4  communicating with her.

5      Q.  What photo are you talking about?

6      A.  If STUDENT 8 took a picture of me and sent it

7  to her, how could I do anything about that?

8      Q.  Okay, if STUDENT 8 sent a picture of you and

9  him giving her the middle finger on her graduation

10  day, did you have nothing to do with that?

11      A.  No.

12      Q.  Okay, other than sticking up your middle

13  finger in the picture?

14      A.  How was I supposed to know that that was

15  going to JANE DOE?

16      Q.  Well, who were you sticking your middle

17  finger up to?

18      MR. JONES:  I'm going to object at this

19     point.

20  BY MS. HOOK:

21      Q.  Who were you sticking your middle finger up

22  to?

23      MR. JONES:  I'm objecting.  I've got an

24     objection pending, okay?  Here's the thing.  I

25     didn't waive my objections.  This is as if we're

1        in a trial, okay?  There's no relevance to any of

2        these questions.  I'm instructing him not to

3        answer.  You can take it up with the judge.

4            I don't know where you're going with all of

5        this.  He's not going to answer the questions.

6            MS. HOOK:  Okay.

7            MR. JONES:  Okay?  To the extent you're going

8        to go down a list of every friend he had at

9        Brunswick and ask similar questions, he's not

10        answering the questions.  Take it up with the

11        judge.

12   BY MS. HOOK:

13        Q.   Have you ever been to   STUDENT 7   house?

14        A.   Yes.

15            MS. HOOK:  And this does go to damages, so it

16        is relevant.  And it is not up to you to decide

17        relevance.

18            MR. JONES:  It is, actually.

19            MS. HOOK:  It is not up to you to decide

20        relevancy.

21            MR. JONES:  Ms. Hook, please stop lecturing.

22        I have an objection.  And once again --

23            MS. HOOK:  There is not a question pending so

24        what are you objecting to?

25            MR. JONES:  Go ahead.  Ask your question.

```
1    BY MS. HOOK:
2         Q.   Have you been to [ STUDENT 7 ] house?
3         A.   Yes.
4         Q.   Please speak up.
5         A.   Yes.
6         Q.   How often have you been to his house?
7              MR. JONES:  Objection.
8              Don't answer the question.  It's not relevant
9         to this case.  You are not answering any
10        questions with respect to this line of
11        questioning.
12   BY MS. HOOK:
13        Q.   Have you met his father?
14             MR. JONES:  Objection.
15             Don't answer the question.
16   BY MS. HOOK:
17        Q.   Okay.  Did you ever discuss the allegations
18   or the police investigation with [ STUDENT 7 ]?
19        A.   I don't remember.
20        Q.   So you might have?
21             MR. JONES:  He answered the question.
22             MS. HOOK:  I'm asking for clarification.
23   BY MS. HOOK:
24        Q.   You might have?
25             MR. JONES:  You don't.
```

```
 1              MS. HOOK:  I'm asking for clarification,
 2         Mr. Jones.  Please stop making speaking
 3         objections.
 4              MR. JONES:  Please stop lecturing me.
 5              MS. HOOK:  Well, if you behave properly, then
 6         I will.
 7              MR. JONES:  Ms. Hook, one more like that and
 8         we are leaving.  So stop with the lectures,
 9         please.  We both do this.  We're both
10         professionals.  Stop with the lectures.
11              MS. HOOK:  Some of us are professionals.
12              MR. JONES:  Seriously?  Would you please
13         strike that from the record.
14    BY MS. HOOK:
15         Q.   Mr.    ROE   , did you ever have -- did you
16    ever discuss allegations or the police investigation
17    with    PRE-PETITION ?
18         A.   No.
19         Q.   Did you ever discuss the allegations or
20    police investigation with Mr. --                    --
21    I'm sorry -- with    STUDENT 7   ?
22         A.   I don't remember.
23         Q.   You don't remember.  So going back to the
24    question that I was distracted from, so it's possible
25    that you did?  You just don't remember one way or the
```

```
 1   other?

 2            MR. JONES:  Objection.  He's already answered

 3        the question.

 4   BY MS. HOOK:

 5        Q.  Can you answer it again, please.

 6            MR. JONES:  Objection.

 7   BY MS. HOOK:

 8        Q.  Do you remember one way or the other or is it

 9   possible that you did?

10            MR. JONES:  Objection.  He said that he

11        doesn't remember.  I'm not going to have him

12        speculate or guess.

13            MS. HOOK:  I am not asking him to speculate.

14            MR. JONES:  Yes, you are.

15            MS. HOOK:  I am saying whether or not it's a

16        no or I don't remember.

17            MR. JONES:  He said it's I don't remember.

18        You can ask him again.  It's the third or fourth

19        time you've asked him the question.  He said he

20        doesn't remember.

21            MS. HOOK:  Why don't we break for lunch.

22        We'll be back at 1:17.

23            THE VIDEOGRAPHER:  Off the record at

24        12:17 p.m.

25            (Off the record as luncheon recess is taken.)
```

```
 1              THE VIDEOGRAPHER:  On the record at 1:17 p.m.
 2          MS. HOOK:  Mr. Jones, I'm going to ask a
 3      series of questions of Mr.   ROE   and I believe
 4      that you will object and instruct him not to
 5      answer.  And I ask you not to disrupt my line of
 6      questioning by giving speaking objections.
 7      Please just instruct him not to answer so that I
 8      can make my record cleanly.
 9          MR. JONES:  I will make my objection, I will
10      instruct him not to answer, and I will allow you
11      to make your clean record.
12          MS. HOOK:  Thank you.
13  BY MS. HOOK:
14      Q.  Going back to your conversations with
15  Mr. Philip, I'm going to ask you to look at Row
16  Exhibit 4, which is the e-mails between you and
17  Mr. Philip.
18              On the first page, WICK 331, Mr.   ROE  , you
19  say in your e-mail to Mr. Philip in the last three
20  sentences -- are you there?  Okay.
21              Thank you for contacting me with the lawyers.
22  Did Mr. Philip arrange for you to meet with your
23  lawyers?
24              MR. JONES:  Objection.
25              I'm instructing you not to answer.
```

1   BY MS. HOOK:

2       Q.   Okay, did anyone else arrange to have you

3   meet with lawyers besides Mr. Philip?

4           MR. JONES:  Objection.  I'm instructing you

5       not to answer.

6   BY MS. HOOK:

7       Q.   Who was the lawyer that you contacted or met

8   with at that time?

9           MR. JONES:  Objection.

10          I'm instructing you not to answer.

11  BY MS. HOOK:

12      Q.   Okay.  When was the next time you spoke with

13  Mr. Philip after this first conversation?

14          MR. JONES:  Objection to form.

15          You can answer.

16  BY MS. HOOK:

17      Q.   The first conversation I believe you said was

18  on August 3rd or 4th right after you were contacted by

19  the police.  Is that correct?

20      A.   Yes.

21      Q.   Okay.  When was the next time you spoke with

22  Mr. Philip?

23      A.   I probably spoke to him the next day over the

24  phone.

25      Q.   Okay.  That was the first conversation with

1    him, the next day over the phone?

2         A.   No, I spoke with him --

3         Q.   The first day?

4         A.   The first day and then probably again the

5    next day.

6         Q.   The next day.  And was anyone else on that

7    phone call with Mr. Philip?

8         A.   No.

9         Q.   Why did you keep updating Mr. Philip on

10   information that you were obtaining about the police

11   investigation?

12        A.   Because --

13        Q.   Can you please speak up.

14        A.   Because I, I just wanted extra guidance with

15   it.

16        Q.   Okay.  So you told him everything because you

17   wanted him to help you navigate the police

18   investigation?

19             MR. JONES:  Objection to the form of the

20        question.

21   BY MS. HOOK:

22        Q.   Okay.  What do you mean by you wanted

23   guidance with it?

24        A.   I wanted help with the situation.

25        Q.   Okay, so you were considering Mr. Philip as

1   your friend in this situation?

2       A.   Yes.

3       MS. HOOK:   I would also like to state for the

4   record, in terms of attorney-client privilege and

5   attorney work product privilege, I'd like to state for

6   the record that we sent you the documents that we

7   intended to use that you're now objecting to on

8   the basis of privilege on December 21st and you

9   did not assert any privilege over those

10  documents.

11      I understand that you didn't see them before,

12  but you saw them on December 21st.  You asserted

13  no privilege and you allowed them to continue.

14  So on that basis, I -- among other bases, I think

15  that any work product privilege was certainly

16  waived.

17      MR. JONES:   Okay, I can respond, right?

18      MS. HOOK:   Yes.

19      MR. JONES:   I object to your statement.   The

20  documents that you sent to me were the documents

21  that you anticipated that you were going to

22  question my client upon.

23      I don't have to make an objection to those

24  documents until the deposition actually takes

25  place.   If you recall, when we went to court on

1 September 11th, this case had three additional

2 counts in the federal court case and there was a

3 pending state court case against Brunswick -- let

4 me finish.  Since that time, the other three

5 counts have been dismissed, which narrows the

6 scope of this lawsuit and you have settled with

7 Brunswick.

8  So with respect to any -- I can rightfully

9 assume that namely some of these documents

10 wouldn't even be introduced.  So I'm not sure why

11 we have to go do a pre-emptive strike with

12 respect to the court and object to documents and

13 move for a protective order.

14  I waited for the deposition to take place.  I

15 waited for you to introduce the documents, some

16 of which you might not have introduced.  And I

17 made my objections.  And now we've created --

18 you've created a record.

19  MS. HOOK:  Okay.  And so my response to that

20 is the law is very clear that work product

21 privilege is waived unless there is an attempt.

22 If there is an inadvertent disclosure or

23 disclosure of work product, unless there is an

24 attempt to retrieve that information and to have

25 it, and to have it stricken from the record, then

1          that work product is waived -- just let me

2          finish --

3                  MR. JONES:  I'm letting you finish.

4                  MS. HOOK:  -- as to the entire topic, so....

5                  MR. JONES:  So my response is I absolutely

6          disagree with your interpretation of the work

7          product rule.  And once again, we have made a

8          record.  You can go to the judge to move to

9          compel.

10                 MS. HOOK:  Okay, we will do so.  Thank you.

11   BY MS. HOOK:

12        Q.  Did Mr. Philip tell you why he thought it was

13   a good sign that you weren't hearing from the

14   attorneys?

15                 MR. JONES:  Objection.  Same objection.

16                 Don't answer it.

17                 MS. HOOK:  Instruction?

18                 MR. JONES:  I'm instructing you not to answer

19          the question.

20   BY MS. HOOK:

21        Q.  Did he tell you what he was expecting to

22   hear?

23                 MR. JONES:  Objection.  I'm instructing him

24          not to answer the question.

25   BY MS. HOOK:

1      Q.   Okay, let's go back through the disciplinary

2   process that we talked about earlier.  So tell me what

3   you understood as a student of Brunswick how the

4   disciplinary process is initiated and how it

5   continues.

6           So an event happens.  What's the first thing

7   that happens if there is an event?

8           MR. JONES:  Okay, so first of all, I'm

9       objecting to the form of the question.  I'm also

10      objecting because this has been asked and

11      answered.

12          That being said, you can answer it again.

13   BY MS. HOOK:

14     Q.   Go ahead.

15     A.   So it's on a case-by-case basis.  And if the

16   student begins by speaking with the teacher or the

17   dean -- and then they speak with other deans.

18     Q.   Okay, let me just stop you there for a

19   second.  So what teacher and what dean are you talking

20   about?

21     A.   It depends.  If you got caught cheating on a

22   test, then you speak with that teacher.  And then they

23   bring the problem to other deans so then the school

24   can deal with the situation.

25     Q.   Okay, let me just stop you there.  Who are

1    the other deans?  What deans are we talking about?

2              MR. JONES:  Can we just have a time frame

3         because we are talking about a span of --

4              MS. HOOK:  We're talking about the process

5         while he was in school.

6              MR. JONES:  Right.  He was there for six

7         years.  The deans may have changed out.  So I'm

8         asking you to just be specific with respect to

9         time.

10             MS. HOOK:  I'm not asking about a particular

11        dean.  I'm talking about the process right now.

12             MR. JONES:  Okay.

13   BY MS. HOOK:

14        Q.   So who would be the dean responsible to next

15   speak with the student?

16        A.   It depends on each situation.

17        Q.   Give me some examples.

18        A.   If I'm a sophomore, then I'll speak with the

19   sophomore dean.  If I'm a junior, I'll speak with the

20   junior dean and then speak with the other deans and

21   then Mr. Philip.

22        Q.   Okay, so if the student is accused of severe

23   misconduct, what happens after first you speak to the

24   teacher, then you speak to the dean?  And if the

25   conduct that the student is accused of is severe

1  enough, what's the next step?

2      A.   Then I believe the teachers and the deans

3  speak amongst themselves and then decide on how to

4  punish the student.

5      Q.   Okay, so the student is not interviewed by

6  any other teachers or deans other than the first step

7  and the dean for whatever level they were in?

8      A.   It depends on each situation.  I can't tell

9  you exactly how it works because I don't know.

10     Q.   Okay.  So from your understanding -- and

11  that's all I'm asking for, just your understanding --

12  after the student -- after the teacher and the dean

13  get the information, then the faculty and the deans

14  talk amongst themselves about the next step?

15     A.   Yes.

16     Q.   Okay.  And what are the range of disciplines

17  that are possible?

18     A.   It depends.  I mean, you can get like dress

19  code violations, which are pink slips.  You can get

20  detention.

21     Q.   Yeah, let's go from the most -- the least

22  form of discipline to the most severe form of

23  discipline.  What's the least form of discipline?

24     A.   You can get pink slips which are like

25  warnings.  And then those lead up to detentions and

1  then dean meetings and then --

2      Q.  Okay, let's just take that.  So it's pink

3  slips, detention.  Next, dean meeting?

4      A.  Dean meetings, suspension, expulsion.

5      Q.  Suspension, expulsion.  Are there any others?

6      A.  There's disciplinary warning.

7      Q.  Disciplinary warning?

8      A.  Um-uh.

9      Q.  Where would that fit in this list?

10     A.  Before suspension.

11     Q.  Is there any sort of student faculty

12  committee that considers certain types of misconduct?

13     A.  Not that I'm aware of.

14     Q.  Okay.  So it's always just the faculty that

15  deals with these?

16     A.  I believe so.  I don't know.

17     Q.  So in connection with the accusation against

18  you in 2016, did you speak with Valerie Fenton?

19     A.  No.

20     Q.  Okay.  All of my following questions are

21  going to be in connection with the accusation against

22  you in 2016.  Did you speak with Derek Hruska?

23     A.  No.

24     Q.  Did you speak with Rob Follansbee?

25     A.  I believe he called me into his office like

1  in the first few weeks of junior year.

2       Q.   Um-uh.

3       A.   And he -- I don't remember everything we

4  discussed, but I'm pretty sure he mentioned, he

5  mentioned the accusations against me.

6       Q.   Okay, what did he say?

7       A.   That he was aware that that -- that the

8  allegations were there and that I needed to be careful

9  because I'm on disciplinary warning and any other --

10 if I do something bad, then I could risk my spot at

11 Brunswick.

12      Q.   Okay.  We'll get to the disciplinary warning

13 in a second, but was that disciplinary warning made

14 known to the entire faculty?

15      A.   I don't know.

16      Q.   Okay.  And when did you receive that

17 disciplinary warning?

18      A.   It says it on the date.  It was August, I

19 think, 24th.

20      Q.   Okay.  So it's going back to Row Exhibit 4?

21 Turn to the fifth page.

22           MR. JONES:  Just give me a chance, okay?

23           MR. TOUGIAS:  Do you have a Bates number?

24           MS. HOOK:  WICK 348.

25           MR. TOUGIAS:  Thank you.

```
1    BY MS. HOOK:
2         Q.   Is this the disciplinary warning?
3              MR. JONES:  I'm sorry.  I --
4              MS. HOOK:  348.
5              MR. JONES:  348, okay.  Got it.
6    BY MS. HOOK:
7         Q.   Mr.  ████ ROE ████ , is this the disciplinary warning
8    you were just referring to?
9         A.   Yes.
10        Q.   Okay.  And how did you receive this warning?
11        A.   It was a letter to my house.
12        Q.   Okay.  When did Mr. Philip tell you that you
13   were going to be placed on disciplinary warning?
14        A.   I found out through this letter.
15        Q.   Okay.  Did he tell you in advance of this
16   letter that that was a possibility?
17        A.   I believe so.
18        Q.   Okay.  And did he tell you why you were being
19   placed on disciplinary warning?
20        A.   For drinking at the pool party.
21        Q.   What was the impact of the disciplinary
22   warning?  What consequences did you suffer as a result
23   of it?
24              MR. JONES:  Objection to the form of the
25         question.
```

1          THE WITNESS:  Can you clarify the question?

2     BY MS. HOOK:

3          Q.   So explain to me how is a disciplinary

4     warning a form of punishment?  How did it punish you?

5          A.   Because any other -- anything I do that is

6     bad, then I put my spot at Brunswick at risk no matter

7     how small.

8          Q.   Okay.  And was there a time period for that?

9          A.   For the rest of my time at Brunswick until I

10    graduated.

11         Q.   Okay.  Did the disciplinary warning affect

12    your activities at school, restrict your activities at

13    school in any way?

14         A.   No.

15         Q.   Okay, were you -- did you have any other

16    consequences as a result of the accusation against you

17    in terms of your schooling at Brunswick?  Did you have

18    any other limitations in your activities or any other

19    restrictions put on you?

20         A.   I could no longer take any classes at GA.

21         Q.   Okay.  Anything else?

22         A.   Senior year, I was kept from the GA prom.

23         Q.   Okay.  How many classes had you taken at GA

24    before that year?

25         A.   Four or five.

1    Q.   Okay.  And how many classes would you have

2    taken at GA had you not been restricted?

3         A.   Probably another four or five.

4         Q.   What were those classes?

5         A.   I was signed up for a U.S. history class at

6    GA which I switched out of because of this.

7         Q.   I'm sorry?

8         A.   I switched out of that class because of this.

9         Q.   Okay.

10        A.   And my Chinese class was also supposed to be

11   at GA, but they separated that into two blocks.  And

12   there is also a bunch of electives, possible courses

13   that I just didn't have the opportunity to even look

14   at.

15        Q.   Which were what?

16        A.   There is -- senior year we pick our English

17   classes, elective classes, and I couldn't pick any of

18   the GA options.

19        Q.   Um-uh.

20        A.   The students picked -- we picked our classes

21   so I couldn't take any GA teachers.  Every class that

22   is offered at Brunswick is also offered at GA -- or

23   most of them -- and I was just limited to the

24   Brunswick teachers.

25        Q.   And do you think that was unfair?

```
 1              MR. JONES:  Objection.
 2              THE WITNESS:  Yeah, I should have had a right
 3         to take those classes if I wanted to.
 4    BY MS. HOOK:
 5         Q.   Why?
 6              MR. JONES:  Objection.  At this point, I'm
 7         going to instruct him not to answer.  It goes to
 8         the -- it could go to the events that happened
 9         that evening.
10    BY MS. HOOK:
11         Q.   Okay.  So the disciplinary warning you said
12    was put on for your drinking.  Is that correct?  Is
13    that what you said before?
14              MR. JONES:  That's not what he said.  If you
15         want to have it read back, you can.
16    BY MS. HOOK:
17         Q.   Okay.  Do you want to just tell me again or
18    do you want to read back your answer?
19              MR. JONES:  I would ask --
20              MS. HOOK:  I'm asking Mr. ██ROE██.
21              MR. JONES:  But he doesn't control the
22         deposition.  I'm objecting and I'm asking that if
23         you want to ask the question, you can ask it
24         again or have it read back.  Don't paraphrase
25         what he said.  Just have the question read back.
```

1          MS. HOOK:  I didn't paraphrase.  I asked him

2      if he wanted to answer it again or if he wanted

3      his answer read back.

4          MR. JONES:  I'm requesting that you have the

5      answer read back.

6          MS. HOOK:  I'm sorry.  Can you read back his

7      answer if you can find it.  This is off the

8      record.

9          (Whereupon, a number of questions and answers

10     were read back, but the sought after question and

11     answer were not found.)

12         MR. JONES:  Why don't you just ask him the

13     question again.

14         MS. HOOK:  I thought I was.

15         MR. JONES:  Please, it's how the question is

16     phrased --

17         MS. HOOK:  I'm going to ask just one more

18     time to please stop disrupting this deposition

19     and in obstructing my questioning.

20         MR. JONES:  First of all, I'm not disrupting

21     and I'm not obstructing.  So now you may

22     continue.

23  BY MS. HOOK:

24     Q.   Okay, Mr. █████ROE█████, why were you issued a

25  disciplinary warning?

```
1        A.   For drinking at the pool party.

2        Q.   So you were drinking at the pool party and

3   that was the reason for the discipline.  So why were

4   you restricted from attending classes because of your

5   drinking at the pool party at GA?

6        A.   Because [JANE DOE] requested that.

7        Q.   You were told that [JANE DOE] requested that?

8        A.   Yes.

9        Q.   Okay.  So restriction from classes had

10  nothing to do with the disciplinary warning, did it?

11       A.   Well, here it says we do suggest to make

12  efforts --

13       Q.   I'm sorry.  I can't hear you, Mr. [ROE].

14       A.   Here on the disciplinary warning letter, it

15  says, We suggest that they make efforts to avoid

16  contact whenever possible.  And that was one of the

17  ways to avoid contact, by switching all of my classes

18  at Brunswick.

19       Q.   Okay, so I'm confused.  Was the drinking the

20  reason for the disciplinary warning or was something

21  else the reason for the disciplinary warning?

22       A.   The drinking.

23       Q.   Okay.  So why would the drinking have

24  something to do with you attending classes at GA?

25       A.   It doesn't.
```

```
1        Q.   It doesn't, okay.  So your restriction from

2    attending classes at GA had nothing to do with your

3    discipline for drinking.  Is that correct?

4        A.   Yes.

5        Q.   Okay.  So let's go back to what other

6    consequences did you suffer as a result of this

7    disciplinary letter?

8             MR. JONES:  Objection.  This has been asked

9        and answered.

10            MS. HOOK:  Well, he said that it was

11       attending classes at GA and he now just testified

12       that it wasn't connected.

13   BY MS. HOOK:

14       Q.   So what other consequences were there?

15       A.   Nothing else that I can remember.

16       Q.   I'm sorry.  I can't hear you.

17       A.   Nothing else that I can remember.

18       Q.   Are you aware of any other students who were

19   disciplined for drinking?

20            MR. JONES:  Time frame, please.

21            MS. HOOK:  I'm sorry?

22            MR. JONES:  Time frame.

23            MS. HOOK:  In August or September of 2016.

24            THE WITNESS:  No.

25   BY MS. HOOK:
```

1       Q.   Okay, were there other -- withdrawn.

2            Okay, so you said that you spoke with Rob

3   Follansbee and Rob Follansbee told you that you would

4   be watched for the next couple of years and that if

5   you did anything wrong that you could be subject to

6   greater discipline.

7       A.   Yes.

8       Q.   Is that correct?  Okay.  What else did you

9   tell Mr. Follansbee?

10           MR. JONES:  Objection to the extent that it

11       goes to events of that night.  I'm instructing

12       him not to answer.

13           MS. HOOK:  Well, Mr. Follansbee is not a

14       witness.

15           MR. JONES:  It doesn't matter.  The

16       protective order says anything that goes to the

17       events of that night is precluded.

18           MS. HOOK:  I don't think that that's what the

19       court --

20           MR. JONES:  Absolutely.

21           MS. HOOK:  But you're instructing him not to

22       answer.  And --

23           MR. JONES:  Yeah.

24           MS. HOOK:  -- let's not get into another

25       soliloquy here.

```
1    BY MS. HOOK:

2         Q.   What else did Mr. Follansbee tell you?

3         A.   That's it.

4         Q.   I'm sorry.  I can't hear you.

5         A.   That's it.

6         Q.   That's it, okay.  And that was the only

7    conversation you had with him about the police

8    investigation into your activities?

9         A.   Yes.

10        Q.   Okay.  Did he tell you that other students

11   had been contacted by the police?

12        A.   No.

13        Q.   Did you tell him that other students had been

14   contacted by the police?

15        A.   No.

16        Q.   Did you talk to Paul Withstandley?

17        A.   Yes.

18        Q.   And when did you talk with him?

19        A.   I talked to him throughout my whole time at

20   Brunswick.

21        Q.   I'm sorry, Mr.  ROE .  I can't her you.

22        A.   I talked to him throughout my whole time at

23   Brunswick.

24        Q.   I'm talking about the police investigation.

25             MR. JONES:  Well, if it's during the -- I'm
```

```
 1        going to object.  If it's during the police
 2        investigation, he could be a potential witness to
 3        that investigation and I'm instructing him not to
 4        answer.  If you want to ask him questions about
 5        after the police investigation, that's a
 6        different story.
 7   BY MS. HOOK:
 8        Q.   Okay, so you have been instructed not to
 9   answer.
10             What about STUDENT?
11        A.   STUDENT (ph).
12        Q.   STUDENT.
13        A.   I never spoke to him about the police
14   investigation.
15        Q.   About anything --
16        A.   No.
17        Q.   -- having to do with his discipline?  Okay.
18             Did you ever have a phone conversation with
19   Tom Philip when attorneys were on the call too?
20        A.   No.
21        Q.   Okay.  Are you aware whether Tom Philip spoke
22   directly with your attorneys?
23        A.   I don't know.
24        Q.   Let's go back to your discipline letter,
25   which is WICK 348 in Row Exhibit 4.  The letter says
```

```
1    that you and your family were concerned about
2    accusations and other circumstances of the party.
3    What did you tell him your concerns were?
4             MR. JONES:  Before I object, I'm sorry, where
5         is that, now?
6             THE WITNESS:  It's in the e-mail.
7             BROTHER DOE:  It's not in the letter; that's
8         correct.
9             MS. HOOK:  It's 339.  I'm sorry.
10            MR. JONES:  It's -- I'm sorry -- what?
11            MS. WADLER:  Which page was it you
12        referenced?
13            MS. HOOK:  I'm sorry.  It was a mistake.  I
14        think that this is the e-mail to the   DOE
15        family.  Correct?
16            BROTHER DOE:  Probably.
17            MR. JONES:  Are you withdrawing that
18        question?
19            MS. HOOK:  I'm withdrawing that question,
20        yes.  Thank you.
21   BY MS. HOOK:
22        Q.  Did you talk with Mr. Philip about anyone
23   informing you they were going to give statements to
24   the police?
25        A.  Yes.
```

```
1          Q.   What did you tell him?
2          A.   I told him that STUDENT (ph) and STUDENT 13 were going
3     to give statements.
4          Q.   Okay.  What else?
5          MR. JONES:  Objection.  I'm instructing him
6     not to answer to the extent again that it goes to
7     discussions with witnesses.
8     BY MS. HOOK:
9          Q.   How did you learn that they were going to
10    give statements to the police?
11         MR. JONES:  Objection.  Again, goes to
12    conversations with witnesses.  It's protected by
13    the protective order.
14         MS. HOOK:  It's not the content of the
15    conversation.
16    BY MS. HOOK:
17         Q.   It's not the content of the conversation.
18    I'm just asking how you became aware that they were
19    giving statements.
20         MR. JONES:  You can answer it.
21         THE WITNESS:  They told me.
22    BY MS. HOOK:
23         Q.   Okay.  Did anybody else tell you they were
24    giving a statement?
25         A.   No.
```

```
1        Q.   No one else?  Okay.

2        A.   I don't think so.

3             MR. JONES:  No.  You answered the question.

4   BY MS. HOOK:

5        Q.   I'm sorry.  No.

6             Do you know somebody from the police

7   department, a detective by the name of Gerard?

8        A.   No.

9        Q.   You have never met a Detective Gerard?

10       A.   No.

11       Q.   You have never spoken to him?

12       A.   No.

13       Q.   Okay.  Did you tell Mr. Philip that you were

14  concerned about accusations in other circumstances?

15            MR. JONES:  Objection.  Goes to what was

16       discussed between witnesses precluded by the

17       protective order.  I'm instructing him not to

18       answer.

19  BY MS. HOOK:

20       Q.   When you talked about your restrictions in

21  terms of taking classes, are you aware that  JANE

22     DOE   was restricted similarly?

23       A.   No.

24       Q.   Was she able to take classes at Brunswick?

25            MR. JONES:  If you know.
```

```
 1              THE WITNESS:  I'm pretty sure she took a
 2        junior year English class at Brunswick.
 3   BY MS. HOOK:
 4        Q.   Okay.  Do you know where that class was held?
 5        A.   The preschool.
 6        Q.   At the preschool.  Is that the main campus of
 7   Brunswick?
 8        A.   No, but every Brunswick --
 9        Q.   I'm sorry.  Please speak up.
10        A.   But every Brunswick upper school student
11   takes classes there.
12        Q.   Okay.  Are you aware that there were other
13   classes she did not take?
14        A.   No.
15        Q.   Okay.  Did JANE DOE do something wrong that
16   would require restrictions of her activities?
17              MR. JONES:  Objection.  I'm instructing him
18        not to answer.
19              MS. HOOK:  Why?
20              MR. JONES:  It's precluded by the protective
21        order....
22              MS. HOOK:  I'm just asking why he thinks that
23        JANE DOE was somewhat disciplined like he was.
24              MR. JONES:  He didn't say that.  You asked
25        him a question about her discipline.  He didn't
```

```
1        say anything about his thoughts about her

2        discipline.

3   BY MS. HOOK:

4        Q.   If she was restricted from taking classes on

5   Brunswick, would you consider that a discipline?

6        A.   No.

7        Q.   If she was prevented from attending a prom or

8   a dance, would you consider that a discipline?

9             MR. JONES:  I'm going to object to the

10       relevance of this.

11            You can answer it if you want to.

12  BY MS. HOOK:

13       Q.   What is your answer, Mr. ██ROE██?  I can't

14  hear you.

15       A.   No.

16       Q.   No, it's not discipline?

17       A.   No.

18       Q.   Okay.  Do you think that it was fair for her

19  activities to be restricted?

20            MR. JONES:  Objection.  Precluded by a

21       protective order.  It could go to the events of

22       that evening.

23            MS. HOOK:  Whether or not it was fair?

24            MR. JONES:  I'm instructing him not to answer

25       the question.  It's also irrelevant.
```

1    BY MS. HOOK:

2        Q.   Okay.  When you informed Mr. Philip that

3    STUDENT,  STUDENT 4, and  STUDENT 5  --

4            What is  STUDENT 5  first name?

5        A.   STUDENT 5.

6        Q.   STUDENT?

7        A.   STUDENT 5.

8        Q.   --    STUDENT 5   were giving statements to

9    the police, did Mr. Philip speak with them?

10       A.   I don't know.

11       Q.   Did they ever tell you that he spoke with

12   him?

13           MR. JONES:  Objection.

14           THE WITNESS:  Don't know.

15   BY MS. HOOK:

16       Q.   Did you ever tell Mr. Philip that there was

17   contradictory information regarding the incident?

18           MR. JONES:  Objection.

19           Don't answer.  It goes to the protective

20       order.

21   BY MS. HOOK:

22       Q.   Did Mr. Philip ever tell you that he spoke

23   with STUDENT,  STUDENT 4, or    STUDENT 5

24           MR. JONES:  Objection.  Precluded by the

25       protective order.

1          Don't answer the question.

2          MS. HOOK:  Well, he's already testified

3     that --

4          MR. JONES:  I'm just instructing him not to

5     answer.  You can ask your next question to create

6     your record.

7          MS. HOOK:  All right.  But just for the

8     record, he's already answered that he spoke to

9     them and gave that information.

10          MR. JONES:  But your question didn't go to

11     that.

12  BY MS. HOOK:

13     Q. How many times did the police department

14  contact you?

15     A.  Just the one phone call to my house.

16     Q.  And that was during the first week in August?

17     A.  Yes.

18     Q.  How did you learn about what was going on in

19  the police investigation, then?

20          MR. JONES:  Objection.  Can we have a time

21     frame?

22          MS. HOOK:  During the entire police

23     investigation.

24          MR. JONES:  It's pretty broad.

25  BY MS. HOOK:

```
1          Q.   How did you learn about developments?

2          A.   Speaking with my lawyer.

3          Q.   Please speak up.

4          A.   Speaking with my lawyer.

5          Q.   Okay.  Anyone else?

6          A.   No.

7               MR. JONES:  Speak up.

8               THE WITNESS:  No.

9   BY MS. HOOK:

10         Q.   Did anybody from the police department ask

11  you either directly or through your attorney for any

12  e-mails or texts?

13         A.   Yes.

14         Q.   Can you please speak up.  I'm sorry.

15         A.   Yes.

16         Q.   Yes?

17         A.   Yes.

18         Q.   Who asked you and when did they ask you?

19         A.   My lawyer asked me for --

20              MR. JONES:  Objection.  Stop.  Stop.  No

21         conversations with the lawyer.

22  BY MS. HOOK:

23         Q.   Okay.  Did anyone from the police department

24  request that you provide texts or e-mails?

25              MR. JONES:  To you directly.
```

1          THE WITNESS:  No.

2    BY MS. HOOK:

3       Q.  Well, whether to you or to your attorney, I'm

4    not asking you to divulge any conversation you had

5    with your attorney.  I'm only asking for requests that

6    were conveyed to you as the subject of the

7    investigation.

8              MR. JONES:  Right.

9              MS. HOOK:  Whether or not it was directly.

10             MR. JONES:  Okay, first of all, I object to

11         the form of the question.  Secondly, I object

12         because it has to absolutely lead to a discussion

13         that he would have had with his attorney.

14         Therefore I'm instructing him not to answer.

15         It's covered by the attorney-client privilege.

16   BY MS. HOOK:

17      Q.  Um-uh.  Okay.  Did JANE DOE ever text you to say

18   that she never wanted the situation to go this far and

19   that everything would be fine?

20             MR. JONES:  Objection.  Covered by the

21         protective order.  It's precluded.  I'm

22         instructing him not to answer.

23             MS. HOOK:  How is that covered by the

24         protective order?

25             MR. JONES:  The content of those texts is

1      covered by the protective order because they go

2      to what happened that night.  They were also

3      conversations between witnesses.

4           MS. HOOK:  Well, I think that the order

5      specifically says that texts between Mr. ROE

6      and JANE DOE were in play.  And this is not

7      going to the events of that night.  This is going

8      to JANE DOE statements after that -- and talking

9      about the investigation and not talking about the

10     events of that evening, so....

11          MR. JONES:  I'm taking a different position.

12     I'm taking it that the only answer that can be

13     elicited from those questions goes to the events

14     of that evening.  And I'm not allowing him to

15     answer that question.

16          MS. HOOK:  Well, it's not the events of that

17     evening.  I'm asking him whether JANE DOE stated

18     that to him after the events of that evening.

19          MR. JONES:  And I'm instructing him not to

20     answer because I believe any answer will go to

21     the events of that evening.  And I don't see how

22     this is at all relevant to this case.

23          MS. HOOK:  Well, relevancy is not an

24     objection.

25          MR. JONES:  It is since I reserved the

```
 1        objection, so....
 2   BY MS. HOOK:
 3        Q.   Who were the other students who were at the
 4   party when you were there?
 5             MR. JONES:  Objection.  It goes -- it's
 6        precluded.  Come on.
 7   BY MS. HOOK:
 8        Q.   Did you talk with any of those people about
 9   what happened after the police contacted you?
10             MR. JONES:  Objection.  It's conversations
11        with witnesses during the police investigation
12        specifically precluded by the protective order.
13        I'm instructing him not to answer.
14   BY MS. HOOK:
15        Q.   Did you talk with anybody who did not attend
16   the pool party?
17             MR. JONES:  Objection.  The same objection.
18             MS. HOOK:  I haven't finished the question.
19        Let me finish.
20             MR. JONES:  Okay.
21   BY MS. HOOK:
22        Q.   Did you speak with anyone who did not attend
23   the pool party about the police investigation.
24             MR. JONES:  Objection.  The same objection.
25             Don't answer the question.
```

```
1    BY MS. HOOK:
2         Q.   Did you speak with anybody else about the
3    party after this lawsuit was filed?
4         A.   No.
5         Q.   How did you hear about this lawsuit?
6         A.   Greenwich Times.
7         Q.   You read an article in the newspaper about
8    it?
9         A.   Yes.
10        Q.   And you never spoke to anybody about that
11   article?
12        A.   My lawyers.
13        Q.   And did you speak to any of your friends?
14        A.   No.
15        Q.   Nobody at all?
16        A.   No.
17        Q.   Did you speak to your parents about it?
18        A.   They know about the articles, but they don't
19   know it's still going on.
20        Q.   Did you speak to them about the case, about
21   the lawsuit?
22        A.   No.
23        Q.   Okay.  Did you speak with   STUDENT 5   after
24   he -- before or after he gave his deposition?
25             MR. JONES:  Objection.
```

```
 1              MS. HOOK:  That's not covered by the
 2         protective order.
 3              MR. JONES:  I'm sorry.  What time period?
 4         I'm just asking what time period.
 5              MS. HOOK:  Before or after his deposition.
 6              MR. JONES:  Oh, I'm sorry.  With respect to
 7         the deposition, okay.
 8              MS. HOOK:  Thank you.
 9              THE WITNESS:  No.
10    BY MS. HOOK:
11         Q.  Did you speak with   GA STUDENT 1   before or
12    after her deposition?
13         A.  No.
14         Q.  Did you speak to   STUDENT 7   about this
15    lawsuit?
16         A.  No.
17         Q.  Did you speak with any other former Brunswick
18    student about this lawsuit once it was filed?
19         A.  No.
20         Q.  Let's go back to talking about   STUDENT 7  .
21    You said that you never met his father?
22         A.  I never said I never met his father.  I said
23    I never spoke with him.
24         Q.  Okay, let me ask the question again.  Have
25    you met   STUDENT 7   father?
```

```
1        A.   Yes.

2        Q.   When did you meet him?

3        A.   I've been to his house since middle school.

4        Q.   So you know him fairly well?  I'm sorry.

5        A.   Yes.

6        Q.   Did you speak with ████████, STUDENT 7

7   father, about the police investigation?

8             MR. JONES:  Can I have a time frame, please.

9             MS. HOOK:  About the police investigation

10       during the police investigation.

11            MR. JONES:  During the investigation or after

12       the start of litigation?

13            MS. HOOK:  During the investigation.

14            MR. JONES:  He's not going to ask any

15       questions with respect to who he spoke to during

16       the investigation.  If you want to ask him

17       questions about after the litigation started,

18       that's a different story.  That you can ask.

19   BY MS. HOOK:

20       Q.   Did you speak with him after the litigation

21   began?

22       A.   No.

23       Q.   Did you speak with him regarding your legal

24   representation?

25            MR. JONES:  Objection.
```

```
 1              Don't answer the question.
 2    BY MS. HOOK:
 3         Q.   Do you know ███████████████?
 4         A.   Yes.
 5         Q.   Have you had any contact with him?
 6         A.   No.
 7         Q.   Okay.  Does █████ know   STUDENT 7   and
 8    ███   STUDENT 8   ?
 9         A.   Yes.
10         Q.   Did you instruct or ask any of your friends
11    not to ask JANE DOE to the prom?
12              MR. JONES:  I object.
13              THE WITNESS:  No.
14    BY MS. HOOK:
15         Q.   Do you know why Ian McKinnon paid for your
16    legal services?
17              MR. JONES:  Objection.
18              Don't answer the question.
19    BY MS. HOOK:
20         Q.   Did you speak with    STUDENT 7    after the
21    prosecutor did not sign the arrest warrant?
22              MR. JONES:  Objection.
23              MS. HOOK:  What's that?
24              MR. JONES:  Police investigation's still
25         pending.
```

```
 1              MS. HOOK:  How is it still pending?
 2              MR. JONES:  You folks went back to the
 3         prosecutor twice after the fact.
 4              MS. HOOK:  It was closed.
 5              MR. JONES:  They don't close it.  It just
 6         gets suspended.  So he's not answering the
 7         question.
 8    BY MS. HOOK:
 9         Q.  Did you speak with  STUDENT 7  after the
10    lawsuits were filed?
11         A.  Yes, but not about the lawsuit.
12         Q.  Okay.  And please speak up.  I'm sorry,
13    Mr.  ROE .  I have a hearing deficit and I can
14    hardly hear you.  Thank you.
15              Do you know  STUDENT 9  (ph)?
16         A.  Yes.
17         Q.  Okay.  How long have you known him?
18         A.  Since sixth grade.
19         Q.  Were you friends with him in 2016?
20         A.  Yes.
21         Q.  Are you still friends with him?
22         A.  Yes.
23         Q.  Okay.  Was he at the party on June 3rd?
24         A.  No.
25              MR. JONES:  Objection.
```

```
1              MS. HOOK:  He's not a witness.  He was not at
2         the party.
3              MR. JONES:  It goes to what happened at the
4         party.
5    BY MS. HOOK:
6         Q.  Did you talk to STUDENT 9 about JANE DOE after
7    the party?
8              MR. JONES:  Objection.
9    BY MS. HOOK:
10        Q.  Without revealing anything about what
11   happened at the party, did you have any conversations
12   with STUDENT 9 about the party?
13             MR. JONES:  Objection.  It goes to the --
14        it's precluded by the protective order.
15   BY MS. HOOK:
16        Q.  Did anybody advise you to call Mr. Philip?
17             MR. JONES:  Objection to the extent that it
18        may involve a lawyer.
19   BY MS. HOOK:
20        Q.  Other than any conversation you may have had
21   with an attorney, which I don't want to hear about,
22   did you get advice from anybody to call Mr. Philip
23   about this contact from the police?
24        A.  No.
25        Q.  STUDENT 9 did not advise you to call Mr. Philip?
```

```
 1          A.   I don't remember.
 2          Q.   Okay.  It was your idea, not STUDENT 9?
 3               MR. JONES:  Objection.
 4               THE WITNESS:  I don't remember.
 5     BY MS. HOOK:
 6          Q.   It was kind of a big deal, wasn't it?
 7               MR. JONES:  Objection.  That's not a
 8          question.
 9               MS. HOOK:  It's a question: It's kind of a
10          big deal?
11               MR. JONES:  What was a big deal?
12     BY MS. HOOK:
13          Q.   It was a big deal, wasn't it?  To get a call
14     from the police was a big deal, wasn't it, Mr.
15     ROE ?
16               MR. JONES:  Objection.
17     BY MS. HOOK:
18          Q.   You can answer.
19          A.   Yes.
20          Q.   Okay.  So wouldn't you remember most of what
21     happened about it?
22               MR. JONES:  Okay, I'm going to object.  This
23          is the second time he said he doesn't remember
24          and you continue to ask the question -- the same
25          question.  He said he doesn't remember.  Let's
```

```
 1        move on.

 2   BY MS. HOOK:

 3        Q.  Did you have any conversations with STUDENT 9

 4   about JANE DOE and other parties or interactions?

 5             MR. JONES:  Objection.  Time frame.

 6   BY MS. HOOK:

 7        Q.  I'm not talking about June 3rd.  Other than

 8   June 3rd, did you have any other conversations with

 9   STUDENT 9 about JANE DOE and other parties and interactions?

10             MR. JONES:  Okay, objection.  Time frame,

11        please.

12   BY MS. HOOK:

13        Q.  From August 3rd until you graduated.

14             MR. JONES:  Well, first of all, that includes

15        the time period of the police investigation, so

16        he is not answering any questions during that

17        time period.  If you want to ask him about after

18        litigation started, that's a different story.

19   BY MS. HOOK:

20        Q.  Did you relay concerns to STUDENT 9 that you

21   would be kicked out of Brunswick?

22             MR. JONES:  Objection.  Don't answer the

23        question.

24   BY MS. HOOK:

25        Q.  Did you tell STUDENT 9 that you pulled a ███ on
```

1     JANE DOE?

2          MR. JONES:  Objection.

3          Don't answer the question.  There is no

4     relevance to any of these questions.

5  BY MS. HOOK:

6     Q.  Do you know what pulling a ▮▮ -- what did

7  you mean by pulling a ▮▮?

8          MR. JONES:  Objection.

9          Don't answer the question.

10  BY MS. HOOK:

11     Q.  Do you know ▮▮ STUDENT ▮▮?

12     A.  Yes.

13     Q.  How do you know him?

14     A.  He went to Brunswick too.

15     Q.  Was he accused of any sexual assault?

16     A.  I think so.

17     Q.  And what was he accused of?

18     A.  Sexual assault.

19     Q.  Of whom?  When?

20     A.  I don't know the specifics.

21     Q.  You just know that he was accused of sexual

22  assault?

23     A.  Yes.

24     Q.  Do you know if he was disciplined for it?

25     A.  I don't know.

1    Q.   Okay.  Do you know ███STUDENT███?

2    A.   Yes.

3    Q.   And how long have you known him?

4    A.   He also went to Brunswick.  I met him in

5    sixth grade.

6    Q.   Okay.  And was ████STUDENT████ accused of any

7    sexual assault?

8    A.   I don't know.

9         MR. JONES:  Speak up.

10   BY MS. HOOK:

11   Q.   What about ███STUDENT███?

12   A.   That's his brother.  I don't know him.

13   Q.   Do you know if he was accused of sexual

14   assault?

15   A.   I don't know.

16   Q.   Okay.  What about ███STUDENT 2███?

17   A.   He went to Brunswick too.

18   Q.   And you knew him?

19   A.   Yes.

20   Q.   Was he accused of sexual assault?

21   A.   I don't know.

22   Q.   So let's go back to Seth Potter.  You

23   testified that you did not speak to him about the

24   police investigation at all.  Are you standing by that

25   testimony?

1      A.   Yes.

2      Q.   Okay, so if we were to depose Mr. Potter and

3  he testified that you did talk to him about the police

4  investigation, he would be lying?

5           MR. JONES:   Objection to the question.

6  BY MS. HOOK:

7      Q.   Would he be lying --

8           MR. JONES:   He has no idea whether he would

9      be lying or not.

10          Don't answer the question.

11  BY MS. HOOK:

12     Q.   Would he be lying?

13          MR. JONES:   Don't answer the question.

14          MS. HOOK:   It's not privileged.   I --

15          MR. JONES:   I've already instructed him not

16     to answer the question.   Move on, please.

17  BY MS. HOOK:

18     Q.   Going back to the phone message that you

19  received on -- during the first week in August, you

20  don't recall whether the person who left the message

21  was a man or a woman?

22     A.   Correct.

23     Q.   Okay.   So you don't remember anything about

24  that message?

25     A.   I don't remember who was speaking.   They

1    wanted to speak to me about the events at the pool

2    party.

3         Q.   Okay.  So you did not call them back?

4         A.   No.

5         Q.   And you called Mr. Philip immediately?

6         A.   Yes.

7         Q.   Okay.  And then somehow you were put in touch

8    with an attorney immediately?

9              MR. JONES:  Objection.  I mean, this has all

10             been asked and answered.  I'm not sure what --

11             MS. HOOK:  I'm just trying to get it

12             straight.  Because of the distractions, it's hard

13             for me to keep the train of thought going,

14             Mr. Jones.

15             MR. JONES:  That's a nice response, but the

16             fact of the matter is it's the third time you're

17             going down this road.  I wish you'd stop bouncing

18             around, going back.  You've gotten answers and

19             now you're asking again, trying to get a

20             different answer.

21             MS. HOOK:  Well, Mr. Jones, when you take

22             your depositions, you can do them your way.  I'll

23             do it my way.

24             MR. JONES:  It's lot more efficient, that's

25             for sure.

```
 1            MS. HOOK:  Can we just go back to my
 2       questioning of your client.
 3  BY MS. HOOK:
 4       Q.  Again, you don't know whether or not it was a
 5  man or a woman, but you do know the substance of the
 6  message?
 7       A.  Yes.
 8       Q.  And the substance was call me back, I want to
 9  talk to you about the events of June 3rd?
10       A.  Yes.
11       Q.  Anything else?
12       A.  No.
13       Q.  Okay.  And then you called Mr. Philip.  And
14  then you got in touch with an attorney.  And then you
15  didn't speak to anyone else about the police
16  investigation?
17            MR. JONES:  Objection.
18  BY MS. HOOK:
19       Q.  Is that your testimony?
20            MR. JONES:  That's not his testimony.  And
21       we're not going to go back through half of the
22       transcript to go over what his testimony was.
23            MS. HOOK:  We're going to do whatever we want
24       to do.  We will continue the deposition until we
25       are concluded unless you want to get up and
```

1          leave, which is your choice.

2               MR. JONES:  And that might happen if we are

3          going to do the third time around with some of

4          these questions.

5               MS. HOOK:  If that's what you choose to do,

6          Mr. Jones, I can't stop you.

7               MR. JONES:  Understood.  Understood.  I don't

8          need the lecture.

9               MS. HOOK:  Thank you.

10   BY MS. HOOK:

11        Q.   In that message, did they say they were

12   conducting an investigation?

13        A.   Don't remember.

14        Q.   Okay.  Why were you so frightened, then?

15               MR. JONES:  Objection.

16               Don't answer the question.

17               MS. HOOK:  Can you please state the basis.

18               MR. JONES:  Yeah, it is precluded by the

19          protective order.  It could go to the events of

20          that night.  It also goes to the police

21          investigation.

22               MS. HOOK:  And the police investigation is

23          the subject of this litigation.  Okay.

24   BY MS. HOOK:

25        Q.   Have you spoken to anyone else who was

1  subpoenaed in this action?

2          MR. JONES:  If you know.

3  BY MS. HOOK:

4      Q.  Well, you know who you talked to, don't you?

5          MR. JONES:  He might not know who was

6      subpoenaed, right?

7  BY MS. HOOK:

8      Q.  Well, do you know of anybody else who was

9  subpoenaed who told you in this action?

10         THE WITNESS:  I have spoken with GA STUDENT 1 but

11     not about the investigation.

12 BY MS. HOOK:

13     Q.  I'm sorry.  GA STUDENT 1?

14     A.  Yes.

15     Q.  Okay.  And how often have you been in touch

16 with GA STUDENT 1?

17     A.  We're in the same group of friends.  Every

18 few months I speak to her.

19         MS. HOOK:  Okay, I'm going to take a five-

20     minute break.

21         THE VIDEOGRAPHER:  Off the record at

22     2:08 p.m.

23         (Off the record briefly, as a break is

24     taken.)

25         THE VIDEOGRAPHER:  On the record at 2:19 p.m.

```
1    BY MS. HOOK:
2         Q.   Okay.  Mr. ████ ROE ████, when were you first
3    served with a subpoena?
4         A.   April of last year.
5         Q.   Okay.  And how were you served?
6         A.   Someone came to my dorm.
7         Q.   Who came to your dorm?
8         A.   A cop and this other guy.
9         Q.   Did you receive a phone call from them first?
10        A.   No.
11        Q.   Okay.  And what did they say when they came
12   to your dorm?
13        A.   They just handed me the letter.
14        Q.   I'm sorry.  I can't understand you.
15        A.   They just handed me the letter.
16        Q.   They handed you the letter, okay.  And what
17   else did they do?
18        A.   That's it.  I closed the door.
19        Q.   Did they say anything about what they were
20   handing you?
21        A.   No.
22        Q.   Did they say it was a subpoena in a federal
23   action or a state action?
24        A.   I don't remember.
25        Q.   Did they say anything about what the case was
```

1  about?

2       A.   No.

3       Q.   Did they say anything about your role in the

4  case?

5       A.   No.

6       Q.   Did they say anything about what the document

7  was that they were giving you?

8       A.   No.

9            MR. JONES:  Again, I'm going to --

10  BY MS. HOOK:

11       Q.   Did you tell any of your roommates or any of

12  your other students what the piece of paper was that

13  you received?

14            MR. JONES:  Okay, I'm going to object at this

15       point.  This is completely irrelevant.  As the

16       court stated on September 9th, that -- the course

17       of this case concerning the adequacy, the

18       sufficiency was part of the Greenwich Police

19       Department investigation.  It's in docket number

20       106 at page 22.

21            How questions about how he was served have

22       anything to do with this lawsuit at this point --

23       completely irrelevant -- and I don't know why you

24       are even asking him.

25            MS. HOOK:  Because you spent a lot of time

1          arguing about it in court.

2               MR. JONES:  I absolutely did, but it has

3          nothing to do with the claims that you have made

4          in this case.

5               MS. HOOK:  Well, I'm trying to establish the

6          -- I'm trying to establish the basis for your

7          objection to the Plaintiff's actions with regard

8          to that and there does not appear to be any basis

9          for your vigorous objection.

10              MR. JONES:  That's inaccurate and incorrect.

11         And once again --

12              MS. HOOK:  Allow me to question your witness

13         and find out.

14              MR. JONES:  -- this whole line of questioning

15         has nothing to do with the claims you made in the

16         lawsuit.  And at this point, no, he's not going

17         to answer any more questions about it.  It's

18         irrelevant.  It's completely irrelevant.  It has

19         nothing to do with the claims you made in the

20         case.  I'll take that to the judge any day of the

21         week.  Move on.

22    BY MS. HOOK:

23         Q.  Does anybody at the school know about your

24    role, if any, in this case?

25              MR. JONES:  Objection.  How would he know

1        what other people know?

2            MS. HOOK:  Well, are you -- you're very

3        vigorous in your objection about how this has

4        harmed him in terms of how it was served on him.

5        And I would like to know what the harm was.

6            MR. JONES:  Once again, it has nothing to do

7        with what you guys are trying to prove in your

8        lawsuit.  I'm not going to allow him to answer

9        questions.  You are wasting his time and ours

10       now.  Please move on.

11   BY MR. JONES:

12       Q.   Mr.  ██ROE██ , when was the last time you had

13   contact with  ██JANE DOE██ ?

14       A.   On the last text message from Exhibit --

15       Q.   When was that?  Can you point it out to me?

16       A.   August 3rd, 2016.

17       Q.   Okay.  And that was the last time you had any

18   contact with  ██JANE DOE██ ?

19       A.   Yes.

20       Q.   Okay.  And did you -- who on campus is aware

21   that you have been subpoenaed?

22           MR. JONES:  Objection.

23           If you have any idea.

24           MS. HOOK:  Are you instructing him not to

25       answer?

```
 1              MR. JONES:  No, he can answer a ridiculous
 2         question, but....
 3    BY MS. HOOK:
 4         Q.   Who on campus is aware that you have been
 5    subpoenaed?
 6         A.   I don't know.
 7         Q.   Has anyone told you that they know about it?
 8         A.   No.
 9         Q.   Has anyone talked to you about it?
10         A.   No.
11         Q.   Has anyone indicated that there is any
12    knowledge about it by anyone on campus?
13         A.   No.
14         Q.   Okay.  Did you provide any texts or e-mails
15    to the police during the investigation in 2016?
16              MR. JONES:  Objection.  In terms of him
17         directly?
18              MS. HOOK:  Him directly or on his behalf.
19              MR. JONES:  You're starting to ask the same
20         question you asked before the break.
21              MS. HOOK:  I'm asking one last question and
22         that is whether or not he or someone on his
23         behalf submitted texts or e-mails to the police.
24              MR. JONES:  And we've already objected to
25         this.  And it goes to attorney-client privilege.
```

1        He's not answering the question.  Move on.

2            MS. HOOK:  What was provided to the police is

3        not privileged.

4            MR. JONES:  It would have been provided

5        through his counsel.

6            MS. HOOK:  But it's to the police.  And the

7        police -- I can cite that case.  The police --

8        any contact that you have with an adverse

9        party -- and in this case, the police

10       investigating him for potential criminal activity

11       is an adverse party -- is not privileged.

12           So if you are standing on privilege, we will

13       take that up again, but are you refusing to

14       answer that?

15           MR. JONES:  Are you asking him if he

16       personally delivered anything to the police?

17           MS. HOOK:  I'm asking if he or anyone on his

18       behalf submitted --

19           MR. JONES:  Okay, don't answer the question.

20       I object.  Attorney-client privilege.  You're not

21       answering that question.

22           MS. HOOK:  We will take this up with a motion

23       to compel.

24           And I'm sorry, Mr. ██ROE██, but you may have

25       to return.  Thank you.

```
 1            MR. JONES:  Are you done?

 2            MS. HOOK:  I am done.

 3            MR. MITCHELL:  And counsel for the town has

 4       no questions.

 5            MR. JONES:  I have no questions either.

 6            THE VIDEOGRAPHER:  Off the record at

 7       2:24 p.m.

 8            (Whereupon, at 2:24 p.m., the deposition

 9       concluded.)

10                        * * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              C E R T I F I C A T E

 2          I, Susan Wandzilak, hereby certify that I am

 3     a Registered Professional Reporter and Notary Public

 4     in and for the State of Connecticut, commissioned and

 5     qualified to administer oaths.

 6          I further certify that the deponent named in

 7     the foregoing deposition was by me duly sworn, and

 8     thereupon testified as appears in the foregoing

 9     deposition; that said deposition was taken by me

10     stenographically in the presence of counsel and

11     reduced to typewriting under my direction, and the

12     foregoing pages are a true and accurate copy of the

13     original transcript of the testimony.

14          I further certify that I am neither of

15     counsel nor attorney to either of the parties to said

16     suit, nor am I an employee of either party to said

17     suit, nor of either counsel in said suit, nor am I

18     interested in the outcome of said cause.

19          Witness my hand and seal as Notary Public

20     this 16th day of January, 2020.

21

22              _____

23                   SUSAN WANDZILAK

24

25
```

1          I have read the foregoing 160 pages and

2     hereby acknowledge the same to be a true and correct

3     record of the testimony.

4

5

6                         _____

7                              PETER ROW

8

9

10

11    Subscribed and Sworn to

12    Before me this ___day of _____, 2020.

13

14    _____

15        Notary Public

16

17    My Commission Expires:

18

19    Doe v. Greenwich, et al.

20    Peter Roe

21    January 7, 2020

22

23

24

25

1

2

I N D E X

3

4    TESTIMONY OF PETER ROW

5         Direct Examination by Ms. Hook          8

6    CERTIFICATE OF REPORTER                      161

7

8

9                    E X H I B I T S

10   Row Exh. 1        Subpoena                    8
     Row Exh. 2        Transcript                  32
11   Row Exh. 3        Text message                42
     Row Exh. 4        E-mails, witness/Mr. Philip 50
12   Row Exh. 5        Text messages               70
     Row Exh. 6        Redaction key               70
13   Row Exh. 7        E-mails, Philip and Potter  88

14                (exhibits attached)

15

16

17

18

19

20

21

22

23

24

25