Plaintiff Exhibit K



Greenwich Police Department

# Unified Policy Manual

This document and all attachments are the property of the Greenwich Police Department.

**Note:** Paper copies of the Unified Policy Manual or any portions thereof are printed for convenience only. The copy of record for official business is maintained strictly in an electronic format and can be found on the Town of Greenwich Public Safety Data Network.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

TOG-001483

| | Greenwich Police Department  *Unified Policy Manual* | Policy Number: **1004g** |
|---|---|---|
| | Title: **CONFLICTS OF INTEREST** | |
| Original Issue: January 1, 2011 | Authority: Chief JJH | |
| Last Re-Issue: July 9, 2019 | | Review Cycle: January | Page 1 of 4 |

### 1004g.1  PURPOSE

Public service work requires that officers do not compromise the authority, integrity, trust, or confidence inherent to their positions.

Officers have easy and often uncensored and unquestioned access to people, information, resources and positions of trust not easily available to the general citizen. This "freedom of office" must be governed and controlled if the public trust is to be preserved. Failure to do so will severely restrict the Department's ability to provide services in an effective and efficient manner.

When conflicts of interest occur between the officer's private rights as a citizen and the privileged rights attributed to the officer's position, management attempts to bring about a reasonable balance if possible. When this balance cannot be negotiated, management must initiate action designed to safeguard the public trust.

### 1004g.2  POLICY

Officers shall not create conflicts of interest or potential conflicts of interest with the duties and obligations of their positions.

### 1004g.3  DEFINITIONS

NONE

### 1004g.4  PROCEDURE

a.  **Nonexclusive Listing of Non-Violations**

Freedom of speech and associated issues provided the exercise of such rights does not substantially interfere with the ability to provide services to the community in an efficient, effective and safe manner.

Note: Refusal to follow management's request to discontinue a conflict of interest situation is not a violation of this standard; these incidents are acts of insubordination (see GPD UPM 1004p).

Responding to an unexpected emergency, while on duty, of a personal nature that requires immediate action if the supervisor verifies and approves the necessity and another officer's safety is not an issue.

The right to associate with any person whose reputation, criminal history, moral character, or vested interest is not in conflict with Department goals, objectives, ethics, or mission.

The right to join any group or association that does not have as its political doctrine the unlawful overthrow of the United States government or does not advocate unlawful criminal or civil actions against any individual or social group.

The right to vote in public elections, primaries, referendums and the like.

Making an occasional local area call on business telephones for essential personal

business during lunch or "break" periods, provided the officer's use does not show a pattern of abuse or interfere with another officer's work efforts.

Local emergency calls regarding illness or injury to family members or calls for similar reasons are permitted provided the officer's use does not show a pattern of abuse or interfere with work functions.

**b. Nonexclusive Listing of Violations**

Accepting gratuities from any business or person, especially when the giver has a personal service to gain from providing the gratuities or where there is the potential for gaining a personal service.

Engaging in an improper work slow-down.

Failing to perform a duty because of personal interests (e.g., investigate a case because of its incriminating effect on a friend or relative; performing a personal service for a friend, associate or family member at public expense).

"Fixing" or attempting to have "fixed" a traffic citation or warrant. (Note: A supervisor who uses discretion to void a citation or an arrest that was made contrary to policies or enforcement priorities does not violate this standard, provided the facts are properly documented and the officer violating the standard or priority is properly notified and counseled).

Giving out unauthorized information to any person (e.g., leaking to the news media, defense attorneys, bondsmen, parents, patients, and inmates).

Having a substantial interest in a business that conducts business with this organization or the Town.

Incurring financial liability or obligations for the Department without job authority or written permission to do so.

Owning a business in whole or part, or working a secondary job of a non-law enforcement nature, that provides a service or product that conflicts with or jeopardizes the Department's mission, goals or objectives.

Performing a secondary job or private work while on duty such as making business contacts, conducting follow-ups on outside work, delivering correspondence, selling, or using computer equipment for personal use.

Substandard performance while on duty or on a Department-sanctioned side job thus giving substantial evidence that a secondary job is a conflict of interest in part or in whole.

Providing a secondary employer or members of a secondary employer with special governmental services or treatment.

Purchasing from or for a prisoner or giving or accepting gifts from or for a prisoner.

Recommending the private or professional services of an attorney, bondsman, wrecker driver, hospital, doctor, architect, engineer, contractor, builder, and the like to a victim or prisoner. Members will not make similar recommendations to a citizen for personal gain, but only as public service.

Releasing or providing access to administrative or public information or documents or records without complying with established administrative procedures or laws governing the proper release or controlled release of such information.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                                                                    TOG-001517

Soliciting for any purpose on public premises without proper authorization.

Soliciting or accepting rewards for performance or non-performance of service.

Incurring financial obligations between a supervisor and a subordinate if the subordinate attempts to use such circumstances to gain special favors.

Using information gained from professional duties for personal gain.

Using membership as a means to gain entrance into places of amusement, for free meals, drinks, or other gratuities unless such entity maintains a corporate policy to do so.

Working for an individual or establishment that has a reputation for violence, crime, vice, illegal drug trafficking, etc.

Accepting money or favors from prisoners or persons in conflict with the law.

Abuse of Town or Departmental e-mail, telephones or other communications devices to send or receive personal messages of a non-emergency or non-critical nature.

Solicitation for any cause during working time or in working areas (work time does not apply to break or meal times as long as such solicitation is not in a work area; work area does not include a break room or parking lot).

Distributing literature in work areas at any time during working time (work time does not apply to break or meal times as long as such solicitation is not in a work area; work area does not include a break room or parking lot).

Selling games of chance without managerial approval.

Using Town or Departmental equipment or property for personal profit.

Engaging in behavior that has the effect of creating discord or lack of cooperation between officers.

Supervisors through their actions or inactions encourage officers not to fully comply with management's legitimate and lawful directives.

Posting, removing or altering notices on any bulletin board or document distributed to the membership without permission of management.

In the role of public servant, permitting photographs, names, or by testimonial recommendation, participating in an advertising scheme or enterprise without authorization.

**1004g.5  MISCELLANEOUS**

NONE

**1004g.6  REFERENCES**

- See also GPD UPM 1006 GRATUITIES
- Town of Greenwich Personnel Policy Manual

**1004g.7  ATTACHMENTS**

NONE

## 1004g.8  REVISION HISTORY

January 1, 2011 (New) – Chief DCR
January 31, 2011 (Re-Issued) – Chief DCR
April 16, 2012 (Revised) – Chief JJH
March 13, 2013 (Re-Issued) – Chief JJH
February 12, 2014 (Revised) – Chief JJH
January 26, 2015 (Re-Issued) – Chief JJH
February 3, 2016 (Re-Issued) – Chief JJH
March 24, 2017 (Re-Issued) – Chief JJH
January 31, 2018 (Revised) – Chief JJH
January 29, 2019 (Re-Issued) –Chief JJH
July 9, 2019 (Revised for Accreditation) – Chief JJH

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**    **TOG-001519**

|  | **Greenwich Police Department** *Unified Policy Manual* | Policy Number: **1004k** |
|---|---|---|
| | Title: **DISHONESTY OR UNTRUTHFULNESS** | |
| Original Issue: January 1, 2011<br>Last Re-Issue: January 29, 2019 | Authority: Chief JJH | Review Cycle: January    Page 1 of 2 |

**1004k.1  PURPOSE**

Public support is based on public trust and confidence. Performance standards in this area are much higher for public employees than for the ordinary citizen. History has shown that having lost trust in its elected or appointed officials, the public is quick to react, often resulting in reductions in operating budgets, creation of external review boards, replacement of officials, and in some cases abolishment of the organization.

**1004k.2  POLICY**

Officers shall not lie, give misleading information or half-truths, or falsify written or verbal communications in official reports or in their statements or actions with supervisors, another person, or organization when it is reasonable to expect that such information may be relied upon because of the officer's position or affiliation with this Department.

**1004k.3  DEFINITIONS**

NONE

**1004k.4  PROCEDURE**

a.  **Nonexclusive Listing of Non-Violations**

Filing information that proves to be wrong when the officer can provide substantial evidence that he or she had no intent to be in error.

Minor omissions or errors on reports or cases that have no significant impact on outcome or when the officer has not been working with or has not worked with such reports or cases for a long period of time.

Using legitimate interrogation or investigation techniques to solicit information from a criminal suspect.

b.  **Nonexclusive Listing of Violations**

Conducting a performance evaluation in a manner that does not comply with the policies governing performance evaluations or does not comply with the spirit or intent of the evaluation process.

Covering up or purposefully failing to report violations of law or Department policy.

Failing to conduct a professional investigation and , because of it, allowing an innocent person to be prosecuted. (NOTE: This may also be a violation of GPD UPM 1004l, the competency standard.)

Falsifying a job application, police reports, Departmental forms, attendance records, certification records, public documents, etc.

Giving or receiving money, services or other valuable considerations in exchange for special treatment (e.g., transfers, hiring, promotions, job assignments and the like).

Improperly influencing or interfering with another's appointment, promotion, merit, assignments, working conditions and the like.

Falsifying a sick leave report, workers compensation or accident claim.

Falsifying any report in part or whole or failing to provide a complete and accurate report or account when it is evident to a reasonable and prudent person that a complete report would lead to a different conclusion.

Giving untruthful or misleading statements or partial truths during a legal proceeding, internal investigation, or administrative proceeding.

Making untruthful or misleading statements or partial truths about any officer, supervisor, command staff or their operations.

Providing citizens with misleading or false information to avoid performance of duties or delivery of an expected service.

Requesting others to change or withdraw a report or notice without proper cause, or causing the delay of any official communications.

**1004k.5  MISCELLANEOUS**

NONE

**1004k.6  REFERENCES**

NONE

**1004k.7  ATTACHMENTS**

NONE

**1004k.8  REVISION HISTORY**

January 1, 2011 (New) – Chief DCR
January 31, 2011 (Re-Issued) – Chief DCR
April 16, 2012 (Re-Issued) – Chief JJH
March 13, 2013 (Revised) – Chief JJH
February 12, 2014 (Re-Issued) – Chief JJH
January 26, 2015 (Re-Issued) – Chief JJH
February 3, 2016 (Re-Issued) – Chief JJH
March 24, 2017 (Re-Issued) – Chief JJH
January 31, 2018 (Re-Issued) – Chief JJH
January 29, 2019 (Re-Issued) – Chief JJH

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                    TOG-001527



| | Greenwich Police Department | Policy Number: |
|---|---|---|
| | *Unified Policy Manual* | *1004l* |
| | Title: **COMPETENT PERFORMANCE** | |
| Original Issue: January 1, 2011 | Authority: Chief JJH | |
| Last Re-Issue: January 29, 2019 | | Review Cycle: January    Page 1 of 2 |

### 1004l.1  PURPOSE

In a public organization where much of the work effort involves citizens' liberties, physical safety, and expenditures of public resources, incompetent performance cannot be tolerated.  When incompetent performance is discovered, its source must be dealt with effectively and efficiently. When this potential occurs, the Department runs the risk of incurring severe criticism, the loss of public trust, and the potential for civil liability.

NOTICE:  As the term is used here competency is a characteristic of a performance, not a characteristic of an individual.  To say that an officer's performance lacks competence does not mean the officer is incompetent. Competence is based on performance failure, not officer fault.

Officers are hired to achieve results; and if an officer brings about an acceptable performance result, he or she has displayed the ability to apply his or her combination of knowledge, skill, and attitude within the context of the situation.

Knowledge, skill, and attitude are useless to the organization if the officer is unable to apply them in a productive manner.

### 1004l.2  POLICY

Officers shall perform competently all assigned or assumed job responsibilities, duties and tasks.  Officers of the Department are expected to have competent knowledge of applicable sections of Federal and State statutes, ordinances of the Town, relevant court decisions and rulings and Departmental policies.

### 1004l.3  DEFINITIONS

**Incompetent Performance:**  Performance that fails to meet standards.

### 1004l.4  PROCEDURE

a.  **Nonexclusive Listing of Non-Violations**

An officer who asks questions and is not able to competently perform a duty or task because he or she has not had the training or experience available to the typical successful performer who does similar duties or tasks.

An officer whose performance drops for a short period of time because of personal problems provided the officer recovers in a reasonable period of time.

B.  **Nonexclusive Listing of Violations**

Lack of knowledge of applicable laws, ordinances, court rulings and Department policies that an officer should reasonably be expected to know.

An officer has to be repeatedly told how to do the routine tasks of the job.

A supervisor when he or she fails to correct a subordinate's infraction when such infraction is first made known or when the

supervisor could have been reasonably expected to be aware of the problem.

Accepting or reporting information related to duties as true or factual without taking reasonable steps to verify the correctness and accuracy of the information.

Consistent failure to enter accurate report data on reports or into information storage files.

Consistent failure to pass regular qualifying exams or tests within the established time periods.

Consistent inability to comprehend or understand supervisory instructions, explanations, or directions for work performance through normal communication channels.

Failing to conduct a performance evaluation according to procedure.

Failing to satisfy performance standards on any assigned or assumed duty or task after receiving comparable training and experience as the typical officer.

Habitually making the same types of mistakes and failing to accept constructive criticism.

Consistently failing to respond to calls in a normal and timely manner.

Failing to control temper or composure or overreacting to another's verbal comments or physical gestures.

Repeated failure to complete reports when necessary information is available after receiving notice to correct.

Taking frustrations out on others or failing to prevent such frustrations that lead to injury or damage to persons or property.

### 1004l.5   MISCELLANEOUS

NONE

### 1004l.6   REFERENCES

NONE

### 1004l.7   ATTACHMENTS

NONE

### 1004l.8   REVISION HISTORY

January 1, 2011 (New) – Chief DCR
January 31, 2011 (Re-Issued) – Chief DCR
April 16, 2012 (Revised) – Chief JJH
March 13, 2013 (Re-Issued) – Chief JJH
February 12, 2014 (Re-Issued) – Chief JJH
January 26, 2015 (Re-Issued) – Chief JJH
February 3, 2016 (Re-Issued) – Chief JJH
March 24, 2017 (Re-Issued) – Chief JJH
January 31, 2018 (Re-Issued) – Chief JJH
January 29, 2019 (Re-Issued) – Chief JJH

| | Greenwich Police Department *Unified Policy Manual* | Policy Number: **5045** |
|---|---|---|
| | Title: **INVESTIGATING SEX CRIMES** | |
| Original Issue: January 29, 2019 <br> Last Re-Issue: January 29, 2019 | Authority: Chief JJH | |
| | Review Cycle: August | Page 1 of 7 |

### 5045.1   PURPOSE

The purpose of this policy is to provide officers and investigators with guidelines for responding to reports of sexual assault, assisting victims, collaborating with local health and service agencies, and conducting interviews with victims, witnesses, and suspects.

### 5045.2   POLICY

It is the policy of the Greenwich Police Department to treat all victims with dignity and respect, and to ensure that victims of sex crimes are provided a private setting where they are not visible and conversations cannot be overheard when being interviewed.

### 5045.3   DEFINITIONS

**Victim Advocate:** Victim advocate applies to a wide range of service providers, rape crisis counselors, social workers, victim witness providers within a prosecutor's office, and law enforcement officers, including departmental victim advocates. Depending on the primary functions of these different advocates, the levels of confidentiality and privilege vary and should be communicated to the victim.

### 5045.4   PROCEDURE

**A. Public Safety Dispatch Telecommunicator (PSDT) or Call Taker Response**

1. Due to the trauma of a sexual assault, a victim reaching out for assistance may be in crisis. The victim's behaviors may actually be symptomatic of this condition and can range from hysteria, crying and rage to laughter, calmness, and unresponsiveness. There is no one typical reaction, so it is important to refrain from judging or disregarding any victim.

2. When a caller reports a sexual assault, the Public Safety Dispatch Telecommunicator (PSDT) shall follow standard emergency response procedures to include: evaluating and properly prioritizing the call, securing medical assistance if necessary, inquiring about a suspect's current location, and obtaining detailed information to identify the suspect. Information about the relationship with the victim, weapon use, and history of violence shall also be obtained.

3. To ensure critical evidence is not lost, PSDT personnel shall:

    a. Ask whether the victim has bathed, urinated, or made other physical changes and advise against doing so.

    b. Ask the victim to use a clean jar to collect the urine should the victim have to urinate.

    c. Let the victim know that other evidence may still be identified and recovered so the crime should still

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                                                                                                TOG-001982

    be reported if the victim has bathed or made other physical changes.

   d. Preserve the communications recording for the investigation.

   e. Explain to the caller that these questions will not delay an officer's response to the caller's location.

**B. Initial Officer Response**

1. The initial Officer responding to the scene shall:

   a. Make contact with the victim, as soon as possible, to address safety concerns and provide emergency medical assistance, if needed.

   b. Evaluate the scene for people, vehicles, or objects involved, as well as possible threats.

   c. Relay all vital information to other responding officers and supervisors, including any possible language barriers.

   d. Secure the crime scene and determine if there are multiple crime scenes, to ensure that evidence is not lost, changed, or contaminated.

   e. Request assistance from the Special Victims Section (SVS).

2. Assisting the victim, Officers shall**:**

   a. Show understanding, patience, and respect for the victim's dignity and attempt to establish trust and rapport.

   b. Inform the victim that an Officer of the same sex will be provided, if desired and available.

   c. Contact a victim advocate, through the Center for Sexual Assault (see info below), as soon as possible, to provide support throughout the reporting and investigative process.

   d. Supply victims of sexual assault, in writing, with the name, address, and telephone number of the nearest sexual assault crisis center:

   **Center for Sexual Assault Crisis Counseling and Education**
   733 Summer Street, Suite 503
   Stamford, CT 06901
   **24 Hour Hotline:**
     (203) 329-2929
   **24 Hour Hotline (Spanish):**
     (888) 568-8332
   **Regular Business Hours:**
     (203) 348-9346

3. Evidence Collection:

   a. Victim-centered care is paramount to the success of the forensic examination of victims of sexual assault. A timely, professional forensic examination increases the likelihood that injuries will be documented and evidence collected to aid in the investigation and prosecution of sex offenders.

   b. Investigating Officer Actions:

      i. Ask the victim whether there is anyone who should be called or notified, and facilitate this contact.

ii. Address any special needs of the victim, such as communication or mobility, and notify the victim advocate of the special need.

iii. Explain the purpose of the forensic examination and its importance to the investigation and provide the victim with information on the procedure.

iv. Inquire whether the victim will consent to a forensic examination.

v. Inform the victim of the right to decline any or all parts of the examination.

vi. Encourage a victim who is unwilling to undergo a forensic exam to get medical attention including testing for pregnancy and sexually transmitted diseases.

vii. Notify a victim advocate to offer the victim support when a forensic examination is to be conducted.

viii. Advise the victim that the forensic examiner will collect any clothing that was worn during or immediately after the sexual assault.

ix. Assist in arranging for clothing the victim may need after the examination.

x. The Officer shall accompany the victim to the hospital and relay relevant information to hospital staff, as well as arrange for pickup of the evidence collection kit upon completion.

xi. When taking custody of the evidence collection kit from the hospital, Officers shall complete a Greenwich Police Department Property label documenting the chain of custody and shall secure the kit in the property / evidence refrigerator section at Police Headquarters.

**C. Stranger vs. Non-Stranger Assaults:**

a. Non-Stranger Assaults

The majority of non-stranger sexual assaults result in a consent defense. Thus, evidence of particular importance includes:

i. Evidence of physical or verbal resistance on the part of the victim.

ii. Evidence of genital or non-genital injury.

iii. Detailed account of the victim's thoughts and feelings during the assault.

iv. Information regarding the suspect's size and strength in comparison to the victim's.

v. Information regarding the environment in which the assault took place (such as isolation, soundproofing).

vi. Information regarding the victim's behavior after the assault, including posttraumatic stress.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER                                                    TOG-001984

b. Stranger Assaults:

i. Evidence in stranger sexual assaults often center on a question of identification pending the processing of DNA evidence. Therefore, investigative strategies must remain flexible. Evidence will typically include latent fingerprints, photo array, DNA and trace evidence collection.

D. **Identifying and Locating Witnesses:**

i. Responding officers must identify and interview any potential witnesses, bearing in mind that there may be multiple crime scenes. It is especially important that the first person the victim told about the sexual assault be identified and interviewed.

E. **Victim Interviews:**

1. Personnel shall provide a private setting for interviewing victims of a crime of sexual assault. A private setting is an enclosed room from which occupants are not visible or otherwise identifiable, and whose conversations cannot be heard from outside such room.

2. Only the following persons shall be present during the interview of the victim:

   a. Persons directly and immediately related to the interviewing of a particular victim (e.g., Officers/Detectives assigned to the case);

   b. The victim;

   c. A social worker, victim's advocate, psychologist, or other person providing emotional support to the victim, unless the victim objects to the presence of such person and requests the exclusion of such person from the interview; and

   d. Where appropriate, the parent or parents of the victim, if requested by the victim, shall be present during the interview of the victim.

F. **Preliminary Victim Interview:**

1. Sexual assault investigations typically include both a preliminary and subsequent in-depth interview with the victim. The preliminary interview is intended to establish whether a crime has occurred. A secondary interview is necessary to corroborate additional facts as they develop. Investigators are cautioned against conducting multiple victim interviews as they could have a traumatic impact on the victim.

2. In the initial response, the officer shall first establish the elements of the crime(s) and identify any and all witnesses, suspect(s), evidence, and crime scene(s). The officer must understand that the preliminary interview is not intended to be a comprehensive or final interview.

3. Involvement of a Victim Advocate:

   a. Every effort shall be made by the investigating officer to contact the *Center for Sexual Assault Crisis Counseling and Education* as soon as possible. If the victim declines assistance from an advocate, personnel shall provide the victim

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

with written referrals for trauma informed care.

4. Victim Interview Protocol:

    a. Based on the length of time between the assault and report of the crime and the individual's personal history, the victim may be in crisis and experiencing posttraumatic stress disorder and exhibiting a range of behaviors that will likely change over time.

    b. The victim's response to the trauma of a sexual assault shall not be used in any way to measure credibility. When drugs or alcohol are involved, the victim may have limited recollection or be unable to give a complete account of the crime. Not knowing the details of what happened may exacerbate the trauma experienced by the victim.

    c. Interviews shall be conducted promptly if the victim is coherent and consenting.

5. Prior to initiating the interview, the officer should:

    a. Interview any witness who might have seen or spoken with the victim before, during, or after the assault.

    b. Accommodate the victim's request for a victim's advocate or support person, whenever possible.

    c. Secure a private location for the interview that is free from distractions.

    d. Express empathy to the victim and an interest in the victim's well-being.

6. During the interview, the officer shall:

    a. Obtain contact information for the victim, including temporary accommodations.

    b. Explain the nature of the preliminary interview and the need for follow-up contacts.

    c. Ask the victim to explain what they remember and

    d. Revisit the possibility of a support person for victims who initially declined the offer.

    e. Explain that other professionals such as detectives, Forensic personnel, and /or representative of the Office of the Chief State's Attorney (typically representative from GA1) may have additional questions.

7. At the conclusion of the initial interview, the officer shall:

    a. Give the victim the investigating detective's contact information.

    b. Encourage the victim to contact the detective with any additional information, evidence, or questions.

    c. Remind the victim that visible evidence of injury may appear later, and to contact the investigators for additional photographs or other documentation.

    d. Provide information on how to apply for court orders to protect the victim.

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**                                              TOG-001986

   e. Provide written referrals for trauma informed care and the State Office of the Victims Services.

   f. Provide transportation when reasonably possible.

   g. Inform the victim about the next steps in the investigation.

**G. Protecting Victim Rights:**

1. Throughout the investigation of the case, officers shall protect the confidentiality of the victim's information to the maximum extent possible. Per CGS 54-86d and 54-86e, the name and address of a sexual assault victim shall not be released to the public or press.

2. In addition, victims should be provided information on:

   a. The rights of a crime victim.

   b. How to contact police if harassed or intimidated by the suspect(s).

   c. The definitions of information that are part of the public record and what is confidential.

   d. The possibility of media coverage and information the media has access to regarding sexual assault crimes.

**H. Follow-Up Interview Protocol:**

1. An in-depth follow-up interview shall be conducted after the victim has been medically examined and treated, and personal needs have been met.

2. In the event that the victim is under the influence of drugs or alcohol, has been injured, or as a result of the assault has not slept, and barring exigent circumstances requiring an arrest or identification, the interview may be delayed.

3. The interview shall be conducted in a location that is convenient, accessible, and comfortable for the victim. The Detective shall provide or arrange for transportation for the victim, when needed.

4. At the start of the follow-up interview, the Detective shall:

   a. Accommodate the victim's request for a victims advocate or support person, whenever possible.

   b. Discuss the purpose and scope of the interview.

   c. Review contact information for both the victim and detective that may need to be updated.

   d. Explain the victim's rights, including confidentiality.

   e. Address arrest decisions, including an explanation of the status of the case.

5. While conducting the follow-up interview, the Detective shall:

   a. If possible, allow the victim to describe what occurred without interruption;

   b. Relay what the Detective heard for accuracy, identify new information or developments, and ask questions.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

TOG-001987

   c. Clarify any inconsistencies with earlier accounts of the sexual assault in a non-threatening manner.

   d. Document the victim's actions in response to the attack, the victim's state of mind during the attack, specific statements made by the perpetrator, and the nature of any relationship with the suspect and explain the importance of these questions from a prosecutorial standpoint.

   e. Inquire about any circumstances that may indicate the use of a drug to facilitate the sexual assault (such as whether the victim experienced any loss of memory, disorientation, severe illness, or hallucinations).

   f. Assist the victim in developing a safety plan, in the event safety concerns exist, and encourage the victim to call police if the suspect violates any existing court orders or if the suspect contacts the victim in any way.

**I. Arrest and Prosecution Decisions:**

1. In the immediate aftermath of a sexual assault, a victim shall not be expected or encouraged to make decisions regarding the investigation.

**J. Delayed Reports:**

1. Due to the trauma and fear experienced by victims, delayed reporting of sexual assaults is common and should not deter a thorough investigation. Officers should not pose questions that could be perceived as judgmental or accusatory regarding a delayed report.

2. Officers should be cognizant of statute of limitations historical dates (see Attachment #1).

### 5045.5 MISCELLANEOUS

NONE

### 5045.6 REFERENCES

NONE

### 5045.7 ATTACHMENTS

Attachment 1 – Sexual Assault Statute of Limitations Chart

### 5045.8 REVISION HISTORY

January 29, 2019 (New for Accreditation) – Chief JJH

**CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER**　　　　　　　　　　　　　　　　　TOG-001988