Plaintiff Exhibit R

Page 1

```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
---------------------------------x
JANE DOE,

            Plaintiff,

vs.                     Case No. 3:18-cv-01322-KAD
                        Date:  October 23, 2019
TOWN OF GREENWICH, ET AL,

            Defendants.
---------------------------------x
COMPLEX LITIGATION AT WATERBURY

JANE DOE, JOHN DOE, AND MARY DOE,

            Plaintiffs,

vs.                     Case No. X06 UWY-CV-18-5024973-S

BRUNSWICK SCHOOL, INC.,

            Defendants.
---------------------------------x
```

DEPOSITION OF ROBERT BERRY

The deposition of Robert Berry was taken on October 23, 2019, beginning at 10:14 a.m., at Two Greenwich Office Park West, Greenwich, Connecticut, before Susan Wandzilak, Registered Professional Reporter and Notary Public in the State of Connecticut.

Susan Wandzilak  License No. 377
DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CONNECTICUT 06443
800-839-6867

NEW HAVEN                STAMFORD                HARTFORD

Page 5

```
 1                    ROBERT BERRY,
 2      having been first duly sworn, testified as
 3      follows:
 4           MS. HOOK:  The usual stipulations except for
 5      reading the transcript and signing?
 6           MR. MITCHELL:  When we say usual
 7      stipulations, we're also including reserving all
 8      objections at trial except form.
 9           THE COURT REPORTER:  What is your full name
10      and address for the record.
11           THE WITNESS:  Robert Lee Berry, ▮▮▮▮▮▮
12      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
13                    DIRECT EXAMINATION
14   BY MS. HOOK:
15      Q.  Good morning, Captain Berry.  Have you ever
16   been deposed before?
17      A.  Yes.
18      Q.  Okay, so we'll get into that.  So since you
19   have had a deposition before, you know the rules so I
20   will just go through them very quickly.
21           We have to wait for each other to finish to
22   speak.  We can't speak at the same time.
23           You have to give verbal answers.
24           Is there any reason that you would be unable
25   to give truthful testimony today?
```

Page 23

1  still essentially a patrol officer.
2         In 2005, I was promoted to sergeant.  I
3  started off in the patrol division.  The entire time I
4  was a sergeant, I was in the patrol division.
5         Once I became promoted to lieutenant -- I
6  believe that was 2009 or 2010 -- I remained in patrol,
7  was a shift commander.  I did that for about two
8  years.  And then I became what we call a professional
9  standards lieutenant, which basically I did policies,
10 procedures, internal affairs, more of a administrative
11 position.
12        And then in 2014, I was promoted to captain,
13 assigned back to the patrol division.  I commanded
14 that division until I moved down to the detective
15 division May 1st of 2017 through the present.
16    Q.   What were your duties as captain of the
17 patrol division?
18    A.   Patrol division?  Basically, supervise -- had
19 about 93 officers -- officers, sergeants, lieutenants.
20 Plan the deployment of those officers, ensure that
21 they respond appropriately to calls for service
22 whether it be a barking dog to a -- you know, a
23 serious crime.
24        Also review those initial reports.  So if a
25 patrol officer responds to a scene of a traffic

Page 28

1      Q.   Should be.  Is there any obligation on the
2   part of private schools to notify the police
3   department if they learn of any potential criminal
4   activity by one of their students?
5      A.   Obligation?  I'm not aware of it, obligation
6   per se.
7      Q.   Okay.  Is there an obligation for the public
8   school to notify the police department if there is any
9   suspected criminal activity?
10     A.   By policy -- my understanding of the Board of
11  Education policy, yes.
12     Q.   When you became the captain of the detective
13  division, did you put in place any particular
14  protocols regarding investigations?
15     A.   New ones, or implement new ones?  Not
16  especially.  Just reinforce what is currently in our
17  policy manual.
18     Q.   Okay.  And the policy manual covers what kind
19  of investigative policies?
20     A.   I mean, it's pretty extensive.  I want to say
21  it's about a 500- if not 600-page document.  We have
22  just about every -- whether it's common or, you know,
23  unusual or, you know, very severe -- there is an
24  active shooter policy, there is a domestic violence --
25  investigations of domestic violence incidents, so it's

Page 54

1           MR. GOOLEY:  Objection.
2           THE WITNESS:  Again, depending upon the
3     situation, there may be a request for
4     clarification.  You know, we are not going to
5     bring in the suspect, but you may want to, you
6     know, verify a piece of information with that
7     defense attorney.  Is there -- you know, whether
8     it's evidence, something may be in their
9     possession.  Once they have invoked, it's better
10    to have that information through the attorney.
11 BY MS. HOOK:
12    Q.   Would the information that the attorney
13 provides to the investigator, would that be included
14 in the case incident report?
15    A.   Any information that the investigator gets
16 would normally be documented somewhere.
17    Q.   Okay. And what about sharing information
18 with the defense attorney?  How much information would
19 an investigator share with a defense attorney?
20    A.   It depends on, it depends on the
21 circumstances.
22    Q.   Okay. And what would be appropriate to
23 share?
24           MR. GOOLEY:  Objection.
25           THE WITNESS:  It depends on the situation.

Page 59

1  BY MS. HOOK:
2      Q.   What process do you or the police department
3  use to solve or resolve any potential conflicts of
4  interest in the dual investigation between an employer
5  or a school and the police department?
6      A.   Well, to try to maintain the integrity of the
7  investigation, if someone has some type of
8  relationship to someone involved, we try to remove
9  them and have investigators that -- don't have any
10 direct connections.
11     Q.   How do you maintain -- withdrawn.
12          When it comes to your attention that another
13 party has contacted and interviewed witnesses before
14 the police department has had an opportunity to do so,
15 what is your policy or the department's policy on
16 interviewing that interviewer?
17          MR. MITCHELL:  I object to the form because
18     you are asking him for two different policies.
19 BY MS. HOOK:
20     Q.   Let's start with your policy first.
21     A.   I don't think there is a policy on that,
22 specific.  In general, if there is any information
23 that's relevant to an investigation, we're going to
24 try to obtain that -- legally.
25     Q.   Okay.  But you have already described the

1      be considered interfering.

2  BY MS. HOOK:

3      Q.   If the participants in this video were all
4  juveniles, would that constitute child pornography?

5           MR. GOOLEY:  Objection.

6           THE WITNESS:  If there are juveniles
7      identified in here and they're on the video,
8      yes, that would be child pornography.

9  BY MS. HOOK:

10     Q.   Okay.  Is it a crime not to turn over a child
11 pornography video to the police?

12     A.   Not so much the turning over.  The possession
13 of the video would be a crime.

14     Q.   Is it an affirmative defense to have that
15 video if you have turned it over to the police?

16     A.   That would be something for a prosecutor to
17 evaluate.

18     Q.   Is there an anonymous tip line?

19     A.   At the Greenwich Police Department.

20     Q.   Can you describe how that operates.

21     A.   It's a -- there is two portions to it.  There
22 is a -- I think it's 1-800.  It might be 1-888.  But
23 anyway, there is a phone number you can call and it's
24 basically a recorded message that you can leave tips
25 for the Greenwich Police Department.  And there is an

Page 67

```
 1   e-mail account where you can e-mail information to
 2   that.
 3        Q.   When that comes into the Greenwich Police
 4   Department, what is done with the anonymous tip?
 5        A.   So right now, for right now, our Sergeant
 6   Corticelli, who is one of my sergeants in the
 7   detective division, he receives all that information.
 8             He frequently, you know, checks those
 9   accounts and decides where they might go.  For
10   instance, if there is something about a tip to the
11   narcotics investigation, that would go to the
12   narcotics section.
13        Q.   Is there a record of those anonymous tips?
14        A.   I do not know that.  I don't know.
15        Q.   Okay, I'm going to be using Kordick Exhibit
16   3.  I show you what has been previously marked as
17   Kordick Exhibit 3.  Would you review it and let me
18   know when you are done with your review.
19        A.   (After review.)  Okay.
20        Q.   I represent to you that this is an audit file
21   of the case incident report for the investigation of
22   Jane Doe's complaint against Peter Row.  Do you
23   recognize this document?
24        A.   I have never seen this.  I can kind of infer.
25   I have never seen this particular type of document
```