Plaintiff Exhibit U

```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT
---------------------------------x          CONFIDENTIAL
JANE DOE,

               Plaintiff,

vs.                          Case No. 3:18-cv-01322-KAD
                             Date:  March 21, 2019
TOWN OF GREENWICH, ET AL,

               Defendants.
---------------------------------x
```

DEPOSITION OF BRENT REEVES

The deposition of Brent Reeves was taken on March 21, 2019, beginning at 10:05 a.m., at 7 Benedict Place, Greenwich, Connecticut, before Susan Wandzilak, Registered Professional Reporter and Notary Public in the State of Connecticut.

Susan Wandzilak  License No. 377
DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE
MADISON, CONNECTICUT 06443
800-839-6867

NEW HAVEN              STAMFORD           HARTFORD

```
 1                      BRENT REEVES,
 2       having been first duly sworn, testified as
 3       follows:
 4           THE COURT REPORTER:  Would you please state
 5       your full name and address for the record.
 6           THE WITNESS:  My name is Brent, B-R-E-N-T.
 7       Last names is Reeves, R-E-E-V-E-S.  And my work
 8       address is 11 Bruce Place, Greenwich, Connecticut
 9       06830.
10           MR. MITCHELL:  Same stipulations as before,
11       confidentiality and read and sign.  All right?
12           MS. HOOK:  Yes.  Yes.
13                    DIRECT EXAMINATION
14    BY MS. HOOK:
15       Q.  Okay, good morning, Sergeant Reeves.  By now
16    I'm sure you know everybody in the room.
17       A.  Um-uh.
18       Q.  Is there anybody you want to be introduced
19    that you may not remember, recall?
20       A.  No.
21       Q.  And you've heard these instructions before.
22    If I ask you a question that you don't understand,
23    please ask me to repeat it.  If you don't ask me to
24    repeat it, I will assume that you understand the
25    question.
```

```
 1    policies that we would go by.
 2         Q.   Okay, do you ever search social media
 3    sources -- Facebook, Instagram?
 4         A.   Depending on the case.
 5         Q.   Did anybody from Brunswick School call in
 6    July or August of 2016 about ▅▅▅▅▅▅▅▅▅▅'s
 7    complaint?
 8         A.   I don't remember the date, but yes.
 9         Q.   Who?
10         A.   Mike DeAngelo.
11         Q.   And generally, when was that?
12         A.   It was after the complaint was made.  I want
13    to say it was Mr. ▅▅▅▅▅▅ had been in contact with
14    Brunswick.
15         Q.   After ▅▅▅▅'s father had been in contact with
16    Brunswick?
17         A.   Yes.
18         Q.   And what did you and Mike talk about?
19         A.   We didn't talk.  He asked and I told him no.
20         Q.   He asked what?
21         A.   He said -- this guy, Mr. ▅▅▅▅▅▅ -- and again
22    I have to paraphrase because it was a wrong time ago,
23    I think two and a half years at this point, was -- we
24    got a report of an incident.  And the father is
25    calling up trying to get this kid in trouble.  And
```

```
 1    what can you tell me?
 2            And my response to him was, quote:  Mike, you
 3    know I can't tell you anything.  You used to work
 4    here.
 5            And that was about the end of the
 6    conversation.
 7       Q.   And you don't remember when that conversation
 8    took place?
 9       A.   I'm going to say it was probably in the
10    summer.  It was probably before Attorney Braxton sent
11    her letter to me.
12       Q.   Was it before or after you received a
13    complaint from ████s -- received the report from
14    DCF?
15       A.   Well, the investigation would have been
16    initiated by that point, so it would have been after.
17    So I would say the bracket is between when the
18    investigation was initiated and the letter was sent to
19    me by Attorney Braxton.  So within that time frame, so
20    in the summertime.  And that was on my work line, by
21    the way.
22       Q.   And could you tell me what that work line
23    number is?
24       A.   Sure.  ████████████.
25            MS. HOOK:  We request the phone records for
```

```
1          A.   Who?
2          Q.   I'm asking the questions.
3               MS. HOOK:  Can you read the question back.
4               (Whereupon, the question at the top of the
5          page was read back.)
6               THE WITNESS:  Who is the he?
7     BY MS. HOOK:
8          Q.   You mentioned the son, ███.
9          A.   Yes.
10         Q.   Answer the question.
11         A.   Yes, he said that the boy appeared to be
12    intoxicated.
13         Q.   Okay.  Did he say that anyone was providing
14    alcohol to the boy?
15         A.   No, the son of the homeowners didn't say
16    that.
17         Q.   So how would that have been a drinking party
18    if the person who appeared to be intoxicated drank
19    before he got to the party?
20         A.   Because the other people who were objective
21    witnesses said there was drinking at the party, not
22    the son of the homeowner.
23         Q.   So it's based on what the other people said
24    that made you conclude that it was a drinking party?
25         A.   In totality.
```

```
 1        A.   What was put in there is what Attorney
 2   Russell said.  Nothing more, nothing less.
 3        Q.   Okay.  So, now, you went back and you said --
 4   let's go back to Attorney Braxton's letter.  You said
 5   that -- you stated it was a drinking party because of
 6   third-party witnesses, objective witnesses who said
 7   there had been drinking going on.
 8             Okay.  And the date of this letter is August
 9   23rd.  So let's look at the affidavit and let's look
10   at who was interviewed before August 23rd.  Can you
11   look through it and tell me.
12        A.   (After review.)  It looks like ███████ on
13   August 8th.
14        Q.   Okay, anybody else?
15        A.   I'm up to September now.  So it looks like
16   ███████.
17        Q.   All right, so you had one objective witness.
18   And what did ███████ have to say about drinking at
19   the party?
20        A.   Page 7 at the top says:  ███ related he saw
21   ███ drinking at the party and assumed he brought the
22   alcohol himself.
23        Q.   Finish the sentence.
24        A.   I did -- oh, I'm sorry.  But was not sure
25   where he got it from.
```

```
1        Q.   What else does he say about drinking?
2        A.   I don't see anything else there in those
3   couple of lines.
4        Q.   Okay, so how does that statement that he
5   thought ████ had brought alcohol himself to the party
6   but didn't know where he got it from make it a
7   drinking party?
8        A.   Because he's at a party and he's drinking.  I
9   don't know.  What's you're definition of a drinking
10  party?
11       Q.   My definition of a drinking party is a party
12  where a lot of people are drinking and that alcohol is
13  being served.
14       A.   Okay.
15       Q.   What's your definition of a drinking party?
16       A.   Kids drinking in front of an adult.
17       Q.   Okay.
18       A.   Is there a number somewhere where you have to
19  have more than one?
20       Q.   Stop.  Stop.  You don't ask me the questions.
21       A.   My apologies.
22       Q.   Well, try to keep it in mind going forward.
23            Where in that statement is there an adult
24  watching a child drinking?
25       A.   Not in his statement.
```

```
 1          Q.   Okay.  So where did you get the information
 2   about a drinking party?
 3          A.   Well, ▇ is saying that he is drinking
 4   and --
 5          Q.   He brought it himself.
 6          A.   Right.  And the brother said that he was
 7   watching him the whole time in the pool.
 8          Q.   So?
 9          A.   So if he is watching him drink, I guess that
10   would mean he was watching him drink.
11          Q.   So you are basing your conclusion that this
12   was a drinking party on the basis of one witness
13   saying that he thought the attacker came to the party
14   with his own alcohol but he didn't know where he got
15   the alcohol from, from the brother saying that he
16   appeared to be intoxicated and what else?  What else
17   supports your conclusion that there was a drinking
18   party?
19          A.   I didn't know that we were looking to arrest
20   anybody for having a drinking party and I don't see it
21   in the warrant.
22          Q.   Well, I think that you made a point of it to
23   Ms. Braxton.
24          A.   That's her quote.
25          Q.   And is this an accurate quote?
```

```
1        A.    Well, there is a lot of inaccuracy in there.
2        Q.    Did you correct her inaccuracy?
3        A.    It's not my business.  It's a civilian
4   complaint.  There is a process for that.
5        Q.    All right, did you write her a letter to
6   point out what was inaccurate about her statements?
7        A.    That would be improper.  It's a civilian
8   complaint.  It has to go through the correct channels.
9        Q.    This was not a civilian complaint.  This was
10  a letter to you summarizing your conversation with
11  her.
12       A.    She cc'ed the chief and complained about an
13  investigation.  I mentioned civilian complaint.  Is
14  she not a civilian?
15       Q.    So where did you correct the misinformation
16  in this letter?
17       A.    I didn't.  I was contacted by the chief and
18  I told them okay, they are going to do their civilian
19  complaint process.
20       Q.    So nowhere in writing or in conversation with
21  anybody did you state that anything contained in
22  Meredith Braxton's letter was incorrect?
23       A.    No.
24       Q.    You didn't tell anybody that anything was
25  incorrect about this letter, correct?
```

```
 1    some reason for it.
 2         Q.   Please.  That's not an answer.
 3         A.   Don't accuse me of something.
 4         Q.   I'm not accusing you.  I'm asking you a
 5    question that you are not answering.
 6         A.   I answered it.
 7         Q.   Let me go on to the next one.  Go to TOG 177.
 8    Okay, TOG 177, paragraph 10:  During the course of the
 9    evening, a tenant who lived on the second floor of the
10    pool house was moving his belongings out of his
11    apartment while we were in the pool house.
12              Where is that in the affidavit?
13         A.   I can see how that is relevant.  (After
14    review.)  I don't see it.
15         Q.   And why is it not there?
16         A.   Because it wasn't written.
17         Q.   Because what wasn't written?
18         A.   That line.
19         Q.   So you decided that that was not relevant
20    information and you excluded it from the affidavit?
21         A.   I can't give you an answer why it's not in
22    there.  It's not in the, it's not in the arrest
23    warrant.
24         Q.   Okay, so you reviewed the arrest warrant?
25         A.   Yes.
```

```
 1         Q.   And you were comfortable with the omission?
 2         A.   I don't know if I would say I was
 3    comfortable.  I would say that it's not written in
 4    there and I can't give you a direct answer as to why.
 5    I can tell you it wasn't left out for any particular
 6    reason.
 7         Q.   Oh, you don't know the reason, but you can
 8    say that it's not any particular reason?
 9         A.   Yeah, that's an accurate statement.  You can
10    say that.
11         Q.   Could it be that you excluded that from the
12    affidavit because you excluded that tenant's entire
13    statement from the affidavit?
14         A.   No, it couldn't be.
15         Q.   Why did you exclude Sam Gonzalez's statement
16    from the affidavit?
17         A.   The very valuable statement that we were told
18    from the father is because it was not relevant.
19         Q.   And what was not relevant about it?
20         A.   Because he wasn't there during the time of
21    the alleged incident.  He arrived after the fact and
22    helped clean up beer cans.
23         Q.   Okay.  When ███████████ states --
24         A.   Are you talking about █████s statement or
25    Sam's statement?  I'm confused.
```

```
1              include that statement.  Let him explain his
2         answer.  Why was Sam Gonzalez's statement
3         irrelevant?  Please let him finish --
4  BY MS. HOOK:
5       Q.   Go ahead.
6       A.   Because arrived when there was a car in the
7  driveway.  He wasn't at the house when they were in
8  the pool house.  He was cleaning up beer cans with the
9  brother after the fact.  That's what he said.  So who
10 is lying, him or Sam?
11      Q.   Did ████████████ say that he was moving his
12 belongings out of the apartment while we were in the
13 pool house?  Does he make that statement?
14      A.   That's what ████ said.
15      Q.   Okay.  So is ████ lying?
16      A.   I don't know.  Is Sam?  It's one or the
17 other.  They can't both be saying two different things
18 and it be the truth.
19      Q.   Okay, so if there are --
20      A.   So we put them all in there.
21      Q.   I'm sorry.  Stop.  There is no pending
22 question.  No editorializing here.
23           If there are contradictory statements and you
24 include only one statement, isn't that shading the
25 testimony?
```

```
 1              Isn't that shading the information you're
 2    providing to the State's Attorney, upon which that
 3    attorney is going to make a decision as to whether to
 4    prosecute?  You have two conflicting statements
 5    according to your words right now --
 6         A.   Um-uh.
 7         Q.   -- and you included only one.
 8         A.   Should we review what  ████  said again?
 9         Q.   No.  No, we shouldn't.
10         A.   Okay, because including a statement of
11    somebody who saw nothing isn't going to help the case.
12         Q.   Okay.  So let's go to ████████████.  What
13    did she say?
14         A.   She wasn't in the room.
15         Q.   Was she at the party?
16         A.   No.
17         Q.   But you included her statement?
18         A.   Because she was one of the first persons that
19    the victim spoke to.  And that's relevant in a sex
20    assault investigation.
21         Q.   Okay.
22         A.   It's called constancy of acquisition --
23         Q.   I'm sorry.  There is no question pending.
24         A.   I'm just answering the question --
25         Q.   There is no question pending.
```