# Plaintiff Exhibit OO

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CIVIL ACTION NO. 3:18-CV-01322-KAD

- - - - - - - - - - - - - - - - - -X
JANE DOE,                            :
            Plaintiff                :
                                     :
VS                                   :
                                     :
TOWN OF GREENWICH, ET AL,            :
            Defendants               :
- - - - - - - - - - - - - - - - - -X

Remote deposition of JOHN CAPOZZI taken via Zoom conference with the witness located at 60 Housatonic Avenue, Bridgeport, Connecticut, before Audra Quinn, RPR, Licensed Shorthand Reporter #106, and Notary Public, in and for the State of Connecticut on July 8, 2020, at 1:00 p.m.

DEL VECCHIO REPORTING SERVICES, LLC
 PROFESSIONAL SHORTHAND REPORTERS

 117 RANDI DRIVE, MADISON CT 06443

 (203)245-9583     (800)839-6867

        FAX (203)245-2760

    HARTFORD     NEW HAVEN      STAMFORD

1             witness, and I agree as well.
2                    MS. HOOK:  Elizabeth Hook, also for the
3             plaintiff, I agree.
4
5                       JOHN CAPOZZI,
6              having first been duly sworn,
7              deposed and testified as follows:
8    DIRECT EXAMINATION
9    BY MS. BRAXTON:
10       Q    Mr. Capozzi, as you know, I'm Meredith
11   Braxton, and I represent the plaintiff in this matter,
12   Doe v. Town of Greenwich.  I don't think I have to give
13   you all the instructions for a deposition, do I?
14                   MR. PROTO:  You don't need to do that,
15             Meredith, but basically if you could just run
16             down some of the basics just so that we're
17             all in agreement.
18       Q    Sure.  Mr. Capozzi, if I ask you a question
19   that you don't understand, you need to just tell me you
20   don't understand and ask for clarification.  If you
21   answer a question, I'm going to assume that you
22   understood it.  If you need to take a break, let us
23   know.  I will just finish up whatever questioning I
24   have and then let you take a break.  You need to
25   respond orally so that the court reporter can record

1  matters become warrants as compared to what come in as
2  regular referrals.  I don't keep statistics in that
3  fashion.
4       Q    Okay.  Do you get an arrest warrant
5  application every week that you're at work?
6       A    On average lately, I've been getting a lot
7  because of the situation currently, but not as often
8  as -- not as often as once a week.
9       Q    Okay.  So in that paradigm where a police
10 department is applying for a warrant, what is the
11 police role in that case?
12      A    Well, they would do their investigation.
13 When the investigation is concluded, a warrant
14 consists -- it's basically an affidavit done by an
15 officer and sworn to by their supervising officer who
16 would then present it to me for review and whether I
17 could make a determination of probable cause or whether
18 there should be an arrest.
19      Q    And is it your expectation that they will
20 present all of the information that they gathered --
21      A    Yes.
22      Q    I'm sorry, go ahead.
23      A    Finish your question.
24      Q    So do you expect them to give you all of the
25 information that they gathered or do you expect them to

 1   filter some of the information?
 2        A    I would expect they would give me everything
 3   that they have.
 4        Q    Is it your expectation that the police
 5   department will filter information that's not of
 6   evidentiary value to them?
 7        A    I don't understand the question.
 8        Q    Okay.  Is it your expectation that the police
 9   department giving you a warrant will have made
10   judgments about the evidentiary value of a particular
11   piece of evidence?
12        A    That would not be my expectation.
13        Q    Okay.  Then once you get an arrest warrant
14   application from the police department, what is your
15   general procedure?  What do you do with that
16   application?
17        A    I read it.
18        Q    Okay.
19        A    Sometimes several times depending on how
20   complicated it is, and then I make a decision whether I
21   should sign it or -- when I sign it, I then have to
22   present it to the judge that's here.  So I would make
23   that decision after I read it.
24        Q    Okay.  So if you make a judgment that it's a
25   case that you want to pursue, and I won't get into why

Page 14

```
 1    expectations about the organization or the conciseness
 2    of the --
 3         A    I leave that to the officer's discretion
 4    because as you well know, some stories are long, some
 5    are short.
 6         Q    So most arrest warrant applications include
 7    description of various statements from witnesses;
 8    correct?
 9         A    I'm sorry, could you repeat that?  I didn't
10    hear all of it.
11         Q    Most arrest warrant applications contain
12    descriptions of statements that were made by witnesses;
13    correct?
14         A    If they are available, they would put that in
15    the warrant, correct.
16         Q    Okay.  So if they spoke to witnesses and
17    received either written or oral statements, you expect
18    those to be described in the warrant?
19         A    Yes.
20         Q    And do you expect that the type of statement
21    would be described?  For example, that it's a verbal
22    interview with no witness statement?
23              MR. MITCHELL:  Object to the form.
24         A    I expect that if the statement was taken,
25    they would describe how it was taken in the warrant.
                     DEL VECCHIO REPORTING
                        (203) 245-9583
```

1   BY MS. BRAXTON:

2       Q    So it would distinguish between whether there
3   was a verbal interview or not.  Is that correct?
4       A    Correct.
5       Q    Okay.  And if it was a typewritten statement
6   that was delivered along with the attorney for the
7   witness to the police department, would you expect that
8   to be disclosed in the arrest warrant?
9       A    I'm sorry, could you repeat that one more
10  time?
11      Q    So, for example, if a witness came into the
12  police station with their attorney and they simply
13  delivered a typewritten statement, would you expect
14  that to be disclosed in the arrest warrant?
15      A    Yes, if it was relevant to the warrant,
16  absolutely.
17      Q    Okay.  But I was -- I was getting at the fact
18  that it was typewritten and delivered with the
19  attorney.  Would that be something that you expect to
20  be disclosed in the arrest warrant application?
21      A    Yes.
22      Q    Does it matter to you which kind of statement
23  it is that's in that arrest warrant application?
24      A    I guess the best way I can answer it is
25  whatever way the statement comes in, it should be

```
 1   referenced in the warrant.  I have no preference.
 2        Q    It's a fact that you consider along with
 3   everything else I take it?
 4        A    Correct.  I take everything into
 5   consideration.
 6        Q    Okay.  Do you expect the police department to
 7   make comments about the credibility of witnesses?
 8        A    Could you be more specific as to where that
 9   would occur?
10        Q    In the arrest warrant affidavit if the police
11   made some kind of comment about, you know, the veracity
12   of that witness?
13        A    If you're asking me whether I expect that, I
14   don't expect it.  If it occurs, if they put it in
15   there, I will take it into consideration.
16        Q    Okay.  If a witness sought to withdraw their
17   statement right after making it, would you want that to
18   be disclosed in an arrest warrant application?
19        A    Anything that occurred during the
20   investigation I would want to be disclosed in the
21   warrant.
22        Q    How about if a witness was disciplined at
23   their school for bullying the victim, would you want
24   that to be disclosed in the warrant application?
25        A    If you're getting into whether that's even
```

1      Q     What do you mean by that?
2      A     I'm the only prosecutor in this district.
3      Q     The only juvenile prosecutor?
4      A     Correct, juvenile prosecutor.
5      Q     Do you ever when discussing a case with a
6  police department and an arrest warrant application, do
7  you ever instruct them to exclude information from a
8  particular witness in their warrant application?
9      A     One more time, please.
10     Q     So when you're discussing with someone from a
11 police department a case that they are investigating or
12 just finished investigating, do you ever tell them to
13 include or exclude information from a particular
14 witness in their warrant application?
15     A     If I'm understanding the question right, I
16 would tell them to include anything and not exclude
17 anything.
18     Q     I'd like to talk in particular now about the
19 case that gave rise to this litigation.  So I'd like
20 you to look at the exhibit that's labeled Exhibit 1.  I
21 emailed that to everyone --
22     A     Which one is Exhibit 1?  The warrant?
23     Q     Yes, it's the warrant.  Do you have that in
24 front of you?
25     A     Yes.

```
 1      Q    Do you recall receiving this warrant
 2   application?
 3      A    I received it in some fashion.
 4      Q    Okay.  Do you remember it coming to you and
 5   you reviewing it?
 6      A    I remember reviewing it.
 7      Q    So this is dated December 27, 2016; correct?
 8      A    That's the date that the officer signed it.
 9      Q    Is submitting a warrant application during a
10   holiday period a difficult time to do that?
11      A    Not particularly.  We only have one day off.
12      Q    What is that?
13      A    Christmas Day or New Year's Day.
14      Q    One or the other, not both?
15      A    I get them both, but this came after
16   Christmas Day.
17      Q    Was there any other reason this might have
18   been a difficult time to submit an affidavit?
19      A    Repeat the question.
20      Q    Is there any reason other than it being a
21   holiday period why it may have been a difficult time to
22   submit this affidavit?
23      A    Submit it?
24      Q    Yes.
25      A    No, not that I know of.  The police
```

```
 1   department submitted it.
 2        Q    I mean submitted it to you or you receiving
 3   it?
 4        A    The only difficulty I could see is that if --
 5   I don't remember how I received the case, but I'm only
 6   in Stamford one day a week, on a Tuesday.
 7        Q    Okay.  I'm hoping you've had a chance to look
 8   back over this arrest warrant application.  Did this
 9   application meet with your expectations with respect to
10   its organization and clarity?
11        A    From what I recall, yes.
12        Q    Did Detective Rondini ever contact you about
13   this case?
14        A    Are you talking about during a particular
15   timeframe?
16        Q    Well, let's start with while the
17   investigation was ongoing.
18        A    I don't remember.
19        Q    Do you remember any communications with
20   Detective Rondini?
21        A    I know I sent an email that I was not going
22   to sign the warrant and that was on January 19, 2017.
23   I can't recall any conversations I had with her about
24   the case.  I'm trying to think.  Although these --
25   there's been so many, they kind of run together.  I
```

1  can't recall any particular conversation.  I don't
2  remember when I received it, but if I sent it back
3  January 19th, I don't know if I had a conversation on
4  that.  I don't recall.
5      Q   So Detective Rondini testified at her
6  deposition that she had somewhere between one and ten
7  conversations with you discussing this case.  Is that
8  possible?
9      A   Well, when would that have occurred?
10     Q   During the investigation of the case, so the
11 fall through December.
12     A   If she did, I just don't remember.
13     Q   Okay.  She also testified that she discussed
14 a particular witness's statement and that you told her
15 to remove the statement.  Do you recall doing that?
16     A   Do what to the statement?
17     Q   To remove the statement from the affidavit?
18     A   I don't recall that.
19     Q   And would that be a normal practice of yours?
20     A   No.
21     Q   Now, just to give it a little more
22 specificity, in this case the incident happened in a
23 pool house.  There was a tenant in the pool house.  One
24 witness stated that the tenant had been moving his
25 belongings around throughout the evening when the

1  incident happened, and the tenant himself in his
2  statement said that he did not even get to the property
3  until late at night, and Detective Rondini testified
4  that you told her to take the tenant's statement out of
5  the arrest warrant affidavit.
6      A    I don't recall that at all.
7      Q    Okay.  Would you be surprised if you had done
8  that?
9      A    Yes, but I'm more surprised that there was a
10 tenant in a pool house.
11     Q    Why is that?
12     A    Because I don't think I recall there being a
13 tenant in the pool house from what I remember.
14     Q    Right, and that would be because the
15 statement was removed from the arrest warrant
16 application?
17     A    I don't remember discussing anything about a
18 tenant in a pool house.
19     Q    Did Detective Reeves ever contact you about
20 this case?
21     A    Do you have a first name?
22     Q    Sergeant Detective Brent Reeves from the
23 Greenwich Police Department.
24     A    I don't recall talking to him about it, but I
25 don't remember.

1    Q    And just to back up for a second, regarding
2    how statements should be described in a warrant
3    application, if someone submitted say text messages,
4    would you expect it to designate that this was a text
5    message as opposed to an oral conversation with the
6    police officer?
7              MR. MITCHELL:  Object to the form.
8    A    If it was a text message, I would expect the
9    affidavit to state it was a text message.
10   BY MS. BRAXTON:
11   Q    Okay.  So instead of saying in the text
12   message she said, saying so and so related, that
13   wouldn't be your expectation; correct?
14             MR. MITCHELL:  Object to the form.
15   A    Can you say that one more time?
16   Q    So if the police officer was quoting text
17   messages and instead of designating that information as
18   from a text message simply said the witness related,
19   that would not be your expectation; correct?
20   A    Correct.  I would expect if it was a text to
21   say it was a text.
22   Q    Do you know Attorney Michael Jones?
23   A    Yes.  I don't think I've ever met him
24   personally, but on the phone over the years.
25   Q    Okay.  Did you speak to him about this case?

Page 27

1     A     I don't recall.
2     Q     I'd like to go to Exhibit 2.
3     A     Is that the incident report?
4     Q     Yes, the incident report.  Let me know when
5  you're ready.
6     A     Okay.
7     Q     As background, is it possible for an
8  unconscious 14-year-old girl to consent to sexual
9  contact as a legal matter?
10    A     Are you asking me to quote the statute or are
11 you asking me to quote a fact?
12    Q     Statute.  Well, it's a mixed question of law
13 and facts, but --
14           MR. MITCHELL:  Object to the form.
15 BY MS. BRAXTON:
16    Q     Is it possible for her to consent to sexual
17 contact legally?
18    A     Well, statutorily if a person is unconscious,
19 they cannot consent, but whether the consent occurred
20 before the unconsciousness is a question of fact.
21    Q     Do you recall this incident that's described
22 in this incident report?
23    A     I do not.
24    Q     I'm talking about the -- the date of the
25 report is -- the date of the incident is 10/6/14.  So

Page 28

1    do you recall this incident?
2         A    No.
3         Q    The investigating officer here is Christy
4    Girard.  Are you familiar with her?
5         A    Yes.
6         Q    Did you know that she has a son who attended
7    Brunswick School at that time?
8              MR. MITCHELL:  Objection.  I think the
9              Court's ruled that we're not supposed to be
10             discussing Officer Girard's children at all.
11             I would object to this being responded to.
12             MS. BRAXTON:  Actually that was one of
13             the questions that the judge specifically
14             allowed.
15             MR. MITCHELL:  I don't believe so.
16             MS. BRAXTON:  Okay.  Well, I would like
17             an answer to the question.
18             MR. MITCHELL:  All right.  Get the
19             answer and we're going to go to the judge for
20             sanctions.  Go ahead and answer the question.
21        A    I have no idea about Detective Girard's
22   children.
23   BY MS. BRAXTON:
24        Q    If an investigating officer -- so this
25   incident involved a student from Brunswick; correct?

1  warrant.

2     Q   Typically when you receive arrest warrant
3  applications, is it common to have attachments like
4  actual text messages?

5     A   Is it common?  If the text message needs to
6  be considered part of the arrest warrant, it needs to
7  be included in the arrest warrant application.

8     Q   Okay.  And when you say included, do you mean
9  the actual text message attached?

10    A   If they're able to -- I'm trying to figure
11 out a way to explain it.  Basically take almost like a
12 snapshot of what was said in the text message as far as
13 who said it and when and put that into the affidavit
14 application, I would expect that.  I know sometimes
15 those can be lengthy, but if it's relevant, I would
16 expect it to be in there.

17    Q   Would you expect it to be quoted or
18 paraphrased?

19    A   The text message itself should be quoted.

20          MS. BRAXTON:  I just need to go off the
21       record for one more minute here.

22          (THEREUPON, A RECESS WAS TAKEN
23             FROM 1:55 TO 1:56.)

24 BY MS. BRAXTON:

25    Q   I want to just go back to Exhibit 2 for a