# Plaintiff Exhibit ZZ

JANE DOE, ET AL. - vs - BRUNSWICK SCHOOL, INC.
███████████ on 08/28/2019

```
 1   SUPERIOR COURT OF THE COUNTY OF WATERBURY, CT
 2   DISTRICT COURT FOR THE STATE OF CONNECTICUT
 3   -------------------------------------------------x
 4   JANE DOE, JOHN DOE, and MARY DOE,
 5                        Plaintiffs Docket
 6                        X06-UWY-CV-18-5037815-S
 7              - against -
 8   BRUNSWICK SCHOOL, INC.
 9                        Defendants,
10   -------------------------------------------------x
11             CARMODY, TORRANCE, SANDAK & HENNESSEY
12             6 Landmark Square, Suite 400
13             Stamford, Connecticut 06901
14             August 28, 2019
15             10:30 a.m.
16
17
18
19
20
21
22
23
24
25
```

```
 1    ████████████████████████, with an address of ████
 2    ████████████████, Greenwich, Connecticut 06830 the
 3    witness herein, having been first duly sworn before a
 4    Notary Public of the State of New York, was examined
 5    and testified as follows:
 6    EXAMINATION
 7    BY MR. SCONZO:
 8         Q.   Good morning, Mr. ████████.  And since you
 9    have been at deposition and been deposed I wouldn't
10    belabor what us lawyers refer to as preliminaries;
11    but I will remind you the importance of giving a
12    short break between my question and your answer so
13    that your attorney can object.  And that will also
14    give you an opportunity to make sure you understand
15    my question, okay?
16         A.   Okay.
17         Q.   Once the question is completed, the Court
18    Reporter seated to your left will prepare a
19    typewritten transcript and that will be provided
20    through your attorney to you.  Do you understand
21    that?
22         A.   I understand that.
23         Q.   And that is what you did in connection with
24    the transcript that was made of your testimony in the
25    Federal case; is that right?
```

```
 1        Q.   Okay.  And tell me what Reeves said to you
 2   on the topic of under-aged drinking?
 3        A.   He said a lot of things on under-aged
 4   drinking.  He said that we could be in trouble for
 5   social hosting violations among -- and that was well
 6   into the conversation.  And he had many complaints
 7   with me that day.  And but -- that he said that we
 8   were running a drinking party, which I took objection
 9   to.  I told him that we were not running a drinking
10   party.  And he -- and I asked him who told you that;
11   and he told me "Brunswick Security told me that".
12        And earlier -- that was the first time that it
13   occurred to me that there was a social hosting issue.
14   His subordinate, Detective Rondina, she did not
15   mention anything of the kind.  It never came up.
16   That was the first of it?
17        Q.   And while we're on the topic, what other
18   issues did -- I forget what word you.  Used, what
19   other things did he raise in that discussion?
20             MS. BRAXTON:  Objection to form.
21        A.   That call was -- we had just returned from
22   vacation the day before.  And that was in the
23   morning.  Okay.  So it was that morning.  It was a
24   Friday morning.  I was in my office.  I got a call
25   from the Greenwich Police Department, and I was
```

```
 1    expecting an update in the case.  I -- that is not
 2    what the call was about.  I knew he was going to call
 3    me and he wanted to call me; and he left me a
 4    voicemail that came through as an email to me, while
 5    I was still travelling.  And that email was dated the
 6    15th of August.  And he, in that voicemail it was a
 7    voicemail that came through email.  And he asked to
 8    talk to me and I had sent a note to his detective,
 9    Detective Rondina, saying would it be okay, and could
10    we talk at the end of the week.  And she said fine.
11    And so I was expecting an update in the case.  And
12    that is not what it was.
13         So he was offended by the fact that I had sent
14    an email to Tom Philips, presumably the 14th, the
15    email that I only sent one to Tom Philips.  So I sent
16    an email to Tom Philips on the 14th and he said that
17    was interfering with a police investigation, and I
18    have to stop that.  And that I was ruining the boys'
19    college chances; I was subjecting my family to liable
20    claims by the boy, presumably.  And he just said we
21    would be subject to liable claims.  And he mentioned
22    that we could be in trouble for social hosting
23    violations, and he probably said a few other things.
24    I cannot recall ever single word.
25         I think we spoke for about 15 minutes, and then
```

```
 1   he -- I pushed back on the liable claims, and I said
 2   "everything as I said to Mr. Philip was true.  And I
 3   did not see how I could be in trouble."
 4         And he did not accept that.  And I asked him
 5   about -- and he told me -- and I asked him at some
 6   point there who -- when the social hosting thing came
 7   up, it was all -- this whole thing was intimidating
 8   to me.  It was really, I got the feeling that it was
 9   intimidating, and he really wanted us to drop the
10   case.  And it was a very intimidating call.  And I
11   said that we told everything that we said in the
12   email to Tom Philips was true.  And then we finally
13   got to the update on the actual case.
14         I asked him, Well what is going on with the
15   case.  And he told me it was a "he-said/she-said case
16   and it is going nowhere."
17         And I said, "Well, the how can that be?  You
18   know there are not a lot of sexual assaults of this
19   kind."
20         And where -- and he told me "where there were no
21   witnesses".
22         And I said, "Well, that should not stop a sexual
23   assault claim."
24         And he asked me if there was physical evidence
25   of this.  And I said, Well -- and he says "is there
```