UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

————————————————————————————X
                                              )
                                              )
JANE DOE,                                     )        Index No. 3:18-cv-01322-KAD
                        Plaintiff,            )
                                              )
v.                                            )
                                              )        October 8, 2020
TOWN OF GREENWICH, et al.,                    )
                        Defendants.           )
————————————————————————————X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT DR. HOUGH**

Dr. Hough's testimony should be excluded by the Court on the grounds that his expert

opinion is irrelevant because it does not address the actual legal claim in this action, and

unreliable because it does not satisfy the standards set forth by Federal Rule of Evidence 702 and

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.D. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469

(1993). Dr. Richard Hough provided an expert opinion[1] that Defendants' investigation into the

Doe criminal complaint was in accordance with customary law enforcement practice. However,

the gravamen of Plaintiff's claim is that the Defendants' investigation into her criminal

complaint was less rigorous than investigations conducted by the Greenwich Police Department

("GPD") into other criminal complaints not involving Brunswick School students. There is no

allegation or claim that GPD's investigation failed to comply with customary law enforcement

---

[1] Dr. Hough's Affidavit and Expert Report have been submitted to the Court on Defendants' Motion for Summary Judgment as Defendants' Exhibit 33. For the convenience of the Court, Plaintiff submits that exhibit on her Motion to Exclude as Exhibit A to the accompanying Declaration of Elizabeth I. Hook. For ease of reference, citations to this exhibit will be "Hough Aff. ¶ __" and "Hough Rep. at __".

practice, therefore Dr. Hough's opinion testimony is irrelevant.  In addition, Dr. Hough's opinion is based on an insufficient review of the facts and his methodology is not  reliable.

## STATEMENT OF RELEVANT FACTS

Dr. Richard M. Hough, Sr., was retained by Defendants "to render opinions as an expert witness . . . regarding police procedures and police investigations.  (Hough Aff. ¶ 3).  He submitted his expert report on February 11, 2020.  (Hough Rep. at 1).  In developing his expert opinions, Dr. Hough reviewed Plaintiff's Second Amended Complaint; the GPD Case/Incident Report investigation file; transcripts of two GPD interviews with Jane Doe; Det. Sgt. Brent Reeves' Red Book; Sgt. Reeves' and Det. Krystie Rondini's training records; and the transcripts of the depositions of the Doe family, a Brunswick student and his mother, a Greenwich Academy student and her mother, Peter Roe, and one-half of the depositions of Sgt. Reeves and Det. Rondini.[2]  He also referenced the International Association of Chiefs of Police Training Key 558, Criminal Investigations and Police Officer Standards and Training Council academy curriculum. (Hough Rep. at 8-11).

Dr. Hough did not interview Sgt. Reeves or Det. Rondini or any other police officer or employee of GPD.  (Hook Dec. Ex. B at 50:10-16).  Dr. Hough did not read the GPD's policies contained in its Unified Policy Manual and, at deposition, testified that he did not know which UPM policies were in place in 2016, when the Doe investigation was conducted.  (Hook Dec. Ex. B at 49:1-25, 50:1-9). Dr. Hough did not review the transcripts of the depositions taken of nine police officers and one employee of GPD:  Chief of Police James Heavey, Deputy Chief

---

[2] The parties agreed to take the depositions of Defendants Sgt. Reeves and Det. Rondini in two parts due to the pendency of Defendants' motion to dismiss.  Sgt. Reeves was deposed on March 21, 2019 and July 9, 2020, and Det. Rondini was deposed on March 19, 2019 and June 25, 2020.  (Hook Dec. ¶ 2.)

Robert Berry, Capt. Mark Kordick, Capt. Kraig Gray, Capt. James Bonney, Capt. Mark

Zuccerella,[3] Lt. David Nemecek, Det. William Weissauer, Det. Christy Girard, and Director of

General Services Gregory Hannigan.  Defendant Town of Greenwich put forward two of these

police officers as 30(b)(6) witnesses on the topic of GPD policy:  Capt. Zuccerella and Lt.

Nemecek.  (Hough Rep. at 8-11; Hook Dec. ¶ 3, Ex. C). Dr. Hough did not rely on any facts

outside of those contained within the documents he reviewed.  (Hook Dec. Ex. B at 15:19-16:4).

Dr. Hough testified that his methodology for reaching his expert opinions was "[l]ooking

at the investigation as compared to what's routine and customarily done throughout the United

States in criminal investigations and training that is provided by the 18,000 some law

enforcement agencies and law enforcement academies for officers who carry out both patrol and

specific investigative duties."  (Hook Dec. Ex. B at 12:11-14:7).  He further testified that he was

not aware of any peer review of his methodology, and that there are no standards or controls that

are applicable to his methodology.  (Hook Dec. Ex. B at 16:15-17:21).  At deposition, Dr. Hough

could not state whether he relied on any assumptions that were not supported by facts within the

documents he reviewed, and he was unable to state the facts upon which he based his

conclusions.  (Hook Dec. Ex. B at 35:11-38:11; 38:25-44:2). He testified that "[t]o make the type

of comparative evaluation and analysis [he performed], the foundation is the entirety of my

professional and scholarly work over the last 40 years that allows me to make these kinds of

evaluations."  (Hook Dec. Ex. B at 15:25-16:4).

Some of the facts cited in Dr. Hough's report did not exist at the time of the Doe

investigation.  For example, Dr. Hough stated in his report that "[t]he Greenwich Police

---

[3] Capt. Zuccerella was deposed twice, once as a fact witness and once as one of two 30(b)(6) witnesses produced by Defendant Town of Greenwich on the topic of GPD policy.

Department has put itself forward to the external examination of accreditation auditors of the
Police Officer Standards and Training Council (POST-C) of the State of Connecticut.  POST-C
accreditation helps assure the citizens of Greenwich that the agency strives to do the work of law
enforcement in the most competent manner currently known."  Dr. Hough testified that this
accreditation is "significant in that throughout the United States not a majority of agencies have
an accreditation, either nationally, which is very few, or at the state level."  (Hough Rep. at 4;
Hook Dec. Ex. B at 45:3-7).  However, GPD did not receive that accreditation until 2019, three
years after the investigation at issue in this action.  (Hook Dec. Ex. D at 158:1-17).

## ARGUMENT

"[T]he district court functions as the gatekeeper for expert testimony."  Raskin v. Wyatt
Co., 125 F.3d 55, 66 (2d Cir. 1997). "The court performs the same role at the summary judgment
phase as at trial; an expert's report is not a talisman against summary judgment."  Id.  "Expert
witness testimony is admissible only if: (1) 'the expert's . . . specialized knowledge will help the
trier of fact to understand the evidence or to determine a fact in issue;' (2) 'the testimony is based
upon sufficient facts or data;' (3) 'the testimony is the product of reliable principles and
methods;' and (4) 'the expert has reliably applied the principles and methods to the facts of the
case.'"  Water Pollution Control Authority of City of Norwalk v. Flowserve U.S. Inc., No. 3:14-
cv-00549 (VLB), 2018 WL 1525709, *6 (D. Conn. Mar. 28, 2018), aff'd, 782 Fed. Appx. 9 (2d
Cir. 2019), quoting Fed. R. Evid. 702.  "An expert's opinion is not admissible unless a 'rigorous
examination of the facts on which the expert relies, the methods by which the expert draws an
opinion from those facts, and how the expert applies the facts and methods to the case at hand'
reveals that the opinion is "reliable at every step."'  Id., quoting Amorgianos v. National R.R.
Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

As the U.S. Supreme Court held, "nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997). An expert's opinion is not reliable if it "simply rehash[es] otherwise admissible evidence about which he has no personal knowledge." <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005). Similarly, if an expert fails to review all information relevant to reaching his expert conclusions, his conclusions lack a "'sufficiently reliable foundation' to be admissible under Federal Rule of Evidence 702." <u>Flowserve</u>, 2018 WL 1525709 at *16.

I.   <u>**Dr. Hough's Expert Report and Conclusions Are not Relevant**</u>

Defendants offer the expert testimony of Dr. Richard M. Hough as evidence that the investigation into Jane's complaint was "reasonable, appropriate, and in accordance with customary law enforcement practice." (Doc. # 282-2 at 13). However, that is not the legal standard at issue in this litigation. Jane Doe's claim in this case is deprivation of equal protection in violation of Section 1983, specifically that "the policy of protecting Brunswick students at the expense of their victims undermines the ability of the police department to fully investigate and the state's attorney to obtain all available evidence," depriving her of the right to be treated the same as victims of other criminal assaults in the criminal investigation of her complaint. (Doc. # 115 at 9). Thus, a jury will be required to determine if the Defendants' investigation followed the same practices and policies as their investigations of other criminal assault complaints, not whether it was "reasonable, appropriate, and in accordance with customary law enforcement practice." On this point, Dr. Hough offered no opinion or testimony.

In fact, Dr. Hough gave no opinion whatsoever about GPD's policies or practices concerning criminal investigations.

## II.      Dr. Hough's Expert Report and Conclusions Are Unreliable

Even if the Court were to consider Dr. Hough's testimony relevant, it is unreliable because his conclusions were based on a review of several documents and the deposition testimony of the Doe family, the partial deposition testimony of Det. Rondini and Sgt. Reeves, the deposition testimony of Brunswick student L and his mother, the deposition testimony of GA student G and her mother, and the deposition testimony of Peter Roe.  (Hough Rep. at 8-11).  He did not review the depositions of the 10 other GPD officers and an employee who were deposed, among them the Chief of Police, a Deputy Chief, four Captains, and two police officers proffered by the Town of Greenwich on the issue of GPD policies.  (Hough Rep. at 8-11; Hook Dec. ¶ 3, Ex. C).  Most significantly, in this action based on GPD's policies and practices, Dr. Hough did not review a single GPD policy and he did not interview a single GPD officer.  In fact, Dr. Hough did not know what GPD policies were even in place in 2016.  (Hook Dec. Ex. B at 49-52).  Dr. Hough's report is replete with generalizations about the conduct of police investigations, but offers no specific factual information regarding GPD investigations in general or the Doe investigation specifically.

For example, Dr. Hough cites the training given to Det. Rondini and Sgt. Reeves and the training methods used by GPD (Hough Rep. at 5, #5 and #6).  But he conceded at deposition that he knew nothing about the content of those courses.  Dr. Hough also drew no connection between that training and the GPD's policies and practices.  His testimony was simply that he knew the topics of the courses given, and that "they were trained as is pretty much routine and customary for investigators in U.S. law enforcement agencies."  (Hook Dec. Ex. B at 23-29).

Similarly, Dr. Hough bases his expert opinion on the fact the GPD is "state accredited by the Connecticut Police Officer Standards and Training Council's (POST-C)."  (Hough Rep. at 6, # 8).  This state accreditation was not received by GPD until three years after the investigation at issue – in 2019 – and Dr. Hough did not know when the police department began working towards that accreditation.  (Hook Dec. Ex. B at 44-48).  He finally conceded at deposition that "I don't see that the accreditation of 2019 is direct to what practices and procedures that they were using in 2016."  (Hook Dec. Ex. B at 47:24-48:1).  More to the point, he gave no indication how accredited policies in any year would shed light on whether the investigations involving Brunswick students differed in any way from investigations of other juveniles.

For an expert to render an opinion on whether the Doe investigation was conducted in accordance with the same policies and practices as all other investigations, it is incumbent to not only know what those policies and practices are, but to hear from police officers as to how they apply those policies and practices.  Dr. Hough did neither.  (Hook Dec. Ex. B at 49-50).  Dr. Hough also could not articulate at deposition any factual basis for his conclusions that the investigation was reasonable and appropriate.  (Hook Dec. Ex. B at 52-69).  When asked what assumptions, if any, he relied upon, he responded "I have no way to answer that question." (Hook Dec. Ex. B at 16:15-20).  When asked to describe his methodology, Dr. Hough testified:

> The methodology that is used in this type of social science research and comparison is looking at the steps that were taken by the officers in a discretionary style investigative manner done by law enforcement every single day throughout the United States, and making a comparison of that to how others similarly situated, those other 18,000 law enforcement agencies in the country, as well as the various other ones that don't do local law enforcement types of activities . . . .

(Hook Dec. Ex. B at 13:6-14).  Dr. Hough compared the conduct of the Doe investigation to thousands of law enforcement and non-law-enforcement agencies throughout the country.  What he did not do was compare it to investigations by GPD of complaints against juveniles who did not attend Brunswick.  In fact, Dr. Hough's expert report is nothing more than a listing of generalizations about procedures used by detectives in investigating complaints, without reference to any specific facts about the Doe investigation or any reference to conformity with GPD's regular policies and practices for conducting investigations.  Finally, Dr. Hough could not think of any peer review of his methodology and admitted that there are no standards or controls that applied to his methodology.  (Hook Dec. Ex. B at 16:15-17:21).  When asked at deposition whether he relied on any assumptions that were not supported by facts within the documents he reviewed, he replied that he could not answer that question.  When asked upon what facts he based each of his conclusion, he was unable to state any specific facts and simply referred to the documents he reviewed in general.  (Hook Dec. Ex. B at 35:11-38:11; 38:25-44:2).

Dr. Hough's report states that the following opinions are "[b]ased upon a reasonable degree of law enforcement certainty" (Hough Rep. at -7):

1.  "The police investigation in this case was reasonable and follows routine and customary law enforcement practice in cases involving allegations of battery or sexual assault."

When asked upon what facts he based this opinion, Dr. Hough testified "this is a comparative analysis to all the investigations that I've conducted, that I've analyzed, that I've looked at, that I've researched, all the practices about how do we train investigators in law enforcement offices, all the training that I've done of investigators and law enforcement officers, and all the various many documents that I have based that on over all the various years."  (Hook

Dec. Ex. B at 52:11-53:6).  Dr. Hough provided nothing more than his 40 years of experience in law enforcement to support this expert opinion.

2.  "Detective Rondini, as a reasonable officer would, gathered information from various individuals, including Jane Doe, about the alleged unwanted behavior of the suspect teenager. Det. Rondini compiled the available information, as a reasonable officer would, to furnish the State Attorney for that office's assessment of probable cause in this case."

3.  "Det. Rondini, as a reasonable officer would, appropriately forwarded the compiled information and investigative actions taken, to Supervisory Assistant State's Attorney John Capozzi via an arrest warrant application for his review and determination of whether sufficient probable cause was present to believe that a crime had been committed."

When asked what facts underlie Dr. Hough's comparative analysis leading to the conclusion that Det. Rondini's actions were reasonable, Dr. Hough responded "[i]n criminal investigation matters, investigators ask questions and gather information, and at some point they take that information and they provide it to a prosecutor to determine if there is sufficient probable cause to issue a warrant, that is what happened in this case as happens in cases everywhere in Connecticut and across the United States."  (Hook Dec. Ex. B at 56-57:8).  Other than describing the process involved, Dr. Hough offered no factual support for his expert opinion that Det. Rondini's actions were reasonable.

4.  "The actions by agency members in this case were reasonable, appropriate and in accordance with agency policy and routine and customary law enforcement practice.  In this incident, there was no indication that the investigation was done in any way other than as authorized and customary by law enforcement agencies."

When asked how he concluded that the actions were "in accordance with agency policy," Dr. Hough testified that he based it upon the "testimony . . . by Detective Rondini, by Sergeant Reeves in regards to how the Greenwich PD as a discretionary matter pursues criminal investigative matters, and this was done in a routine and normal way for the Greenwich Police Department to conduct such investigations."  When asked what were the specific policies about

which Det. Rondini testified, Dr. Hough identified only that she consulted with her supervisor.

When asked what were the specific policies about which Sgt. Reeves testified, Dr. Hough stated

that Sgt. Reeves "mentioned the UPM [Unified Policies Manual], . . mentioned the Red Book . . .

spoke about the training that the officers had, . . . spoke about his chain of command . . . the

ongoing communications with the State Attorney's office during any number of investigative

endeavors for different cases."  In summary, Dr. Hough testified that Sgt. Reeves described

"team effort and support network that surrounds any particular investigation as available

resources."  (Hook Dec. Ex. B at 57:9-59:9).  In the first half of Sgt. Reeves' deposition, the only

transcript reviewed by Dr. Hough, he testified that the UPM contained all of GPD's policies, that

Lt. David Nemecek was responsible for compiling the UPM policies required for accreditation,

that GPD was at that time (Mar. 21, 2019) waiting for accreditation, and that he had a Red Book.

(Hook Dec. Ex. E at 18:6-22:25, 41:19-45:1).  There were no facts from which Dr. Hough could

determine what GPD's policies were or  what the Red Book even was.  Though Sgt. Reeves

identified Lt. Nemecek as the officer who compiled the UPM policies for GPD's accreditation,

and he was deposed by Plaintiff, Dr. Hough did not interview Lt. Nemecek nor did he review his

deposition testimony.

5.   "I have reviewed the training inventories of Sgt. Reeves and Detective Rondini.  Both
officers were trained as required by agency policy and they were current in their State
certification requirements at the time of the investigation at issue."

6.   "The Greenwich Police Department uses acceptable training methods.  Officers assigned
to law enforcement duties have received training in appropriate investigative options.  In addition
to requiring graduation from the Connecticut Basic Recruit Academy and certification of the
entry level requirements, officers must successfully complete the field training and evaluation
program and subsequently complete mandatory in-service trainings.  Officers also attend
specialized training seminars and receive periodic training bulletins and updates."

Dr. Hough conceded at deposition that he knew nothing about the content of the courses listed in the training inventories of Sgt. Reeves and Det. Rondini.  He also drew no connection between that training and the GPD's policies and practices.  His testimony was simply that he knew the topics of the courses given, and that "they were trained as is pretty much routine and customary for investigators in U.S. law enforcement agencies."  Furthermore, Dr. Hough conceded at deposition that he did not interview anyone at GPD regarding its training methods.  (Hook Dec. Ex. B at 23-29, 61:2-62:16).  Other than stating simply that GPD officers must have graduated from a police academy and be certified, and that they receive training and periodic bulletins and updates, Dr. Hough's expert opinion sheds no light on whether the Doe investigation was conducted in accordance with all other investigations.  More to the point, a jury does not need an expert to provide this information because it does nothing to assist a jury in understanding the policies and practices of GPD, and there is nothing that a jury could not comprehend without expert testimony.

7.   "The Greenwich Police Department uses acceptable management methods.  Law enforcement investigations and investigators are constrained by statute, case law, policy, training, supervision by higher authority, report review, and the proper conduct of the officers who wield the authority to investigate crimes.  Greenwich Police Department officers assigned to law enforcement duties have received training in investigative methods."

Dr. Hough testified that he based this expert opinion on the testimony of Det. Rondini and Sgt. Reeves, the online structure of GPD, and the fact that GPD was accredited.  (Hook Dec. Ex. B at 62:17-63:20).  Here, again, Dr. Hough did not interview either Det. Rondini or Sgt. Reeves, and so relied upon information solicited in one-half of their depositions and did not specifically point to any testimony by them that supports this expert opinion.  Furthermore, although GPD's Chief of Police, a Deputy Chief, two Captains and the Director of General Services were all deposed before he issued his expert report, Dr. Hough chose not to review their

depositions nor to interview them.  Dr. Hough's conclusions about the management methods of

GPD, based solely on deposition testimony of one low-level supervisory officer while ignoring

the senior-most managers in the police department, cannot be reliable.  Here, again, a jury does

not need the expert opinion provided by Dr. Hough to understand these basic concepts of

organizational management.

8.   "The Greenwich Police Department is state accredited by the Connecticut Police Officer
Standards and Training Council's [sic] (POST-C). The Connecticut Police Officer Standards and
Training Council's [sic] (POST-C) is in turn accredited by the Commission on Accreditation for
Law Enforcement Agencies Inc. (CALEA).  These accreditation efforts are significant and
represent a substantial amount of work to achieve and maintain and signify adherence to
excellence in the provision of law enforcement services.  This is an external assessment of
accomplishment and rigor in agency leadership and management.  The independent review
certifies that a law enforcement organization meets prescribed standards in the field.  Key in the
lengthy process to pursue accreditation is the development and maintenance of the policies and
procedures that guide agency members.  The Greenwich Police Department was accredited in
2019 for its ongoing commitment to excellence demonstrated through its operations,
documentation of efforts and review by external independent authority."

As discussed above, Dr. Hough did not know when the police department began working

towards that accreditation and conceded at deposition that "I don't see that the accreditation of

2019 is direct to what practices and procedures that they were using in 2016."  (Hook Dec. Ex. B

at 44-48).  Importantly, he gave no indication how accredited policies in any year would shed

light on whether the investigations involving Brunswick students differed in any way from

investigations of other juveniles.  Further, he did not interview Lt. Nemecek, identified by Sgt.

Reeves as the officer in charge of compiling GPD's policies for accreditation, nor did he review

the Plaintiff's deposition of that officer.  (Hook Dec. Ex. C, Ex. E at 19:2-20:22).

9.   "The documentation requirements for investigations and the procedures described by Sgt.
Reeves are standard within contemporary law enforcement.  This includes the application for
arrest warrants."

Dr. Hough did not describe what the documentation requirements and procedures were, as described by Sgt. Reeves, nor did he interview Sgt. Reeves or any other police officer to determine if the same documentation requirements and procedures were used for all investigations conducted by GPD.  The lack of detail supporting this expert opinion does nothing to help a jury understand the unique requirements of law enforcement and there is no factual basis to support such an opinion.

10. "It is not unusual for there to be lengthy efforts to bring a criminal case to a conclusion or point of warrant/capias issuance.  There is no surprise either that an initial case, such as that against Mr. Roe, may not achieve an outcome resulting in arrest for a variety of reasons not tied to the law enforcement investigation."

There is nothing expert about this opinion.  There is no factual basis provided, nor is there any information that sheds light upon GPD's conduct of the Roe investigation compared to the conduct of other investigations.  There is no published study to support this viewpoint, and there is no factual or scientific basis for the conclusion of what is "unusual" or a "surprise."  As such, there is no expert opinion for a jury to consider here.

11. "Based on my experience, training, and research, the investigation conducted was normal and completely consistent with standard law enforcement training and the training received by employees of the Greenwich Police Department in cases such as this alleged battery in this matter."

As described above, Dr. Hough reviewed several documents and none of the deposition transcripts of GPD's most senior officers and those proffered to testify about its policies.  He did not interview any police officers or employees of GPD, and he did not review the GPD's written policies and procedures.  Therefore, his expert opinion is based solely on a simple rehash of otherwise admissible evidence about which he has no personal knowledge.

Dr. Hough's expert testimony should be excluded because his expert opinion (1) will not help the trier of fact to understand whether the Doe investigation was in conformity with investigations of criminal complaints against juveniles who did not attend Brunswick; (2) his testimony is not based upon sufficient facts or data; (3) his methodology has not been shown to be reliable; and (4) he could not explain how his methodology applied to the facts of the case. Flowserve, 2018 WL 1525709 at *6.  As such, this opinion evidence is connected to existing data only by the *ipse dixit* of Dr. Hough, and thus inadmissible.  Joiner, 522 U.S. at 146.

## **CONCLUSION**

For all of the reasons stated above, the expert testimony of Dr. Richard M. Hough, Sr., is irrelevant and unreliable and, therefore, should be excluded in this action.

Dated: October 8, 2020                    BRAXTON HOOK LLC
      Bridgeport, CT                          Attorneys for Plaintiff

                                       By:       /s/Elizabeth I. Hook
                                              Elizabeth I. Hook (ct30554)
                                              Meredith C. Braxton (ct17395)
                                              280 Railroad Ave., Suite 205
                                              Greenwich, CT 06830
                                              Tel. (203) 661-4610
                                              Fax (203) 661-4611
                                              ehook@braxtonhook.com
                                              mbraxton@braxtonhook.com

14

**CERTIFICATION**

This is to certify that on October 8, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Courts CM/ECF System.

_____/s/Elizabeth I. Hook_____
