UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULA SCANLAN | ) |
|       Plaintiff, | ) Case No. 3:18-cv-01322-KAD |
| v. | ) |
| TOWN OF GREENWICH, et al | ) |
|       Defendants. | ) MARCH 4, 2021 |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO REMOVE DEFENDANTS' CONFIDENTIALITY DESIGNATIONS**

Since this case began, it has proceeded under the protection of this Court's Standing Protective Order. See Dkt. # 4. (Hereafter referenced as "Standing Protective Order"). Plaintiff also sought to appear by pseudonym. Over the course of the litigation, the Court entered a separate order protecting the identities of Plaintiff and her alleged assailant Peter Roe. See Dkt. # 9, Dkt. # 65, Dkt. # 76, Dkt. # 104, Dkt. # 106 at 17:1-9.[1] In addition to the terms of the Standing Protective Order itself, Plaintiff's counsel has given verbal assurances to third-party witnesses, defense counsel, and the Court that testimony would remain confidential; would be protected by, in Counsel's own words, "a standing protective order that is very solid and very tight." See Ex. A, Extracts of Deposition of Christy Girard at p. 42:13-23.[2] Now, Plaintiff

---

[1] Peter Roe was granted the right to a pseudonym and a limited, but specific protective order regarding his deposition testimony that went beyond the Court's Standing Protective Order.

[2] Plaintiff's counsel went on to state as follows at the Girard Depo: "This information is not going to be made public. We are happy to make it as restricted as possible." Christy Girard Depo. at p. 42:17-19. "[W]e're not suggesting-- nothing in this case is going to be floating around on the internet. Everything is protected by a standing protective order." Christy Girard Depo. at p. 44:14-17. The Court gave the deposition the highest form of protection under the standing protective order. Christy Girard Depo. at p. 45:18-25. Relevant extracts of the deposition of Christy Girard, are attached as Ex. A.

wishes to remove the protections that her counsel represented would be so "solid" and "tight" when she wanted to obtain testimony and other evidence; when it was to her advantage to do so, because Plaintiff now believes that it would be in her best interest to backtrack, ignore her counsel's assurances, and ask the Court to override the confidentiality protections afforded by the Standing Protective Order.  She asks the Court to remove the confidentiality designations that currently protect the written transcripts, video recordings, and exhibits attached to the depositions of Defendants, Det. Rondini and Det. Sgt. Reeves, as well as non-party witness Det. Christy Girard.  Plaintiff has offered to continue to refer to Peter Roe by the appropriate pseudonym and "do their best" to redact the names of minor sexual assault victims from any of this evidence.[3]

The Defendants object: (1) to the blanket redesignation of the Scanlan family's deposition exhibits, insofar as those exhibits consist of documents produced by Defendants (see FN. 3); (2) the redesignation of the Defendants Rondini and Reeves depositions transcripts and/or associated exhibits; (3) the redesignation of the Christy Girard deposition transcript and exhibits; and (4) ask that the Court order Plaintiff to redact the names of not only Peter Roe and alleged sexual assault victims from any redesignated materials, but also redact the names of all persons who were minors when the events at the heart of this suit transpired or who were the parents of any such minors.

---

[3] Plaintiff has not asked that the Court reclassify her own deposition transcript or those of her father, mother or brother; however, the correspondence between counsel attached hereto states that they intend unilaterally to change those designations, whether Defendants object or not and without reference to the Court.  See emails attached as composite Exhibit B, Aff. of Robert B. Mitchell (Ex. E) and FN. 5.  The Defendants submit that unilateral action violates ¶ 20 of the Standing Protective Order.  It concerns Defendants insofar as Plaintiff might take the position that she can unilaterally change the confidentiality marking of any exhibits attached to those depositions.  Plaintiff's position in this regard remains unclear to Defendants.

I.   **FACTS**

This case stems from the Defendants' investigation into an alleged sexual assault during the summer of 2016.  The Plaintiff claims that when the Defendants failed to arrest and prosecute the alleged assailant, Peter Roe, they violated her constitutional right to equal protection.  Ms. Scanlan's litigation has created a veritable mountain of discovery with thousands of pages of documentary evidence and over 25 fact witness depositions taken.  Many, indeed, most of these discovery fruits are littered with the identities of former juvenile third-party witnesses, alleged victims of sexual assault and other information of a private and personal nature.  Since August 9, 2019, all parties have operated under the Standing Protective Order.[4]

On January 22, 2021, the Defendants' counsel received a letter from Ms. Scanlan's lawyer.  See Letter from Meredith Braxton to Robert Mitchell dated January 22, 2021, attached hereto as Ex. C.  There were at least three key points in the January 22, 2021 letter.  The Plaintiff's first request was that the Defendants Krystie Rondini and Brent Reeves, along with fact witness Christy Girard withdraw the "Confidential" designation from their deposition transcripts, videos, and deposition exhibits.  See id.  Second, Defendants believe that the statement, "[w]e do not believe that there is any reason that the actions of sworn law enforcement officer in a matter that concerns their public duties should be confidential, and we therefore look forward to your prompt withdrawal of the designation," makes apparent the

---

[4] As this Court is aware, this was not the only case brought by Plaintiff and her family with respect to the alleged events that transpired in the Summer of 2016.  Plaintiff also brought a State Court lawsuit against Brunswick School.  See Jane Doe et. al v. Brunswick School, Inc., No. FBT-CV18-5037815-S, Judicial District of Fairfield at Bridgeport.  Depositions in the Brunswick school case and this matter were cross-noticed and used by all parties in both cases.  The Brunswick case had its own separate and distinct protective order governing the disclosure of deposition transcripts and documents in that matter.  The Brunswick matter has since settled, and presumedly the settlement agreement contains confidentiality provisions (of which Defendants' counsel has no knowledge).  Defendants raise this issue to the extent that the confidentiality designation in the Brunswick matter may be impacted by the disclosure of the deposition transcripts as well as exhibits--some of which were produced by Brunswick as part of their case.

Plaintiff's intention to release the information for public review if the confidentiality designations are lifted by the Court. Id. Third, the letter stated that she was unilaterally removing the confidentiality designation for her deposition transcripts and videos. Id. Defendants suggested that Scanlan's removal of the designation from her own transcript (and later form her parents' and brothers' depositions) required her to obtain a modification of the Standing Protective Order. See Composite Ex. B at Feb. 1, 2021 11:27 and 11:42 emails and Feb, 2, 2021 10:55 AM email. She maintains that she does not need to approach the Court on that point [5] See Ex. B at Feb. 1, 2021 12:14 PM email and Feb. 8, 2021 4:15 PM email.

## II.  ARGUMENT

### A.  Applicable Law

Litigants enter into blanket protective orders to allow them to designate documents containing sensitive information as "Confidential" without having to ask the Court to review each item. See N.T. by & through Nelson v. Children's Hosp. Med. Ctr., No. 1:13CV230, 2017 WL 3314660, at *5 (S.D. Ohio Aug. 3, 2017). Such orders are routine and essential to modern

---

[5] The Defendants' counsel responded to the January 22, 2021 Braxton letter on January 26, 2020. See Letter from Robert Mitchell to Meredith Braxton dated January 26, 2021, attached hereto as Ex. D. Attorney Mitchell said that he needed to talk to his clients to obtain their position before answering. However, he believed the Plaintiff should contact the other fact witnesses in this case because they may not want to risk being publicly identified. Id.

Then on February 1, 2021, Scanlan's counsel again contacted Attorney Mitchell. See Ex. B at Feb. 1, 2021 11:27 AM email. That email informed the Defendants that the Plaintiff and her entire family were unilaterally removing the confidentiality designation from their deposition transcripts and videos. Id. at Feb. 1, 2021 11:27 AM email. The Defendants responded by objecting to the Scanlan family redesignating their deposition transcripts. Id. at Feb. 1, 2021 11:42 AM email. Plaintiff's Counsel responded that her "clients will comply with the Court's order to preserve the pseudonym for Peter Roe and *will voluntarily do their best* to protect the identities of sexual assault victims." Id. at Feb. 1, 2021 12:14 PM email (emphasis added). Braxton stated that "assistance from the court . . . is not required under the applicable provisions of the Standing Protective Order." Id. The debate continued through another email exchange, but Plaintiff's position did not change. See id. at Feb. 2, 2021 10:55 AM email and Feb. 8, 2021 4:15 PM email.

On February 10, 2021, Attorney Hook called Attorney Mitchell. During the phone call, Attorney Mitchell reiterated his objections to the Plaintiff's request to redesignate Reeve, Rondini, and Girard's depositions. Attorney Hook stated that she disagreed with the Defendants' objections. See Affidavit of Robert Mitchell, attached hereto as Ex. E.

litigation. Id. Protective orders provide "parties with the freedom to exchange documents without fear of disclosure, meaningfully confer on documents which they have both reviewed, and bring to the Court only the particular and clear matters pertaining to confidentiality on which they cannot agree." Sharpe v. Cty. of Nassau, No. 15-6446 (ADS) (AYS), 2016 WL 7350690, at *5 (E.D.N.Y. Dec. 19, 2016). The Second Circuit has endorsed this view and is often hesitant to modify protective orders if "such modifications unfairly disturb . . . legitimate expectations." S.E.C. v. TheStreet.Com, 273 F.3d 222, 230 (2d Cir. 2001); Martindale v. International Telephone & Telegraph Corp., 594 F.2d 291 (2d Cir. 1979).

"Whether to lift or modify a protective order is a decision committed to the sound discretion of the trial court." In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987), cert. denied, sub nom, Dow Chem. Co. v. Ryan, 484 U.S. 953 (1987), overruled on other grounds. The Second Circuit has expressly acknowledged that there is "a strong presumption against the modification of a protective order." In re Teligent, Inc., 640 F.3d 53, 59 (2d Cir. 2011). In general, when a party or deponent has relied on a protective order, courts are hesitant to modify that order without the movant demonstrating why the order should not have been granted or some other extraordinary or compelling reason. Id. This has also been the position of the District of Connecticut. In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009) ("[T]he Second Circuit has been hesitant to permit modification that might 'unfairly disturb the legitimate expectations of the parties or deponents.'"). It has been held to be "presumptively unfair" to for courts to modify protective orders which assure confidentiality and on which the parties have reasonably relied. S.E.C. v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001) (internal citations omitted).

Courts within the Second Circuit use the following factors to determine if an individual has reasonably relied on a protective order: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) *the nature of reliance on the order*." Tradewinds Airlines, Inc. v. Soros, No. 08 CIV. 5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) (emphasis added) (citing In re Sept. 11 Litig., 262 F.R.D. 274, 277 (S.D.N.Y. 2009) (quoting In re EPDM Antitrust Litig., 255 F.R.D 308, 318 (D. Conn. 2009)).  A court may also consider the type of discovery materials the litigant seeks and the party's purpose in seeking a modification when deciding whether to modify a protective order. EPDM Antitrust Litig., 255 F.R.D. at 318.

In judging whether to modify a protective order, it is important to recall that the public has no inherent right to know about the information contained in discovery documents that have not been filed with the Court.  They are not considered "judicial documents." Dorsett v. County of Nassau, 289 F.R.D. 54, 60 (E.D.N.Y 2012).  Indeed, if a litigant's purpose in seeking modification is to allow public access to discovery materials that request is, "arguably subject to a more stringent presumption against modification because there is no public right of access to discovery materials." In re EPDM Antitrust Litig., 255 F.R.D. at 324.[6]  "[A] blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition." Id. at 319.  However, in this case, the reliance was evident *and was reinforced by Plaintiff's counsel's own comments to witnesses and to the Court*.

---

[6] In the present case Defendants suggest that the public's legitimate informational interest in police operations is met by the rights afforded under the Connecticut Freedom of Information Act. Conn. Gen. Stat. §1-200 to 1-242 (2021).

**B.     Witnesses and Individuals Have Relied on Attorneys Hook and Braxton's Assertions That the Information Was Confidential.**

Throughout the litigation, it has been made clear on the record by Ms. Scanlan's counsel (and all counsel) that the various depositions would remain confidential. See e.g., Kristie Rondini depo. 62:13-22; Witness 1 depo. 5:14-20; Witness 2 depo. 5:22-25; Greenwich Academy Student 1 depo. 6:2-7:7; Brunswick Student 1 depo. 7:22-8:15, extracts attached hereto as Ex. F. The Plaintiff's attorneys have even discussed the Protective Order's applicability with the Court, and Attorney Hook stated to the Court in support of her arguments to make certain deposition inquiries that the Protective Order was "very solid and very tight." Ex. A, Christy Girard depo. at p. 42:13-23. Attorney Braxton also has confirmed to at least one witness that "[the parties] can designate [deposition transcripts and exhibits] confidential . . . [a]nd they can't be disseminated at all [for purposes other than defending or prosecuting the litigation]." Ex. F, Greenwich Academy Student 1 depo. 6:2-8.

The party and third-party deponents testified and provided documentary evidence with the understanding that confidentiality would remain in place. There was no reason to suspect that the Plaintiff's counsel would go back on their word whenever they decided it would be expedient to do so.[7] Non-party witness Christy Girard's deposition contained very private and

---

[7] One of the fundamental points about the current documents' designations as "Confidential" is that it led witnesses to discuss topics that they would have been hesitant to without confidentiality assurances. For instance, during Christy Girard's deposition, Attorney Hook argued for the examination into Ms. Girard's private affairs because of the Protective Order. Ms. Hook told the Court:

> "You Honor, we have a standing protective order that is very solid and very tight. And we have . . . [the Plaintiff] and Peter Roe subject to the same protective order. This information is not going to be made public. We are happy to make it as restrictive as possible."

See Ex. A, Depo. of Christy Girard, p. 42:13-23 (emphasis added). Now, and despite counsel's assurances to the Court and Ms. Girard, the Plaintiff seeks to redesignate her deposition transcript and exhibits. Several topics were discussed, including information about Officer Girard's children and alleged sexual assault victims, which could now be inadvertently made available for public consumption.

Then, in one of the juvenile witness' depositions, the lawyers from both parties informed the witness that his statements were confidential. See Ex. F, Deposition of Brunswick Witness 1, at p. 7:22-8:15. Many of the points

confidential information. There were discussions about her children and the particulars of sexual assault investigations that did not involve the Plaintiff and that would not normally be available to the Plaintiff. Officer Girard gave this information upon hearing strong assurances by Plaintiff's counsel that its confidentiality would be protected. See FN. 2.

Even in Reeves and Rondini's depositions, statements were made that addressed theirs and the GPD's procedures on analyzing, reviewing, and investigating criminal complaints. Such information is often protected because "[d]isclosure of police procedure guides to the general public could compromise the effectiveness of law enforcement by revealing police tactics to sinister elements." King v. Conde, 121 F.R.D. 180, 192 (E.D.N.Y. 1988). And, again, there was no question about the protection of that information from public disclosure.

Plaintiff's counsel argues, "that it would not have been reasonable for the Defendants and witness to rely on confidentiality under the SPO before responding to discovery requests and testifying at deposition." See Dkt. # 332-1 at p. 4. That position boils down to a simple claim that the Standing Protective Order, coupled in this case with Plaintiff Counsel's repeated assurances, is a flim-flam; designed to trick parties and other witnesses into freely revealing private information under a meaningless assurance of confidentiality. This position should be flatly rejected by the Court. There are serious privacy issues at stake that cannot so lightly be dismissed, especially in a case like this one that concerns the interests of minors and alleged sexual assault victims and accused assailants.

---

discussed in that deposition included allusions to risky behavior he may not have made absent confidence that his deposition was confidential. Based on both parties' assurances, it has been assumed the Protective Order would remain in place, and there has been no attempt by either party to make further arrangements to add additional protective layers to information obtained through discovery. For instance, even in Ms. Scanlan's depositions and the attached exhibits, Brunswick Witness 1 and other juvenile witnesses are mentioned by name.

In this case, the background facts, an alleged sexual assault by a teenager during an adolescent's pool party, are private, sensitive, embarrassing, and potentially life ruining. When one adds the representations of confidentiality that the Plaintiff's counsel made to various witnesses to elicit their deposition testimony, it is clear that these witnesses relied on the Protective Order in good faith.

### 1. All the depositions include the names and identities of individuals who were minors in 2016.

Most of the witnesses or individuals named in the documents the Plaintiff is seeking to redesignate were minors at times relevant to this lawsuit. Most people discussed in the depositions have moved on with their lives. They are well into their college careers, and it is wrong for the Plaintiff to risk dragging them into the limelight now. The parties and other deponents did not make any other provisions to protect the identities of the people mentioned beyond marking the depositions and attached exhibits as "Confidential" because of the Standing Protective Order and Plaintiff's counsel's statements and assurances.

### 2. Peter Roe's privacy concerns

One of the elephants in the room when considering redesignating these documents is Peter Roe. While Ms. Scanlan's counsel promises to "comply with the Court's order to preserve the pseudonym for Peter Roe," counsel's track record in this regard is spotty. See Dkt. #138, #139; and Transcript of proceedings held on Dec. 19, 2019 at p. 18 (transcript sealed). Time and time again, whether through mistakes, misunderstandings, or just being overwhelmed, the Plaintiff's attorneys have revealed Peter Roe's true identity. Only through scrambling and being pushed along by the Court's after-the-fact chiding has the Plaintiff corrected these errors. Opposing counsel's failures have occurred despite the Standing Protective Order and the separate order granting Peter Roe the right to use a pseudonym in this proceeding. Peter Roe's right to

9

privacy is important at this point in his life.  Peter Roe was never convicted or even charged with any criminal activity deriving from the events five years ago at the Scanlan's pool party.  Instead, he has gone to college and is now well on his life's course.  Plaintiff should not be allowed to jeopardize Roe.

### 3. Other Alleged Sexual Assault Victims

In the February 1, 2021 email from Ms. Braxton, the Plaintiff's counsel stated that the Scanlans "[would] voluntarily do their best to protect the identities of [alleged] sexual assault victims." Ex. B at Feb. 8, 2021 4:15 PM email.  Simply offering to do their best to protect those identities is not enough, especially in light of the Plaintiff's past record of such protection efforts.  Connecticut has determined that sexual assault and rape victims' privacy must be protected as a public policy matter, not as an item of litigant courtesy.  See Conn. Gen. Stat. § 54-86e.

Furthermore, Plaintiff's counsel says nothing about protecting the names and so the reputations of the other then-minors who were, or became, actors in the Plaintiffs June 2016 pool party or in her lawsuit.  These names and any other identifying information, including the names of parents (by which the minors' identities might be discerned), also should be redacted from any redesignated materials.  The Federal Civil Rules speak to this issue.  See Fed. Rule Civ. Pro. 5.2(a)

### 4. Christy Girard has privacy concerns

One of the depositions the Plaintiff has asked to have redesignated is Officer Christy Girard's. See Ex. C.  Officer Girard is an innocent non-party whom the Plaintiff has lassoed into this litigation in an attempt to bolster her flagging collusion argument.  The facts around Officer Girard's deposition are susceptible to privacy concerns.  Officer Girard is currently, and during the entirety of the GPD's investigation into Ms. Scanlan's sexual assault allegations, working in

the cold-case murder unit and had nothing to do with the Paula Scanlan sexual assault investigation. See Ex. A, Christy Girard Depo. at p. 23:4-6. Many of the individuals she investigates are dangerous criminals who might have little qualm about threatening Officer Girard's family to further their own interests. Because of this possible threat, Officer Girard was hesitant about answering questions about her family that the Plaintiff's counsel thought would lead to discovering information supporting one of their pet theories. It was only due to the Standing Protective Order's protection that she answered questions about her child's schooling. Ex. A, Girard depo. at 68:19-69:23 (The Court denied the Plaintiff counsel's request to question about the financial aspects of the children's school attendance).

At Officer Girard's deposition, the Plaintiff's counsel made it clear to both this Court and Officer Girard that the Protective Order would also protect the details of alleged sexual assault investigations Girard had participated in, another very delicate issue involving the privacy interests of non-party alleged sexual assault victims and their alleged assailants. Officer Girard's counsel did not press the matter of security and privacy that arose during her deposition because of Ms. Hook's commitment to ensuring the deposition's confidentiality.[8]

### III.   CONCLUSION

For the reasons stated above, the Defendants ask the Court to: (1) confirm the "Confidential" designation of Defendants Brent Reeves and Krystie Rondini and non-party Officer Christy Girard's depositions and attached exhibits; and (2) instruct the Plaintiff to redact all personally identifiable information respecting any person who was either a minor at the time of the events brought into this case or an alleged sexual assault victim or unindicted alleged

---

[8] For instance, Officer Girard was asked about and then discussed specific sexual assault allegations by non-parties. Ex. A, Girard Depo. at 62:11-23. Before answering, Officer Girard expressed surprise that the Plaintiff's counsel had specific information about a previous alleged sexual assault. Id. However, because of promises made by Ms. Hook, Officer Girard answered the questions.

assailant in any documents that might be redesignated as not confidential, including hers and her parents deposition transcripts.

Done at Stratford, Connecticut, this 4th day of March, 2021.

                              THE DEFENDANTS

By:   /s/Robert B. Mitchell
       Robert B. Mitchell (ct02662)
       Jessica A. Slippen (ct52765)
       Reese Mitchell (ct30226)

       Mitchell & Sheahan, P.C.
       999 Oronoque Lane, Suite 203
       Stratford, CT 06614
       Tel.: (203) 873-0240
       Fax: (203) 873-0235
       rbmitchell@mitchellandsheahan.com

## **CERTIFICATION**

I hereby certify that on this date a copy of the foregoing was filed electronically sand served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing.

*/s/Robert B. Mitchell*
Robert B. Mitchell (ct02662)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
Tel. (203) 873-0240
rbmitchell@mitchellandsheahan.com