## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
PAULA SCANLAN                 :    Civ. No. 3:18CV01322(KAD)
                              :
v.                            :
                              :
TOWN OF GREENWICH, et al.     :    April 12, 2021
                              :
------------------------------x
```

## RULING ON PLAINTIFF'S MOTION TO REMOVE DEFENDANTS' CONFIDENTIALITY DESIGNATIONS AS TO CERTAIN DOCUMENTS [DOC. #332]

This matter has been referred to the undersigned for a ruling on plaintiff's Motion to Remove Defendants' Confidentiality Designations as to Certain Documents [Doc. #332]. See Doc. #333. For the reasons set forth herein, plaintiff's Motion is **DENIED**. Except as to specific portions that have been publicly disclosed by defendants, the Court declines to order removal of the confidentiality designations from the written transcripts, video recordings, and exhibits from the depositions of defendants Krystie Rondini and Brent Reeves and witness Christy Girard. (These materials shall be referred to collectively as "the Protected Materials.") In light of recent events, the Court further finds that plaintiff may not unilaterally remove confidentiality designations from previously protected materials at this time.

I.   **Background**

Plaintiff, Paula Scanlan, brings this action against the Town of Greenwich and two employees of the Greenwich Police Department ("GPD"), Sergeant Detective Brent Reeves and Detective Krystie Rondini. See Doc. #1. Plaintiff alleges, inter alia, that in 2016, she was sexually assaulted by Peter Roe.[1] See Doc. #46 at 7-8. Roe was, at the time, a student at Brunswick School, the all-male brother institution to plaintiff's own all-female high school, Greenwich Academy. See Doc. #20-1 at 3 n.1. Both Scanlan and Peter Roe were minors at the time. See Docs. #46 at 5; #65 at 3.

Plaintiff brings this action pursuant to 42 U.S.C. §1983 for violation of her Fourteenth Amendment right to equal protection. Plaintiff contends that defendants conducted an insufficient investigation into her complaint against Roe, and that they improperly allowed Brunswick School to conduct an independent investigation into her allegations. See Doc. #46 at 9-13. Plaintiff further asserts that the GPD routinely colludes with Brunswick School in such investigations "to prevent negative publicity from tarnishing the reputation of Brunswick[,]" "to enable Brunswick to ... manipulate witnesses[,]" and to "shield [Brunswick] students from criminal

---

[1] Peter Roe, a potential witness in this action, has been granted leave to proceed under a pseudonym. See Doc. #76.

prosecution[.]" Id. at 2. The alleged failures in this
investigation, plaintiff contends, were due in part to this
policy and practice of collusion.

The events and allegations underlying plaintiff's claims
are of a sensitive nature, and involve many parties who are or
were minors at the time of those events. As a result, the need
for confidentiality has been of particular concern to the
parties and the Court. The Court permitted plaintiff and Peter
Roe to proceed under pseudonyms.[2] See Docs. #9, #76. Numerous
filings in this matter have been sealed, at the request of
parties, third parties, or sua sponte by the Court. See, e.g.,
Docs. #71, #135, #183, #191, #192, #253, #278, #286, #299, #310.
In addition, on the same date the Complaint was filed, the Court
entered the Standing Protective Order ("SPO"), which allows the
parties to designate material as "confidential" and limits to
whom, and for what purposes, such designated material may be
disclosed. See Doc. #4.

Pursuant to the SPO, numerous items, including the
Protected Materials, have been designated as confidential. On
January 22, 2021, counsel for plaintiff sent a written request
to defendants' counsel requesting that defendants remove the

---

[2] The Court has since granted plaintiff's motion to proceed under
her own name, Paula Scanlan. See Doc. #325.

confidentiality designations from the Protected Materials. See Doc. #332-3 at 2. In that correspondence, plaintiff's counsel also notified counsel for defendants that "Paula Scanlan is withdrawing the confidentiality designation of her deposition transcripts and videos," and asserted that plaintiff would "comply with the Court's order regarding maintaining the confidentiality of Peter Roe[]" and "redact/obscure any reference to victims of sexual assault[]" from those materials. Id. at 2. On February 1, 2021, plaintiff's counsel sent an email to defendants' counsel stating that "plaintiff and her family are withdrawing the confidentiality designations on the deposition transcripts and videotapes of the depositions of Brian Scanlan, Cynthia Chang, and Kevin Scanlan." Doc. #334-5 at 6. On February 2, 2021, defendants' counsel notified plaintiff's counsel that defendants objected to removal of the confidentiality designations from these materials. See id. at 3-5. On February 8, 2021, defendants' counsel emailed plaintiff's counsel indicating that defendants had "no intention of withdrawing any confidentiality designations without a Court instruction to do so." Doc. #332-4 at 2. Counsel met and conferred by telephone on February 10, 2021. See Doc. #332-2 at 1-2. Following that conference, plaintiff filed the present Motion.

4

Defendants filed an objection to plaintiff's motion on March 4, 2021. <u>See</u> Doc. #334. On March 16, 2021, plaintiff filed a reply. <u>See</u> Doc. #335. Attached to that reply brief were eight exhibits, none of which were filed under seal. Included amongst those exhibits were excerpts from the deposition transcripts of Girard and Reeves, discovery responses served by defendants, and a portion of a GPD policy manual produced in discovery. A cursory review of the exhibits revealed that some or all of them were subject to the SPO. Accordingly the Court entered an Order sealing the submission in its entirety and stating: "Until such time as the Court issues an order on the pending motion, **no party shall file or otherwise disclose any material marked as confidential or sealed by prior order.**" Doc. #336 (emphasis in original).

On April 1, 2021, plaintiff filed a motion to unseal the reply brief, asserting (erroneously) that all of the exhibits thereto had already been publicly docketed. <u>See</u> Doc. #337. The Court granted, in part, and denied, in part, that motion, finding, <u>inter alia</u>, "(1) the materials attached to plaintiff's reply are not identical to the materials" that had previously been filed, and "(2) some materials attached to defendants' opposition were redacted, while the same materials attached to plaintiff's reply were not." Doc. #347. The Court ordered the unredacted version of the reply to remain under seal, and

directed "plaintiff to file, on the open docket, a redacted version of the document." Id. The Court noted that "the disclosure by a producing party of an excerpt of a deposition transcript, or a redacted transcript, does not remove the protections of the SPO from the entire, unredacted transcript." Id.

On April 6, 2021, defendants filed a motion for a temporary restraining order and preliminary injunction. See Doc. #340. Defendants contend that certain of the materials subject to the SPO, and to the Court's order of March 16, 2021, have been disclosed to members of the media by plaintiff, her family, her counsel, or someone who received the information from them. See id.

## II.  **Legal Standard**

Federal Rule of Civil Procedure 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c). "It is well-settled that courts have broad power to enter protective orders under Rule 26(c) that prohibit parties from sharing discovery materials with non-litigants[.]" Dorsett v. Cty. of Nassau, 800 F. Supp. 2d 453, 457 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013). Such protective

orders can be modified. See In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 147 (2d Cir. 1987).

Whether to modify a protective order is entrusted to the discretion of the District Court. See id. Here, plaintiff protests that she does not seek a modification of the protective order. See Doc. #335 at 1. It is true that plaintiff does not seek to modify the language of the protective order itself. Rather, she seeks to remove from its protections certain specific materials. As a practical matter, this request has the effect of modifying the scope of the protective order. The Court therefore finds the case law regarding modification of a protective order persuasive.

"Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." S.E.C. v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001) (citation and quotation marks omitted). It is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." Id. at 230. Thus, courts are "hesitant ... to permit modifications of protective orders in part because such modifications unfairly disturb the legitimate expectations of litigants." Id.

The presumption against the modification of a protective order "is dependent upon a protective order's particular characteristics and whether it invites reasonable reliance on the permanence of the order." In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig., 255 F.R.D. 308, 318 (D. Conn. 2009). To determine whether a protective order "invites reasonable reliance" courts consider four non-exclusive factors: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." Id.

Moreover, "[a] litigant's purpose in seeking modification of an existing protective order is also relevant for determining whether to grant a modification." Id. at 324. Where a party seeks to modify a protective order to disseminate confidential material to the public, a "more stringent presumption against modification applies because there is no public right of access to discovery materials." Id. Therefore, "[i]n the absence of a compelling need for the public to access sealed documents, courts have generally been reluctant to disturb discovery protective orders for public dissemination." Id.

III. **Discussion**

Plaintiff's motion and defendants' response raise two distinct issues. First, plaintiff seeks to remove "the

8

confidentiality designations asserted by Defendants over the written transcripts, video recordings and exhibits from the depositions of" defendants Rondini and Reeves and witness Girard. Doc. #332-1 at 1. Defendants object to the redesignation of these Protected Materials. See Doc. #334 at 2.

Second, plaintiff's counsel has indicated that plaintiff intends to withdraw the confidentiality designations from her own deposition transcript and video, as well as those of her immediate family members. See Doc. #332-3 at 2, #334-5 at 6. Plaintiff's counsel has asserted that plaintiff "will comply with the Court's order to preserve the pseudonym for Peter Roe and will voluntarily do [her] best to protect the identities of sexual assault victims." Doc. #334-5 at 4. Defendants object "to the blanket redesignation of the Scanlan family's deposition exhibits, insofar as those exhibits consist of documents produced by Defendants[.]" Doc. #334 at 2. Defendants also request that the Court require plaintiff to redact the names of (1) Peter Roe, (2) any alleged sexual assault victims, and (3) all persons who were minors when the events at issue transpired, or who were the parents of any such minors, from any redesignated material. See id.

A.    The Protective Order

The SPO states, in relevant part, that documents and other materials may be designated "CONFIDENTIAL" by the producing party. See id. at 1.

> "CONFIDENTIAL" information means information, documents, or things that have not been made public by the disclosing party and that the disclosing party reasonably and in good faith believes contains or comprises (a) trade secrets, (b) proprietary business information, or (c) information implicating an individual's legitimate expectation of privacy.

Id. Designated Material can only be disclosed to (a) parties, (b) witnesses or prospective witnesses, (c) outside experts, (d) counsel, and (e) "copying services, translators, and litigation support firms[,]" and only for discrete, limited purposes. Id. at 2-3.

The SPO permits the modification or withdrawal of a confidentiality designation:

> A party may submit a request in writing to the party who produced Designated Material that the designation be modified or withdrawn. If the Designating Person does not agree to the redesignation within fifteen business days, the objecting party may apply to the Court for relief. Upon any such application, the burden shall be on the Designating Person to show why the designation is proper. Before serving a written challenge, the objecting party must attempt in good faith to meet and confer with the Designating Person in an effort to resolve the matter.

Id. at 3. The SPO further provides:

> Any Designated Material which becomes part of an official judicial proceeding or which is filed with the Court is public. Such Designated Material will be sealed

> by the Court only upon motion and in accordance with
> applicable law, including Rule 5(e) of the Local Rules
> of this Court.

Id. at 4. The SPO states that "[f]iling pleadings or other
papers disclosing or containing Designated Material does not
waive the designated status of the material." Id.

**B.    Plaintiff's Motion to Remove the Confidentiality
        Designation from the Protected Materials**

Plaintiff first argues that the Protected Materials were
attached as exhibits to the parties' motions for summary
judgment, so that they "are judicial documents that carry a
strong presumption of access[.]" Doc. #335 at 3. Specifically,
plaintiff asserts that "[a]ll of the [deposition] transcripts
and all but six of the exhibits to the transcripts[]" are
judicial documents. Id. at 2. "In order to overcome the strong
presumption of access," plaintiff asserts, defendants "must
first demonstrate good cause for the Court to issue a protective
order." Id. at 3 (citation and quotation marks omitted).
Plaintiff contends that defendants have failed to do so:
"Defendants have pointed to no specific and particular facts
justifying the continuing designation of confidentiality, nor
are they seeking a document-by document review." Id. at 4.

As an initial matter, plaintiff's assertion that "[a]ll of
the [deposition] transcripts" are judicial documents because
they have been submitted by the parties as exhibits to their

summary judgment motions is misleading. Doc. #335 at 2. The deposition transcripts of Reeves, Rondini, and Girard have never been filed, in their entirety, on the docket. Rather, discrete portions of these deposition transcripts have been filed. See, e.g., Doc. #288-5 (exhibit to defendants' motion for summary judgment containing pages 1, 26, 70, 95-98, 188, 193, 199, 202, 203, 215, 216 of Girard's 6/15/2020 deposition transcript); Doc. #288-7 (exhibit to defendants' motion for summary judgment, containing pages 1, 5-7, 30, 32, 73, 132, 133, 135, 142, 148 of Rondini's 3/19/2019 deposition transcript); Doc. #288-9 (exhibit to defendants' motion for summary judgment, containing pages 1, 45, 46, 50, 57, 58, 164-78, 196 of Reeves' 3/21/2019 deposition transcript). Similarly, and as plaintiff acknowledges, some, but not all, of the exhibits to these depositions have been filed on the docket.[3] As the Court has noted, "the disclosure by a producing party of an excerpt of a deposition transcript ... does not remove the protections of the [SPO] from the entire, unredacted transcript." Doc. #347.

---

[3] Plaintiff asserts that "all but six of the exhibits to the transcripts[]" have been filed as exhibits to the motions for summary judgment. Doc. #335 at 2. Of the remaining six exhibits, plaintiff asserts that one "was produced by Plaintiff, and she is withdrawing the confidentiality designation on that document." Id. Plaintiff makes no argument as to why the other five exhibits would qualify as judicial documents, so the Court presumes the argument does not apply to those exhibits.

Moreover, plaintiff's argument conflates two separate issues: (1) protection under the SPO from public dissemination, and (2) sealing of documents filed on the public docket. As to any document a party seeks to file on the public docket, the Court makes (and has made) an independent, fact-specific determination regarding whether the document should be sealed in the docketing system. Many documents filed in this matter have been sealed in their entirety, while others are sealed in part, by the use of redactions.

Indeed, nearly every portion of the Protected Materials that has been filed on the docket has been sealed by the Court, either in its entirety or in part, through the use of redactions. Any <u>unredacted</u> portions of the deposition transcripts of Reeves, Rondini, and Girard that have been filed on the docket have been sealed in their entirety.[4] The portions of the deposition transcripts that are not sealed in their

---

[4] <u>See</u> Docs. #188-1 at 14-20, #283-9, #284-11 at 1-12, #285-7 at 1-12, #304-9, #307-20, #313-3, #319-2, #324-1, #335-3 (sealed, unredacted portions of Reeves' 3/21/2019 deposition transcript); Docs. #284-11 at 13-21, #285-7, #307-33, #313-5 (sealed, unredacted portions of Reeves' 7/9/2020 deposition transcript); Docs. #128-8, #283-7, #284-12, #285-8, #304-7 at 1-12, #307-9, #324-2 at 1-5 (sealed, unredacted portions of Rondini's 3/19/2019 deposition transcript); Docs. #283-8, #304-7 at 13-15, #307-32, #324-2 at 6-8 (sealed, unredacted portions of Rondini's 6/25/2020 deposition transcript); Docs. #283-5, #307-19, #329, #335-2, #343 (sealed, unredacted version of Girard's 6/15/2020 deposition transcript).

entirety contain redactions that protect confidential
information and the identities of Peter Roe, minors, their
parents, and alleged sexual assault victims.[5] Similarly, the
unredacted versions of the exhibits to the depositions that have
been filed on the docket are sealed in their entirety.[6] Nearly
all of the exhibits that have not been sealed in their entirety
contain redactions.[7]

---

[5] See Docs. #187 at 11-17, #201 at 5-9, #223-1, #287-8 at 1-12,
#288-9, #303-10, #314-20, #318-7, #323-2 (redacted portions of
Reeves' 3/21/2019 deposition transcript); Docs. #287-8 at 13-21,
#314-33 (redacted portions of Reeves' 7/9/2020 deposition
transcript); Docs. #201 at 2-5, #223-2, #287-9, #288-7, #303-8
at 1-12, #314-9, #323-3, #334-6 at 1-5, #340-5 at 9-12 (redacted
portions of Rondini's 3/19/2019 transcript); Docs. #288-8, #303-
8 at 13-15, #314-32, #323-3 at 6-8 (redacted portions of
Rondini's 6/25/2020 transcript); Docs. #288-5, #314-19, #328-1,
#334-1, #340-5 at 27-42 (redacted portions of Girard's 6/15/2020
deposition transcript).

[6] See Docs. #283-18, #283-22 (sealed, unredacted versions of some
exhibits to Reeves' deposition); Docs. #283-18, #283-19, #283-
20, #283-22, #304-15, #307-43, #313-12 (sealed, unredacted
versions of some exhibits to Rondini's deposition); Docs. #283-
15, #283-35, #283-38, #307-14, #307-21, #307-22, #307-31, #329,
#329-1 (sealed, unredacted versions of some exhibits to Girard's
deposition).

[7] See Docs. #287-3, #288-18, #288-22, #303-12 (redacted versions
of some exhibits to Reeves' depositions); Docs. #288-18, #299-
19, #288-20, #288-22, 303-12, #303-16, #314-12, #314-43
(redacted versions of some exhibits to Rondini's depositions);
Docs. #288-15, #288-35, #288-38, #314-14, #314-21, #314-22,
#314-31, #328-1, #328-2 (redacted versions of some exhibits to
Girard's deposition).

Doc. #314-11, which is listed as an exhibit to both Rondini's
and Girard's depositions and which contains portions of the
GPD's Uniform Policy Manual, contains no redactions. Doc. #288-
41, which is listed as an exhibit to Reeves' deposition and

As demonstrated, the Protected Materials have been designated confidential under the SPO <u>and</u> have been at least partially sealed by the Court, when filed. <u>See</u> Docs. #183, #191, #278, #286, #299, #310. Thus, defendants do not have a heightened obligation to rebut any presumptive right of access to the Protected Materials by articulating good cause for them to be sealed <u>because the court has already found that such good cause exists, and has sealed the documents</u>, either in whole or in part.[8] Plaintiff has not moved to unseal them. Accordingly, plaintiff's argument that there is a presumptive right to access judicial documents is unavailing in this circumstance, where the portions of the Protected Materials that have been publicly filed have been partially sealed by the Court.

If plaintiff contends that the mere filing of a document on the public docket, by either party, removes that document from

---

which consists of an article from the Greenwich Times, contains no redactions.

[8] Judge Dooley has expressly considered the possibility that the exhibits to the motions for summary judgment are judicial documents that carry a presumptive right of access: "[T]o the extent these records are relied upon by the Court in the adjudication of a dispositive motion, the public interest in access to the Court and the Court's obligation to perform its adjudicatory functions in an open and transparent manner weigh heavily against continued sealing of these records." Doc. #278 (citation omitted). Thus, Judge Dooley has stated that she may reconsider the issue of whether the exhibits should remain under seal "<u>sua sponte</u> when rendering a decision on the motion for summary judgment." <u>Id.</u>

the protections of the SPO, the Court disagrees. While the SPO provides that "[a]ny Designated Material which becomes part of an official judicial proceeding or which is filed with the Court is public[,]" and therefore will be sealed only upon motion, see Doc. #4 at 4, the Court does not read this provision as removing all filed documents from the protections of the SPO. Indeed, the SPO clearly states: "Filing pleadings or other papers disclosing or containing Designated Material does not waive the designated status of the material." Id. However, the Court finds that designated materials that have been publicly disclosed by the producing party are no longer subject to the protections of the SPO. Therefore, and as will be set forth in greater detail later in this Order, the specific portions of the Protected Materials that defendants have publicly disclosed, i.e., that are filed on the docket and are not sealed, will no longer be designated confidential.

Plaintiff next argues that "it would not have been reasonable for the Defendants and witness to rely on confidentiality under the SPO before responding to discovery requests and testifying at deposition." Doc. #332-1 at 4. Thus, plaintiff contends, the confidentiality designations should be removed "because there are no compelling reasons to maintain such confidentiality over these Documents." Id. at 1. Defendants respond that party and nonparty witnesses did rely on the

16

confidentiality provisions in the SPO in giving testimony, in part because "Plaintiff's counsel has given verbal assurances to third-party witnesses, defense counsel, and the Court that testimony would remain confidential[.]" Doc. #334 at 1. Defendants assert that "[t]here are serious privacy issues at stake" that justify the continued designation of the Protected Materials as confidential. See id. at 8.

As set forth above, "[w]here there has been reasonable reliance by a party or deponent[]" upon a protective order, there is a strong presumption against modification of that order. TheStreet.Com, 273 F.3d at 229. Here, the key question is whether Reeves, Rondini, and Girard reasonably relied upon the SPO in providing testimony, such that it would be "presumptively unfair" for the Court to remove the confidentiality designations from their depositions at this time. Id. at 230.

The first factor to be considered in determining whether a protective order has been reasonably relied upon is the scope of the order itself. See In re Ethylene, 255 F.R.D. at 319.

> [I]t is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason. A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition.

Id.; see also Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., No. 1:05CV02745(JGK)(RLE), 2010 WL 779314, at *4 (S.D.N.Y. Mar. 2, 2010), objections overruled, 2010 WL 1459178 (S.D.N.Y. Apr. 12, 2010), aff'd, 415 F. App'x 286 (2d Cir. 2011) ("While umbrella orders, granted as an accommodation to the parties, may be useful and expeditious in large scale litigation, they can simultaneously be overbroad and abusive." (citation omitted)). In In re Ethylene, the court classified the protective order as a "blanket protective order" where it "allow[ed] all parties to designate any material ... as 'confidential[.]'" Id. at 320.

Similarly here, the SPO is a "blanket protective order" because it enables a disclosing party to designate material as confidential if the party "reasonably and in good faith believes [the material] contains or comprises ... (c) information implicating an individual's legitimate expectation of privacy." Doc. #4 at 1. Accordingly, this factor, taken in isolation, weighs against finding that the defendants and witness reasonably relied on the SPO.

The second consideration is whether the language of the protective order itself induces reasonable reliance.

> Where a protective order contains express language that
> limits the time period for enforcement, anticipates the
> potential for modification, or contains specific
> procedures for disclosing confidential materials to non-

parties, it is not reasonable for a party to rely on an
assumption that it will never be modified.

In re Ethylene, 255 F.R.D. at 320 (D. Conn. 2009). In In re
Ethylene, the court concluded that the language of the
protective order "not lend itself to reasonable reliance that it
will afford permanent secrecy[]" because, inter alia, "the
parties acknowledge[d] the possibility of future modification[]"
and the order "contemplate[d] the need for disclosure to non-
parties, setting up specific procedures for making such
disclosures[.]" Id. at 321.

Here, the SPO provides a mechanism for modifying or
withdrawing confidentiality designations. See Doc. #4 at 3. In
addition, it allows for the disclosure of confidential materials
to non-parties in specific circumstances and "only on the
condition that, prior to any such display or discussion, each
[non-party] shall be asked to sign an agreement to be bound" by
the SPO. Id. at 2. For these reasons, the express language of
the SPO itself weighs against finding that the defendants and
witness reasonably relied upon it.

Third, whether a party or witness reasonably relied upon a
protective order "is also dependent upon the circumstances
surrounding its grant, i.e., how much consideration the court
gave to the request for a protective order before granting it."
In re Ethylene, 255 F.R.D. at 321. For example, "[a] protective

order granted on the basis of a stipulation by the parties
carries less weight than a protective order granted after a
hearing to show good cause." Id. In In re Ethylene, the court
did not determine good cause before issuing the protective
order. See id. at 322. The court found that this factor weighed
in favor of modifying the protective order because "[i]n the
absence of the requisite good cause showing, it cannot be
presumed that every piece of discovery filed under the Order is
actually worthy of such a high level of protection." Id.

Here, the Court entered the SPO as a matter of course,
without a specific finding of good cause. See Doc. #4. As such,
here it similarly "cannot be presumed" based solely on the entry
of the SPO that every document designated confidential under the
SPO "is actually worthy of such a high level of protection." In
re Ethylene, 255 F.R.D. at 322. On the face of the SPO alone,
therefore, this factor weighs against finding that Rondini,
Reeves, and Girard reasonably relied on the SPO.

However, this case, after its initial filing, has developed
in such a way that renders it dramatically distinguishable from
In re Ethylene. Indeed, the Court's analysis of the three
factors discussed changes upon consideration of the entire
record. Here, the significant privacy interests at stake quickly
became apparent. As plaintiff herself asserted, "the litigation
involves a matter that is highly sensitive and of a personal

nature." Doc. #7-1 at 3. Plaintiff further argued, in seeking to proceed under a pseudonym, that "the identity of a particular victim is of little to no interest" to the questions raised by this action, and that there is "little to no public interest in disclosure" of plaintiff's identity. Id. at 5.

The Court has taken the privacy interests at stake here very seriously, and has repeatedly taken steps to ensure that sensitive and identifying information remains confidential. See, e.g., Doc. #9 (granting plaintiff's motion to proceed under a pseudonym); Doc. #76 (granting the motion for Peter Roe to proceed under a pseudonym); Doc. #278 ("The Court is very familiar with the significant privacy interests of both parties and nonparties, which, throughout this litigation, have been protected by various of the Court's orders[.]"); Doc. #286 (directing plaintiff to "re-review the exhibits and to redact all information from which the currently protected identities of Jane Doe, Peter Roe, and others who were minors in 2016 might be gleaned[]").

Thus, as to the first factor, while the scope of the SPO itself is broad, the Court has, since issuing the SPO, entered orders "specifically focused on protecting certain documents or certain deponents for a particular reason." In re Ethylene, 255 F.R.D. at 319. Indeed, and as set forth above, the Court has found clear and compelling reasons to seal portions of the

Protected Materials at issue in the instant motion. <u>See</u> Docs. #183, #191, #278, #286, #299, #310.

As to the second factor, although the SPO allows for modifying or withdrawing confidentiality designations, throughout the course of this litigation counsel and the Court have assured defendants and witnesses that certain materials — and, in particular, deposition transcripts — would remain confidential under the SPO. For example, and as will be discussed in greater detail, plaintiff's counsel assured Girard, during her deposition, that "we have a standing protective order that is very solid and very tight. ... This information is not going to be made public." Doc. #334-2 at 3. Judge Dooley similarly stated to counsel and Girard that Girard's "deposition can be given the highest form of protection under the standing protective order[,]" such that there was no "real risk here that this information gets disseminated any further[.]" <u>Id.</u> at 7. Thus, it was reasonable for the defendants and witness to presume that the depositions would remain confidential under the SPO, despite the SPO itself being subject to modification.

As to the third factor, while the Court <u>originally</u> issued the SPO "[i]n the absence of the requisite good cause showing," <u>In re Ethylene</u>, 255 F.R.D. at 322, the Court has, since that time, found good cause for protecting certain information contained in the Protected Materials. <u>See</u> Docs. #183, #191,

#278, #286, #299, #310. Thus, upon consideration of the entire
record the Court finds that the first three factors actually
weigh in favor of finding that reliance on the SPO was
reasonable.

Fourth, the Court considers the nature of the reliance on
the SPO. Where a party's or witness's "agreement to provide
materials or testimony is based solely on the maintenance and
enforceability of the protective order[]" there is a "stronger
presumption" against modifying that order. In re Ethylene, 255
F.R.D. at 323. "The classic situation in which a party 'relies'
on a protective order is where the party creates material during
the course of litigation on the understanding that it will be
kept confidential — for example, ... by giving confidential
testimony." Id. at 322-23 (citation and quotation marks
omitted).

The Court finds that this factor weighs strongly in favor
of finding that the defendants and witness reasonably relied on
the SPO. As noted, plaintiff's counsel repeatedly invoked the
SPO in eliciting deposition testimony from the defendants and
witnesses in this case, assuring them and the Court that their
answers would remain confidential. For example, during Girard's
deposition, defendants' counsel objected to a line of
questioning that related to Girard's children. See Doc. #334-2
at 3. The parties sought Judge Dooley's assistance in resolving

the dispute. See id. at 5. Plaintiff's counsel stated to the
Court and to Girard: "[W]e have a standing protective order that
is very solid and very tight. ... This information is not going
to be made public. We are happy to make it as restricted as
possible." Id. Counsel further stated: "[N]othing in this case
is going to be floating around on the internet. Everything is
protected by a standing protective order." Id. at 6. Judge
Dooley appears to have relied on counsel's representations about
the confidential nature of the deposition in directing Girard to
answer certain questions. See id. at 7. Judge Dooley ruled that
because "the deposition can be given the highest form of
protection under the standing protective order[,]" there was no
"real risk here that this information gets disseminated any
further at this juncture as a result of [Girard] answering
questions at the deposition." Id. Later in the deposition, when
counsel questioned Girard about prior sexual assault
investigations Girard had worked on, counsel again invoked the
confidentiality provisions in the SPO, stating, "this is all
going to be under confidentiality[.]" Id. at 8.

Similarly, at the outset of defendant Rondini's March 19,
2019, deposition, plaintiff's counsel asserted that "the
deposition will be marked confidential[] ... [s]ubject to the
standing protective order we have in this case." Doc. #334-6 at
2. Counsel provided similar assurances to other witnesses during

24

their depositions. See, e.g., Doc. #334-6 at 4 ("We are
designating this transcript confidential under the protective
order[.]"); id. at 6 ("Again, this transcript is being
designated confidential[.]"); id. at 8 ("We can designate [the
deposition transcripts] confidential, which we've been doing
routinely. And then it can't be disseminated at all."). Based on
these assurances, defendants argue, "[t]he party and third-party
deponents testified and provided documentary evidence with the
understanding that confidentiality would remain in place." Doc.
#334 at 7. In so doing, they reasonably relied upon the SPO. See
id. at 9.

The Court agrees. Plaintiff's counsel invoked the SPO when
seeking deposition testimony from the defendants and witness,
and their "agreement to provide materials or testimony [was]
based" at least in part on counsel's assurances about "the
maintenance and enforceability of the protective order[.]" In re
Ethylene, 255 F.R.D. at 323. Plaintiff's argument that it was
unreasonable for the defendants and witness to rely on the SPO
is unpersuasive given that her own counsel specifically assured
them they could do so. Moreover, it would be patently unfair for
the Court to allow plaintiff to, in defendants' words, use the
SPO "when it was to her advantage to do so," but undo its
confidentiality protections now that plaintiff has obtained the
testimony and other materials she sought. Doc. #334 at 2; see

also Palmieri v. State of N.Y., 779 F.2d 861, 865 (2d Cir. 1985) (finding reliance on a protective order reasonable where "the very papers and information" sought "would not even have existed but for" the protective order[]). In sum, the nature of reliance on the SPO — and, significantly, the fact that plaintiff's own counsel repeatedly assured the defendants and witness that they could rely on the SPO — weighs strongly against its modification.

An additional factor is relevant to the determination of whether to modify a protective order: "[a] litigant's purpose in seeking modification[.]" In re Ethylene, 255 F.R.D. at 324. In In re Ethylene, the court held:

> Requests to modify protective orders so that the public may access discovery materials is arguably subject to a more stringent presumption against modification because there is no public right of access to discovery materials. In the absence of a compelling need for the public to access sealed documents, courts have generally been reluctant to disturb discovery protective orders for public dissemination.

Id. (citation omitted).

Here, plaintiff has not given any reason for her request to remove the confidentiality protection from the Protected Materials. The January 22, 2021, letter from plaintiff's counsel to defendants' counsel states: "We do not believe there is any reason that the actions of sworn law enforcement officers in a matter that concerns their public duties should be

confidential[.]" Doc. #332-3 at 2. Based on this statement, defendants speculate that plaintiff intends "to release the information for public review if the confidentiality designations are lifted[.]" Doc. #334 at 3-4. The recent revelation that members of the media have apparently obtained some of the Protected Materials and other documents subject to the SPO, see Doc. #340, supports this theory. Plaintiff and her counsel have declined to offer any other reason for seeking to redesignate the material. Thus, plaintiff's request is "subject to a more stringent presumption against modification[,]" and she must demonstrate "a compelling need for the public to access" the Protected Materials. In re Ethylene, 255 F.R.D. at 324.

The Court finds that the defendants and witness reasonably relied on the SPO. As such, there is a presumption against modification, and the Court will not modify the order "absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." TheStreet.Com, 273 F.3d at 229 (citation and quotation marks omitted). To do otherwise would "unfairly disturb the legitimate expectations of [the] litigants[]" and nonparty witnesses. Id. at 230.

Plaintiff has failed to articulate any "extraordinary circumstance or compelling need[]" to justify modification of the SPO as it relates to the Protected Materials. Id. at 229. Indeed, and as noted, plaintiff has not offered any reason at

27

all <u>why</u> she seeks to remove the confidentiality designations from the Protected Materials. Rather, plaintiff states that "there are no compelling reasons to maintain such confidentiality over these Documents[,]" and contends that the burden is on defendants to show "good cause" for the Protected Materials to remain confidential. Doc. #332-1 at 1-2. But because the defendants and witness have reasonably relied on the SPO, <u>plaintiff</u> must present a "compelling need[]" to redesignate the Protected Materials. <u>TheStreet.Com</u>, 273 F.3d at 222. She has failed to do so.

Moreover, the Court is hesitant to grant plaintiff's request to modify the SPO given the history of failures to fully comply with the various confidentiality and privacy orders that have been issued in this case. For example, plaintiff disclosed Peter Roe's identity in filings both in this matter and in the related state court proceeding. <u>See</u> Doc. #138 (Peter Roe's Motion for Sanctions, describing the instances when plaintiff's counsel revealed Roe's identity). On two occasions, plaintiff filed redacted documents that did not adequately conceal Peter Roe's identity, prompting the Court to seal them in their entirety upon motion by Roe. <u>See</u> Docs. #135, #310. Judge Dooley has stated that "this litigation has been marred[]" by "some questionable strategy and tactics" by plaintiff's counsel, which have compromised the significant privacy issues at stake. Doc.

28

#106 at 75. Indeed, with her reply to defendants' response to the pending motion, **plaintiff filed the <u>unredacted</u> versions of the very materials whose confidentiality is at issue here**. <u>See</u> Doc. #335. As noted, upon review of the reply, the Court sealed those documents <u>sua</u> <u>sponte</u>. <u>See</u> Doc. #336.

Plaintiff's counsel have asserted that any improper releases of information in the past were the result of inadvertence or administrative error. That may have been true, at one point. However, as indicated, there is now substantial evidence that materials subject to the SPO have been provided to the media. Whatever the cause of these disclosures, the Court remains concerned with preserving the privacy interests of the parties and nonparties involved in this case. Plaintiff's, or her counsel's, repeated difficulties in complying with the protective orders issued by the Court weigh heavily against loosening those protections.

For the reasons set forth herein, plaintiff's Motion to Remove Defendants' Confidentiality Designations as to Certain Documents [Doc. #332] is **DENIED**. The transcripts, videos, and other exhibits from the depositions of Reeves, Rondini, and Girard will continue to be designated as confidential and subject to the protections set forth in the SPO.

The Court has reviewed the docket in great detail, to determine whether any of the Protected Materials at issue here

have been publicly disclosed by the producing party, that is,
the defendants, such as to remove them from the protection of
the SPO. As the Court has noted, "[f]iling pleadings or other
papers disclosing or containing Designated Material does not
waive the designated status of the material." Doc. #4 at 4.
However, as a practical matter, the disclosure by a <u>producing</u>
party of material on the public docket, without a request to
seal that material, constitutes a public disclosure that removes
that material from the protection of SPO.

No video recordings have been made public, and thus all
remain subject to the protections of the SPO.

As to transcripts, defendants have disclosed the following
pages of defendant Rondini's March 19, 2019, deposition
transcript: 1, 5-7, 30, 32, 62, 73, 132, 133, 135, 142, and 148.
<u>See</u> Docs. #288-7, #303-8, #334-6, #340-5.  Defendants have
disclosed the following pages of defendant Rondini's June 25,
2020, deposition transcript: 1, 36, 37, 59, 119, 148, and 150.
<u>See</u> Docs. #288-8, #303-8. Defendants have disclosed the
following pages of defendant Reeves' March 21, 2019, deposition
transcript: 1, 45, 46, 50, 57, 58, 78, 164-78, and 196.[9] <u>See</u>
Docs. #288-9, #303-10. Defendants have disclosed the following
pages of witness Girard's June 15, 2020, deposition transcript:

---

[9] Defendants have disclosed no portion of defendant Reeves' July
9, 2020, deposition transcript.

1, 4, 11, 12, 13, 23, 26, 42, 44, 45, 54, 55, 61, 62, 68, 69, 70, 95, 96, 97, 98, 109, 121, 122, 171, 185, 188, 193, 199, 202, 203, 210, 211, 215, and 216. <u>See</u> Docs. #288-5, #328-1, #334-1, #340-5. The Court notes that the names of Peter Roe, any witnesses who were minors in 2016, the parents of those minors, and sexual assault victims, as well as any identifying information about any of these persons, have been redacted from the portions of the transcripts defendants have disclosed. <u>Only these **redacted** versions, of only these pages, are removed from the protections of the SPO.</u>

Defendants have publicly disclosed some exhibits to Reeves' depositions at the following document numbers: Docs. #288-18, #288-22, #288-41, #303-12. Defendants have publicly disclosed some exhibits to Rondini's depositions at the following document numbers: Docs. #288-18, #288-19, #288-20, #288-22, #303-12, #303-16. Defendants have publicly disclosed some exhibits to Girard's depositions at the following document numbers: #288-15, #288-35, #288-38, #328-1, #328-2. The Court is unable to determine whether the exhibits filed at each of these document numbers are complete, or whether only <u>portions</u> of the exhibits have been filed. <u>Only the portions of the exhibits that have been filed at these document numbers are no longer subject to the protection of the SPO.</u> Additionally, the names of Peter Roe, any witnesses who were minors in 2016, the parents of those

minors, and sexual assault victims, as well as any identifying information about any of these persons, have been redacted from these exhibits.[10] <u>Only these **redacted** versions of these exhibits are removed from the protections of the SPO.</u>

## C. Defendants' Requests Regarding the Redesignation of Plaintiff's Materials

The Court next turns to defendants' requests regarding the redesignation of plaintiff's materials. Plaintiff's counsel has informed defendants' counsel that plaintiff intends to withdraw the confidentiality designation from her own deposition transcript and videos, as well as those of her immediate family members. <u>See</u> Docs. #332-3 at 2; #334-2 at 4. Plaintiff's counsel has asserted that plaintiff will "comply with the Court's Order regarding the confidentiality of Peter Roe[]" and "redact/obscure any reference to victims of sexual assault." Doc. #332-3 at 2. In another communication, plaintiff's counsel stated plaintiff "will voluntarily do [her] best to protect the identities of sexual assault victims." Doc. #334-2 at 2. Defendants (1) object "to the blanket redesignation of the Scanlan family's deposition exhibits, insofar as those exhibits consist of documents produced by Defendants[,]" and (2) request

---

[10] Doc. #288-41, which is listed as an exhibit to Reeves' deposition and which consists of an article from the Greenwich Times, contains no redactions. Accordingly, this exhibit is no longer subject to the protections of the SPO.

Case 3:18-cv-01322-KAD   Document 351   Filed 04/12/21   Page 33 of 37

that the Court order plaintiff to redact the names of Peter Roe, alleged sexual assault victims, any persons who were minors at the time of the underlying events, and the parents of those minors, from any materials she redesignates. Doc. #334 at 2. The Court will address each of these issues in turn.

First, the court notes that it appears plaintiff seeks to redesignate only the transcripts and videos of her own deposition and the depositions of her family members, see #332-3 at 2; #334-2 at 4; it does not appear that she seeks to redesignate exhibits to those depositions. To the extent plaintiff does seek to redesignate any exhibits produced by defendants, the Court agrees that plaintiff may not unilaterally remove the confidentiality designation from such materials. The SPO permits the producing party to designate materials as confidential, see Doc. #4 at 1, and provides that a party may seek to modify or withdraw a designation by "submit[ting] a request in writing to the party who produced Designated Material[.]" Id. at 3. If the producing party objects to the redesignation, the party seeking modification "may apply to the Court for relief." Id. It thus follows that a party may not unilaterally, i.e., without the producing party's or the Court's approval, withdraw or modify the confidentiality designation from materials produced by another party. Accordingly, to the extent that plaintiff seeks to redesignate any deposition

33

exhibits that were produced by defendants, she is prohibited from doing so under the terms of the SPO.

Second, the Court cannot rely on plaintiff to ensure that the names of (1) Peter Roe, (2) any alleged sexual assault victims, and (3) persons who were minors at the time of the underlying events, and their parents, would be redacted from all materials from which plaintiff withdraws a confidentiality designation. The privacy concerns raised by this case have been thoughtfully considered by the Court throughout the course of this litigation. These concerns have led the Court to allow Peter Roe to proceed under a pseudonym, and to require that the identifying information related to sexual assault victims and nonparties who were minors at the time the events occurred, and their parents, be redacted from court filings. In spite of these efforts, a great deal of confidential information has been disclosed. As a result, the Court will not permit the blanket redesignation of any materials at this time.

If plaintiff wishes to disclose any material currently subject to the SPO, plaintiff must file a motion to that effect on the docket, attaching as an exhibit, **under seal**, a fully redacted version of the material. Plaintiff shall provide the redacted version to counsel for defendants. The Court will then provide defendants with an opportunity to review the redacted version, and to indicate whether defendants have any objection

34

to its removal from the protection of the SPO. After receiving any feedback from defendants, the Court will enter an order on the motion to disclose. **Until and unless the Court grants specific approval of a request to disclose a particular item, and has approved the proposed redactions, no disclosure of <u>any</u> item previously designated by <u>any</u> party as confidential under the SPO may be made.**

The Court notes that plaintiff has sought to remove the confidentiality designation not only from documents, but also from video recordings of depositions. No explanation as to how such recordings will be "redacted" has been provided. However, if plaintiff seeks to disclose any audio or video recordings currently subject to the SPO, she must file an appropriate motion as set forth above, and make arrangements to permit both the defendants and the Court to review her proposed "redacted" version. Again, **until and unless the Court grants specific approval of a request to disclose a particular audio or video recording, and has approved the proposed "redactions," no disclosure of <u>any</u> item previously designated by <u>any</u> party as confidential under the SPO may be made.**

Going forward, and in accordance with this Ruling, the Court expects all parties and all counsel to fully comply with the provisions of the SPO and any other protective orders issued by this Court. Failure to do so will lead to the imposition of

sanctions. <u>See</u>, <u>e.g.</u>, <u>Dorsett v. Cty. of Nassau</u>, No. 2:10CV01258(ADS), 2012 WL 2076911, at *6 (E.D.N.Y. June 7, 2012) ("[C]ourts have the inherent power to maintain the integrity of protective orders by imposing sanctions on those who violate them." (citation and quotation marks omitted)).

## IV.  <u>Conclusion</u>

For the reasons set forth herein, plaintiff's Motion to Remove Defendants' Confidentiality Designations as to Certain Documents [**Doc. #332**] is **DENIED**. The written transcripts, video recordings, and exhibits from the depositions of Reeves, Rondini, and Girard shall remain confidential, subject to the protections of the SPO, except as follows:

- Pages 1, 45, 46, 50, 57, 58, 78, 164-78, and 196 of Reeves' March 21, 2019, deposition transcript, with the appropriate information redacted;

- Pages 1, 5-7, 30, 32, 62, 73, 132, 133, 135, 142, and 148 of Rondini's March, 19, 2019, deposition transcript, with appropriate information redacted;

- Pages 1, 36, 37, 59, 119, 148, and 150 of Rondini's June 25, 2020, deposition transcript, with appropriate information redacted;

- Pages 1, 4, 11, 12, 13, 23, 26, 42, 44, 45, 54, 55, 61, 62, 68, 69, 70, 95, 96, 97, 98, 109, 121, 122, 171, 185, 188, 193, 199, 202, 203, 210, 211, 215, and 216 of

Girard's June 15, 2020, deposition transcript, with the appropriate information redacted;

- The exhibits to the depositions filed at Docs. #288-15, #288-18, #288-19, #288-20, #288-22, #288-35, #288-38, #288-41, #303-12, #303-16, #328-1, and #328-2, with the appropriate information redacted.

Defendant's request to prohibit plaintiff from removing the confidentiality designation from certain materials is **GRANTED**. If plaintiff seeks to remove the confidentiality designation from any material, plaintiff shall follow the process described above.

It is so ordered. Dated at New Haven, Connecticut, this 12th day of April, 2021.

                              /s/
                              HON. SARAH A. L. MERRIAM
                              UNITED STATES MAGISTRATE JUDGE