UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULA SCANLAN, | ) |
| | ) |
| | ) Case No. 3:18-cv-01322-KAD |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| TOWN OF GREENWICH, et al | ) |
| | ) |
| Defendants. | ) JULY 1, 2022 |
| | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO 42 U.S.C. § 1988**

I.  PRELIMINARY STATEMENT

In this civil rights action, Plaintiff, Paula Scanlon ("Plaintiff"), asserted that Defendants, Town of Greenwich (the "Town"), Detective Krystie Rondini ("Rondini"), and Sergeant Detective Brent Reeves ("Reeves"), both officers with Greenwich Police Department ("GPD"), violated her right to equal protection when investigating her complaint of a June 3, 2016 sexual assault.  Plaintiff alleged that her equal protection rights were violated as a result of a GPD policy of colluding with Brunswick school to prevent Brunswick students from bearing responsibility for their criminal acts.

When Plaintiff commenced this lawsuit, her allegations of collusion were not based on tangible facts, but rather on three "beliefs" held by Plaintiff and her family: first, that because Brunswick's internal security department staff included retired GPD officers there must be collusion between the two separate entities; second, Town "gossip" heard at dinner parties, cocktail "get togethers" and church meetings; and third, because Plaintiff's father believed that an email he sent to the Brunswick School Headmaster, explaining the facts as the Scanlan family

viewed them, got through to the GPD.[1]  Four years of extensive discovery and contentious litigation later, including approximately 36 depositions, dozens of interrogatories and thousands of pages of disclosed documentary material,[2] Plaintiff's case remained just that—nothing more than completely unsubstantiated cocktail party "gossip."  This utter absence of material evidence was recognized by the Court on May 20, 2022, when it granted Defendants' Motion for Summary Judgment finding that there was an "…absolute dearth of direct or circumstantial evidence to support Plaintiff's claim that her equal protection rights were violated as a result of a Greenwich Police Department policy to shield Brunswick School students from prosecution."  See Doc. no. 378, (hereinafter, "Memo. of Dec.") at p. 18-19, fn. 14.  The Court entered judgment in this matter on June 21, 2022.

Defendant, Town of Greenwich, makes this application for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, in accordance with Fed. R. Civ. P. 54, on the basis that the frivolous nature of Plaintiff's claims from start to finish justify an award of attorneys' fees in the amount of $843,980.00[3] and costs in the amount of $58,489.56,[4] for a total award of $902,469.56, to Defendant as the as the prevailing party in this matter.

---

[1] See Defendants' Memorandum of Law in Support of Summary Judgment, doc. no. 282-2 at p. 3, fn. 3 for the record citation to these statements by Plaintiff, her family, and her counsel.

[2] To give the court a sense of the breadth of discovery in this case, Defendants produced approximately 3,800 bates-stamped documents and Plaintiff produced approximately 1,500 pages of documents.  These numbers do not include all of the information obtained by Plaintiff as part of numerous FOIA requests, documentation obtained from third-party witnesses and deponents, or the thousands of pages of arrest warrant applications that were made available for review by Plaintiff's counsel but not selected by the Plaintiff for production.

[3] Attached as Ex. A is a summary of time records that specify for each attorney, the date, the hours expended, and the nature of the work done.

[4] Attached as Ex. B is a detailed statement of costs incurred in defense of this matter, all of which were reasonable and necessary to defend this case.  Defendant reserves the right to supplement this statement with detailed invoices, at the Court's request, prior to the hearing on this matter.  Defendant also reserves the right to supplement the total costs incurred as there were certain costs that were inaccessible at the time of filing.

## II. LEGAL DISCUSSION

42 U.S.C. §1988 provides in pertinent part:

> In any action or proceeding to enforce a provision of sections 1981… 1983…the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…

Where the prevailing party is the defendant, such as this case, the District Court may exercise its discretion to award such fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith, or that the plaintiff continued to litigate after it clearly became so." Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 421 (1978); see also Hughes v. Rowe, 449 U.S. 5 (1980) (adopting same standard for successful § 1983 defendants); see also Carter v. Incorporated Village of Ocean Beach, 759 F.3d 159, 163 (2d Cir. 2014) (quoting Christiansburg).[5] Plaintiff's action here was frivolous, unreasonable and without any foundation from its inception. Its defects became ever more apparent as the case worked its way through the pleadings. discovery and motion practice processes. At no point did Plaintiff's claims ever approach a level where they might have been labeled anything but "frivolous." Consequently, Defendant asks that the Court grant it a full recovery of the attorneys' fees and costs that it has incurred in resisting Plaintiff's charges.

### A. § 1988 Fees After a Defendant Prevails on Summary Judgment

Defendant is a prevailing party. A party who "secure[s] a judgment on the merits or a court-ordered consent decree" is a "prevailing party." Carter v. Incorporated Village of Ocean

---

[5] In enacting § 1988, Congress sought to protect defendants from burdensome litigation having no legal or factual basis. Fox v. Vice, 563 U.S. 826, 833 (2011) (internal citations and quotations omitted), and discourage litigants from bringing frivolous cases, and spare members of the public from the expense of defending against baseless allegations. Kappenberger v. Oates, 663 F. Supp. 991, 992 (S.D.N.Y. 1987) (internal citations and quotations omitted).

Beach, 759 F. 3d 159, 163 (2d. Cir. 2014) (awarding fees to County defendants after they prevailed on summary judgment motion) (citing Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 600 (2001). It is well established that a "prevailing party" under § 1988 may include a defendant who prevails on a motion for summary judgment. See e.g., Fox v. Vice, 131 S. Ct. 2205 (2011) (court granted defendant's motion for summary judgment in § 1983 case and remanded state law claims.)[6] See also Woods v. State of New York, 494 F. Supp. 201, 202-203 (S.D.N.Y. 1980) (court granted fees under § 1988 after summary judgment was granted in defendant's favor, where the plaintiff presented "no credible evidence" to support the charges and the Court concluded the plaintiff had "no tenable claim" to survive summary judgment); Ruszala v. Walt Disney World Company, 132 F. Supp. 2d 1347, 1351 (M.D. Fla. 2000) (awarding fees under § 1988 to defendant in § 1983 action who prevailed on summary judgment, and noting that "[t]ypical 'frivolity' cases include those where summary judgment is decided in favor of the defendant..."); Larson v. Wind, 548 F. Supp. 479, 480 (N.D. Ill. 1982) (granting § 1988 fees after defendant's motion for summary judgment was granted where "there is no basis for the fanciful inferences [the plaintiff] seeks to draw" and where the plaintiff "responded with nothing but conjecture…").

     Fees may be awardable even where a non-frivolous cause of action was initially pled, where there was no basis in the record for the plaintiff to have continued the action after discovery was completed. See Lane v. Sotheby Parke Bernet, Inc., 758 F.2d 71 (2d. Cir. 1985). In Lane, the plaintiff brought claims under Title VII of the Civil Rights Act of 1964 and 42

---

[6] At the end of discovery, the defendant moved for summary judgment on the federal claims, and the plaintiff conceded that the claims were "no[t] valid," and the District Court dismissed them with prejudice. Id. at 830. In Fox, the court held that a court may grant fees under § 1988 where a plaintiff asserts both frivolous and non-frivolous claims, but only for costs that the defendant would not have incurred but for the frivolous claims. Fox, 131 S. Ct. at 2211.

U.S.C. § 1981.  After "substantial discovery during which nothing additional emerged to support [plaintiff's] allegations," the defendants moved for summary judgment, which was granted by the district court.  758 F.2d at 72.  The district court denied the defendants' motion for attorneys' fees under, inter alia, 42 USC § 1988, finding that a non-frivolous cause of action had been pled. The Second Circuit reversed and remanded the denial of fees, finding that the district court should have considered whether the plaintiff should have continued the action after the completion of discovery.  Id. at 72. In the instant case, there was never any factual basis to support Plaintiff's case. Nothing but rumor, innuendo and rank conjecture was ever presented, or relied upon, by Plaintiff in pursuing her claims.

The Connecticut Supreme Court upheld the award of fees under § 1988 after a former employee brought a § 1983 claim against municipal entities where each of his complaint and four amended complaints were stricken for failure to state a claim noting that "[in determining whether an action is frivolous, courts generally consider three factors: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits."  Singhaviroj v. Board of Educ. of Town of Fairfield, 301 Conn. 1, 18 (2001) The court noted that all three relevant factors were present:  plaintiff failed to establish a prima facie case, the defendant never offered to settle the case, and the action was dismissed prior to trial.  Id. at 19.

In Spence v. Eastern Airlines, Inc., 547 F.Supp. 204, 205 (1982), after the plaintiff's racial discrimination case was dismissed at the close of her case and judgment was entered for the defendant, the court awarded legal fees under §§ 1988 and 2000e-5k, noting that "plaintiff's presentation upon the trial was devoid of any evidential support for her claims."

In <u>Harbulak v. County of Suffolk</u>, 654 F.2d 194 (2d. Cir. 1981), the Second Circuit reversed the District Court's denial of § 1988 fees, finding that the plaintiff's claim was wholly frivolous, and remanded to the District Court to award fees.  654 F.2d at 198.  The plaintiff there alleged a violation of § 1983 against the County of Suffolk based on a county police officer's reaching into the plaintiff's vehicle to place two unaccepted summonses on the plaintiff's dashboard.  <u>Id</u>. at 194.  The Court noted that liability on the part of the municipality under § 1983 could only be imposed when the acts are "part of a concerted plan or pursuant to any departmental policy express or implied" (citing <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978)).  In finding the plaintiff's claim to be unreasonable and groundless, the Second Circuit noted that "there was no claim in [the plaintiff's] 9(g) statement opposing summary judgment, much less an allegation in his complaint, that the officer's allegedly unconstitutional acts were part of an official policy or custom of the County of Suffolk.  Thus there simply was no liability on the part of the defendant County of Suffolk."  <u>Id</u>. at 198.

In <u>Soto v. Barcelo</u>, 559 F. Supp. 739 (D. Puerto Rico 1983), the court awarded fees to the prevailing defendant in a § 1983 action where the plaintiffs alleged that the defendant Governor of Puerto Rico participated in a conspiracy to murder two men of different political persuasion. <u>Id</u>. at 743.  The Court noted that the principal basis for the plaintiff's allegations were drawn from newspaper stories and media statements.  <u>Id</u>. at 744.  The court found that the case was frivolous, unreasonable, or without foundation, stating: "[t]he exemplars of newspaper articles which plaintiffs have filed with the Court as their basis for proceeding are not themselves admissible evidence and none contain statements of admissible facts to prove their claims against the Governor.  Their 'suspicions' about the Governor's involvement and his credibility were guesswork and nothing more.  These findings also appear from plaintiffs' discovery answers

which show that they constructed a version of facts based on speculation, rumor and innuendo in the media." Id. at 744. The Court concluded that the plaintiffs "simply had no evidence in support of their claims" and that when they continued litigating, "they did so at risk that attorney's fees would be awarded against them." Id. See also, Mejia v. Wargo, 2021 WL 537321 (D. Conn. Feb. 12, 2021) at *1 (awarding fees under § 1988 where "plaintiffs continued to litigate this case after their claims clearly became groundless" after it became apparent after discovery and depositions of the plaintiffs that they did not have grounds to pursue their claims further); General Camera Corporation v. Urban Development Corp., 734 F.2d 468 (2d. Cir. 1984) (affirming award of § 1988 fees for frivolous action); Serbalik v. Gray, 199 F. 3d 1323 (2d. Cir. 1999) (affirming award of fees after summary judgment was granted for defendants on § 1983 claim on the grounds that there was no evidence to support a claim of state action, and awarding fees despite plaintiff's argument of "circumstantial evidence" that defendants acted in concert with local authorities); Lamson v. Blumenthal, 2003 WL 23319516 (D. Conn. 2003) (awarding fees where plaintiffs continued to allege defendants failed to provide them with benefits that they admitted in their depositions to having received, noting "[a]lthough this litigation was unreasonable upon instigation, it became more and more frivolous with each action taken by Plaintiffs"); Jaeger v. Cellco Partnership, 2015 WL 1867661 (D. Conn. Apr. 23, 2015) at * 2 (after dismissal on res judicata and issue preclusion grounds, fees warranted in defendants' favor where "[a]lthough her claims may not have been 'frivolous, unreasonable or without foundation' in 2009, the vigor with which she continues to pursue them renders them unreasonable today"); Longmoor v. Nilsen, 312 F. Supp. 2d. 352, 362-363 (D. Conn. Mar. 31, 2004) (awarding fees where the court concluded plaintiffs' civil rights claim against defendant became clearly unreasonable prior to defendant filing its summary judgment motion);

Piurkowski v. Goggin, 2004 WL 1534200 (D. Conn. July 6, 2004) at * 2 (awarding fees in favor of certain defendants named in plaintiff's complaint alleging unreasonable execution of a search warrant, where the named defendants "appear to have been gleaned from the police report and supplemented with an identification of one defendant that the plaintiff obtained from a bartender", where it was "not clear that [plaintiff] or his attorney conducted any additional inquiry into who actually executed the search warrant at issue").

The lack of any legitimate factual basis to support Plaintiff's initial complaint here, and Plaintiff's continued pursuit of this case long after it should have become obvious to the most unsophisticated legal thinker that her allegations had no merit, sets Plaintiff s case here four-square within the boundaries of the cited precedents allowing for fees and costs awards to Defendant.

### 1. The Frivolous Nature of Plaintiff's Claims

As the Court is aware, the record in this case is vast.  The Town could go on for pages highlighting the countless instances over the last several years where the frivolity of Plaintiff's claims came to light based on the record evidence.   Rather, Defendant  relies upon the Court's own Summary Judgment findings to underscore the frivolous nature of Plaintiff's charges:

> After a detailed review of the parties' substantial submissions, the Court concludes that Plaintiff has not identified a body of evidence that supports the inference that such a policy existed or, by extension, evidence that Defendants acted in accordance therewith in the investigation of her complaint.  Court's Memo. of Dec. at p. 2.

> Plaintiff's argument with respect to Defendants' Local Rule 56(a)1 Statement at ¶ 53, premised in part upon her assessment that the witness statements were contrived or fabricated because teenagers would not use the terms "grazed" or "swimsuit," is emblematic of the veil of cynicism through which Plaintiff views any evidence that contradicts her own narrative.  Court's Memo. of Dec. at p. 7 fn. 3.

> These are just two of many examples of Plaintiff's misuse of the Local Rule 56(a)2 Statement of Facts …. Indeed, many of Plaintiff's responses are replete with legal

argument, conclusory allegations, personal belief and speculation, which is inappropriate. Court's Memo. of Dec. at p. 7.

Plaintiff's contention that Defendant Rondini secretly communicated with Brunswick School by communicating with Roe's lawyer, who in turn communicated with Roe, who in turn communicated with Headmaster Philip is little more than a conspiracy theory spun of whole cloth. Defendant Rondini had no control over who Roe or his lawyer spoke to about the investigation. And it is a fanciful notion indeed that Roe's lawyer would expect his client to share privileged communications with Headmaster Philip as a means of facilitating some illicit backchannel between Brunswick School and the Greenwich Police Department.  Court's Memo. of Dec. at p. 16, fn. 11.

Plaintiff observes that in August of 2016, Girard was made liaison to Brunswick School and that the inference to be drawn from this is that she was "intended to serve as a conduit for information on the [Plaintiff's] investigation." This remarkable assertion is without any factual or evidentiary foundation. Similar to the theory of illicit "backchannel" noted above, this unfounded accusation is nothing more than conjecture born of cynicism.  Court's Memo. of Dec. at p. 9, fn. 15.

As discussed, there is an absolute dearth of direct or circumstantial evidence to support Plaintiff's claim that her equal protection rights were violated as a result of a Greenwich Police Department policy to shield Brunswick School students from prosecution.  Court's Memo. of Dec. at p. 19.

Notwithstanding, Plaintiff asserts that there is adequate circumstantial evidence from which an implicit policy of this nature may be inferred. After careful examination of the evidence from which Plaintiff advances this claim, it is clear that the inference she seeks is not a reasonable one. It is born of cynicism, conjecture, inappropriate lay opinion and supposition upon supposition.  Court's Memo. of Dec. at p. 24.

Plaintiff has provided no evidence to support this stunning accusation of corruption or of Girard's direct or indirect receipt of any financial benefit from Brunswick School. Court's Memo. of Dec. at p. 27 fn. 20.

Plaintiff's characterization misstates the evidence, and even accepting Plaintiff's characterization, does not support an inference of a policy of protecting Brunswick School students from prosecution.  Court's Memo. of Dec. at p. 27.

In order to draw the extraordinary inference urged by Plaintiff, the jury would be required to resort to unacceptable and impermissible speculation to an equally extraordinary degree.  Court's Memo. of Dec. at p 30-31.

Upon review of the voluminous evidentiary material amassed over two years of discovery, the Court concludes that there is no genuine issue of material fact as to the existence of an implied policy of protecting Brunswick School students from prosecution at the expense of their victims or that Defendants acted in accordance therewith.

9

>Insufficient evidence of any such policy has been unearthed so as to create a triable issue of fact. To hold otherwise would require wholly unsupported conjecture and speculation, which is insufficient to withstand summary judgment. Court's Memo. of Dec. at p. 39-40.

It is worth noting that the Court's summary judgment decision was not the first time that Plaintiff and her counsel were made aware of the frivolous nature of their claims. On December 6, 2019, near the completion of discovery but before the Defendants undertook the arduous summary judgment process, Town counsel wrote Plaintiff's counsel setting forth the lack of evidence in support of Plaintiff's claims. See Affidavit of Robert Mitchell ("Mitchell Aff") at ¶ 14 and Ex. 3. Town counsel offered to recommend (to Defendants) a mutual walk away – that in exchange for Plaintiff's withdrawal of her claims, Defendants would waive their claims for attorney's fees, vexatious litigation and defamation of the individual defendants.[7] Id. This communication stated that the offer was being made in advance of any expenditure on preparation of a motion for summary judgment. Id. The offer was rejected in writing by Plaintiff's counsel that same day. Id. This correspondence illustrates Defendants' good faith efforts to dissuade Plaintiff from proceeding with her frivolous action, and moreover, indicating their intent to seek fees based on the frivolousness of her claims.

### B.    Factors to Be Considered in the Calculation of the Reasonable Fee

To determine the amount of attorneys' fees to which a prevailing party is entitled, a court must calculate the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany ("Arbor Hill"), 522 F.3d 182, 183, 189–90 (2d Cir.

---

[7] Evidence pertaining to settlement negotiations may be used in Court when "offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." Clerveaux v. East Ramapo Central School District, 984 F.3d 213, 243 (2d Cir. 2021) (citing Fed. R. Evid. 408 advisory committee's note to 2006 amendment.) As such, evidence of settlement negotiations may be used to demonstrate bad faith. Id. (internal citations and quotations omitted). See also Ingram v. Oroudjian, 647 F.3d 925, 927 (2d Cir. 2011) (holding that the district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award).

10

2008). The focus of the district court should be to set a reasonable hourly rate, taking into account all case specific variables. Arbor Hill, 522 F.3d at 189. A court's determination of this rate contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel, and may include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district. Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015) (citing Townsend v. Benjamin Enter., Inc., 679 F.3d 41, 59 (2d Cir.2012) (quoting Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir.2005)) (internal citations and quotations omitted).

After the reasonable hourly rate is determined, the court calculates the "presumptively reasonable fee" by multiplying the reasonable hourly rate times the number of hours spent on the case. Arbor Hill, 522 F.3d at 190; Echevarria, 102 F. Supp. at 516. After calculating the presumptively reasonable fee, the court must then consider whether an adjustment of the fee is warranted. Hensley v. Eckerhart, 461 U.S. 424, 434 and n. 9 (1983).[8]

### C.     The Hourly Rates Charged by Defendant's Counsel are Reasonable

Mitchell & Sheahan, P.C. entered into a fee agreement with the Town of Greenwich in 2010 for an hourly rate of $250.00 for all attorney work. See Mitchell Aff. at ¶ 8. Although

---

[8] The Supreme Court in Hensley v. Eckerhart identified the twelve factors to be considered in the determination of a reasonable fee:
- (1)   the time and labor required;
- (2)   the novelty and difficulty of the questions;
- (3)   the level of skill required to perform the legal service properly;
- (4)   the preclusion of employment by the attorney due to acceptance of the case;
- (5)   the attorney's customary hourly rate;
- (6)   whether the fee is fixed or contingent;
- (7)   the time limitations imposed by the client or the circumstances;
- (8)   the amount involved in the case and the results obtained;
- (9)   the experience, reputation, and ability of the attorneys;
- (10)  the "undesirability" of the case;
- (11)  the nature of the length of the professional relationship with the client; and
- (12)  awards in similar cases.

Hensley, 461 U.S. at 430 (citing Johnson v. Georgia Highway Express, 488 F.2d 714, 717-19 (5th Cir. 1974)).

each of this firm's attorney's rates have increased over the years, the Firm did not increase rates for the Town of Greenwich. Id. A copy of the engagement agreement is attached to the Mitchell Aff. as Ex. 2. The hourly rate charged in this case is well below the concerned attorneys' current hourly rates which are:

| | | | |
|---|---|---|---|
| Robert B. Mitchell | $550.00 | Jessica Slippen | $450.00 |
| Margaret M. Sheahan | $550.00 | Reese Mitchell | $350.00 |
| Gary Phelan | $550.00 | Paralegals | $175.00 |
| Aimee Wood | $475.00 | | |

The rate of $250 is reasonable and well below the hourly rates of persons with similar experience, reputation and ability. See Affidavit of Attorney Douglas Varga. See also Mitchell Aff. at ¶¶ 3-17,10; Affidavit of Margaret Sheahan at ¶¶ 3-7; and Affidavit of Jessica Slippen at ¶¶ 3-8, which set forth the experience and qualifications of the Town's attorneys in this matter.

Cases within this district also support this hourly rate set forth in this fee application. The District of Connecticut "has recognized that prevailing rates in this district 'typically range between $375 and $535 for experienced partners.'" Chang v. Jenny JN Nails, Inc., 2021 WL 6340170 (D. Conn. Sept. 30, 2021) at *1 (collecting cases from 2018 through 2020 and awarding fees at rate of $450 per hour in the context of discovery sanctions); Strauch v. Computer Sciences Corp., 2020 WL 4289955 (D. Conn. July 27, 2020) at * 8 (noting that $450 is within the range of rates generally approved for partners in this District, and that hourly rate of $150 is commensurate with the hourly rate typically awarded for the work of paralegals in this District); Humphrey v. Crea, 2019 WL 3561899 (D. Conn. Aug. 6, 2019) (reducing requested rate to the rate ordinarily charged by the respective attorneys, $400/hour and $300/hour, in the context of claim for fees under § 1988); Stevenson v. Riverside Motorcars LLC, 2021 WL 5051667 (D. Conn. Nov. 1, 2021) (in TILA/CUTPA action, approving attorney rates at $400 and $275, and

rate of $150 for paralegal); Lamson v. Blumenthal, 2003 WL 23319516 (D. Conn. Oct. 3, 2003) at * 2 (approving requested fee of $250/hour in 2003 for claim for fees under § 1988).

With respect to the hours expended on this matter by Defendant's counsel, Defendant has simultaneously herewith submitted a summary of time records that "specify for each attorney, the date, the hours expended, and the nature of the work done." Echevarria v. Insight Med., P.C., 102 F. Supp. 3d 511, 520 (S.D.N.Y. 2015) (citing N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147–48 (2d Cir.1983). See Ex. A.

### III. CONCLUSION

Plaintiff vigorously pursued this case. She left no stone unturned, and the result has been an almost blinding compilation of factual detail in a record drawn from over 30 depositions, dozens of interrogatories and literally thousands of pages of disclosed documentary material. The litigation was contentious to say the least, and court intervention was sought during the discovery stage on several occasions. The summary judgment briefing in this case was vast. Defendants' summary judgment briefing constituted approximately fifty-five (55) pages and included 560 pages of attached documentation. The briefing required extensive research, and a complete and thorough review of the extensive record in this matter. See Mitchell Aff. at ¶ 15. Plaintiff's summary judgment briefing was approximately two hundred and fifty (250) pages, including exhibits.

In addition to customary pleading practice, there were also extenuating circumstances— the bulk of which were caused by what Defendant's counsel maintains was a blatant disregard of the Federal Rules, Orders of this Court, and basic professional courtesy by Plaintiff, her family, and her counsel—requiring substantial and time-consuming efforts by Defendant's counsel. See Mitchell Aff. at ¶ 16. As evidenced by a docket page containing over three hundred and eighty

(380) entries, this litigation was intense, time consuming, and demanding. Plaintiff's frivolous claims have caused the Town to incur substantial litigation expenses. In light of same, it respectfully submitted that Defendant is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. §1988 as follows:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Robert B. Mitchell | 995.9 | 250.00 | $248,675.00 |
| Margaret M. Sheahan | 118.9 | 250.00 | $29,725.00 |
| Jessica Slippen | 961.4 | 250.00 | $240,275.00 |
| Reese Mitchell | 795.5 | 250.00 | $196,225.00 |
| Aimee Wood | 81.1 | 250.00 | $20,275.00 |
| Gary Phelan | 0.3 | 250.00 | $75.00 |
| Maria Garcia-Quintner | 1.2 | 250.00 | $300.00 |
| Paralegal | Hours | Hourly Rate | Total |
| Elisa Ordazzo | 590.2 | 175.00 | $103,307.50 |
| Francine Parente | 29.1 | 175.00 | $5,122.50 |
| | | TOTAL FEES: | $843,980.00 |

| Costs: | |
|---|---|
| Depositions | $27,170.25 |
| Delivery fees | $252.30 |
| Service and Witness Attendance Fees | $1,896.96 |
| Cloud storage of discovery materials | $4,047.83 |
| Travel | $29.00 |
| Photocopies | $2,248.37 |
| Court transcripts | $329.12 |
| Legal research service (Westlaw) | $22,515.73 |
| TOTAL COSTS: | $58,489.56 |

WHEREFORE, Defendant respectfully observes that the Plaintiff's case stands today as it did when first filed; it stands as a collection of frivolous charges supported not by evidence, but only by innuendo, supposition and speculation. Defendant therefore requests that the Court grant this application for attorneys' fees in the amount of $843,980.00 and for costs in the amount of $58,489.56, for a total award of $902,469.56, as is particularized in the attached exhibits.

Done at Stratford, Connecticut, this 1st day of July, 2022.

                              THE DEFENDANT, TOWN OF GREENWICH

                By:    */s/Robert B. Mitchell*
                        Robert B. Mitchell (ct02662)
                        Jessica A. Slippen (ct52765)
                        Reese Mitchell (ct30226)
                        Mitchell & Sheahan, P.C.
                        999 Oronoque Lane, Suite 203
                        Stratford, CT 06614
                        Tel.:  (203) 873-0240
                        Fax:  (203) 873-0235
                        rbmitchell@mitchellandsheahan.com

**CERTIFICATION**

    I hereby certify that on this date a copy of the foregoing was filed electronically sand served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic filing.

                                         */s/Robert B. Mitchell*
                                         Robert B. Mitchell (ct02662)
                                         Mitchell & Sheahan, P.C.
                                         999 Oronoque Lane, Suite 203
                                         Stratford, CT 06614
                                         Tel.: (203) 873-0240
                                         rbmitchell@mitchellandsheahan.com