UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAULA SCANLAN,       ) | CASE NO. 3:18-cv-1322 (KAD) |
| *Plaintiff*,          ) | |
|                       ) | |
| v.                    ) | |
|                       ) | |
| TOWN OF GREENWICH, *et al.*, ) | April 27, 2023 |
| *Defendants*.         ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 383)**

Kari A. Dooley, United States District Judge:

This civil rights action arises out of an investigation into a sexual assault complaint made by Plaintiff Paula Scanlan ("Plaintiff") which was conducted by Sergeant Detective Reeves and Detective Rondini (collectively, "Defendants"), both officers with the Greenwich Police Department ("GPD"). The Town of Greenwich is also named as a defendant under a *Monell* theory of liability. After four years of extensive discovery and very contentious litigation, which consisted of 36 depositions, dozens of interrogatives, thousands of pages of disclosed materials, and robust motions practice, the Court granted Defendants' Motion for Summary Judgment and denied Plaintiff's cross-Motion for Summary Judgment as moot. Judgment accordingly entered in favor of Defendants and against Plaintiff. Defendants now move for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) in the amount of $902,469.56, to which Plaintiff has objected. For the reasons that follow, Defendants' motion for attorneys' fees and costs is GRANTED in part and Defendants are awarded $239,857.50 in attorneys' fees and $9,678.81 in costs. (ECF No. 383)

**Standard of Review**

In "any action or proceeding to enforce a provision" such as 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). "A district court may in its discretion award attorney's fees to a prevailing defendant in a [civil rights] case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421 (1978). In so holding, the Supreme Court cautioned that:

> [A] district court [should] resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–22.

A district court may grant reasonable fees to a prevailing defendant in a case with both frivolous and non-frivolous claims, "but only for costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011); *Carter v. Incorporated Village of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014). Significant to this matter, fees are also awardable even when a non-frivolous cause of action was initially pled, but where there was no basis in the record for the plaintiff to have continued the action after discovery was completed. *See Lane v. Sotheby Parke Bernet, Inc.*, 758 F.2d 71, 72 (2d Cir. 1985) (remanding denial of defendants' motion for attorneys' fees because district court should have considered whether the plaintiff should have continued the action after the completion of discovery).

A district court's award or denial of attorneys' fees under § 1988 is reviewed "for abuse of discretion, mindful that abuse of discretion—already one of the most deferential standards of review—takes on special significance when reviewing fee decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." *Carter*, 759 F.3d at 163–64 (citing *Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012)). The determination as to whether a claim was frivolous, unreasonable, or groundless is also "ordinarily reviewed not for clear error but rather for abuse of discretion" and requires "an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998). "A claim is frivolous where it lacks an arguable basis in either law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (citation and quotations omitted).

**Facts and Procedural History**

The Court assumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the instant motion.

On July 26, 2016, Plaintiff reported to her school counselor that she was sexually assaulted during a June 3, 2016 pool party at her house.[1] That same day, Detective Rondini received a report from the Department of Children and Families regarding Plaintiff's allegation of a sexual assault. Plaintiff was a high school student at Greenwich Academy, an all-girl preparatory school, and she identified her attacker as a student at Brunswick School, a nearby all-male preparatory school. Over the course of the summer and fall of 2016, the GPD investigated the complaint. In December 2016, at the conclusion of the investigation, the GPD submitted a twenty-one-page arrest warrant application for the alleged assailant to the State's Attorney's Office. In January 2017, Assistant

---

[1] Like the ruling on the cross-motions for summary judgment, for the purposes of this motion, the Court accepts, without finding, that Plaintiff was assaulted on June 3, 2016. *See* Mem. of Decision, ECF No. 378 n.4.

State's Attorney John Cappozzi determined that the application lacked probable cause and did not present it to a judge of the Superior Court. Plaintiff's counsel and her parents secured a meeting with then-State's Attorney Richard Colangelo regarding the application, in which they were advised that the case would not be prosecuted because of the inconsistencies in Plaintiff's statements.

In August 2018, Plaintiff commenced the instant action against Defendants. Plaintiff asserted four claims arising from the investigation of her sexual assault complaint against Defendants: (1) violation of Fourteenth Amendment Equal Protection, (2) violation of Fourteenth Amendment Substantive Due Process, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress. Upon the Court granting in part Defendants' motion to dismiss on September 30, 2019, only Plaintiff's Fourteenth Amendment Equal Protection violation claim remained. The gravamen of Plaintiff's surviving equal protection claim was that the GPD had a policy whereby it would collude with Brunswick School in an effort to shield Brunswick students from prosecution when a Brunswick student was identified as the perpetrator of a crime. Accordingly, Plaintiff alleged, this policy resulted in disparate treatment of crime victims (including herself) depending on who was alleged to be the perpetrator.

On December 6, 2019, as discovery progressed, counsel for Defendants sent a letter to counsel for Plaintiff setting forth the lack of evidence supporting Plaintiff's claims and offered to recommend to their clients a mutual walk away: in exchange for Plaintiff withdrawing her claims, Defendants would drop their claims for attorneys' fees, vexatious litigation, and defamation of the individual defendants. The letter specifically called into question the *de minimis* evidence uncovered to support Plaintiff's claim, which at that time included: (1) that retired Greenwich police officers worked in Brunswick School's Security Department; (2) unsubstantiated rumors of

4

a "cozy" relationship between the GPD and Brunswick School; (3) the alleged passing of information from the Brunswick headmaster to Sergeant Reeves which followed an email that Plaintiff's father had sent the headmaster; and (4) an alleged sexual assault in 2014 that the GPD had addressed in comments to the press but which was ultimately not fully investigated or prosecuted because the victim informed the police that the encounter was consensual. Defendants requested the Plaintiff withdraw her claims in light of this dearth of evidence. Plaintiff rejected the offer that same day.

Discovery thereafter closed on July 17, 2020. Defendants moved for summary judgment, and Plaintiff filed a cross-motion for summary judgement on Defendants' affirmative defenses on August 24, 2020. Following oral argument on December 8, 2021, the Court granted Defendant's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment as moot. In so doing, the Court concluded that:

> Upon review of the voluminous evidentiary material amassed over two years of discovery, . . . there is no genuine issue of material fact as to the existence of an implied policy of protecting Brunswick School students from prosecution at the expense of their victims or that Defendants acted in accordance therewith. Insufficient evidence of any such policy has been unearthed so as to create a triable issue of fact. To hold otherwise would require wholly unsupported conjecture and speculation, which is insufficient to withstand summary judgment.

Mem. of Decision, ECF No. 378 at 39–40. Judgment accordingly entered in favor of Defendants on June 21, 2022.[2]

**Discussion**

Defendants assert that Plaintiff's lawsuit was frivolous from the beginning because her allegations of collusion between the GPD and Brunswick School were based not on facts but on

---

[2] The Court does not repeat herein its analysis of the purported evidence put forth by Plaintiff in opposition to the motion for summary judgment. The Court does rely on that analysis, however, in assessing whether Plaintiff should be ordered to pay attorneys' fees and costs.

her subjective and cynical beliefs, and that after four years of discovery, Plaintiff's case was reduced to unsubstantiated gossip. In response, Plaintiff argues that there is no basis to award Defendants attorneys' fees and costs because the case presented a novel legal issue[3] and Plaintiff submitted evidence in support of her claim (even if that evidence was deemed insufficient by the Court to survive summary judgment). As to this latter argument, Plaintiff submits that there was enough evidence to support her claim of a violation of her equal protection rights such that it was not without basis in fact, as urged by Defendants. In this vein, Plaintiff observes that the Second Circuit rarely awards attorneys' fees and costs to prevailing defendants, and the cases in which such an award was approved involved actions where (1) the claims were previously litigated and dismissed, (2) the plaintiffs could not articulate any deprivation of statutory or constitutional rights, or (3) there were no evidence presented at all. Thus, Plaintiff argues that because not all of her claims were dismissed insofar as she did articulate a deprivation of her equal protection rights, and she presented some evidence in support of this claim, Defendants should not be awarded fees and costs.

There are two primary purposes for the fee provision in § 1988: (1) to make it easier for a plaintiff of limited means to bring a meritorious suit, and (2) to deter the bringing of lawsuits without foundation by providing that the prevailing party—be it plaintiff or defendant—could

---

[3] As to this first argument, Plaintiff contends that because no court has ruled on the application of *Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998) to an implied policy evidenced by custom or practice rather than an express policy as was at issue in *Myers,* her interpretation, even though it varied from the Court's interpretation, should not be considered frivolous because there is little guidance for bringing such a claim in case law. The foundation of this argument is unsound. The Second Amended Complaint alleges an express policy of collusion with Brunswick School in addition to a practice or custom. It was this allegation that brought her claim within the scope of *Myers* at the motion to dismiss stage. When all parties agreed that the discovery revealed no evidence of an express policy, Defendants argued in their summary judgment submission that *Myers* should not be extended to implied policies. However, the Court did not reach that legal issue when deciding Defendants' motion for summary judgment. Accordingly, the Court has offered no "interpretation" of *Myers* at odds with Plaintiff. Indeed, in reaching the merits of the summary judgment motion, the Court accepted, for purposes of the motion, the availability of the theory she advanced. Plaintiff's argument that she relied on a novel legal premise in bringing her case does not, therefore, counsel against an award for attorneys' fees and costs.

obtain legal fees. *See Christianburg Garment Co.*, 434 U.S. at 420. The Second Circuit has held that "it is very rare that victorious defendants in civil rights cases will recover attorneys' fees." *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 178 (2d Cir. 2006); *see also Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 230 (2d Cir. 2004) ("Hindsight proves that plaintiffs' allegation . . . was very weak, but it was not completely without foundation."). The Second Circuit's "hesitan[cy] to award attorney's fees to victorious defendants in § 1983 actions," stems from "concern[s] about the potential chilling effect on § 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of the highest national priority." *Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) (internal quotation marks omitted).

The Second Circuit has further cautioned that the Supreme Court's guidance in *Christiansburg* that courts should avoid deeming a complaint frivolous merely because a plaintiff ultimately did not prevail "is particularly pertinent to cases involving allegations of conspiracy. Conspiracies are 'by their very nature secretive operations that can hardly ever be proven by direct evidence.'" *LeBlanc-Sternberg*, 143 F.3d at 770 (citing *Rounseville*, 13 F.3d at 632). The Second Circuit stressed that "unsuccessful conspiracy claims are not unreasonable merely because they were based principally, or even entirely, on circumstantial evidence." *Id.* Here, even though Plaintiff did not allege a conspiracy *per se*, the ability to prove the collusion she alleged would similarly have to rely extensively on circumstantial evidence, rendering the Second Circuit's admonition particularly apt.

Upon consideration of these standards and the parties' submissions, although Plaintiff did not identify sufficient evidence to survive summary judgment, the Court concludes that her case was not so unreasonable or without foundation when filed so as to warrant an award of attorneys' fees and costs from its inception. Indeed, such a finding is reserved for cases in which the "full

extent of legal and factual shortcomings" was laid bare in a prior administrative or judicial proceeding, *see Taylor v. Harbour Pointe Homeowner's Association*, 690 F.3d 44, 50 (2d Cir. 2012), or where the plaintiff had "at least the ability to obtain the knowledge" to recognize his claim "was unreasonable and groundless, if not frivolous." *See Harbulak v. Suffolk County*, 654 F.2d 194, 195, 198 (2d Cir. 1981). This is not that case. Plaintiff was aware of a previous alleged sexual assault which may have involved Brunswick students and for which no prosecution was pursued. Plaintiff was aware that Brunswick security personnel consisted largely of former GPD officers. Plaintiff was unquestionably dissatisfied with the investigation into her complaint and the resulting decision not to present the arrest warrant application to a judge. While ultimately, Plaintiff was only able to fill in the gaps in her theory of liability with conjecture and supposition, her claim was not obviously baseless at the time it was filed. Indeed, it is apparent that Plaintiff believed and still believes her allegations notwithstanding the lack of evidence to support them.

However, as discussed above, a prevailing defendant may still be awarded attorneys' fees and costs when a plaintiff continued to litigate a case after it clearly became frivolous. *See, e.g.*, *Lane*, 758 F.2d at 73 (district court must make findings "as to whether the plaintiff should have continued [the] action once discovery was completed."). In determining whether an action is or has become frivolous, "courts generally consider three factors: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Singhaviroj v. Board of Educ. of Town of Fairfield*, 301 Conn. 1, 18 (2001) (citing *Sullivan v. School Board*, 773 F.2d 1182, 1189 (11th Cir. 1985); *see also AFL-CIO (AFSCME) v. County of Nassau*, 96 F.3d 644, 653 n.2 (2d Cir. 1996) (noting that a district court's refusal to dismiss is relevant to whether claim is frivolous) (citing *Sullivan*, 773 F.2d at 1189)). As applied here, Plaintiff did not establish a *prima*

*facie* case, *see* Mem. of Decision, ECF No. 378 at 24, 39, Defendants did offer to settle with a mutual walk away, and the case was resolved on summary judgment prior to trial. *See Singhaviroj*, 301 Conn. 1 at 18. Accordingly, an award of attorneys' fees and costs is warranted. The Court next determines the point in time that Plaintiff is tasked with knowing her case was frivolous, to wit, without foundation in fact.

In the alternative, Defendants ask for attorneys' fees and costs incurred following Plaintiff's rejection of their settlement offer on December 6, 2019. However, the Court concludes that the better date from which to assess attorneys' fees and costs is the close of discovery on July 17, 2020. By the close of discovery, the evidence relied upon by Plaintiff in bringing the lawsuit was completely debunked or otherwise revealed to be of little evidentiary value. For example, Plaintiff cited to the 2014 sexual assault that the GPD did not fully investigate and which was never prosecuted. As the Court observed in its summary judgment ruling, "the view from ten thousand feet might suggest that a Brunswick School student committed a sexual assault and Greenwich Police Department did nothing about it." Mem. of Decision, ECF No. 378 at 28. However, after discovery, it was revealed that although Greenwich Police Detective Christy Girard thought a sexual assault had occurred, the alleged victim and her family maintained that the encounter was consensual, did not want an investigation into the matter, and did not file a criminal complaint. *Id.* at 27–28. Indeed, the discovery revealed the exact opposite of the nefarious inference Plaintiff urged. *See id.* ("[Detective] Girard did not accept the parents' initial assessment that the contact was consensual. She encouraged them to view the video, which they did. When they repeated that no criminal complaint would be made because the contact was consensual, she was sufficiently troubled by what she saw on the video that she reached out to the State's Attorney for advice as to how she should proceed. These are not the

actions of Greenwich Police Department shielding Brunswick School students from prosecution.").

The Court's conclusion was reached after the Court had the benefit of summary judgment briefing and the full scope of discovery.[4] And although the majority of the depositions occurred over the course of 2019 (and before the December 6, 2019 letter), the depositions of Brunswick School Headmaster Tom Philip and Head of Security Michael D'Angelo, as well as Greenwich Police Detectives Mark Zuccarella and Girard, who had investigated the 2014 sexual assault, were held after Defendants sent the offer to settle on December 6, 2019. Thus, it was at the conclusion of discovery that Plaintiff had access to all the information she needed to conclude that the 2014 alleged sexual assault provided no evidence of collusion between the GPD and Brunswick School. Similarly, as discussed in the memorandum of decision granting Defendants' motion for summary judgment, the discovery revealed no inappropriate communications, "back channels," or other bases to conclude that the relationship between Brunswick Security personnel (as former GPD officers) and the GPD inured to the benefit of Brunswick students as alleged.

Judge Thompson's decision in *Mejia v. Wargo*, No. 3:18-cv-982, 2021 WL 537321 (D. Conn. Feb. 12, 2021) is instructive. In *Mejia*, Judge Thompson held that a limited award of attorneys' fees to the defendants was appropriate because the plaintiffs "continued to litigate [the] case after their claims clearly became groundless." *Id.* at *1. Counsel for the defendants, after discovery closed, "made offers of judgment to the plaintiffs, pursuant to which the plaintiffs would withdraw their claims and the defendants would waive any and all rights to seek reimbursement for legal fees, costs, and expenses incurred in defending those close." *Id.* Plaintiffs did not respond to the offers of judgment and defendants filed a motion for summary judgment, which was granted.

---

[4] Written discovery closed April 15, 2020.

*Id.* Judge Thompson concluded that in "framing the plaintiffs' perceptions of the events in the context of their legal claims, it was apparent after discovery and the depositions of the plaintiffs that they did not have grounds to pursue their claims further. Moreover, they were put on notice by the offers of judgment that the . . . defendants would be seeking attorney's fees and costs, and they were also offered a means to avoid that scenario." *Id.* Judge Thompson found that "as of the time the offer of judgment was filed, there was a need to deter the plaintiffs from proceeding with groundless claims." *Id.* at *2.

Similarly, as indicated, the Court finds that as of the close of discovery on July 17, 2020, Plaintiff knew or should have known that there was no factual support for her allegations and there was therefore a need to deter Plaintiff from proceeding with her meritless claim. The Court's conclusion is consistent with, and furthers the purpose behind, the rigorous standard for awarding attorney's fees under § 1988—that is, it "avoid[s] chilling the initiation and prosecution of meritorious civil rights actions" while still discouraging meritless litigation. *LeBlanc-Sternberg*, 143 F.3d at 770.

*Amount of Reasonable Fees and Costs*

"In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The "lodestar" should be consistent with the rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation" in the "prevailing community," which is defined by reference to "the district in which the court sits." *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 389 F. Supp. 2d 443, 447 (D. Conn. 2005) (quotation marks and citations omitted). "It is well

established that if claimed hours appear excessive, redundant, or otherwise unnecessary, the court should reduce the award accordingly." *Id.* at 449 (quotation marks and citation omitted). "There is no precise rule or formula for making these determinations, and, because 'it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application,' a court may apply an across-the-board percentage cut 'as a practical means of trimming fat from a fee application.'" *Rivera v. Corp. Receivables, Inc.*, 540 F. Supp. 2d 329, 338 (D. Conn. 2008) (quoting *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)).[5]

Plaintiff does not argue that the hourly rate charged by Defendants' counsel is unreasonable. Rather, she primarily takes issue with the number of hours dedicated to this matter because Defendants staffed the case with four attorneys and two paralegals, leading to "excessive internal conferences, communication, and coordination." Plaintiff also argues that Defendants should not be awarded fees for attorney training, matters unrelated to the case (such as FOIA requests and the state case against Brunswick School), and opposing Plaintiff's motion for summary judgment. Lastly, Plaintiff argues that the time records are excessive, redundant, unnecessary, and vague.

The Supreme Court has warned that "the determination of fees should not result in a second major litigation," and has instructed that the goal of an attorney's fees award is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Hours that are

---

[5] After calculating the lodestar, the Court may consider other factors which might counsel either an upward or downward adjustment, to include the 12 *Hensley* factors: "(1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Doe v. Bridgeport Police Dep't*, 468 F. Supp. 2d 333, 338 (D. Conn. 2006) (quotation marks, alterations, and citations omitted). As neither side has sought an adjustment, upward or downward, to the lodestar based upon these factors, the Court does not further analyze their application. The Court has however considered them, to the extent it is able, in rendering its decision.

excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

Here, the fees and costs incurred following the close of discovery total $257,357.50 in attorneys' fees and $9,678.81 in costs. Simply stated, these fees and costs result from Plaintiff's decision not to withdraw her claims following the close of discovery on July 17, 2020. Notwithstanding, the Court agrees with Plaintiff that Defendants' attorneys' fees associated with responding to Plaintiff's motion for summary judgment should be deducted from any award. Although such briefing would have been unnecessary had Plaintiff withdrawn her claims, as the Court observed during oral argument, Plaintiff's challenges to several of Defendants' special defenses were clearly meritorious. Reducing the award to reflect that Defendants, at times, also took questionable positions in this scorched earth litigation is appropriate. The Court does not attempt to identify by each line entry the hours worked on the opposition to Plaintiff's motion for summary judgment. A review of the time records allows for a rough estimation of 70 hours at $250.00 per hour, for a reduction of $17,500. The Court rejects Plaintiff's additional requests to further reduce the award.

**Conclusion**

For the foregoing reasons, Defendants' motion for attorneys' fees and costs is GRANTED in part. Defendants are awarded attorneys' fees in the amount of $239,857.50 and costs in the amount of $ 9,678.81, for a total award of $249,536.31, which shall be paid to Defendants' counsel within 60 days of this Order. The Clerk of the Court is respectfully directed to notify the Court of Appeals of this decision.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of April 2023.

                                 */s/ Kari A. Dooley*
                                 KARI A. DOOLEY
                                 UNITED STATES DISTRICT JUDGE